**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS,
HOUSTON DIVISION**

| | | |
|---|---|---|
| **AUSTIN THOMPSON HUGHES,** | § | |
| *Plaintiff*, | § | |
| | § | **Civil Action No.: 4:21-CV-01994** |
| **v.** | § | |
| | § | |
| **CITY OF HOUSTON, ET AL,** | § | |
| *Defendant*. | § | |

## DEFENDANT JAMES SEYMOUR'S RULE 12(b)(6) MOTION TO DISMISS

TO THE HONORABLE GEORGE C. HANKS, JR.:

Comes Now Defendant, James Seymour ("Seymour"), and files this his Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and, in support thereof, would respectfully show the Court as follows:

TABLE OF CONTENTS

NATURE AND STAGE OF PROCEEDING .................................................................. 3

ISSUES TO BE RULED ON AND STANDARD OF REVIEW ....................................... 4

Pursuant to Rule 12(b)(6), Hughes's complaint is legally insufficient to state a claim on which relief can be granted against Seymour and must be dismissed ................................. 4

SUMMARY OF THE ARGUMENT ............................................................................. 5

ARGUMENT AND AUTHORITIES ............................................................................ 6

Hughes's Pleadings are Insufficient to State a Claim for Unlawful Arrest and Prosecution, Failure to Supervise, Conspiracy, or to Overcome Seymour's Qualified Immunity ...................................................................................................................... 6

    *Insufficient Allegations: Unlawful arrest and prosecution through the wrongful institution of legal process* ..................................................................................... 7

    *Insufficient Allegations: Failure to Supervise* ........................................................ 13

    *Insufficient Allegations: Conspiracy to deprive constitutional rights* .................... 16

    *Qualified Immunity* ................................................................................................ 18

CONCLUSION ......................................................................................................... 20

PRAYER .................................................................................................................. 21

CERTIFICATE OF SERVICE .................................................................................... 22

## NATURE AND STAGE OF PROCEEDINGS

1.    Plaintiff Austin Thomas Hughes ("Hughes") filed this federal civil rights case stemming from the March 25, 2019 execution of a warrant for his arrest for the charge of impersonating a public servant and his subsequent criminal prosecution. Hughes filed his Original Complaint on June 17, 2021. He asserted claims against the City of Houston (the "City"), Harris County, Art Acevedo ("Acevedo"), Kim Ogg ("Ogg"), Michael Garcia ("Garcia"), Joshua Few ("Few"), James Seymour ("Seymour"), and Tiffany Alfred ("Alfred"). [Doc. 1]. Hughes has amended his complaint twice as a result of pre-motion conferences concerning the Defendants' intent to file Rule 12 motions to dismiss and a technical issue that arouse in the filing of Hughes's First Amended Complaint. [*See* Doc. 5, 16, 23, 26, 31, 34, 38, and 39]. Hughes's live pleading is his Second Amended Complaint ("Amended Complaint"). [Doc. 39].

2.    As a general summation, Hughes alleges that on March 23, 2019, he was an uber driver and came to a stop behind another vehicle driven by Gomez (a non-party). Hughes claims that Gomez was intoxicated, so Hughes took possession of Gomez's keys, his driver's license, alcohol bottles from Gomez's car, and then placed Gomez in handcuffs. [Doc. 39 at ¶¶ 1-4]. Hughes alleges that Officers Garcia and Few then came to the scene. That night, and over the next several days, Garcia, Few, and Alfred (a Harris County Assistant District Attorney) allegedly mismanaged the DWI investigation of Gomez and supposedly fabricated charges against Hughes for impersonating a police officer. [*See* Doc. 39 at p. 16 (heading)]. Hughes claims that Garcia created an affidavit for an arrest warrant with false statements and omissions, and that Hughes was unlawfully

arrested and subject to malicious prosecution. [Doc. 39 at p. 26 (heading) & p. 32 (heading)]. Hughes now asserts 42 U.S.C. § 1983 claims against Garcia, Few, Seymour (their supervisor), former chief of HPD Acevedo, the City, Alfred, and Ogg (Harris County District Attorney). [Doc. 39 at ¶¶159-225]. Hughes's Second Amended Complaint is 65 pages and contains 232 paragraphs. [Doc. 39].

