IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS,
HOUSTON DIVISION

| | | |
|---|---|---|
| **AUSTIN THOMPSON HUGHES,** | § | |
| *Plaintiff*, | § | |
| | § | **Civil Action No.: 4:21-CV-01994** |
| **v.** | § | |
| | § | |
| **CITY OF HOUSTON, ET AL,** | § | |
| *Defendant*. | § | |

### DEFENDANT CITY OF HOUSTON'S RULE 12(b)(6) MOTION TO DISMISS

TO THE HONORABLE GEORGE C. HANKS, JR.:

Comes Now Defendant, City of Houston (the "City"), and files this its Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and, in support thereof, would respectfully show the Court as follows:

TABLE OF CONTENTS

NATURE AND STAGE OF PROCEEDING ........................................................ 4

ISSUES TO BE RULED ON AND STANDARD OF REVIEW ......................................... 5

    Pursuant to Rule 12(b)(6), Hughes's Complaint is legally insufficient to state a claim on which relief can be granted against the City and must be dismissed .................. 5

SUMMARY OF THE ARGUMENT ............................................................... 6

ARGUMENT AND AUTHORITIES ............................................................... 6

Hughes's Pleadings are Insufficient to State a Claim for *Monell* liability or Conspiracy .. 6

    *Insufficient Allegations: Underlying constitutional violation* ................................. 7

    *Insufficient Allegations: Custom, policy, practice, and procedure* ........................... 8

        First Alleged Policy: "Municipal Defendants' policy of failing to sufficiently enforce DWI violations" ........................................................ 9

        Second Alleged Policy: "Defendant City of Houston's failure to train HPD officers on properly handling DWI incidents" ................................... 15

        Third Alleged Policy: "Defendant City of Houston's policy or custom of allowing HPD officers to misrepresent facts in a criminal investigation for personal gain and use false affidavits to obtain warrants, including arrest warrants, without sufficient probable cause" .................................... 17

        Fourth Alleged Policy: "Defendant City of Houston's policy or custom of allowing HPD officers to violate policies related to criminal investigations and collection/reporting of evidence" ................................. 19

        Fifth Alleged Policy: "Defendant City of Houston's policy or custom of allowing HPD officers to engage in race-based policing, specifically by disproportionately targeting black people for arrest and prosecution of certain crimes, including impersonation" ............................... 20

        Sixth Alleged Policy: "Municipal Defendants' written policies that encourage HPD officers and assistant district attorneys to manipulate investigations and the presentation of evidence in order to secure warrants without the requisite probable cause" ............................... 23

Seventh Alleged Policy: "Municipal Defendants' failure to train HPD officers and assistant district attorneys on how to work together to conduct a proper criminal investigation, as opposed to cherry-picking facts to support probable cause." ................................................................................................. 25

*Insufficient Allegations: Conspiracy to deprive constitutional rights* ................... 26

CONCLUSION .................................................................................................... 27

PRAYER ............................................................................................................. 28

CERTIFICATE OF SERVICE ............................................................................ 28

## NATURE AND STAGE OF PROCEEDINGS

1.      Plaintiff Austin Thomas Hughes ("Hughes") filed this federal civil rights case stemming from the March 25, 2019 execution of a warrant for his arrest for the charge of impersonating a public servant and the subsequent criminal prosecution. Hughes filed his Original Complaint on June 17, 2021. He asserted claims against the City of Houston (the "City"), Harris County, Art Acevedo ("Acevedo"), Kim Ogg ("Ogg"), Michael Garcia ("Garcia"), Joshua Few ("Few"), James Seymour ("Seymour"), and Tiffany Alfred ("Alfred"). [Doc. 1]. Hughes has amended his complaint twice as a result of pre-motion conferences concerning the Defendants' intent to file Rule 12 motions to dismiss and a technical issue that arouse in the filing of Hughes's First Amended Complaint. [*See* Doc. 5, 16, 23, 26, 31, 34, 38, and 39]. Hughes's live pleading is his Second Amended Complaint ("Amended Complaint"). [Doc. 39].

2.      As a general summation, Hughes alleges that on March 23, 2019, he was an uber driver and came to a stop behind another vehicle driven by Gomez (a non-party). Hughes claims that Gomez was intoxicated, so Hughes took possession of Gomez's keys, his driver's license, alcohol bottles from Gomez's car, and then placed Gomez in handcuffs. [Doc. 39 at ¶¶ 1-4]. Hughes alleges that Officers Garcia and Few then came to the scene. That night, and over the next several days, Officer's Garcia, Few and Harris County Assistant District Attorney Alfred allegedly mismanaged the DWI investigation of Gomez and supposedly fabricated charges against Hughes for impersonating a police officer. [*See* Doc. 39 at p. 16 (heading)]. Hughes claims that Garcia created an affidavit for an arrest warrant with false statements and omissions, and that Hughes was unlawfully

arrested and subject to malicious prosecution. [Doc. 39 at p. 26 (heading) & 32 (heading)]. Hughes now asserts 42 U.S.C. § 1983 claims against Garcia, Few, Seymour (their supervisor), former chief of HPD Acevedo, the City, Alfred, and Ogg (Harris County District Attorney). [Doc. 39 at ¶¶159-225]. Hughes's Second Amended Complaint is 65 pages and contains 232 paragraphs. [Doc. 39].

3.     The City now files its Rule 12(b)(6) Motion to Dismiss requesting the Court dismiss all claims against it for Hughes's failure to state a claim for relief against the City. Acevedo, Garcia, Seymour, and Few file separate Rule 12(b)(6) motions to dismiss due to the length and breadth of Hughes's Amended Complaint, along with the requirement that Hughes separately establish each defendant's liability.

