Case 4:21-cv-01994   Document 100   Filed on 11/10/22 in TXSD   Page 1 of 16

United States District Court
Southern District of Texas
**ENTERED**
November 10, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| AUSTIN THOMPSON HUGHES,<br>　　Plaintiff,<br><br>VS.<br><br>CITY OF HOUSTON, *et al.*,<br>　　Defendants. | §<br>§<br>§<br>§　　CIVIL ACTION NO. 4:21-CV-01994<br>§<br>§<br>§ |

# **MEMORANDUM OPINION AND ORDER**

Pending before the Court are Motions to Dismiss Plaintiff Austin Hughes' Second Amended Complaint (Dkt. 39) filed by Defendants Michael Garcia (Dkt. 47) and Joshua Few (Dkt. 45).[1] Having carefully reviewed the motions, responses, replies and applicable law, and the entire record, the motions are **GRANTED IN PART** and **DENIED IN PART**.

## **FACTUAL AND PROCEDURAL BACKGROUND**

For purposes of the Court's consideration of the pending motions, the following facts alleged in the amended complaint are accepted as true.

Hughes, a former police officer in Auburn Hills, Michigan, lives in Houston and works as a medical sales representative. Hughes also works security jobs and drives for

---

[1] Seven additional Defendants also filed Motions to Dismiss: City of Houston (Dkt. 49), Harris County (Dkt. 42), former Houston Police Department, Chief Art Acevedo (Dkt. 48), Harris County District Attorney Kim Ogg (Dkt. 46), Harris County Assistant District Attorney Tiffany Alfred (Dkt. 46), and Houston Police Department Sergeant James Seymour (Dkt. 43). Those motions were GRANTED by the Court in a separate opinion.

1

Uber. One night in March 2019, around 2:30 am, Hughes accepted an Uber ride request. While driving his passengers to their destination, Hughes saw a white GMC Sierra swerving erratically at a high speed in front of him on I-610. Hughes turned on the flashers of his Jeep and called 911. Hughes reported the actions of the driver—Edgar Gomez—which, during the course of the call, included Gomez hitting the medians on both sides of I-610. Gomez pulled over and stopped after hitting the second median.

Hughes' call was transferred to Houston Medical. Hughes told that dispatcher that he had pulled over and taken Gomez's keys. In the call, Hughes can be overheard by the dispatcher yelling at Gomez to remain in his vehicle. Gomez was visibly intoxicated: in addition to his erratic driving, Gomez smelled of alcohol, had glassy eyes and slurred speech, and was attempting to drink alcohol from bottles in his vehicle.

While Hughes waited for the police to arrive, Gomez twice attempted to run into the center of I-610. For Gomez's safety, and the safety of the other drivers on I-610, Hughes restrained Gomez using a pair of handcuffs. Hughes advised his Uber passengers to find another ride; they did so before the police arrived.

When Garcia and Few arrived on the scene, they placed Gomez in the back of their squad car and relocated to a nearby Shell station. Garcia performed a horizontal gaze nystagmus sobriety test on Gomez, during which Gomez exhibited six out of six signs of intoxication. Few took a statement from Hughes and Garcia took a statement from Gomez. In his statement Gomez admitted to being drunk and claimed that Hughes (who Gomez called by a different name) was actually driving Gomez's Sierra with Gomez in the

passenger seat, then pulled over, declared he was a police officer, and handcuffed Gomez. Meanwhile, Hughes gave Few the same account he gave the 911 dispatchers—that he had been driving for Uber, saw Gomez driving erratically, and detained him while waiting for the police to arrive.

Garcia and Few wanted to corroborate Hughes' account by contacting his Uber passengers, but Uber drivers are not privy to the contact information of their passengers. Instead, Hughes showed Garcia his driver-side Uber app, which demonstrated that he was indeed an Uber driver and Gomez was not telling the truth about Hughes driving Gomez's car. Hughes was released from the scene, and Gomez—too drunk to drive—was allowed to be picked up by a family member without being charged with Driving While Intoxicated ("DWI").

Shortly after Hughes got home (around 4:00 am), Garcia and Few called him and demanded that he return to the scene in order to provide the contact information of his Uber passengers. Hughes eventually persuaded Garcia and Few to accept screenshots of the Uber transaction that further confirmed Hughes' account (and established that Gomez's account was false).

