# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **AUSTIN THOMPSON HUGHES** | § | |
| | § | |
| **Plaintiff,** | § | **CIVIL ACTION NO. 4:21-cv-01994** |
| | § | |
| **v.** | § | |
| | § | **(JURY TRIAL DEMANDED)** |
| **MICHAEL GARCIA and JOSHUA FEW** | § | |
| | § | |
| | § | |
| **Defendants.** | § | |


**PLAINTIFF'S MOTION TO STRIKE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT IN ITS ENTIRETY OR, IN THE ALTERNATIVE, EXHIBIT NOS.4, 8, 14, 15, 16 AND 22 AND ALL REFERENCES THERETO**

1

## TABLE OF CONTENTS

I.    **Summary of Argument**.......................................................................................... 1

II.   **Background** ............................................................................................................ 4

III.  **Untimely and Prejudicial Exhibits** ..................................................................... 8

IV.  **Issues** ................................................................................................................... 13

V.   **Argument and Authorities** ................................................................................. 13

    A.  **Legal Standard** ............................................................................................. 13

    B.  **Defendants' Motion Should Be Stricken for Willfully Failing to Timely Disclose Evidence Upon Which the Motion Relies.** ........................................ 17

    C.  **Plaintiff is Defendants' Motion Should be Stricken for Relying on Untimely Exhibits that are Irrelevant, Inadmissible and Highly Prejudicial in violation of Fed. R. Evid. 404……………………………………………….23**

VI.  **Conclusion** .......................................................................................................... 24

**TABLE OF AUTHORITIES**

Cases

*Alpine Non-Op LLC v. HB2 Origination (In re Aine Summit Energy Partners)*, 23-90739, Adversary 23-3244 (Bankr. S.D. Tex. Jul 29, 2025) .................................................. 26

*Bailey v. Shell W. E&P, Inc.*, 609 F.3d 710, 729 (5th Cir. 2010) ........................................... 20, 22

*Chilcutt v. U.S.*, 4 F.3d 1313, 1324 (5th Cir. 1993). ................................................. 27

*Chilcutt v. United States*, 4 F.3d 1313, 1319-20 (5th Cir. 1993) ................................... 21

*Compaq Comput. Corp. v. Ergonome Inc*., 387 F.3d 403, 413 (5th Cir. 2004) .......................... 21

*CQ, Inc. v. TXU Min. Co., L.P.*, 565 F.3d 268, 280 (5th Cir. 2009)............................... 27

*Davis-Lynch, Inc. v. Moreno*, 667 F.3d 539, 548 (5th Cir. 2012). .............................. 27

*Drayton v. United Airlines, Inc.*, 23-20017 (5th Cir. Sep 11, 2023)............................. 27

*Ermold v. Davis*, 130 F.4th 553 (6th Cir. 2025) ............................................... 6

*Escamilla v. C.R. Bard Inc.*, No. SA-19-CV-01103-FB, 2021 WL 3761224, at *6 (W.D. Tex. Aug. 25, 2021) ........................................................................ 19

*Fielden v. CSX Transp., Inc.*, 482 F.3d 866, 871 (6th Cir. 2007)................................ 22

*Franks v. Delaware* 438 U.S. 154, 166–67 (1978)............................................ 6

*Garrett v. City of Tupelo*, NO. 1:16-CV-197-DMB-DAS (N.D. Miss. Jul 06, 2018) .................. 27

*Graves v. Lioi*, 930 F.3d 307, 317 (4th Cir. 2019)............................................ 6

*Grubbs v. Winn Dixie Properties, LLC*, No. 15-182, 2015 WL 3892555, at *2 (E.D. La. June 17, 2015) .................................................................... 18

*Holcombe v. United States*, C/w No. 5-19-CV-953-XR, C/w No. 5:18-CV-1151-XR, C/w No. 5:18-CV-691-XR (W.D. Tex. Nov 05, 2019)............................................. 21

*Honey-Love v. United States*, 664 Fed.Appx. 358, 362 (5th Cir. 2016 ........................... 22

*Hughes v. Garcia*, 100 F.4th 611 (5th Cir. 2024)............................................. 6

*Jane Envy, LLC v. Infinite Classic Inc*., No. SA: 14-CV-065-DAE (lead case), No. SA: 14-CV-083-DAE (member case), No. SA:14-CV-081-DAE (member case) (W.D. Tex. Sep 26, 2016) ..................................................................................................................................... 9

*Joe Hand Promotions, Inc. v. Chios, Inc*., 544 Fed.Appx. 444, 446 (5th Cir. 2013) ................... 22

*Jonibach Mgmt. Trust v. Wartburg Enterprises, Inc.*, 136 F. Supp. 3d 792, 808 (S.D. Tex. 2015) ..................................................................................................................................... 21

*Kiewit N.M. Corporation*, 600 F. App'x 908, 910-11 (5th Cir. 2015) ......................................... 20

*Mission Toxicology, LLC v. UnitedHealthcare Ins. Co*., 499 F.Supp.3d 338, 344 (W.D. Tex. 2020) ..................................................................................................................................... 19

*Morris v. Mingo Logan Coal LLC*, Civil Action 2:23-cv-00316 (S.D. W.Va. May 22, 2024) .... 26

*Olivarez v. GEO Grp., Inc.*, 844 F.3d 200, 204 (5th Cir. 2016) ............................................. 19, 21

*Open Cheer & Dance Championship Series, LLC v. Varsity Spirit*, LLC, 2:23-CV-155-Z (N.D. Tex. Jul 21, 2025) ..................................................................................................................... 26

*Reed v. Iowa Marine and Repair Corp.*, 16 F.3d 82, 85 (5th Cir. 1994) ..................................... 19

*Reed v. LKQ Corp.*, Civil Action No. 3:14-CV-4412-L, n.2 (N.D. Tex. Jul 06, 2018) ............... 20

*Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 896 (4th Cir. 2014) .......................... 19

*Salcido ex rel. K.L. v. Harris Cnty.*, CIVIL ACTION NO. H-15-2155 (S.D. Tex. Sep 28, 2018) 28