3.      Seymour now files his Rule 12(b)(6) Motion to Dismiss requesting the Court dismiss all claims against him for Hughes's failure to state a claim for relief. Acevedo, Garcia, Few, and the City file separate Rule 12(b)(6) motions to dismiss due to the length and breadth of Hughes's Amended Complaint, along with the requirement that Hughes separately establish each defendant's liability. *See Goodarzi v. Hartzog*, CIV.A. H-12-2870, 2013 WL 3110056, at *5 (S.D. Tex. June 14, 2013) ("To sustain claims, a plaintiff must state particular facts specifying the personal involvement of each defendant.")

## ISSUES TO BE RULED ON AND STANDARD OF REVIEW

**Pursuant to Rule 12(b)(6), Hughes's complaint is legally insufficient to state a claim on which relief can be granted against Seymour and must be dismissed.**

4.      To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on its face only "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Montoya v. FedEx Ground Package Sys., Inc.,* 614 F.3d 145, 148 (5th Cir. 2010) (quoting *Ashcroft*, 556 U.S. at 678).

5.    Courts are not bound to accept as true "threadbare recitals of the elements of a cause of action, supported by mere conclusory statement," or legal conclusions couched as factual assertions. *Ashcroft*, 556 US at 678; *see also Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011) ("Plaintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim"). Dismissal is proper when the complaint lacks an allegation regarding a required element necessary to obtain relief. *Apani Southwest, Inc. v. Coca-Cola Enterprises, Inc.*, 300 F.3d 620, 624 (5th Cir. 2001) (quoting *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995)); *see also Hale*, 642 F.3d at 499.

## SUMMARY OF THE ARGUMENT

6.    The Court should dismiss all of Hughes's claims against Seymour pursuant to Rule 12(b)(6). Hughes fails to state a 42 U.S.C. § 1983 claim against Seymour for which relief may be granted. His Amended Complaint contains three causes of action against Seymour: (1) a claim for unlawful arrest and wrongful prosecution, (2) failure to supervise, and (3) a § 1983 conspiracy claim. Hughes has plead that a state criminal district judge issued an arrest warrant based on another officer's affidavit. The well-established independent intermediary doctrine holds that the criminal district judge's finding of probable cause breaks the causal chain between Seymour and any supposed violation. Hughes has failed to plead facts sufficient to claim any exception to the independent intermediary doctrine. Further, Hughes is required to plead facts showing that the warrant was issued without probable cause. This requires Hughes to plead facts showing that a corrected arrest affidavit (i.e. one with the alleged misstatements removed and with the facts that were allegedly omitted included) would not have provided any probable cause.

---

Hughes's Amended Complaint does not contain sufficient facts for this analysis, and he has therefore failed to show that no probable cause existed. Likewise, Hughes's supervisor liability claim fails because of the independent intermediary doctrine, and also because Hughes fails to plead facts supporting the elements of a supervisor liability claim.

7.      Regarding Hughes's conspiracy cause of action, this claim is nothing more than boilerplate recitation of elements devoid of any factual allegations. Such woefully inadequate pleadings do not state any claim for relief against Seymour.

8.      Hughes has also failed to state a claim that overcomes Seymour's qualified immunity. By failing to plead facts showing Seymour violated Hughes's constitutional rights, Hughes has failed to overcome the first element of qualified immunity. Hughes's complaint also makes no effort to establish that Seymour's actions violated clearly established law, which fails to establish the second element. The Court should dismiss all of Hughes's claims against Seymour, with prejudice, pursuant to Rule 12(b)(6).