### ISSUES TO BE RULED ON AND STANDARD OF REVIEW

**Pursuant to Rule 12(b)(6), Hughes's complaint is legally insufficient to state a claim on which relief can be granted against the City and must be dismissed.**

4.     To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible on its face only "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Montoya v. FedEx Ground Package Sys., Inc.,* 614 F.3d 145, 148 (5th Cir. 2010) Courts are not bound to accept as true "threadbare recitals of the elements of a cause of action, supported by mere conclusory statement," or legal conclusions couched as factual assertions. *Ashcroft*, 556 US at 678; *see also Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011) ("Plaintiffs must allege facts that support the elements

of the cause of action in order to make out a valid claim"). Dismissal is proper when the complaint lacks an allegation regarding a required element necessary to obtain relief. *Apani Southwest, Inc. v. Coca-Cola Enterprises, Inc.*, 300 F.3d 620, 624 (5th Cir. 2001).

## SUMMARY OF THE ARGUMENT

5.      The Court should dismiss all of Hughes's claims against the City pursuant to Rule 12(b)(6). Hughes's Amended Complaint contains only two causes of action against the City: a *Monell* liability claim, and a § 1983 conspiracy claim. Both of these claims must fail. Hughes's Amended Complaint does not contain facts that establish any underlying constitutional violations by any HPD officer involved in Hughes's case. Even had Hughes stated a claim for an underlying constitutional violation, he failed to state a claim for municipal liability under *Monell*. He does not plead facts showing that an official policy promulgated by the City's policy maker was the moving force behind the underlying constitutional violation. Regarding Hughes's conspiracy cause of action, this claim is nothing more than boilerplate recitation of elements devoid of any factual allegations. Such woefully inadequate pleadings do not state any claim for relief against the City. The Court should dismiss all of Hughes's claims against the City, with prejudice.

## ARGUMENT AND AUTHORITIES

**Hughes's Pleadings are Insufficient to State a Claim for *Monell* liability or Conspiracy.**

6.      Hughes pleads two causes of action against the City: (1) a § 1983 municipal liability claim for alleged "Constitutional Depravation through Policy, Custom or Practice" (commonly referred to as a *Monell* claim); and (2) "conspiracy to deprive constitutional

rights." [Doc 39 at p. 58, 62-63] As shown below, Hughes's live pleadings fail to state a claim for any cause of action against the City.

### *Insufficient Allegations: Underlying constitutional violation.*

7.      If there is no underlying constitutional violation, Hughes has no § 1983 claim against the City. *Lock v. Torres*, 694 Fed. Appx. 960, 965 (5th Cir. 2017) ("Without a constitutional violation, Harris County is not liable under Section 1983."). Therefore, Hughes must first show an underlying constitutional violation before he can state a claim for *Monell* liability against the City.

8.      Defendants Few, Seymour, Garcia, and Acevedo's motions to dismiss demonstrate that there is no underlying constitutional violation in this case.[1] In short, the independent intermediary doctrine breaks the causal chain between the Defendants and any constitutional violation. All of Hughes's causes of action against the various defendants are rooted in his claim for unlawful arrest and prosecution. While Hughes claims his warrant was issued without probable cause, he has nonetheless expressly pled that a Texas state criminal district court issued a warrant for his arrest. [Doc. 39 at ¶ 98]. As such, the independent intermediary doctrine applies and negated causation for all alleged violations. Hughes's pleadings do not meet the high burden of stating an exception to the independent intermediary doctrine. All of Hughes's claims against the City must therefore be dismissed. *See Curtis v. Sowell*, 761 Fed. Appx. 302, 304 (5th Cir. 2019) ("So unless an exception to the independent intermediary rule applies, Curtis's grand jury indictment dooms his false

---

[1]      The City hereby incorporates by reference Defendants Few, Seymour, Garcia, and Acevedo's separately filed Rule 12(b)(6) motions to dismiss in their entirety.

arrest claim."). In *Lock,* the Fifth circuit held that the independent intermediary doctrine barred claims for unlawful arrest against the arresting officers (Harris County deputies) and supervisors. *Id.* As a result, the Fifth Circuit held that the municipal defendant (Harris County) was also not liable to the plaintiff as there was no constitutional violation by the officers. *Id.* Likewise, Hughes's failure to state an underlying constitutional violation by the individual officers requires dismissal of his claims against the City.

### Insufficient Allegations: Custom, policy, practice, and procedure.

9.      Should the Court decide that Hughes has stated an underlying constitutional violation against the individual defendants—which the Court should not—Hughes's Amended Complaint has multiple fatal deficiencies concerning his *Monell* liability claim. For a municipality to be liable under *Monell, "*the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." *Webb v. Town of Saint Joseph*, 925 F.3d 209, 214 (5th Cir. 2019) (*citing Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). A plaintiff must prove that a municipal policymaker promulgated an official policy that was the moving force behind the constitutional violation. *Id.* But before a plaintiff can try to prove these elements to a fact finder, his or her complaint must plead legally sufficient facts to support them. Hughes's pleadings fail utterly.

10.      Hughes alleges seven "policies, customs and practices" in an effort to make the City liable under § 1983 for Hughes's arrest and criminal prosecution for impersonating

an officer. [Doc. 39 at ¶199].[2] Before addressing each of these allegations individually, one fatal deficit applies to all of them. They are conclusory. Other than supposed "written policies that encourage HPD offices to assist district attorneys . . ." Hughes does not specifically for any allegation in this list whether he is complaining of actual written policies or widespread customs or practices. Conclusory allegations or legal conclusions masquerading as factual conclusions are not adequate to prevent dismissal. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002).