Few and Garcia decided that the primary offense at the scene was not Gomez's drunk driving, but instead was Gomez's claim that Hughes presented himself as a police officer. Thus, Few and Garcia drafted an incident report titled "Impersonating an Officer" that credited Gomez's false account. Days later, Garcia filed a probable cause affidavit based primarily on Gomez's account. Based on that affidavit, an arrest warrant was issued

3

for Hughes. He was taken from his apartment at 3:00 a.m. two days after the incident and held in jail for twenty-four hours. Three months and thousands of dollars in legal fees later, the charges against Hughes were dropped due to a lack of probable cause.

Hughes filed a complaint against Garcia and Few, as well as the City of Houston, Harris County, former Houston Chief of Police Art Acevedo, Harris County District Attorney Kim Ogg, Assistant District Attorney Tiffany Alfred, Houston Police Department James Seymour. In his complaint, Hughes alleged that all Defendants engaged in a conspiracy to deprive Hughes of his constitutional rights. Hughes further alleged that:

- the City and County inflicted a constitutional deprivation upon Hughes through policy, custom, or practice;
- Acevedo and Ogg were liable for failure to adequately train and supervise;
- Alfred, Seymour, Garcia, and Few violated the Fourth and Fourteenth Amendments for unlawful arrest and prosecution through the wrongful institution of legal process;
- Seymour was liable for failure to supervise; and
- Garcia was liable for a Fourteenth Amendment procedural due process deprivation.

All Defendants filed motions to dismiss. Garcia and Few's motions to dismiss are addressed below; the other Defendants' motions are addressed in a separate opinion.

## LEGAL STANDARDS AND APPLICABLE LAW

### I. Federal Rule of Civil Procedure 12(b)(6)

Under Rule 8 of the Federal Rules of Civil Procedure, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A Rule 12(b)(6) motion tests the formal sufficiency of the pleadings and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). The court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. *Id.*

To defeat a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. (quoting *Twombly*, 550 U.S. at 557).

5

When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; accord *Iqbal*, 556 U.S. at 678 (noting that "[d]etermining whether a complaint states a plausible claim for relief will…be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). In conducting this analysis, the Court does not consider legal conclusions as true, and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## II. 42 U.S.C. § 1983

42 U.S.C. § 1983 provides a private right of action for the deprivation of rights, privileges, and immunities secured by the Constitution or laws of the United States. Section 1983 reads in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137 (1979)). To establish § 1983 liability, plaintiff must prove that she suffered "(1) a deprivation of a right secured by federal law (2) that occurred under color of state law, and (3) was caused by a state actor." *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004) (citing *Bush v.*

6

*Viterna*, 795 F.2d 1203, 1209 (5th Cir. 1986)). Plaintiff must also show that the constitutional or statutory deprivation she suffered was intentional or due to deliberate indifference and not the result of mere negligence. *Id.* (citing *Baker*, 99 S. Ct. at 2695).

## ANALYSIS

I.  **Hughes' Complaint Stated a Claim that Garcia and Few Committed a Fourth Amendment Violation of Unlawful Arrest and Prosecution Through the Wrongful Institution of Legal Process. (Count One)**

*Constitutional Violation*

Hughes' complaint alleges that Garcia and Few "deprived [Hughes] of his clearly established constitutional rights, including the right to be free from police arrest without probable cause under the Fourth and Fourteenth Amendments [because at] the time of [Hughes'] arrest, [Garcia and Few] knew or should have known that they did not have probable cause to arrest [Hughes] on the charge of impersonating a peace officer."

In addition, Hughes specifically accused Garcia of:

> [k]nowingly preparing a probable cause affidavit for an arrest warrant that contained numerous material omissions and false statements; [p]resenting the affidavit knowing of its falsity and material omissions, yet swearing under oath to the truthfulness of its contents; [o]btaining an arrest warrant based on that faulty affidavit authorizing the arrest of Plaintiff on a felony charge; [and] [g]oing, together with Defendant Few [] to execute the arrest warrant against [Hughes] and transport[ing] him to jail to be booked on the baseless charge.

Finally, Hughes alleges that Garcia and Few "would not have obtained the arrest warrant and/or charged [Hughes] if the probable cause affidavit did not include the material omissions and false statements."

7

Garcia and Few seek to dismiss this claim on two grounds: (1) that the issuance of an arrest warrant for Hughes by a state-court judge broke the chain of causation between any alleged constitutional violation and Garcia or Few (the "independent intermediary defense"); and (2) that Garcia and Few are entitled to qualified immunity. For the reasons stated below, the Court finds these arguments unpersuasive.