*Salgado v. General Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998) ........................................ 19

*Scaife v. Associated Air Ctr. Inc.*, 100 F.3d 406, 412 (5th Cir. 1996) ........................................ 21

*Sigma Marble & Granite-Houston, Inc. v. Amerisure Mut. Ins. Co.*, CIVIL ACTION NO. H-09-3942 (S.D. Tex. Dec 28, 2010) ............................................................................................. 28

*Smith & Fuller, P.A. v.Cooper Tire & Rubber Co.*, 685 F.3d 486, 488 (5th Cir. 2012) .............. 18

*States Rock & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597, n.2 (4th Cir. 2003) .... 19

*Thibeault v. Square D Co.*, 960 F.2d 239, 244 (1st Cir. 1992) ...................................................... 18

*Tobias v. Davidson Plywood*, 241 F.R.D. 590, 594 (E.D. Tex. 2007) ........................................... 22

*U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency* , 804 F.3d 646, 665–66 (4th Cir. 2015)

.............................................................................................................................................. 7

*United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978) (*en banc*), *cert. denied*, 99 S. Ct. 1244

(1979) ...................................................................................................................................... 28

*United States v. Cochran*, No. 4:12-CV-220-FL, 2014 WL 347426, at *4 (E.D. N.C. Jan. 30, 2014)

.............................................................................................................................................. 26

*United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958) .............................................. 18

Rules

FED. R. CIV. P. 26 ......................................................................................................................... 18

FED. R. CIV. P. 37 .............................................................................................................. 18, 19, 21, 22

Fed. R. Evid. 403 .......................................................................................................................... 28

*Ingraham v. United States*, 808 F.2d 1075, 1079 (5th Cir. 1987) ............................................... 29

Rule 404(b) .................................................................................................................................... 28

Plaintiff Austin Thompson Hughes ("Plaintiff"), by and through undersigned counsel, hereby files this Motion to Strike Defendants' Motion for Summary Judgment in Its Entirety or, In the Alternative, Exhibit Nos. 4, 8, 9, 14, 15, 16 and 22 and all references thereto and, in support thereof, respectfully states as follows:

## I.      SUMMARY OF ARGUMENT

The Fifth Circuit previously determined that, under the facts alleged in Plaintiff's Second Amended Complaint, Defendants violated Plaintiff's clearly established Fourth Amendment right to be free from arrest without probable cause under *Franks v. Delaware* 438 U.S. 154, 166–67 (1978) and were not entitled to qualified immunity. *See generally Hughes v. Garcia*, 100 F.4th 611 (5th Cir. 2024). Discovery proved the material facts pleaded by Plaintiff and relied upon by the Fifth Circuit in its opinion, thus, Defendants are "still not entitled to qualified immunity" under the law of the case, and summary judgment must be denied. *Ermold v. Davis*, 130 F.4th 553 (6th Cir. 2025) (denial of qualified immunity on appeal at motion to dismiss stage equally applied to appeal at summary judgment stage here "discovery proved the facts plaintiffs pleaded"); *Dauzat v. Carter*, No. 18-30610 (5th Cir. Feb 07, 2019) (defendants arguments challenging denial of qualified immunity at summary judgment stage were foreclosed by appellate court's previous denial of qualified immunity because, [a]lthough discovery ha[d] occurred, the

1

facts adduced d[id] not differ meaningfully from the facts th[e] court assumed to be true at the motion to dismiss stage").[1]

In a last-ditch effort to avoid this result; Defendants ambushed Plaintiff with a Motion for Summary Judgment that relies almost entirely on information and purported evidence that was never disclosed to Plaintiff and is completely self-serving, irrelevant, inadmissible and/or highly prejudicial. . While Defendants' attempt to counter the facts relied upon in In addition to Defendants' willful, contumacious, and flagrant disregard of their discovery obligations, the new evidence submitted is completely self-serving, irrelevant, inadmissible, and highly prejudicial.

In particular, Defendants' Motion for Summary Judgment (Dkt. 170) relies on purported "allegations of sexual misconduct" against Plaintiff from 2014 while he resided in Michigan. (*See* Dkt. 170 at pp. 2, 7, 21-22).  In support of their allegations, Defendants attach three exhibits described as: Auburn Hills Police Department Affidavit (Exhibit 14), Auburn Hills Police Department Offense Report #12-12572 (Exhibit 15) and Auburn Hills Police Department Offense Report #14-14092 (Exhibit 16). (See Dkt. 170, 171, 171-14, 171-15 and 171-16). However, these exhibits and the witnesses thereto were never produced to Plaintiff or otherwise disclosed in discovery or Defendants' initial disclosures prior to the end of the discovery period on July 20, 2025. (Dkt. 162). Instead, Defendants

---

[1] *See also Graves v. Lioi*, 930 F.3d 307, 317 (4th Cir. 2019) ("when the facts alleged in a complaint are subsequently proven during discovery… the law-of-the-case doctrine continue[s] to govern how the law applies to those facts"); *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency* , 804 F.3d 646, 665–66 (4th Cir. 2015) (holding that the law-of-the-case doctrine was relevant to the Court's review because the case's evidence developed during discovery and considered as part of the motion for summary judgment "confirmed the existence of the[ ] facts" previously relied on in considering the propriety of a motion to dismiss).

2

ambushed Plaintiff with the alleged "evidence" in their Motion for Summary Judgment, despite being in possession of the documents for weeks, if not months, and the information being responsive to Plaintiff's discovery requests. Moreover, the allegations are merely inserted to harass and embarrass Plaintiff, have no relevance to this case and would not be admissible even if properly disclosed.

Further, Defendants Motion relies on the affidavit of Edgar Gomez (Exhibit 8)– evidence which was also sprung on Plaintiff at the 11th hour in Defendants' Motion for Summary Judgment. (Dkt. 171-8). Defendants previously subpoenaed Mr. Gomez for deposition on the agreed-upon deposition date of February 11, 2025. However, the deposition did not take place because according to Defendants' counsel, they were "not able to serve Mr. Gomez,… and he may have left the state." (Ex. C). Defendants never notified Plaintiff's counsel that they were able to contact Mr. Gomez For otherwise explained their inability to serve him with a subpoena, when they were then able to secure an affidavit. Mr. Gomez's declaration should be stricken due to Defendants' misleading communications to Plaintiff, Defendants' failure to serve Mr. Gomez with a deposition notice and his failure to appear for deposition.