## ARGUMENT AND AUTHORITIES

**Hughes's Pleadings are Insufficient to State a Claim for Unlawful Arrest and Prosecution, Failure to Supervise, Conspiracy, or to Overcome Seymour's Qualified Immunity.**

9.      Hughes asserts only three claims against Seymour in his Amended Complaint, both for allegedly arising from § 1983: (1) "unlawful arrest and prosecution through the wrongful institution of legal process" in violation of the Fourth and Fourteenth Amendments, (2) "[f]ailure to [s]upervise, and (3) "conspiracy to deprive constitutional rights." [Doc 39 at p. 51 ("Count One" "Defendants Garcia, Few, Seymour and Alfred, in their individual capacities"), p. 55 ("Count Three" "Defendant Seymour, in his individual

capacity"), p. 62-63 ("Count Six" referring generally to "the Defendants")]. "]. "A § 1983 cause of action requires that the individual being sued have personal involvement." *Goodarzi*, 2013 WL 3110056, at \*5. Therefore "a plaintiff must state particular facts specifying the personal involvement of each defendant" to sustain claims under § 1983. *Id.* As shown below, Hughes's live pleadings fail to state a claim for any cause of action against Seymour or overcome his qualified immunity.

### Insufficient Allegations: Unlawful arrest and prosecution through the wrongful institution of legal process.

10.    Hughes's claim for unlawful arrest and prosecution arises from his arrest by warrant. While Hughes claims this warrant was issued without probable cause, he has nonetheless expressly pled that a Texas state criminal district court issued a warrant for his arrest. [Doc. 39 at ¶ 98]. As such, the independent intermediary doctrine applies. When "facts supporting an arrest are placed before a magistrate, judge, or other independent intermediary" and that intermediary issues a warrant, then the intermediary's decision to cause a warrant to be issued "'breaks the chain of causation' for the Fourth Amendment violation." *Jennings v. Patton*, 644 F.3d 297, 300–01 (5th Cir. 2011). This is known as the independent intermediary doctrine. *Id.* As pled, any chain of causation between Seymour and Hughes's claim of unlawful arrest and malicious prosecution is broken. Unless Hughes's pleadings met the high burden of stating an exception to the independent intermediary doctrine—which they do not—all of Hughes's claims against Seymour must be dismissed. *See Curtis v. Sowell*, 761 Fed. Appx. 302, 304 (5th Cir. 2019) ("So unless an

---

exception to the independent intermediary rule applies, Curtis's grand jury indictment dooms his false arrest claim.").

11.    Hughes attempts to plead his way around the independent intermediary by claiming "the Individual Defendants . . . knowingly included false statements and material omissions in the warrant used to justify Plaintiff's arrest." [Doc. 39 at ¶161]. Hughes hopes to invoke *Franks* liability with this language. *"*Functionally, the holding of *Franks* is an exception to the independent intermediary doctrine." *Terwilliger v. Reyna*, 4 F.4th 270, 281 (5th Cir. 2021). A plaintiff can avoid the independent intermediary doctrine under *Franks* only when showing that an officer "deliberately or recklessly provides false, material information for use in an affidavit' or 'makes knowing and intentional omissions that result in a warrant being issued without probable cause.'" *Anokwuru v. City of Houston*, 990 F.3d 956, 964 (5th Cir. 2021).

12.    The United States Supreme Court has "expressly stated that the *Franks* rule is a narrow one . . . ." *Melton v. Phillips*, 875 F.3d 256, 262–63 (5th Cir. 2017)(en banc). Potential *Franks* liability can be divided into two categories. One is when an officer signed the warrant affidavit/application or presented it to the independent intermediary himself; and the second is when an officer assisted in preparing the warrant affidavit/application by providing information for the purpose of that information being including in the affidavit/application. "[A]n officer who has provided information for the purpose of its being included in a warrant application . . . has assisted in preparing the warrant application . . . and may be liable, but an officer who has not provided information for the purpose of

its being included in a warrant application may be liable only if he signed or presented the application." *Id.*

13.   According to Hughes's live pleading, only Garcia signed the warrant affidavit and only Alfred presented it to the criminal district court. [Doc. 39 at ¶ 98]. Hughes does not allege any facts showing that Seymour provided any information to Garcia with the purpose of it being included in the affidavit. [*See* Doc. 39 at ¶¶84-98]. Taking as true the fact in Hughes's Amended Complaint, neither category of officer liable under *Franks* applies to Seymour. Consequently, the criminal district judge's issuance of the warrant broke all causal connection with Seymour. There are no well pled facts in Hughes's complaint that overcome the independent intermediary doctrine. Hughes therefore fails to state a claim against Seymour for Fourth or Fourteenth Amendment violations.