11.     This Court recently rejected similar conclusory allegations:

> [The plaintiff] fails to meet his pleading burden on the first element. It isn't even clear whether the complained of policy is written down or an unwritten custom. Instead, he only alleges that Harris County "permits its officers to perform illegal and improper conduct," and that this "failure to act shows a policy, procedure, custom, practice, or protocol of permitting officers (particularly Hartley) to use unjustifiable and unreasonable force without consequence." *Id.* at ¶¶ 106–07. As with both Counts 2 and 5, this is wholly conclusory. Taylor doesn't plead specific facts about the alleged policy. He simply states that such a policy exists based only on Hartley's conduct. This is insufficient.

*Taylor v. Hartley,* 488 F. Supp. 3d 517, 541–42 (S.D. Tex. 2020); *see also May v. City of Arlington, Tex.,* 398 F. Supp. 3d 68, 79–80 (N.D. Tex. 2019), supplemented, 3:16-CV-1674-L, 2019 WL 1429662 (N.D. Tex. Mar. 28, 2019) (granting 12(b)(6) in part because conclusory allegations, including "the City failed to train and supervise its police officers, overlooked and covered up officer misconduct, failed to discipline officers for their misconduct, and turned a 'blind eye' to constitutional violations of its police officers" and

---

[2]     Hughes's Amended Complaint contains other alleged policies, customs, and practices that are specific to Harris County, and are not directed to the City. [*See* Doc. 39 at ¶ 199 part h].

"the City had a policy or custom of authorizing and tacitly encouraging the use of excessive force by its police officers because the Internal Affairs Division of the Arlington Police Department ("APD"), past and present chiefs of police. . . have overlooked misconduct of its police officers against citizens").

12.    Hughes makes references to three different HPD General Orders elsewhere in his complaint. One is the policy concerning cooperating with the district attorney's office. [Doc. 39  at ¶153 (referring to HPD General Order 500-07)]. This general order will be discussed at length in a subsequent section. *Infra* at ¶¶ 34-33. As for the other two, General Orders 500-01 and 500-04, Hughes does not claim that either orders are unconstitutional written policies from which his *Monell* claim arises. Nor could he, as those policies have no relation to conduct in Hughes's pleadings. The alleged underlying constitutional violation is that a warrant for impersonating a public servant was issued for his arrest without probable cause. However, General Orders 500-4 and 500-01 as referenced by Hughes concern "Violent DWI Prisoners" and "how officers are instructed to document verbal consents to searches." [Doc. 39 at ¶ 135 (referencing HPD General Order 500-04), ¶ 140 (referencing HPD General Order 500-01)]. Hughes does not claim that he was a DWI prisoner or that there was an unlawful search. While Hughes fails to show that either General Order is facially unconstitutional, the constitutionality of these orders is irrelevant to Hughes claims. There is no direct causal link between documenting a violent DWI prisoner's refusal to provide a breath test, verbal consent to searches and Hughes's alleged unlawful arrest for impersonating an public servant. "[A] plaintiff must show direct causation, i.e., that there was 'a direct causal link' between the policy and the

violation." *James v. Harris County*, 577 F.3d 612, 617 (5th Cir. 2009). General Orders 500-04 and 500-01 do not support Hughes's *Monell* claim. Likewise, as shown below, the seven specific policies or practices Hughes alleges do not state a §1983 claim against the City.

### First Alleged Policy: "Municipal Defendants' policy of failing to sufficiently enforce DWI violations"

13.     Hughes essentially claims that had Garcia and Few arrested Gomez for DWI, then Hughes would never have been arrested for impersonating an officer. [Doc. 39 at ¶ 78].[3] Hughes then tries to inflate this disjointed claim into *Monell* liability by alleging HPD, as a whole, does not arrest people for DWI. [Doc. 39 at ¶ 122]. This alleged policy does not state a *Monell* claim for two reasons: (1) there is no causal connection between DWI enforcement and Hughes's claimed constitution violation for issuance of a warrant without probable cause; and (2) Hughes has not plead facts showing a widespread, pervasive pattern of practice.

14.     "To form the basis of liability under § 1983, a municipal policy must be affirmatively linked to the constitutional violation and be the moving force behind it." *Fraire v. City of Arlington*, 957 F.2d 1268, 1281 (5th Cir. 1992) Causation for *Monell* requires a direct causal link. *James*, 577 F.3d at 617. "This connection must be more than a mere 'but for' coupling between cause and effect." *Fraire*, 957 F.2d at 1281. Whether or

---

[3]     "By unreasonably failing to further investigate, including by requesting and taking a breath and/or blood sample, arrest and/or charge the DWI suspect, Defendants Garcia, Few and Alfred collectively violated this policy and failed to act as any reasonable official would under the circumstances. This dereliction of duties ultimately led to the pursuit of charges against Plaintiff and ultimate arrest in violation of the United States Constitution." [Doc. 39 at ¶78].

not Gomez could have been arrested for DWI is wholly unconnected to whether or not probable cause existed for Hughes's arrest. Gomez's arrest would not have precluded Hughes's arrest. There is nothing in Hughes's Amended Complaint to indicate that arrests for these offenses are mutually exclusive. Garcia could have arrested Gomez for DWI and then signed the same affidavit that was allegedly used for Hughes's arrest for impersonating a public servant. Likewise, HPD could have arrested every person that ever drove drunk in the City of Houston and Garcia could still have signed the alleged affidavit used to arrest Hughes for impersonating a public servant.