*The "Independent Intermediary" Defense*

"A constitutional claim for false arrest" requires "a showing of no probable cause." *Arizmendi v. Gabbert*, 919 F.3d 891, 897 (5th Cir. 2019) (quoting *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009)). "[I]t is well settled that if facts supporting an arrest are placed before an independent intermediary such as a magistrate [judge] or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party." *Id*. (quoting *McLin v. Ard*, 866 F.3d 682, 689 (5th Cir. 2017)). An exception exists when the "deliberations of the intermediary were in some way tainted by the actions of the defendant." *Id*. (quoting *McLin*, 866 F.3d at 689). "[E]ven if an independent magistrate [judge] approves a warrant application, 'a defendant's Fourth Amendment rights are violated if (1) the affiant, in support of the warrant, includes a false statement knowingly and intentionally, or with reckless disregard for the truth, and (2) the allegedly false statement is necessary to the finding of probable cause.'" *Id.* (quoting *Winfrey v. Rogers*, 901 F.3d 483, 494 (5th Cir. 2018)); see also *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). Such "*Franks* liability" can also be triggered by allegations of

8

deliberate or reckless omissions of critical information to an independent magistrate. *Arizmendi*, 919 F.3d at 903.

Hughes pled that the deliberations of the state-court judge who issued Hughes' arrest warrant were "tainted" by the actions of Garcia and Few because both Defendants knowingly and intentionally (or at least recklessly) made false statements and material omissions that were necessary to a finding of probable cause. According to Hughes, both Defendants prepared a materially false incident report (which was submitted by Few), and that report influenced the materially false probable cause affidavit to the state-court judge (which was submitted by Garcia). Hughes' pleadings also specifically set forth the false statements and material omissions known and intentionally made by Garcia and Few and facts that, if true, establish that this conduct was reckless.

### *The Incident Report*

Garcia and Few's incident report ("the Report") accused Hughes of the offenses of "impersonating an officer" and "unlawful restraint—false imprisonment." In support of these accusations, the Report relies on Gomez's statement to Garcia at the scene. In addition to be being visibly and heavily intoxicated at the time of giving his statement, Gomez admitted to his condition to the officers. He also (1) misstated Hughes' name; (2) claimed that he came from a flea market; (3) also claimed that he came from a bar; (4) claimed he had been socializing with Hughes (whose name he did not know); (5) claimed that Hughes was actually driving his Sierra; and (6) claimed that Hughes then pulled over, claimed to be a police officer, and arrested him. The report provides no corroborating

9

evidence in support of Gomez's statements. On the other hand, the Report also contains Hughes' account, supported by his driver-side Uber app that was provided to Garcia and Few before the Report was prepared, establishing that nothing Gomez said was true or even made sense, especially considering Gomez's intoxicated condition. Hughes stated that he was driving passengers for Uber when he saw Gomez driving erratically and placing himself and the public in danger, and that he detained Gomez until police arrived to protect Gomez from running out into traffic again and further endangering the public. Under the circumstances alleged in the complaint, for Garcia and Few to rely on Gomez's account as the basis for focusing the investigation and bringing charges against Hughes and not on the crime that Hughes reported to the police—Gomez's DUI and dangerous conduct —constituted a knowing, or at the very least reckless, disregard for the truth.

### *The Probable Cause Affidavit*

Hughes pled that Garcia's probable cause affidavit ("the Affidavit") was similarly replete with falsehoods, both with regards to material omissions and insofar as Garcia knowingly (or recklessly) misstated information in an effort to fill the Report's obvious gaps. For example, the Complaint states that Gomez omitted the following critical details from his Affidavit:

> [1] Mr. Hughes called 911 for the express purpose of reporting a drunk driver, later identified as Gomez, who was driving the Sierra in front of him on the highway; [2] Mr. Hughes stated that he was driving a black Jeep behind the Sierra, and continued to describe the Sierra's erratic movements in real-time to the 911 call-taker, including descriptions of the Sierra swerving across multiple lanes and hitting both medians while two female voices can be heard shrieking in the background and corroborating Mr. Hughes's descriptions of the

10

> Sierra's movements (i.e. stating "he hit the curb"); [3] Mr. Hughes, again in real-time, described the Sierra hitting the outside barrier of I-610 and himself stopping behind the Sierra; [and] [4] Mr. Hughes stated that he was going to approach the Sierra in an effort to stop him from "kill[ing] somebody;" and later returned to the 911 call and informed the operator that he retrieved the driver's keys.