Likewise, Defendants rely on the Declaration of James Seymour, which alleges that Seymour was on the scene and assisted Garcia in determining that Hughes impersonated a police officer and also identifies additional information and witnesses that were not previously identified in Defendants' discovery responses, although directly responsive to Plaintiff's discovery requests, nor identified in Defendants' initial disclosures. Once again,

3

Defendants' should not be permitted to ambush Plaintiff with information that should have been previously disclosed prior to trial.

Finally, Defendants rely on Exhibit 22, which is a Google maps route presumably prepared by Defendants' counsel that completely irrelevant – as it does not even use the correct destination or zip code of Plaintiff's Uber destination, as provided by Uber. Indeed, the map is incredibly inaccurate and misleading, and cannot be used as evidence.

Because Defendants willfully failed to produce or otherwise disclose the documents, information and/or witnesses upon which they rely for summary judgment, Plaintiff requests that Defendants' Motion be stricken in its entirety, or in the alternative, Exhibits 4, 8, 13, 14, 15, 16 and 22, and all references thereto, be stricken and Plaintiff be given additional time to file a response. *See e.g. Jane Envy, LLC v. Infinite Classic Inc.*, No. SA: 14-CV-065-DAE (lead case), No. SA: 14-CV-083-DAE (member case), No. SA:14-CV-081-DAE (member case) (W.D. Tex. Sep 26, 2016)  (granting motion to strike evidence under rule 37(b)(2)(A) and holding that defendants' failure to timely produce the evidence was willful).

## II.    BACKGROUND

1.    Plaintiff filed his Original Complaint against Defendants in this lawsuit on June 17, 2021. (Dkt. 1).

2.    The Parties held its rule 26(f) conference on November 4, 2021. (Dkt. 51).

3.    On November 29, 2021, the Court issued its initial Docket Control Order setting the discovery deadline for December 2, 2022. (Dkt. 71).

4.    On December 6, 2021, Plaintiff served its Rule 26(a) initial disclosures along with his initial production containing the majority of evidence upon which Plaintiff relies to support his claims in this case (HUGHES_000001-150). Plaintiff served its First Set of Discovery Requests to Defendants on January 7, 2022.

5.    On January 18, 2022, Defendants served their Rule 26(a) disclosures, attached hereto as **Exhibit A**, Defendants have not amended or supplemented their disclosures since that date. (Dkt. 84).

6.    On February 8, 2022, the Court stayed discovery until a ruling was issued in Defendants' pending motions to dismiss asserting qualified immunity.

7.    Given Defendants' appeal to the Fifth Circuit, the Parties did not meaningfully resume discovery until after the Fifth Circuit issued its order affirming the denial of qualified immunity on May 3, 2024.

8.    Following a few grants of the Parties' requests for continuances, the final discovery deadline set by the Court was July 20, 2025. (Dkt. 162).

9.    On January 15, 2025, Defendants' filed a subpoena for the deposition of Edgar Gomez on the agreed upon date of February 11, 2025. (Dkt. 15). However, the deposition did not take place because according to Defendants' counsel, they were "not able to serve Mr. Gomez,… and he may have left the state." (See Email Correspondence re: Deposition of Edgar Gomez, attached hereto as **Exhibit B**).

10.    Defendants never updated Plaintiff that they had been able to get in contact with Gomez or corrected their representation that he may have left the state.

5

11.     On March 28, 2025, Plaintiff served its Amended First Set of Discovery Requests on Defendants. On April 21, 2025, Defendants' counsel emailed Plaintiff's counsel to request an extension on Defendants' discovery responses. (*See* Email Correspondence re: Discovery Response Extension, attached hereto as **Exhibit C**).

12.     Plaintiff's counsel responded immediately agreeing to the extension and requesting to confer on additional discovery issues. In relevant part, Plaintiff's counsel stated as follows:

> [W]ith the extension, I wanted to get a better understanding about what Defendant's intend to produce in case I need to send any third-party requests/subpoenas. First, I believe my Discovery Requests cover any documents and/or information sent to Defendants by third-parties pursuant to any subpoenas and/or releases issued in this case, but I did not include a specific RFP to that effect. Do you intend to produce all such documents in your responses or would you prefer I issue a supplemental request for those materials? **Specifically, I want to be sure that I get any documents and/or information sent from Auburn Hills PD and Uber, as well as any other organization from which information about Mr. Hughes has been requested….**
>
> Second, and more importantly from a timing standpoint, I anticipate Defendants objecting to a number of my requests and/or stating that they do not have responsive documents or information because such information is in the possession, custody and control of the City of Houston and/or HPD. For that reason, I think it may be in Plaintiff's best interest to issue a subpoena to the City of Houston containing those requests now…. Additionally, to the extent that either Defendant intends to object to providing disciplinary history from any other law enforcement agencies, if you could provide the names of those agencies as soon as possible so that I may subpoena their records as well, I would greatly appreciate it.

(*Id.*).

13.     Defendants' counsel responded that she "consider[s] anything remotely relevant in Defendants' possession to be discoverable and would produce them as

6

supplemental disclosures, even if [Plaintiff] did not request them directly.  These include third party records." (Ex. C).

14. Subject to the agreed extension, Defendants served their written Responses to Plaintiff's First Set of Discovery Requests on May 2, 2025 (see Defendants' Discovery Responses attached hereto as **Exhibit D**) and their first set of production on May 5, 2025.

15. Defendants supplemented its production on May 23, 2025, May 29, 2025, and June 6, 2025, but never updated their written responses to Plaintiff's discovery requests.