14.   Hughes makes a passing reference to bystander liability in his 232 paragraph Amended Complaint. He argues, "[a]lternatively, the Individual Defendants are liable for failing to intervene in the violation of Plaintiff's rights" and then recites the elements of bystander liability. [Doc. 39 at ¶166]. Hughes then claims in a conclusory fashion that "Defendants Few, Alfred and Seymour were aware that the warrant was fraudulently obtained by the false affidavit of Defendant Garcia" and that "Defendants had an opportunity to prevent the unlawful arrest of Plaintiff by intervening and/or refusing to approve the arrest . . . but failed to do so." [Doc. 39 at ¶167]. As with Hughes's first argument for unlawful arrest, the independent intermediary doctrine bars his failure to intervene (bystander liability) claim as well.  "[T]he Fifth Circuit has also found limited circumstances, generally in excessive force cases, where an officer can be liable for

bystander liability, which is what Plaintiff has labeled a failure to intervene." *Wooten v. Roach*, 431 F. Supp. 3d 875, 890 (E.D. Tex. 2019), *appeal dism'd sub nom Wooten v. White*, 20-40004, 2020 WL 8020109 (5th Cir. Aug. 4, 2020).

15.     In *Locke v. Torres*, the Fifth Circuit applied the independent intermediary doctrine to find that the arresting officer was immune from suit because a Harris County criminal judge determined there was probable cause for the plaintiff's arrest. *Lock v. Torres*, 694 Fed. Appx. 960, 964 (5th Cir. 2017). The Fifth Circuit then turned to the plaintiff's claims of failure to intervene and supervisory liability against two other officer defendants. The court found that the independent intermediary's determination of probable cause "broke any causal chain between the arrests and the alleged failure to intervene or supervise." *Id.* at 965.

16.     Likewise, the independent intermediary doctrine also breaks the causal chain between Seymour and Hughes's failure to intervene claims. Hughes does not allege that Seymour was present when Garcia wrote the affidavit or when the criminal district judge issued the arrest warrant. Further, Hughes's pleading establish that Seymour did not have independent knowledge about the statements made by Gomez (who Hughes calls the "DWI Suspect" in his complaint). [Doc 39 at ¶ 30]. Hughes expressly pled that only Garcia spoke to Gomez in Spanish. [Doc. 39 at ¶ 52]. There is no allegation that Seymour speaks Spanish or that Seymour spoke with and understood anything that Gomez said. Seymour would have no basis to know that any statement by Gomez was or was not true, or if Garcia was accurately describing those statements in an affidavit. Seymour would have no basis to know whether Gomez's statements did or did not support probable cause. No facts show

that Seymour had the requisite knowledge or opportunity to prevent any alleged constitutional violation.

17.     Additionally, "to overcome the independent intermediary doctrine at the Rule 12(b)(6) stage, the plaintiff must bring specific, nonspeculative allegations that the officer deliberately or recklessly provided false information to the independent intermediary." *Poullard v. Gateway Buick GMC LLC*, 2021 WL 2376721, at *14 (N.D. Tex. June 10, 2021) (citing *Anokwuru*, 990 F.3d at 962). Hughes cannot prevail under *Franks* by merely showing that Seymour, or any other officer, <u>should</u> have included or excluded facts from an affidavit. Allegations of mere negligence are insufficient. *Winfrey v. San Jacinto County*, 481 Fed. Appx. 969, 980 (5th Cir. 2012). To establish Seymour had reckless disregard for the truth, Hughes must provide facts showing that Seymour "in fact entertained serious doubts as to the truth" of the contents of an affidavit. *Hart v. O'Brien*, 127 F.3d 424, 449 (5th Cir. 1997). Again, there are no allegations that Seymour signed an affidavit, presented an affidavit, or provided any information for the purpose that the information be used in the affidavit. Consequently, there are no well pled facts that he did so with reckless disregard. Hughes has failed to state a claim for any constitutional violation arising from his arrest.