15.     The Fourth Amendment is not Hughes's personal sword and shield.  A claim for unlawful arrest like Hughes's arises from the individual right under the Fourth Amendment that an arrest warrant be supported by probable cause. *See* U.S. Const. amend. IV ("no Warrants shall issue, but upon probable cause . . . ."); *Gedrich v. Fairfax County Dep't of Family Services*, 282 F. Supp. 2d 439, 468 (E.D. Va. 2003) ("The Fourth Amendment right to be free from unreasonable government seizures is a personal one."); *Minnesota v. Carter*, 525 U.S. 83, 88, 119 S. Ct. 469, 472, 142 L. Ed. 2d 373 (1998) ("Central to our analysis was the idea that in determining whether a defendant is able to show the violation of his Fourth Amendment rights . . . ."). The argument that Hughes's personal right to require probable cause for his arrest also includes a separate, offensive right to have Gomez arrested for a completely different offence is nonsensical. "The constitutional requirement of probable cause for arrest serves the purpose of protecting the citizenry from unreasonable intrusions by the state, not of insuring that no innocent person will ever be arrested." *United States v. Bowers*, 458 F.2d 1045, 1048 (5th Cir. 1972). There

is no causation to link between DWI enforcement and Hughes's arrest. This alleged policy does not create *Monell* liability.

16.     But ignoring the complete lack of causation, Hughes has not stated a *Monell* claim for this alleged policy because he has not plead facts establishing a pattern of violations. As Hughes is relying on unwritten policies, customs or practices, he must plead specific facts showing the existence of "[a] persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Hicks-Fields v. Harris Cnty.*, 860 F.3d 803, 808-09 (5th Cir. 2017). Hughes's Amended Complaint lacks *any* facts that show *any* custom, pattern or practice of failing to enforce DWI violations.

17.     "Proving a pattern is a heavy burden, one that has rarely been met in our caselaw." *Shepherd v. Dallas County*, 591 F.3d 445, 452 (5th Cir. 2009). The Fifth Circuit emphasizes that for a court to find a pattern or practice sufficiently pervasive to subject a municipality to liability that a plaintiff must show a significant number of other instances, placed in context of the size of the police department and criminal incidents investigated. *E.g.*, *Davidson v. City of Stafford*, 848 F.3d 384, 396–97 (5th Cir. 2017) (finding three arrests over three and a half years did not establish a pattern of constitutional violations); *Carnaby v. City of Houston*, 636 F.3d 183, 189–90 (5th Cir. 2011) (holding two reports of violations of a policy in four years in the City of Houston did not amount to pattern); *Peterson v. City of Fort Worth, Tex*., 588 F.3d 838, 851–52 (5th Cir. 2009) (holding 27 complaints of excessive force over a period of three years in department with more than

---

1,500 officers did not constitute a pattern); *Pineda v. City of Houston*, 291 F.3d 325, 329 (5th Cir 2002).

18.    Hughes must also allege with specificity that the other instances are fairly similar to what ultimately transpired with him. They require "similarity and specificity; prior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question." *Clark v. Thompson*, 850 Fed. Appx. 203 (5th Cir. 2021) (citing *Hicks-Fields v. Harris Cnty.*, 860 F.3d 803, 808 (5th Cir. 2017)). The conduct Hughes claims he experienced is that he was arrested and prosecuted for impersonating an officer without probable cause.

19.    To plead prior instances in his Amended Complaint, Hughes cites various news articles. [*See* Doc. 39 at ¶¶ 122-129]. These articles do not contain specific instances is such quantity and similarity to establish any pattern of practice. Instead, they show that HPD has increased its enforcement for DWI offenses—not failed to enforce then as Hughes claims. Hughes cites a December 15, 2019 "click2houston.com" article titled "'A catastrophic problem': Tracking DWI arrests in Harris County" [Doc. 39 at ¶ 125 n.15]. The article states that HPD made over 5,150 DWI arrests in 2018, and 7,924 arrests in 2019.[4] Meaning that HPD arrested 2,774 more people for DWI in 2019 (the year Hughes was arrested) than HPD did the year before. Further, this article contributes that substantial increase in DWI arrests to an increase in DWI enforcement by HPD. After noting the

---

[4]    https://www.click2houston.com/news/investigates/2019/12/10/a-catastrophic-problem-tracking-dwi-arrests-in-harris-county/ (2019 article stating "The Houston Police Department alone reported over 5,150 DWI arrests in 2018. By the end of November this year, the department already logged 7,924 arrests."

increase in DWI arrests by HPD, the article quotes Sargent Don Egdorf "who heads the Houston Police Department's DWI task force" as saying "[t]he common question or response to it is, 'Man, there's a lot more drunks out there on the street.' I don't really believe that's true. **I believe we're doing a better job of catching them**[.]" *Id.* (emphasis added).

20.    The Fifth Circuit has upheld a finding that 27 violations of excessive force occurring within the three years prior to the incident in question were insufficient to show a pattern or practice of condoning excessive force. *Peterson,* 588 F.3d 838, 851–52. Hughes's general statistics about the number of DWI offenders in Harris county, a handful in specific instances of police officers themselves being arrested or investigated for DWI, and the general dangers of DWI do not meet his heavy burden. *See Sanchez,* 956 F.3d at 793 (showing a pervasive pattern is a heavy burden). If 27 incidents of excessive force was insufficient to allege a pattern of condoning excessive force, then Hughes's news articles concerning DWI enforcement does not show a pattern by HPD of obtaining warrants without probable cause for the offence of impersonating a public official. Hughes's Amended Complaint fails to state a claim against the City for Fourth or Fourteenth Amendment violations arising from this alleged policy custom, and practice.