The Complaint further claims that (1) Garcia swore in his Affidavit, under oath, that Hughes can be heard asking Gomez for his identification on one of the 911 calls Hughes made; and that (2) Garcia refused to provide the contact information for his Uber passengers—and that neither occurred. The Complaint additionally alleges that Garcia added material misstatements to Gomez's statement in the Affidavit for the purposes of shoring up his account on which the earlier Report was based. Those misstatements include a clear, quoted statement by Hughes to Gomez that Hughes is a police officer, and a supposed assertion by Gomez that Hughes' Uber passengers were actually driving Hughes' Jeep (thus explaining why there were two cars present, when Hughes was supposedly driving Gomez home from a flea market). Hughes has plausibly pled that Garcia's Affidavit, like Garcia and Few's Report, is so full of misstatements and material omissions that it reflects a knowing, or at very least reckless, disregard for the truth.

### The "Corrected Affidavit" Analysis

Garcia and Few insist that the Report and probable cause affidavit must be produced at this stage of the proceedings for the Court to assess whether the misstatements and omissions were necessary for the finding of probable cause. The Court acknowledges that a *Franks* analysis must consider the materiality of the alleged untruths upon the probable-cause finding—*i.e.*, courts must consider a "corrected affidavit." *Terwilliger v.*

11

*Reyna*, 4 F.4th 270, 283 (5th Cir. 2021). But the Court does not agree that such an analysis requires the production of the documents in question at the motion to dismiss stage.

For one, a plaintiff need not submit evidence to defend against a motion to dismiss; motions to dismiss are decided on the pleadings. *See id.* ("While the Plaintiffs have met their burden of alleging a *Franks* violation sufficient to withstand the test of *Iqbal/Twombly*, if they press this litigation, they must offer tangible proof to overcome the presumption of validity with respect to the affidavit supporting the ... warrant." (internal quotation and citation omitted)). Furthermore, the materiality of the untruths is—based on the pleadings—clear. Given the factual account contained in Hughes' Complaint, an account that is not meaningfully challenged by the Defendants, no conceivable, truthful incident report or probable cause affidavit could support a finding of probable cause here. Thus, Hughes has sufficiently pled that both documents unduly influenced the magistrate who issued Hughes' arrest warrant, and Garcia and Few are thereby unable to obtain the protection of the independent intermediary doctrine.

### *Qualified Immunity*

The doctrine of qualified immunity protects government officers from civil liability in their individual capacities if their conduct does not violate clearly established federal statutory or constitutional law of which a reasonable person would have known. *Kisela v. Hughes,* 138 S. Ct. 1148, 1152 (2018). Once raised as a defense, plaintiff has the burden to demonstrate that qualified immunity should be pierced. *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). This inquiry requires a two-prong analysis, in which

the court determines (1) whether the official violated a statutory or constitutional right, and (2) whether the unlawfulness of the official's conduct was "clearly established" at that time. *District of Columbia v. Wesby,* 138 S. Ct. 577, 589 (2018); *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011).

A legal right is "clearly established" if preexisting law sufficiently defines the right so that a reasonable public official would understand whether his actions were constitutional in the situation confronting him. *Hope v. Pelzer*, 536 U.S. 730, 739 (2002); *Williams v. Kaufman County*, 352 F.3d 994, 1002-3 (5th Cir.2003) Ultimately, if the law is sufficiently clear, then a plaintiff must prove that the officer's actions were objectively unreasonable within that legal context. See *Hare v. City of Corinth*, 135 F.3d 320, 326 (5th Cir.1998). The analysis is "based on the viewpoint of a reasonable official in light of the information then available to the defendant." *Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir.2007).

In addition, when analyzing qualified immunity, the actions of each defendant are to be considered separately. *Meadours v. Ermel*, 483 F.3d 417, 421-22 (5th Cir.2007). However, "[s]eparate consideration does not require courts to conduct a separate analysis for each [defendant] in those cases where their actions are materially indistinguishable, it merely requires them to consider each officer's actions." *Id*. at 422 n. 3.

For the reasons stated above, Garcia and Few are implicated under the *Franks* rule for their alleged knowing or reckless disregard of the truth when preparing Hughes' incident report and probable cause affidavit. In this Circuit, a well-pled allegation of

13

*Franks* liability constitutes a "clearly established" constitutional violation that precludes a grant of qualified immunity. *See Winfrey v. Rogers*, 901 F.3d 483, 494 (5th Cir. 2018) (denying qualified immunity because "[s]ince *Franks* [], it has been clearly established that a defendant's Fourth Amendment rights are violated if (1) the affiant, in support of the warrant, includes 'a false statement knowingly and intentionally, or with reckless disregard for the truth' and (2) 'the allegedly false statement is necessary to the finding of probable cause.'"); *Walker v. Stroman*, No. 20-50602, 2022 WL 2073834, at *6 (5th Cir. June 9, 2022) (same); *Arizmendi v. Gabbert*, 919 F.3d 891, 897 (5th Cir. 2019) (same); *Garcia v. Orta*, 47 F.4th 343, 352 (5th Cir. 2022) (same); *Terwilliger v. Reyna*, 4 F.4th 270, 285 (5th Cir. 2021) (same).[2]