16. Defendants deposed Plaintiff deposition on June 2, 2025. (Dkt. 171-5).

17. Plaintiff deposed Defendants on July 17, 2025. (Dkt. 171-1; Dkt. 171-2).

18. That morning, prior to Defendants' depositions, Plaintiff's counsel realized that Defendants' document production consisted of documents bates-labeled DEFENDANTS_HUGHES_000176-1018 but that Defendants had never produced DEFENDANTS_HUGHES_000001-175.

19. Defendants provided the supplemental production after Defendants' depositions, resulting in the Court allowing the limited re-depositions of Defendants. (Dkt. 167).

20. Additionally, in Defendant Garcia's deposition on July 17, 2025, Defendant Garcia disclosed for the very first time that there is an ongoing investigation into a complaint against him which is relevant to the case and which was not previously disclosed in Defendants' discovery responses or any supplements thereto, although such information

7

was directly responsive to Plaintiff's Interrogatory Nos. 8, 10 and 11 and Requests for Production Nos. 7, 9 and 16. (Ex. D).

21.    Plaintiff argued that Defendant Garcia should have promptly supplemented his responses to identify this complaint after it was received on or around March 2025. (Dkt. 163). At a discovery hearing, the Court agreed and ordered Defendants to supplement its discovery responses to include all responsive information and documents related to the complaint identified by Defendant Garcia in his deposition. (Dkt. 164).

22.    Defendants produced those documents but did not make any other production prior to the close of discovery and/or filing for summary judgment.

### III.    UNTIMELY AND PREJUDICIAL EXHIBITS

The following Exhibits filed in the Appendix (Dkt. 171) in support of Defendants' Motion for Summary Judgment (Dkt. 170) were not produced or otherwise disclosed to Plaintiff prior to being filed nor prior to the discovery deadline of July 20, 2025, despite being in Defendants' possession and/or are irrelevant, inadmissible and highly prejudicial:

**a.  Exhibit 4 – Sergeant James Seymour Affidavit (Dkt. 171-4):**

- Dated August 4, 2025;

- The affidavit states Sergeant Seymour was at the scene on March 23, 2019; that he analyzed the evidence and believed Mr. Hughes had impersonated a police officer and made a probable cause determination;

- That he had knowledge of the Houston Police Department's helicopter "FOX" flying overhead and stating two men were fighting;

- Includes hearsay from Defendant Garcia that he conversed with another Tactical Officer Jason Knox had been involved in the investigation;

8

- Includes hearsay that Defendant Garcia "was advised that Mr. Hughes had previously been employed as a police officer but left on bad terms… [and resigned in lieu of being investigated for alleged misconduct" – contrary to what Garcia wrote in the incident report (Dkt. 171-3) ("The officer at Auburn Hills stated he was let go about 7 years ago but **did not give specifics on why he was let go**.") (emphasis added);

- States for the first time that Seymour agreed that Hughes could not be a witness to support any DWI charge against Gomezl

- States for the first time that Seymour had body camera footage, as did "Aaron Walters" who was not identified in the incident report and at least one Defendant does not recall even being on scene;

- Includes an inconsistent statement that he "recall[s] that then Officer – now Sergeant – Aaron Walters had briefly responded to the scene involving Mr. Hughes and Mr. Garcia… but… he was already long gone by the time by the time [Seymour] arrived."

- **While Sergeant Seymour was identified in Defendants' initial disclosures, the "subjects" of the discoverable information that Seymour was expected to have was not identified, as required by Fed. R. Civ. P. 26(a)(1)(A)(i), nor was he or any of the information included in the affidavit identified in Defendants' Responses to Plaintiff's Interrogatories to which the information was responsive** including in response to Interrogatory Nos. 2 ("Please provide the name, address, telephone number and job title of each person who has knowledge of the March 2019 Incident and/or Arrest and state the basis of their knowledge."); 3 ("Please state the names, ranks, addresses and telephone numbers of all police officers and/or other City of Houston personnel, including but not limited to emergency call-takers and dispatchers, who came into contact with Plaintiff on March 23, 2019 and/or March 25, 2019 and the nature of such contact."); 5 ("Please describe in detail the circumstances through which Defendants Garcia and Few 'got permission from Sgt. Seymour to do a knock and talk,' as stated in the HPD incident report related to the Arrest and state the factual and legal basis for Seymour's grant of permission."); 7 ("In your own words, please set forth the totality of your actions with respect to Plaintiff and the March 2019 Incident and Arrest."); 12 ("To the extent that you contend that probable cause existed for Plaintiff's arrest on March 25, 2021, please explain the factual and legal basis for your contention."); 14 ("To the extent you contend that you acted in the manner that a reasonable officer would have acted under the same circumstances and with the same information, please state the factual and legal basis for your contention.");

9

15 ("To the extent you contend that probable cause did not exist to arrest Edgar Gomez for DWI in relation the March 2019 Incident, please explain the legal and factual basis for your contention."); 16 ("Please explain the legal and factual basis for your decision to pursue criminal charges against Plaintiff and not Edgar Gomez in relation to the March 2019 Incident."); and **17 ("Please explain the investigative steps taken by you and other HPD officers related to Plaintiff following the March 2019 incident through Plaintiff's Arrest, including but not limited to any supervisory review and/or approval of reports and/or actions taken by other HPD officers.")**.

b. **Exhibit 8 – Gomez Declaration Spanish and certified English translation (Dkt. 171-8):**

- Dated June 17, 2025 – over one month prior to the discovery deadline of July 20, 2025, but was never produced to Plaintiff or otherwise disclosed either in Defendants' discovery responses or Rule 26(a) disclosures;

- Defendants never informed Plaintiff that they were able to contact Gomez after representing that they were "not able to serve Mr. Gomez" with the subpoena noticing his deposition for the agreed-upon deposition date and believed "he may have left the state." (Ex. B);

- The subpoena includes information the Defendants and Defendants' counsel know to be false, including but not limited to:

    o "Austin was driving my white truck all the time of this incident"

    o "A black Jeep stopped in front of my truck"

    o "A man inside the truck other than Austin started to choke me by the neck. "

    o "I started to resist and between Austin and the other people they started to beat me up"

    o "He and the others hit me all over the face and my whole body."

c. **Exhibit 14 – Auburn Hills Police Department Affidavit (Dkt. 171-14)**

- Dated July 24, 2025 – days after the discovery deadline but weeks before it was filed along with Defendants' Motion for Summary Judgment;

10

- Although Defendants call it an "affidavit," the statement is neither notarized nor made under the penalty of perjury and is thus hearsay and inadmissible.;

- The police reports identified are irrelevant and there is no indication they were reviewed by Defendants at any time prior to arresting Plaintiff or prior to this litigation,

- Ryan Gagnon is not identified in Defendants' Rule 26(a) initial disclosures and, although identified by name in Defendants' discovery responses – Defendants do not state the basis of his knowledge or reference the alleged police reports in any capacity (Exs. A and D);

d. **Exhibit 15 – Auburn Hills Police Department Offense Report #12-12572 (Dkt. 171-16)**

- Dated May 21, 2025 – approximately two months prior to the discovery deadline of July 20, 2025, but was never produced to Plaintiff or otherwise disclosed either in Defendants' discovery responses or Rule 26(a) disclosures (Ex. A, Ex. D);

- Defendants had the document in their possession prior to Plaintiff's deposition but never disclosed it, even though Defendants' counsel asked Plaintiff questions about specific details contained in the document that they could not have otherwise known if not in their possession;

- The information contained therein is hearsay, entirely irrelevant, personal and highly prejudicial;

- None of the alleged witnesses identified in the documents were disclosed by Defendants either in Defendants' discovery responses or Rule 26(a) disclosures;

- Defendants did not include any information related to Plaintiff's departure from Auburn Hills in their Warrant Affidavit and stated in the incident report that "The officer at Auburn Hills stated he was let go about 7 years ago but did not give specifics on why he was let go." ((Dkt. 171-3).

e. **Exhibit 16 – Auburn Hills Police Department Offense Report #14-14092 (Dkt. 171-16):**

- Dated May 21, 2025 – approximately two months prior to the discovery deadline of July 20, 2025, but was never produced to Plaintiff or

otherwise disclosed either in Defendants' discovery responses or Rule 26(a) disclosures;

- Defendants had the document in their possession prior to Plaintiff's deposition but never disclosed it, even though Defendants' counsel asked Plaintiff questions about specific details contained in the document that they could not have otherwise known if not in their possession;

- The information contained therein is hearsay, entirely irrelevant, personal and highly prejudicial;

- None of the alleged witnesses identified in the documents were disclosed by Defendants either in Defendants' discovery responses or Rule 26(a) disclosures;

- Defendants did not include any information related to Plaintiff's departure from Auburn Hills in their Warrant Affidavit and stated in the incident report that "The officer at Auburn Hills stated he was let go about 7 years ago but did not give specifics on why he was let go." ((Dkt. 171-3).

f.  **Exhibit 22 – Google Maps (Dkt. 171-22)**

- Dated January 10, 2025 – over six months prior to the discovery deadline of July 20, 2025, and prior to Defendants' deadline for discovery responses but was not produced;

- It is unclear who created the document and under what circumstances – there is no certification of its accuracy.;

- The document is not what it purports to be. Defendants claim that this exhibit is a Google maps of the route Plaintiff would have taken for his Uber trip based on the trip details provided – attempting to show that Plaintiff was not driving the correct route. (Dkt. 171-21). However, Defendants included the wrong destination in their Google maps. The destination in the maps is "Main St." in area code 77005. The destination on the Uber trip details provided by Plaintiff to Garcia is "Main St., Houston, TX **77025.**" (Dkt. 171-21 (emphasis added)).  A Google maps search from Nett St. to 77025 shows that Plaintiff would have been traveling a valid route according to the trip details.

## IV.   ISSUES

Whether Plaintiff is entitled to have Defendants' Motion for Summary Judgment or, in the alternative, Exhibits 4, 8,13, 14, 15, 16 and 22, and all references thereto, stricken for failing to disclose this evidence prior to filing their motion.

## V.   ARGUMENT AND AUTHORITIES

### A.  Legal Standard

Federal Rule of Civil Procedure 37 provides courts with broad discretion to impose sanctions for discovery violations. FED. R. CIV. P. 37;  *Smith & Fuller, P.A. v.Cooper Tire & Rubber Co.*, 685 F.3d 486, 488 (5th Cir. 2012). Discovery under the federal rules is designed to "make a trial less a game of blind man's [bluff] and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958) (citations omitted); *see also Grubbs v. Winn Dixie Properties, LLC*, No. 15-182, 2015 WL 3892555, at *2 (E.D. La. June 17, 2015) ("Civil discovery is not a game of ambush."). Federal Rule of Civil Procedure 26 governs the parties' discovery obligations and aims to prevent discovery from "degenerat[ing] into a game of cat and mouse." *Thibeault v. Square D Co.*, 960 F.2d 239, 244 (1st Cir. 1992).

To that end, Rule 26(a)(1) provides that "a party must, without awaiting a discovery request, provide to the other parties: (i) the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information… [and] (ii) a copy… of all documents that the disclosing party has in its possession, custody, or control" that it "may use to support its claims or defenses." FED.

13

R. CIV. P. 26(a)(1)(A)(i)-(ii). Additionally, Rule 26(e)(1) requires "[a] party who has made a disclosure under Rule 26(a) —or who has responded to an interrogatory, request for production, or request for admission—[to] supplement or correct its disclosure or response… in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect…." FED. R. CIV. P. 26(e)(1). The automatic disclosure requirements were "adopted to end two evils that had threatened civil litigation: expensive and time-consuming pretrial discovery techniques and trial-by-ambush." *Olivarez v. GEO Grp., Inc.*, 844 F.3d 200, 204 (5th Cir. 2016) (internal citations omitted); *see also Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 896 (4th Cir. 2014) ("The purpose of Rule 26(a) [and similarly, Rule 26(e)] is to allow the parties to adequately prepare their cases for trial and to avoid unfair surprise." ).

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  FED. R. CIV. P. 37(c)(1). The purpose of Rule 37(c)(1) is to prevent ambush, resulting in surprise or prejudice, from undisclosed or late disclosed evidence. *Reed v. Iowa Marine and Repair Corp.*, 16 F.3d 82, 85 (5th Cir. 1994). Accordingly, "Rule 37(c)(1) . . . generally requires exclusion of evidence that a party seeks to offer but has failed to disclose" and "provides a strong inducement for disclosure of material that the disclosing party would expect to use as evidence." *States Rock & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597, n.2 (4th Cir. 2003) (quoting FED. R. CIV. P. 37(c) advisory committee's note to 1993 amendment); *Salgado v. General Motors Corp.*, 150 F.3d 735,

14

742 (7th Cir. 1998) ("The sanction is automatic and mandatory unless the sanctioned party can show that its violation . . . was either justified or harmless."). A party seeking exclusion and/or other sanctions under Rule 37 "bears the burden of showing that the opposing party failed to timely disclose information." *Escamilla v. C.R. Bard Inc.*, No. SA-19-CV-01103-FB, 2021 WL 3761224, at *6 (W.D. Tex. Aug. 25, 2021) (quoting *Mission Toxicology, LLC v. UnitedHealthcare Ins. Co.*, 499 F.Supp.3d 338, 344 (W.D. Tex. 2020) (internal citations omitted)). Once that burden is satisfied, the burden shifts to "the party facing sanctions to prove harmlessness or substantial justification." *Id*. (internal citations omitted).

In determining whether to exclude evidence under Rule 37(c)(1), courts consider four factors: "(1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose." *Bailey v. Shell W. E&P, Inc.*, 609 F.3d 710, 729 (5th Cir. 2010) (internal citations omitted). Absent a showing of harmlessness or substantial justification, evidence submitted outside the discovery period should be stricken and excluded from use in future proceedings. *See e.g. Martino v. Kiewit N.M. Corporation*, 600 F. App'x 908, 910-11 (5th Cir. 2015) (affirming order striking exhibit to summary judgment response that was not produced prior to discovery deadline); *see also Reed v. LKQ Corp.*, Civil Action No. 3:14-CV-4412-L, n.2 (N.D. Tex. Jul 06, 2018) (refusing to consider exhibits submitted in opposition to summary judgment that were not produced prior to the end of the discovery period").

15

While exclusion is the "most basic sanction" for failing to timely disclose or supplement discovery, Rule 37 grants courts broad discretion to impose "as many and as varied sanctions as are necessary to hold the scales of justice even," including "payment of the reasonable expenses, including attorney's fees, caused by the failure"; "directing that the matters embraced in the order or other designated facts be taken as established"; "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence"; and "striking pleadings in whole or in part." *Jonibach Mgmt. Trust v. Wartburg Enterprises, Inc.*, 136 F. Supp. 3d 792, 808 (S.D. Tex. 2015) (internal citations omitted); FED. R. CIV .P. 37(c)(1); FED. R. CIV. P. 37(b)(2)(A)(i)-(iii). The court's decision is guided by two important considerations: the sanctions imposed must be both just and specifically related to the particular claim that was the subject of the discovery violation. *See Compaq Comput. Corp. v. Ergonome Inc.*, 387 F.3d 403, 413 (5th Cir. 2004) (citations omitted). The Fifth Circuit also requires "that the sanction meet the Rule 37 goals of punishing the party which has obstructed discovery and deterring others who would otherwise be inclined to pursue similar behavior[.]" *Chilcutt v. United States*, 4 F.3d 1313, 1319-20 (5th Cir. 1993). Applying these principles to the non-complying party's conduct, the court should impose the "the least severe sanction adequate to achieve the desired result." *Scaife v. Associated Air Ctr. Inc.*, 100 F.3d 406, 412 (5th Cir. 1996).

Here, Defendants' Motion for Summary Judgment improperly relies on purported evidence and information that Defendants willfully failed to disclose during the discovery period This is precisely the "type of gamesmanship mandatory disclosures under Rule

16

26(a) were designed to eliminate." *Holcombe v. United States*, C/w No. 5-19-CV-953-XR, C/w No. 5:18-CV-1151-XR, C/w No. 5:18-CV-691-XR (W.D. Tex. Nov 05, 2019) (citing *Olivarez v. GEO Grp., Inc.*, 844 F.3d 200, 204 (5th Cir. 2016)).

**B.      Defendants' Motion Should Be Stricken for Willfully Failing to Timely Disclose Evidence Upon Which the Motion Relies.**

Under Rule 37,  a party who "fails to provide information or identify a witness as required by Rule 26(a) or (e) . . . is not allowed to use that information or witness to supply evidence on a motion . . . unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). In determining the propriety of excluding evidence under Rule 37(c)(1), the Court considers four factors: "(1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose." *Bailey v. Shell W. E&P, Inc.*, 609 F.3d 710, 729 (5th Cir. 2010) (internal quotation marks omitted). A purpose of the Rule 26 disclosure requirement is to ensure that "[a] party is not allowed to lie in wait . . . and then ambush the other party with a key piece of evidence" that could and should have been disclosed "after extensive discovery and expenses have been incurred." *Tobias v. Davidson Plywood*, 241 F.R.D. 590, 594 (E.D. Tex. 2007); *see also Joe Hand Promotions, Inc. v. Chios, Inc.*, 544 Fed.Appx. 444, 446 (5th Cir. 2013) ("The basic purpose of Rule 26 is to prevent prejudice and surprise." (internal alterations and quotation omitted)); *Fielden v. CSX Transp., Inc.*, 482 F.3d 866, 871 (6th Cir. 2007) ("Rule 26(a) generally serves to allow both sides to prepare their cases adequately and

17

efficiently and to prevent the tactic of surprise from affecting the outcome of the case." (internal alteration omitted)).

There is no substantial justification for why Defendants did not produce Exhibits 4, 8, 13, 14, 15, 16 and 22, or otherwise disclose the information contained therein prior to the close of discovery or filing their Motion for Summary Judgment. *See Honey-Love v. United States*, 664 Fed.Appx. 358, 362 (5th Cir. 2016) (finding the district court did not abuse its discretion by excluding expert testimony under Rule 37(c)(1) where the party who violated Rule 26 "did not provide any justification" for the deficient disclosure). Specifically in regards to Exhibits 14-16, Defendants failed to disclose anything regarding Plaintiff's alleged "sexual misconduct" nor any of the witnesses on which they rely to prove the alleged misconduct, including Ryan Gagnon, the author of the so-called affidavit attached to Defendants' Motion as Exhibit 14, nor any of the individuals identified in Exhibits 15 and 16. (*Compare* Dkt. 82 *with* Dkt. 71-14, 71-15, 71-16).

Moreover, Exhibits 14, 15 and 16 were clearly responsive to Plaintiff's First Set of Amended Discovery Requests served on Defendants on March 28, 2025, to which Defendants served their written responses on May 2, 2025. (Ex. D). Namely Request for Production No. 2 requests "[a]ny and all documents and/or communications referencing Plaintiff." (*Id*.). Exhibits 14-16 clearly reference Plaintiff and are responsive to Plaintiff's discovery request, yet Defendants never produced these Exhibits prior to filing their Motion for summary judgment. Likewise, while Defendants response to Plaintiff's Interrogatory No. 2 references Ryan Gagnon, the author of the alleged "affidavit" attached to Defendants' Motion as Exhibit 14, as a "person who has knowledge of the March 2019

18

Incident and/or Arrest," Defendants failed to "state the basis of [Mr. Gagnon's] knowledge," as requested in the Interrogatory, or otherwise mention any alleged "sexual misconduct" of Plaintiff throughout their interrogatory responses. (*Id*.).

Additionally, Plaintiff's counsel emailed with counsel for Defendants' regarding information from third parties to ensure that Plaintiff received all relevant discovery within the discovery period. On April 21, 2025, in response to Defendants' request for an extension on their discovery responses, Plaintiff's counsel stated that she "[s]pecifically… want[ed] to be sure that [she] get any documents and/or information sent from Auburn Hills PD and Uber, as well as any other organization from which information about Mr. Hughes has been requested." (Ex. C). Defendants' counsel responded that she "consider[s] anything remotely relevant in Defendants' possession to be discoverable and would produce them as supplemental disclosures, even if [Plaintiff] did not request them directly. These include third party records." (Ex. C). Nonetheless, Defendants failed to disclose Exhibits 14-16 prior to attaching them to their Motion for Summary Judgment.

Defendants' failure to disclose this information was clearly willful. First, evidence indicates that Defendant had these documents in their possession prior to the end of the discovery period on July 20, 2025. First, both the metadata and date stamps on Exhibits 15 and 16 indicate that they were created on May 21, 2025, nearly two months prior to the end of the discovery period. Additionally, Defense counsel's questions to Plaintiff demonstrate that she had these documents in her possession prior to Plaintiff's deposition on June 2, 2025, yet never turned it over. (*Compare* Dkt. 171-15 and 171-16 with 171-5 at 152:10-25, 151:3-18, 106:4-111:13, 126:7-16). Specifically, Defendants' counsel asked Plaintiff

19

whether he was "ever diagnosed with having a severe sexual addiction." (Dkt. 171-5 at 126:14-16). This mirrors the language in Exhibit 16, which includes a hearsay statement incorrectly alleging that Plaintiff "was diagnosed with a severe case of 'sexual addiction,'" (Dkt. 171-16). Defendant's counsel also asked Plaintiff about individuals and circumstances identified in Exhibits 15 and 16 but never disclosed in discovery, including Loren Cazan, Nadene Biba and Angela Swindlehurst. (Dkt. 171-5 at 106:24-111:13; Dkt. 171-15; Dkt. 171-16).

In response to this line of questioning, Plaintiff's counsel objected, not only on relevance grounds, but also specifically stated that Plaintiff "ha[d] not received any information that the officers received… [information regarding sexual misconduct]. **That was not produced in discovery**." (Dkt. 171-5 at 107:12-25) (emphasis added). Defendants' counsel responded that "it was in [Defendants'] Answer to Interrogatories," to which Plaintiff's counsel responded "[i]t was not." (*Id.*).

Indeed, Defendants' Answers to Interrogatories mention nothing about sexual misconduct or any of the allegations or individuals identified in Exhibits 15 and 16. (Compare Ex. B with 171-15 and 171-16). The interrogatory responses vaguely repeat that Defendants "received information regarding the circumstances of Plaintiff's separation from employment as a police officer at Auburn Hills Police Department," they do not identify the information, nor produce any documents containing such information. Plaintiff voluntarily resigned from Auburn Hills Police Department to move to Houston, Texas to be closer to family. (Dkt. 171-5 at 105:9-14, 108:4-9). Plaintiff had no reason to believe that Defendants were referring to the allegations of sexual misconduct levied against him

20

*prior to* his resignation, which did not result in any charges or discipline against him. Defendants willfully withheld this information

Likewise, after representing that Defendants' were unable to find Gomez for purposes of serving him with a subpoena for deposition and representing that he "may have left the state," Defendants surprised Plaintiff with a signed affidavit from Gomez with new information that was signed prior to the end of the discovery period yet never provided to Plaintiff. *See Morris v. Mingo Logan Coal LLC*, Civil Action 2:23-cv-00316 (S.D. W.Va. May 22, 2024) (sanctioning party for untimely disclosure of key evidence by designating certain facts to be taken as established and noting that "[t]he apparent ease with which Defendant located and produced [key document] the indicates that any explanation for Defendant's untimely service of the [document] is inadequate.") (citing *United States v. Cochran*, No. 4:12-CV-220-FL, 2014 WL 347426, at *4 (E.D. N.C. Jan. 30, 2014) (rejecting the plaintiff's explanation that it could not locate a potential witness earlier where "[t]he speed with which [the] plaintiff located [the potential witness] . . . belies prior difficulty in so doing"). The affidavit also contains information that Defendants know, or should have known, was patently false and frankly, impossible given the other evidence provided. *See infra*; *Alpine Non-Op LLC v. HB2 Origination (In re Aine Summit Energy Partners)*, 23-90739, Adversary 23-3244 (Bankr. S.D. Tex. Jul 29, 2025) (noting that "[a]t the summary judgment hearing, the Court struck Alpine Non-Op's summary judgment motion for relying on the inadmissible affidavit and for soliciting Jacobs to give an affidavit in violation of his [ethical] duties owed to HB2"). Similarly, the affidavit of Sergeant Seymour contains information and identifies witnesses that were not provided in

21

Defendants' discovery responses or initial disclosures. While Sergeant Seymour and Ryan Gagnon were identified by name in Defendants' discovery responses, Defendants failed to provide any information regarding the scope of their knowledge or even subjects of potential testimony. *See Open Cheer & Dance Championship Series, LLC v. Varsity Spirit*, LLC, 2:23-CV-155-Z (N.D. Tex. Jul 21, 2025) (holding that Rule 26 requires "sufficient detail about the subject of information each [disclosed witness] has" and general subjects such as "knowledge regarding Plaintiffs claims" are "insufficient"). All of this amounts to trial by ambush and Defendants have provided no explanation for why any of the aforementioned discovery or information was not previously disclosed prior to filing for summary judgment. *See Garrett v. City of Tupelo*, NO. 1:16-CV-197-DMB-DAS (N.D. Miss. Jul 06, 2018) (granting motion to strike affidavit "because the introduction of new evidence at this late stage in the litigation is clearly prejudicial").

The Fifth Circuit has explicitly held that "permitting new evidence at the summary judgment stage is not harmless under Rule 37." *Drayton v. United Airlines, Inc.*, 23-20017 (5th Cir. Sep 11, 2023) (citing *CQ, Inc. v. TXU Min. Co., L.P.*, 565 F.3d 268, 280 (5th Cir. 2009) ("[G]iven the advanced stage of the litigation [motions for summary judgment], permitting the new evidence would not have been harmless.")). Indeed, a "litigant who provides previously withheld information at summary judgment places the opposing party at a significant disadvantage in responding to such information." *Davis-Lynch, Inc. v. Moreno*, 667 F.3d 539, 548 (5th Cir. 2012).

Where, as here, a party "not only intentionally withheld documents that it knew existed, but… also knowingly made blatant misrepresentations… about the existence of

22

those documents[,] [s]uch conduct… is patently willful and contumacious. *Chilcutt v. U.S.*, 4 F.3d 1313, 1324 (5th Cir. 1993).

### C. Defendants' Motion Should be Stricken for Relying on Untimely Exhibits that are Irrelevant, Inadmissible and Highly Prejudicial in violation of Fed. R. Evid. 404.

Much of Defendants' Motion relies on purported "allegations of sexual misconduct" against Hughes while he was a police officer for Auburn Hills police department over a decade ago. Not only did Defendants fail to produce any of the evidence on which they rely for these allegations in discovery, the allegations are completely irrelevant, inadmissible and highly prejudicial.

The Fifth Circuit held that extrinsic evidence is admissible under Rule 404(b) if it is relevant to an issue other than a party's character, and if its probative value outweighs its prejudicial effect under Rule 403. *United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978) (*en banc*), *cert. denied*, 99 S. Ct. 1244 (1979). Rule 403 states that "relevant[] evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. In performing a Rule 403 analysis, the court must balance "the incremental probity of the evidence . . . against its potential for undue prejudice." *Beechum*, 582 F.2d at 914.

Not only do the purported allegations have absolutely no relevance to the events on March 23, 2025, or Hughes's subsequent arrest, there is no evidence that Defendants considered or even knew about these allegations or the evidence on which they rely at the time of Hughes's unlawful arrest. Because Defendants' Motion for Summary Judgment relies on these allegations, the Motion, and particularly Exhibits 9, 14, 15 and 16 should be stricken. *See Salcido ex rel. K.L. v.*

23

*Harris Cnty.*, CIVIL ACTION NO. H-15-2155 (S.D. Tex. Sep 28, 2018) (granting plaintiff's motion to strike summary judgment exhibits reflecting plaintiff's criminal history and discussion of the same "as irrelevant, inadmissible, and prejudicial" in § 1983 excessive force case).

Defendants' actions in ambushing Plaintiff with undisclosed, prejudicial evidence "are the very type of ambush that the federal rules seek to preclude," and Defendants' Motion should be stricken in its entirety. *Sigma Marble & Granite-Houston, Inc. v. Amerisure Mut. Ins. Co.*, CIVIL ACTION NO. H-09-3942 (S.D. Tex. Dec 28, 2010) (quoting *Ingraham v. United States*, 808 F.2d 1075, 1079 (5th Cir. 1987) ("A defendant should notbe permitted to 'lie behind a log' and ambush a plaintiff with an unexpected defense.")).

## VI.    CONCLUSION

WHEREFORE, Plaintiff respectfully requests that the Court grant this motion Strike Defendants' Motion for Summary Judgment in its Entirety, or alternatively, Strike Exhibits 4, 8, 14, 15, 16, and 22, and all references thereto in Defendants' Motion for Summary Judgment and grant Plaintiff additional time to respond.

Respectfully submitted this 8th day of August, 2025,

By:*/s/ Courtney B. Warren*
Courtney B. Warren
LAW OFFICE OF COURTNEY WARREN PLLC
Texas Bar No. 24110511
402 Hunt Street
Houston, TX 77003
courtney@cwarrenlaw.com
Phone: (713) 828-9385

AND

24

Keith B. French
KEITH B. FRENCH LAW, PLLC
Texas Bar No. 24115073
kfrench@peoplefirstfirm.com
2010 E. Broadway St., Su   ite 132
Pearland, Texas 77581
Tel.: (832) 243-6153
Fax: (832) 243-1927

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF CONFERENCE

I hereby certify that I conferred with Defendants' counsel regarding this motion and Defendants are opposed.

/s/*Courtney B. Warren*
Courtney B. Warren

## CERTIFICATE OF SERVICE

I hereby certify that on September 8, 2025, a true and correct copy of the foregoing was served via email on all counsel of record in accordance with the Federal Rules of Civil Procedure.

/s/*Courtney B. Warren*
Courtney B. Warren

25