18.     Moreover, Hughes has not plead facts establishing that the warrant for his arrest was issued without any probable cause because he did not plead all the facts that he claims were in Garcia's arrest affidavit. In the context of *Franks* liability, the essential inquiry is "whether 'there remains sufficient content in the warrant affidavit to support a finding of probable cause' *after* the 'material that is the subject of the alleged falsity or

reckless disregard is set to one side.'" *Terwilliger,* 4 F.4th at 281–82. Thus, *Franks* requires the Court to create a hypothetical "corrected affidavit"—one that excludes material misrepresentations and includes material omissions—and then determine whether the hypothetical affidavit fails to establish probable case. *Id.* If probable cause remains, there is no *Franks* liability. "The arrest may still be constitutionally valid if, when the allegedly false or malicious material in a probable-cause affidavit is excised, sufficient material remains in the affidavit to support a finding of probable cause." *Harris v. Wal-Mart Stores Tex., LLC*, 2020 WL 4726757, at *9 (S.D. Tex. May 6, 2020).

19. "Probable cause 'is not a high bar.'" *D.C. v. Wesby*, 138 S. Ct. 577, 586 (2018). "It 'requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.'" *Id.* A "requisite 'fair probability' is something more than a bare suspicion, but need not reach the fifty percent mark.'" *Wyatt v. Anderson*, 2014 WL 670855, at *7 (W.D. Tex. Feb. 20, 2014) (citing *Martin v. Thomas,* 973 F.2d 449, 453 (5th Cir. 1992)). "Because probable cause 'deals with probabilities and depends on the totality of the circumstances,' it is 'a fluid concept' that is 'not readily, or even usefully, reduced to a neat set of legal rules.'"*Wesby*, 138 S. Ct. at 586 (internal citations omitted). "In deciding whether probable cause exists, police officers are not required to be perfect, nor do they have to err on the side of caution 'out of fear of being sued.'" *Wyatt*, 2014 WL 670855, at *7 (citing *Martin*, 973 at 453). Once probable cause is established, a subsequent dismissal or acquittal of those charges does not affect the legality of the arrest. *Harris*, 2020 WL 4726757 at *7 (citing *Howell v. Tanner*, 650 F.2d 610, 615 (5th Cir. Unit B July 1981).

20.     Here, Hughes cannot show that the corrected affidavit lacked all probable cause because he has not plead the totality of the facts and statements that were supposedly included in Garcia's affidavit. [*See* Doc. 39 at ¶¶ 84-97, (pleading only alleged misstatements and omissions, but not the complete affidavit)]. Hughes's Amended Complaint cannot show what the corrected affidavit looks like, and, consequently, he has not alleged sufficient facts to show that a corrected affidavit was devoid of any probable cause. This deficit is fatal. *See Voss v. Goode*, 954 F.3d 234, 238 (5th Cir. 2020), cert. denied, 141 S. Ct. 662, 208 L. Ed. 2d 271 (2020) ("Goode is therefore entitled to qualified immunity unless it was clearly established that no probable cause existed to arrest Voss for interference with public duties or any other crime at the time of arrest.") Because Hughes's pleadings do not show that a warrant was issued without probable case, his pleadings do not state a claim for any constitutional violation by Seymour. The Court should dismiss the claims against Seymour pursuant to Rule 12(b)(6).

### *Insufficient Allegations: Failure to Supervise.*

21.     The independent intermediary doctrine that bars Hughes's bystander claim applies equally to bar Hughes's failure to supervise claim.  *Locke*, 694 Fed. Appx. at 964 (applying the independent intermediary doctrine and finding that state court's judicial determination of probable cause for plaintiff's arrest "broke any causal chain between the arrests and the alleged failure to intervene or supervise.").

22.     But setting aside the independent intermediary doctrine (which by itself requires dismissal of all of Hughes's claims against Seymour), Hughes has failed to state a claim for any of the elements of supervisory liability. The elements of a § 1983 claim for

failure to supervise are, "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Goodman v. Harris County*, 571 F.3d 388, 395 (5th Cir. 2009). For deliberate indifference, Hughes must plead specific facts showing (1) that Seymour was actually "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and (2) that Seymour drew that inference. *Id.* ("For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.").

23.    Moreover, "[t]o establish deliberate indifference, 'a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation.'" *Id.; Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005) ("'[t]o succeed on his claim of failure to train or supervise' the plaintiff must demonstrate deliberate indifference, which usually requires a plaintiff to 'demonstrate a *pattern of violations*.'" (emphasis in original)).

24.    Hughes's factual allegations against Seymour are that he supposedly failed to review Garcia and Few's investigation in the incident with Gomez and Hughes and that he should have noticed alleged discrepancies between the report and Garcia's affidavit. [Doc. 39 at ¶¶ 186-187]. "Had Defendant Seymour been properly supervising . . . he would have noticed the failure of Defendants Garcia and Few to properly investigate the DWI suspect and the discrepancies. . . ." [Doc. 39 at ¶187]. Hughes also avers in his Amended

Complaint that "Defendant Seymour <u>knew or should have known</u> of the material omissions and false statements in Defendant Garcia's affidavit . . . ." [Doc. 39 at ¶ 110 (emphasis added)]. At best, these allegations address a negligence standard, and fall infinitely short of Hughes's burden to show Seymour had actual knowledge and acted with deliberate indifference.

25.     Wholly absent from Hughes's live pleadings are any allegations or specific facts demonstrating that Seymour was aware of a pattern or prior violations with officers Garcia or Few that was an obvious substantial risk of constitutional violations. In fact, no such pattern is alleged for any officer for which Hughes claims Seymour had actual knowledge.

26.     Hughes cites *Goodman* as authority for his supervisor liability claim against Seymour. However, *Goodman* confirms that Hughes's supervisor liability claim must be dismissed. In *Goodman*, the Fifth Circuit analyzed a § 1983 supervisor liability claim brought against the supervisor of police officers who fatally shot the plaintiff's son while attempting to apprehend him. *See Goodman,* 571 F.3d at 394-395. The plaintiff claimed the officer had supervisory liability for inadequately training the officers involved in the shooting. *Id.* The Fifth Circuit upheld the district courts finding that there was no supervisor liability claim:

> Goodman admits that there was a policy on the use of deadly force and points to no pattern of violations or deficiencies in the training program. She merely states that some violations must have existed and these must have been due to a failure to train. This is not enough to carry her burden of showing deliberate indifference.

*Id.* at 396. Similarly, Hughes claims there was a policy that required Seymour to review his subordinates' work [Doc. 39 at ¶ 186], but does not allege any specific facts showing a pattern of violations. Hughes has no well pled facts on which a supervisory liability claim against Seymour can stand. The Court must dismiss this claim pursuant to Rule 12(b)(6).

### *Insufficient Allegations: Conspiracy to deprive constitutional rights*

27.     Hughes's alleged causes of action end with a Hail Mary conspiracy claim against all eight Defendants, pled in a textbook conclusory fashion. Hughes pleads that "[f]ollowing the March 23, 2019 incident, the Defendants reached an agreement with the(sic) Gomez and amongst themselves to unlawfully pursue Plaintiff for the crime of impersonating a police officer without probably cause" and that "[i]n furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity." [Doc. 39 at ¶¶ 221-223]. He does not plead any specific fact and does not cite any legal authority.

28.     The facts alleged elsewhere in Hughes's live pleadings disprove the existence of any conspiracy between "Gomez and amongst [Defendants] to unlawfully pursue Plaintiff for the crime of impersonating a police officer without probably cause . . . ." [Doc. 39 at ¶ 221]. As the master of his owns pleadings, Hughes has affirmatively plead just one version of events—that Gomez was "obviously intoxicated" and told Garcia a rambling story in which he referred to Hughes as "Jesse" and said he and Hughes were riding together in the same car coming from a flea market, along with other allegedly contradictory statements. [Doc. 39 at ¶¶ 3, 58-59]. Hughes's entire claims for unlawful arrest and prosecution are grounded in his argument that Gomez was so wildly unbelievable

that no reasonable officer would have believed Gomez. Yet, Hughes also wants to claim that Gomez and the Defendants entered into a specific conspiratorial agreement against Hughes to unlawfully arrest and prosecute him for impersonating an officer. This conspiracy allegation is nonsensical and, at best, a disingenuous claim.

29.    To state a claim for conspiracy Hughes must plead facts showing (1) an actual violation of a right protected under § 1983 and (2) actions taken in concert by the defendants with the specific intent to violate the aforementioned right." *See Wooten,* 431 F. Supp. 3d at 902 (quoting conspiracy elements). Further "[a] conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Terwilliger*, 4 F.4th at 285.

30.    The Fifth Circuit recently found similarly thread bare allegations insufficient to state a claim for conspiracy to violate a plaintiff's constitutional rights:

> In addition to their *Franks* claim, the Plaintiffs also allege conspiracy and bystander claims. Neither survives. . . . The complaint states that the Defendants "entered into a conspiracy to deprive Plaintiffs of their right to be free from unlawful seizure" and "acted in concert either to orchestrate or to carry out the illegal seizure ... when they knew there was no probable cause to arrest them." The complaint further states that the Defendants "caused a warrant to be issued" and were aware that Chavez was swearing to a false statement and "encouraged [him]." Absent from the complaint is any sufficiently pled agreement to violate the Plaintiffs' constitutional rights.

*Id.* Hughes's live pleadings contain only conclusory allegations of conspiracy. His pleadings also do not state an underlying constitutional violation, as described above. *Supra* ¶¶9-26. Hughes has failed to state a claim for conspiracy that can survive Rule 12(b)(6), and the Court must dismiss it accordingly.

### *Qualified Immunity*

31.     Asking a court to defeat qualified immunity is an "extraordinary remedy," and so a plaintiff "must make an extraordinary showing" to get it. *Morrow v. Meachum*, 917 F.3d 870, 876 (5th Cir. 2019). "When a defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense." *Carroll v. Ellington*, 800 F.3d 154, 169 (5th Cir. 2015) (quoting *Club Retro, LLC*, 628 F.3d 209, 211 (5th Cir. 2010)). That is, "the plaintiff has the burden to negate the assertion of qualified immunity." *King v. Handorf*, 821 F.3d 650, 653 (5th Cir. 2016) (quoting *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009)). When a defendant asserts qualified immunity in a motion under Rule 12, the plaintiff's response "must be tailored to the assertion" and refute the immunity claim "with factual detail and particularity." *Johnson v. Halstead*, 916 F.3d 410, 416 (5th Cir. 2019) (quoting *Schultea v. Wood*, 47 F3d 1427, 1433 (5th Cir. 1995) (en banc) and *DeLeon v. City of Dallas*, 141 F. App'x 258, 261 (5th Cir. 2005)). Specifically, the plaintiff's allegations must (1) make out a constitutional violation by Seymour, individually, and (2) demonstrate that the conduct creating the violation of rights was objectively unreasonable in light of clearly established law at the time. *Ashcroft v. al-Kidd*, 565 U.S. 731, 735 (2011); *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Halstead*, 916 F.3d at 416. Hughes has fallen far short of that burden.

32.     The doctrine of qualified immunity shields "public officials acting within the scope of their official duties from liability for civil damages, so long as 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Kipps v. Caillier*, 197 F.3d 765, 768 (5th Cir. 1999) (quoting

*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To overcome qualified immunity, Hughes must show that each of the officer's conduct, individually, was objectively unreasonable. *Pearson v. Callahan*, 555 U.S. 223, 243 (2009); *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 419 (5th Cir. 2008). "An official's actions are 'objectively reasonable unless all reasonable officials in the defendant's circumstances would have then known that the conduct violated the Constitution.'" *Gates*, 537 F.3d at 419. "If reasonable public officials could differ on the lawfulness of the [officer's] actions, the [officer] is entitled to qualified immunity." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Qualified immunity has long protected from suit "all but the plainly incompetent or those who knowingly violate the law." *Malley*, 475 U.S. at 341; *see also Mullenix v. Luna*, 577 U.S. 7, 12, 136 S.Ct. 305, 308 (2015); *Romero v. City of Grapevine, Texas*, 888 F.3d 170, 176 (5th Cir. 2018). In short, Seymour is entitled to qualified immunity if his conduct was objectively reasonable, even if the conduct violated Hughes's constitutional rights (which it did not). *See Fraire v. City of Arlington*, 957 F.2d 1268, 1273 (5th Cir. 1992).

33.     For the purpose of qualified immunity, "the dispositive question is whether the violative nature of *particular* conduct is clearly established." *Morrow*, 917 F.3d at 875 (quoting *Mullenix*, 136 S. Ct. at 503-04) (italics orig.). "That is because qualified immunity is inappropriate only when the officer had 'fair notice'— 'in light of the specific context of the case, not as a broad general proposition'—that his *particular* conduct was unlawful." *Id*. (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (italics orig.). "When considering a defendant's entitlement to qualified immunity, [a court] must ask whether the law so clearly and unambiguously prohibited his conduct that '*every* reasonable official

---

Defendant James Seymour's Rule 12(b)(6) Motion to Dismiss                    19

would understand that what he is doing violates [the law].'" *Morgan*, 659 F.3d at 371 (quoting *Ashcroft*, 563 U.S. at 741). Further, if probable cause even arguable existed, then the officers' qualified immunity remains. *Hart v. O'Brien*, 127 F.3d 424, 444 (5th Cir. 1997) ("In other words, there must not even 'arguably' be probable cause for the search and arrest for immunity to be lost.").

34.     As discussed at length above (*supra* ¶¶ 9-26), Hughes has failed to plead facts showing Seymour violated any constitutional right, much less specific facts showing Seymour's conduct that allegedly violated that right was objectively unreasonable considering clearly established law at the time. Hughes has failed to show that the clearly established law required Seymour to take a different course of conduct—that is, Hughes cannot show that no reasonable officer would have agreed with Seymour's actions. Hughes has failed to state a claim that would defeat Seymour's qualified immunity, and the Court must dismiss all of Hughes's claims against Seymour accordingly.

## CONCLUSION

35.     Hughes has failed to allege well pled facts in his Amended Complaint that, taken as true, would state any claim against Seymour. The independent intermediary doctrine breaks the causal chain for any alleged unlawful arrest or wrongful prosecution claim. Further, Hughes's pleadings fail to show that the affidavit on which his arrest was based lacked all probable case (a pleading defect that requires dismiss). Hughes's live pleading also does not contain factual allegations that support his supervisor liability or conspiracy claims. The independent intermediary doctrine bars Hughes supervisor liability claim, and Hughes has failed to allege specific facts showing the elements of such a claim.

The factual allegations that are included in Hughes's Amended Complaint conclusively disprove the existence of a conspiracy. Lastly, an in many ways most importantly, Hughes has failed to plead facts that would defeat Seymour's qualified immunity. Seymour requests the Court dismiss all of Hughes's claims against him, with prejudice, pursuant to Rule 12(b)(6).

**PRAYER**

WHEREFORE, Defendant James Seymour respectfully requests the Court dismiss all of Plaintiff's claims against Defendant James Seymour, with prejudice. Defendant additionally requests all such other and further relief to which Defendant may be justly entitled.

Respectfully Submitted,


**ARTURO G. MICHEL**
**City Attorney**

**KELLY DEMPSEY**
**Chief, Torts/Civil Rights Section**

By:   /s/ Geoffrey G. Hoover
GEOFFREY G. HOOVER
ATTORNEY-IN-CHARGE
Senior Assistant City Attorney
State Bar No.:  24074437
CITY OF HOUSTON LEGAL DEPARTMENT
900 Bagby, 3rd Floor
Houston, Texas 77002
Telephone (832) 393-6248
Facsimile (832) 393-6259
E-mail geoffrey.hoover@houstontx.gov

ATTORNEY FOR DEFENDANT CITY OF
HOUSTON, ART ACEVEDO, MICHAEL
GARCIA, JOSHUA FEW, AND JAMES
SEYMOUR


## CERTIFICATE OF SERVICE

I certify that the forgoing Motion was served via the Court's CM/ECF system to all counsel of record, in accordance with the Federal Rules of Civil Procedure, on October 18, 2021.


*/s/ Geoffrey G. Hoover*
Geoffrey G. Hoover