### Second Alleged Policy: "Defendant City of Houston's failure to train HPD officers on properly handling DWI incidents"

21.    "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61, (2011). "A less stringent standard of fault for a failure-to-train claim 'would result in *de facto*

*respondeat superior* liability on municipalities. . . .'" *Id.* at 62. Hughes must allege with specificity how the City's training program is defective in relation to the tasks that the particular officer has to perform. *See Taylor v. Hartley*, 488 F. Supp. 3d 517, 535 (S.D. Tex. 2020). Hughes must identify a specific training program and show how it is inadequate. Without a sufficiently specified training program or defects, the plaintiff "necessarily hasn't shown the *causation* required" for a failure to train *Monell* claim. *Id.* at 536 (emphasis in original).

22.     This Court found the pleadings in *Taylor* insufficient to overcome a motion to dismiss. In *Taylor*, the plaintiff specifically alleged that (1) the officer's training was defective because it did not include sufficient de-escalation or use-of-force training, and (2) that de-escalation training is common practice in police departments across Texas. This Court found such allegations "wholly conclusory" as "neither alleges specific facts about the training protocols in Harris County nor describes any deficiencies in the program in light of [the officer's] assigned duties." *Id.* at 535. Hughes also fails to identify a specific training program with specific deficits that relate to the tasks of the particular officer's tasks that are casually related to Hughes's claims. The same fatal lack of causation that dooms Hughes's alleged policy of inadequate DWI enforcement is terminal to Hughes's allegation of inadequate training on "handling DWI incidents." As discussed above, there is no direct link between DWI offenses/incidents and Hughes's arrest for impersonating a public official. Hughes does not so much as claim he was drunk or accused of being drunk. Alleged failure to train on DWI incidents does not state a *Monell* claim.

23.     Lastly, Hughes must also plead facts demonstrating that the City adopted the specifically alleged training program with "deliberate indifference" to the rights of the plaintiff, and such indifference is a "closely related" cause of the plaintiff's injuries. *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005); *City of Canton v. Harris*, 489 U.S. 378, 388, 391 (1989). The failure or inaction "must amount to an intentional choice, not merely an unintentionally negligent oversight." *Conner v. Travis County*, 209 F.3d 794, 796 (5th Cir. 2000) (*citing Rhyne v. Henderson Cty.*, 973 F.2d 386, 392 (5th Cir. 1992)). Hughes pleads no such facts showing that the City's policy maker adopted a training program concerning DWI incidents with deliberate indifference to Hughes, or those being arrested for impersonating a public official. His Amended Complaint fails to state a claim for relief related to training as to DWI incidents.

> **Third Alleged Policy: "Defendant City of Houston's policy or custom of allowing HPD officers to misrepresent facts in a criminal investigation for personal gain and use false affidavits to obtain warrants, including arrest warrants, without sufficient probable cause"**

24.     Hughes's third alleged "policy or custom" is yet another supposed unwritten policy. He must therefore allege with specificity enough other similar instances to meet his heavy burden of establishing a widespread pattern of practice. *See Hicks-Fields*, 860 F.3d at 808-09. As before, Hughes fails to do so. But before turning to the insufficient allegations referred in Hughes's complaint, this third alleged policy is facially insufficient. Specifically, the claim of "allowing HPD officers to misrepresent facts in a criminal investigation for personal gain . . . ." [Doc. 39 at ¶ 199]. Hughes does not allege that officers Garcia, Few, Seymour or Acevedo misrepresented any fact "for personal gain." So even if

such a policy existed—which it does not—that policy would not be the moving force behind any purported violation against Hughes because he does not allege any misrepresentation was made by any officer for personal gain.[5]

25.    As with all of Hughes's alleged unwritten policies or customs, Hughes fails to plead facts showing a widespread pattern of practice. Hughes alleges the following prior incidents by citing seven news articles [Doc. 39 at ¶143, n. 24-31]:

- Officers involved in the Harding Street Raid and the Narcotics Division [Doc. at ¶147 (first two black bullet points and their subpoints, and second white bullet point under the third black bullet point)]: Hughes tries to count the aftermath of this single event as multiple occurrences by noting the various charges and investigations into the various officers, some for overtime fraud and one officer, Goines, alleged misrepresentations to get arrest warrants for drugs offenses. However, all of these incidents are limited to specific officers in the narcotics squad/division and do not show a widespread custom across HPD. There are no allegations that any officer involved with Hughes was in the narcotics division.

- In 1997, 1 officer in the HPD narcotics division was suspended for 10 days [Doc. at ¶147 n. 24 (the first white bullet point under first black bullet point)]. This pre-dates Hughes's arrest by 22 years.

- In 2006, 1 officer allegedly "manipulating DWI arrests" to log more overtime [Doc. 39 at 143 n. 31 (last black bullet point)].[6] This pre-dates Hughes's arrest by 13 years.

- In 2012, 4 officers we suspended for listing each another on tickets to get overtime pay [Doc. 39 at ¶ 143 (first white bullet put under the third black bullet point)].

- In 2016, 1 officer indicted for "tampering with government records" in 2 DWI cases [Doc. 39 at ¶ 143 n. 30 (fourth black bullet point)].

---

[5]    Alleging there is a policy of officers misrepresenting facts for personal gain would be as relevant as Hughes alleging HPD had a policy of permitting excessive force against handcuffed suspects. There is no claim of excessive force against Hughes so whether such a policy existed would be irrelevant in this case. There is no allegation of personal gain by the officers in this case so any such policy is irrelevant and cannot state a *Monell* claim against the City.

[6]    Hughes cites an October 14, 2019 news article that references only one HPD officer from 2006. The remainder of the article references incidents with officers from non-Texas cities (e.g. Los Angeles California, Baltimore Maryland, Miami-Dade County, Florida). https://www.usatoday.com/in-depth/news/investigations/2019/10/14/brady-lists-police-officers-dishonest-corrupt-still-testify-investigation-database/2233386001/, cited in Hughes's Amended Complaint at footnote 31. [Doc. 36 at ¶ 143, n. 31].

---

- <u>In 2018, 5 officers were suspended due to issues related to overtime</u> [Doc. 39 at ¶ 143 n. 29 (second white bullet point under third black bullet point)].

26.     Hughes hopes to simply say "but see Harding street" and state a claim for supervisory liability. The law requires much more. This handful or dissimilar incidents, some of which pre-date Hughes's arrest by a decade or more, possess neither the quality nor quantity of occurrences to state a *Monell* claim. *See e.g. Peterson,* 588 F.3d 838, 851–52. (finding 27 violations of excessive force occurring within the three years prior to the incident in question were insufficient to show a pattern or practice of condoning excessive force).

### Fourth Alleged Policy: "Defendant City of Houston's policy or custom of allowing HPD officers to violate policies related to criminal investigations and collection/reporting of evidence"

27.     Hughes's fourth alleged policy appears to be a restatement of the third alleged policy. It should fail for the same reasons discussed in the previous section. (*Supra* ¶¶ 24-26). To the extent Hughes claims this is a separate unwritten policy, Hughes must allege with specificity other similar instances to establish a widespread pattern of practice. As before, Hughes fails to plead facts showing a pattern of similar constitutional violations and, therefore, fails to state a *Monell* claim. *See Hicks-Fields*, 860 F.3d at 808-09. As discussed in the previous section, the stale, sporadic, and dissimilar instances of overtime padding or alleged misconduct in DWI cases are neither related to Hughes's allegations of arrest for impersonating a public official without probable cause and lack the numerosity to establish an actionable pattern of "violating policies related to criminal investigations and collection/reporting evidence." *See e.g. Peterson,* 588 F.3d 838, 851–52. Moreover,

---

HPD officers simply violating HPD policies is not sufficient to invoke *Monell* liability. If it were, municipal liable under § 1983 would be nothing more than vicarious liability. *See Covington v. City of Madisonville, Tex.*, 812 Fed. Appx. 219, 224 (5th Cir. 2020)(noting municipalities "are not vicariously liable under § 1983 for their employees' actions.") Hughes's fourth alleged policy or custom does not state a claim against the City.

> **Fifth Alleged Policy: "Defendant City of Houston's policy or custom of allowing HPD officers to engage in race-based policing, specifically by disproportionately targeting black people for arrest and prosecution of certain crimes, including impersonation"**

28.     Near the bottom of his alleged unconstitutional policies and customs Hughes attempts to slide in an equal protection style race discrimination argument. This too fails as Hughes does not plead facts showing any race-based motivation or discrepancy in treatment. Notably, race-based protections do not arise from the Fourth Amendment. Rather, they arise from the Fourteenth Amendment's Equal Protection Clause. *See Lewis v. Ascension Par. Sch. Bd.*, 806 F.3d 344, 353 (5th Cir. 2015) (noting Fourteenth Amendment's Equal Protection Clauses' "central purpose is to prevent the States from purposefully discriminating between individuals on the basis of race.").  Hughes has not alleged an underlying equal protection violation by any of the individual officers. Counts one through three in Hughes's Amended Complaint assert causes of action against the individual officers, and none of those counts allege equal protection violations or race discrimination by the individual officers. Consequently, Hughes has not plead an underlying violation to support an equal protection based *Monell* claim. *See Lock*, 694 Fed.

at 965 (5th Cir. 2017) ("Without a constitutional violation, Harris County is not liable under Section 1983.").

29.     "To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against [him] because of [his] membership in a protected class." *Lozano v. Ortega*, EP-14-CV-239-KC, 2014 WL 6611595, at *8 (W.D. Tex. Nov. 19, 2014).  Hughes's Amended Complaint does not contain a single factual allegation that Garcia, Few, Seymour, or Acevedo intentionally took any action against Hughes based on his race—no allegations that any officer made any racially insensitive comments to Hughes, and no allegations that Hughes was treated differently from other similarly situated suspects of other races. *See Lozano*, EP-14-CV-239-KC, 2014 WL 6611595, at *8 (W.D. Tex. Nov. 19, 2014) ("He does not allege that Ortega made a racially insensitive remark, nor does he allege facts indicating that he was treated differently from similarly situated suspects outside of his protected class.")

30.     For his race discrimination claim, Hughes relies on generalized statistics of offenses unrelated to Hughes's felony charge for impersonating a public official, e.g. "in 2019, Black people accounted for 36% of all HPD traffic stops" and "49 percent of the people arrested by Houston Police for citation-eligible offenses were Black, while Black people make up just about 22.5% of Houston's population." [Doc. at 39 ¶ 147]. Hughes does not claim he was arrested or given a citation during a traffic stop. The publication Hughes cites for his "citation-eligible offenses" statistic defines "citation-eligible offenses" as "Class C misdemeanors and a select number of Class A and B misdemeanors where

officers have the authority under state law to issue a citation or ticket instead of arresting a person accused of a crime."[7]

31.    Citing data from the Texas Uniform Crime Reporting Program, Hughes alleges that "[f]or 'impersonation' in particular, data provided by HPD from June 2018 to the present demonstrates that Black people accounted for 35 out of 81 total arrests, or about 43%, despite being only 22.5% of the population."[8] However, a review of the definition of "impersonation" used by the Crime Reporting Program reveals that any suggestion this data on "impersonation" applies to Hughes is disingenuous, at best. As used in the Uniform Crime Reporting program, the "impersonation" offense is a fraud against property crime in the same list as credit card fraud, welfare fraud identity theft and confidence games. (Exhibit 3 at p. 17).[9] The manual gives examples for each of the offenses. The example for "impersonation" is when someone, who is not a member of the military, fraudulently obtains a military discount from a business by wearing a military uniform. (Exhibit 3 at p. 29-30). "Impersonation" is also listed as one of the available cargo theft-related offenses. (Exhibit 3 at p. 70).[10]

---

[7]    https://www.aclutx.org/sites/default/files/field_documents/justice_cant_wait_040720.pdf   at p.4-5. This publication is cited in footnote 39 of Hughes's Amended Complaint. [Doc. 39 at ¶ 147 n. 39]. For the convenience of the Court, a copy is attached as Exhibit 1.

[8]    Hughes cites https://txucr.nibrs.com/Report/ArrestDistribution for the arrest data on "impersonation." [Doc. 39 at ¶ 148 n.40], a copy of the data is attached as Exhibit 2 to this Motion.

[9]    Defendant requests the Court take judicial notice of the offenses, definition of offenses, and examples used by the Uniform Crime Reporting Program, which can be found in the Uniform Crime Reporting manual that is available on the Texas Department of Public Safety's website: https://www.dps.texas.gov/sites/default/files/documents/ucr/documents/nibrs_usermanualv2019.1.pdf.     Excerpts from this manual are attached as Exhibit 3.

[10]    The City does not seek to convert this Rule 12(b)(6) to a motion for summary judgment under Rule 56. Plaintiff has expressly referenced the Uniform Crime Reporting Program and its offense of "impersonation" in his Amended Complaint and makes them central to his *Monell* liability claim, therefore, the City's exhibits can be properly considered with Defendant's Rule 12(b)(6) without converting the motion to a motion for summary judgment.

32.     None of Hughes's general statistics for traffic stops, citations and property crimes are specific instances of similar occurrences that show "[a] persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Hicks-Fields.*, 860 F.3d at 808-09. Hughes alleges race-based discrimination policy fails to state a claim against the City and should be dismissed.

> **Sixth Alleged Policy: "Municipal Defendants' written policies that encourage HPD officers and assistant district attorneys to manipulate investigations and the presentation of evidence in order to secure warrants without the requisite probable cause"**

33.     Hughes's sixth alleged policy, which appears to be referencing HPD General Order 500-07 and HCDAO 2017 CAP, is the only written policy that Hughes avers creates a *Monell* claim.[11] [*See* Doc. 39 at ¶¶ 153-154, 199]. However, General Order 500-07 does not state a claim for *Monell* liability because it is facially constitutional, and Hughes does not plead facts establishing that it was adopted with deliberate indifference to his alleged constitutional violation. "As an initial matter, courts must determine whether an identified policy 'is facially constitutional or unconstitutional.'" *E.G. by Gonzalez v. Bond*, 1:16-CV-0068-BL, 2016 WL 8672774, at *7 (N.D. Tex. Sept. 9, 2016), *report and recommendation*

---

*Covington*, 812 Fed. Appx. at 224 ("When a defendant attaches documents to its [Rule 12(b)(6)] motion that are referred to in the complaint and are central to the plaintiff's claims . . . the court can also properly consider those documents"). However, if the Court finds that considering any of the exhibits attached to the City's Motion would require converting the Motion to a motion for summary judgment, then the City requests the Court not to consider the attached exhibits, and preserve the status of this Motion as a Rule 12(b)(6) motion to dismiss.

[11]     Hughes alleges that Acevedo executed HPD General Order 500-07, but there is nothing in Hughes's Amended Complaint alleging that Acevedo, or any other policy maker for the City, executed or promulgated HCDAO 2017 CAP. Therefore, the City cannot be liable for any claim under HCDAO 2017 CAP. *See Webb*, 925 F.3d 209, 214 (5th Cir. 2019) (stating *Monell* claim requires "(1) an official policy (2) **promulgated by the municipal policymaker** . . . .")(emphasis added)).

*adopted as modified sub nom. E.G. v. Bond*, 1:16-CV-068-C, 2017 WL 129019 (N.D. Tex. Jan. 13, 2017). To determine whether the policy in question is constitutional on its face, the Court must look at its written terms and consider only the text of the policy at issue. *Lopez v. City of Houston*, CIV.A.  03-2297, 2005 WL 1770938, at *11 (S.D. Tex. July 25, 2005). The following are the written terms of HPD General Order 500-07 as alleged by Hughes:

> "[t]he Houston Police Department shall work cooperatively with district attorney's offices to help reduce the number of cases dismissed…as well as protect officers from frivolous Internal Affairs complaints." General Order 500-07 further requires HPD officers to speak with an assistant district attorney "[b]efore filing charges… to ensure that the charges will be accepted."

[Doc. 39 at ¶153]. Notably absent is the language Hughes claims, i.e. "written policies that encourage HPD officers and assistant district attorneys to manipulate investigations and the presentation of evidence in order to secure warrants without the requisite probable cause." [Doc. 39 at ¶ 199(emphasis added)]. As pled, all this expressly states is that officers are to cooperate and speak with district attorneys to limit dismissals and protect from frivolous internal affairs complaints. The order does nothing more than attempt to limit unsupported or frivolous charges. A written policy that seeks to avoid submitting charges without sufficient evidence does not violate the Fourth Amendment's prohibition against arrests without probable cause. Rather, it appears to be is specifically aimed at effectuating that right. Hughes's pleadings thus show that General Order 500-07 is a facially constitutional written policy.

34.     When a policy is facially constitutional, the policy must have been "promulgated with deliberate indifference to the 'known or obvious consequences' that constitutional violations would result" for *Monell* liability to arise. *E.G. by Gonzalez*, 1:16-CV-0068-BL, 2016 WL 8672774 at *8. Hughes does not allege any facts showing the Acevedo promulgated General Order 500-07 with deliberate indifference to Hughes's alleged constitutional violation, or any constitutional right. Rather, Hughes pleads conclusory allegations that the policy encourages misstatements, when nothing in the policy language does so and Hughes cites no statement or other language from Acevedo to show otherwise. Deliberate indifference "is a stringent test, and 'a showing of simple or even heightened negligence will not suffice' to prove municipal culpability." *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001). Hughes's pleadings do not contain facts showing even heightened negligence by Acevedo in promulgating this policy. Hughes Amended Complaint therefore fails to state a *Monell* claim based on a written policy.

> **Seventh Alleged Policy: "Municipal Defendants' failure to train HPD officers and assistant district attorneys on how to work together to conduct a proper criminal investigation, as opposed to cherry-picking facts to support probable cause."**

35.     Hughes's last effort to manufacture *Monell* liable is another failure to train allegation. This time it is derived from Hughes's bogus complaint that cooperation between HPD and the district attorney is unconstitutional. As with his prior failure to train claim concerning DWI investigations, this one also fails to state a claim. Again, *Monell* liability is at its most tenuous where a claim turns on a failure to train, otherwise *Monell*'s high burden devolves into *de facto respondeat superior*. *Connick*, 563 U.S. at 62.

36. "It is not sufficient to show that an injury or accident could have been avoided if the employee had better or more training." *Sneed v. Austin Indep. Sch. Dist.*, 487 F. Supp. 3d 584, 595 (W.D. Tex. 2020). Outside of rare exceptions, a plaintiff must show a "pattern of similar constitutional violations by untrained employees" in order "to demonstrate deliberate indifference for purposes of failure to train." *Speck v. Wiginton*, 606 Fed. Appx. 733, 736 (5th Cir. 2015). Hughes has failed to plead facts for a pattern of similar constitutional violations arising from inadequate training for cooperation with the district attorney's office. Hughes has therefore failed to show deliberate indifference by the City.

37. Moreover, Hughes must allege with specificity how the City's training program concerning cooperation with the district attorney's office is defective in relation to the tasks that the particular officers in this case had to perform. *See Taylor*, 488 F. Supp. 3d at 535. Hughes has failed to do so and has not shown the requisite causation between his alleged violation and any failure to train. *See id.* at 536. Consequently, Hughes's seventh alleged policy does not state a *Monell* claim against the City. Indeed, none of the seven claimed policies or customs in Hughes's Amended Complaint state a *Monell* claim.

### *Insufficient Allegations: Conspiracy to deprive constitutional rights*

38. Hughes's alleged causes of action end with a Hail Mary conspiracy claim against all Defendants, pled in a textbook conclusory fashion. Hughes pleads that "[f]ollowing the March 23, 2019 incident, the Defendants reached an agreement with the(sic) Gomez and amongst themselves to unlawfully pursue Plaintiff for the crime of impersonating a police officer without probably cause" and that "[i]n furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful

participant in joint activity." [Doc. 39 at ¶¶ 221-223]. He makes no reference to any specific fact and does not cite any legal authority to support this allegation.

39.    The facts alleged elsewhere in Hughes's live pleadings disprove the existence of any conspiracy between Gomez and the Defendants to have Hughes arrested for impersonating a police officer. [Doc. 39 at ¶ 221]. As the master of his owns pleadings, Hughes has affirmatively plead just one version of events—that Gomez was "obviously intoxicated" and told Garcia a rambling story in which he referred to Hughes as "Jesse" and said he and Hughes were riding together in the same car coming from a flea market when Hughes started berating Gomez about having an affair with Hughes's wife. [Doc. 39 at ¶¶ 3, 58-59]. Hughes's position is that Gomez was so unbelievable that no reasonable officer would have believed anything he said. Yet, Hughes wants to claim in the last two pages of his complaint that Gomez and the Defendants entered into a conspiratorial agreement against Hughes. "A conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Terwilliger*, 4 F.4th at 285. Hughes's live pleading does not allege a single fact that supports any element of a § 1983 conspiracy. The Court must dismiss this claim accordingly.

## CONCLUSION

40.    Hughes has failed to allege well pled facts in his Amended Complaint that, taken as true, would state any claim against the City. He has not stated a claim for any underlying constitutional violation on which a *Monell* liability claim could be based. Hughes also fails to plead facts establishing an official policy, either in writing or through a widespread pattern of practice, that is causally linked to any underlying constitutional

violation. The same failures doom Hughes's conspiracy claim as his live pleadings do not contain factual allegations to support a conspiracy claim. The Court must dismiss all of Hughes's claims against the City, with prejudice, pursuant to Rule 12(b)(6).

### PRAYER

WHEREFORE, the City respectfully requests the Court dismiss all of Plaintiff's claims against the City, with prejudice. Defendant additionally requests all such other and further relief to which Defendant may be justly entitled.

Respectfully Submitted,

By:  /s/ Geoffrey G. Hoover
GEOFFREY G. HOOVER
ATTORNEY-IN-CHARGE
CITY OF HOUSTON LEGAL DEPARTMENT
State Bar No.:  24074437
900 Bagby, 3rd Floor
Houston, Texas 77002
Telephone (832) 393-6248
Facsimile (832) 393-6259
E-mail geoffrey.hoover@houstontx.gov

*Attorney for Defendant City of Houston*

### CERTIFICATE OF SERVICE

I certify that the forgoing Motion was served via the Court's CM/ECF system to all counsel of record on October 18, 2021.

*s/ Geoffrey G. Hoover*
Geoffrey G. Hoover