Garcia and Few are not entitled to qualified immunity for the same reasons that Garcia and Few are not entitled to the protections of the independent intermediary doctrine due to Hughes' sufficient allegations of *Franks* liability (*see supra*). Because of this, and

---

[2] The Court is aware of the Fifth Circuit's recent decision in *Laviage v. Fite*, which overturned a district court's finding that qualified immunity should not be granted in light of sufficiently pled allegations of *Franks* liability. 47 F.4th 402 (5th Cir. 2022). In *Laviage*, the Fifth Circuit found no predicate constitutional violation in the pleadings because the alleged "material omission" was immaterial to a finding of probable cause. *Id.* at 407. The opinion further notes that qualified immunity should have been granted even if a constitutional violation had been pled because (1) "much more is needed" to demonstrate a clearly established law than for a court to "only recite the general contours of Franks liability," and (2) the alleged omission under review was not "obvious[ly] . . . material" *Id.* at 408. While this discussion is nonbinding dictum in any event, the Court nevertheless finds *Laviage* to be distinguishable. Here, the Court finds that the depth and breadth of the alleged untruths—both misstatements and omissions—in the Report and the Affidavit were "obviously material" to a finding of probable cause, and Hughes has sufficiently pled that Garcia and Few knowingly, or at the very least, recklessly included those untruths in both documents.

because Hughes sufficiently pled Fourth Amendment violations against Garcia and Few, neither Defendant is entitled to dismissal of Hughes' Fourth Amendment unlawful arrest claims.³

## II. Hughes' Complaint Failed to State a Claim that Garcia Committed a Fourteenth Amendment Procedural Due Process Violation. (Count Two)

Hughes also alleged a procedural due process violation against Garcia for his "knowingly provid[ing] a false report to law enforcement and the Harris County District Attorney's Office." These allegations are duplicative of the Fourth Amendment claims against Garcia that remain active in this proceeding. "[C]laims of unlawful arrest and detention should be analyzed under the Fourth Amendment and not under the Fourteenth Amendment's Due Process Clause." *Bosarge v. Mississippi Bureau of Narcotics*, 796 F.3d 435, 441 (5th Cir. 2015). Accordingly, Garcia is entitled to a dismissal of this claim.

## III. Hughes' Complaint Failed to State a Claim that Garcia and Few Engaged in a Conspiracy to Deprive Constitutional Rights. (Count Six)

Finally, Hughes alleges that Garcia and Few, along with the other Defendants, "reached an agreement with [] Gomez and amongst themselves to unlawfully pursue [Hughes] for the crime of impersonating a police officer without probably cause, thereby

---

³ Hughes alternatively pled a Fourth Amendment bystander liability claim against Garcia and Few. This claim may proceed, as Hughes has sufficiently pled that Garcia and Few—by crediting an account (1) from a man they knew to be intoxicated (2) that was discredited at the scene—knowingly committed a constitutional violation against him. *See Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013) ("[A]n officer may be liable under § 1983 under a theory of bystander liability where the officer (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." (internal quotations and citation omitted)).

15

depriving [Hughes] of his constitutional rights." The Court finds that Hughes has failed to state a conspiracy claim.

To support a conspiracy claim under § 1983, the plaintiff must allege facts that suggest "an agreement between the ... defendants to commit an illegal act" and "an actual deprivation of constitutional rights." *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994). Absent from Hughes' complaint is any sufficiently pled agreement to violate the Plaintiffs' constitutional rights. "A conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Twombly*, 550 U.S. 544, 557 (2007). Thus, Garcia and Few are entitled to a dismissal of this claim.

## CONCLUSION

For the reasons stated above, the factual allegations in Hughes' amended complaint establish an unlawful arrest claim under the Fourth and Fourteenth Amendments against Garcia and Few. The factual allegations are insufficient, however, to establish a Fourteenth Amendment claim against Garcia, or to establish a conspiracy against Garcia or Few. Accordingly, the Motions to Dismiss Plaintiff Austin Hughes' ("Hughes") Second Amended Complaint (Dkt. 39) filed by Defendants Michael Garcia (Dkt. 47) and Joshua Few (Dkt. 45) are **GRANTED IN PART** and **DENIED IN PART**.

SIGNED at Houston, Texas, this 10th day of November, 2022.

_____
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE