IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| AUSTIN THOMPSON HUGHES, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:21-CV-01994 |
| | § | |
| MICHAEL GARCIA AND JOSHUA FEW, | § | |
| | § | |
| *Defendants.* | § | |

**DEFENDANTS' OBJECTIONS AND RESPONSE TO PLAINTIFF'S [SECOND]
MOTION TO STRIKE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
STATEMENTS OF EDGAR GOMEZ AND JAMES SEYMOUR**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Defendants Michael Garcia and Joshua Few (collectively "Officers" or "Defendants") file

these objections and response to Plaintiff's Renewed Motion to Strike (Dkt. #237), seeking to

strike the declaration of Edgar Gomez, the affidavit of James Seymour, and seeking to strike

Defendants' motion for summary judgment in its entirety, respectfully showing the following:

**RELEVANT BACKGROUND**

Defendants timely filed a motion for summary judgment and motion to dismiss based on

spoliation and estoppel principles on 8/8/2025. Dkts. #170, #171, #173, #175, #176. Plaintiff filed

a motion to strike. Dkt. #200. The Court reopened discovery to allow Plaintiff to depose two

nonparty witnesses and stated that Plaintiff's motion to strike was not going to be considered.

Exhibit 3 at 10:16-19. The Court gave additional time through 9/15/2025 for Plaintiff to respond

to Defendants' motion for summary judgment. *Id.* at 10:1-3. Plaintiff did not file responses to

Defendants' dispositive motions.

On 9/30/2025 the Court ruled that if the depositions of non-parties Edgar Gomez and James

Seymour were not completed by 10/14/2025, their declaration/affidavit attached to Defendants'

motion for summary judgment would be stricken.  The Court explained that they would be stricken

even if the Plaintiff chose not to depose a witness.  Dkt. #224; Exhibit 1 at 3-4 (9/30/2025 pre-

motion conference transcript):

> On October 14th, either the deposition goes forward -- if it doesn't go forward, then the affidavit is going to be stricken from the summary judgment record for the reasons that the Plaintiff has not had the opportunity to timely contest the statements of fact set forth in the affidavit, and that's it.

Exhibit 1 at 4: 17-22.

> The deposition of the third-party witness needs to be taken by October 14th, okay? It just needs to be done. If it's not done, then the affidavit in support of the Motion for Summary Judgment will be stricken and the Court will consider the Motion for Summary Judgment without the affidavit.

*Id.* at 4:2-7.

The Court ruled that the affidavits would be struck even if Plaintiff chose not to depose

these non-party witnesses who Defendants do not control.

| | |
|---|---|
| [DEFENDANTS' COUNSEL]: | Your Honor, I mean, we all agreed to a date before. I mean, we are able to agree to dates, but if she changes her mind and doesn't want to do it, is the affidavit still going to be struck if she chooses not to go forward? |
| THE COURT: | If she chooses not to go forward, the affidavit's stricken. That's all there is to it. |
| [DEFENDANTS' COUNSEL]: | So, she can just not do the deposition, and my affidavit is struck? |
| THE COURT: | Yeah. Yes, because you guys -- all of you waived the right to go forward with that affidavit by not agreeing to this deposition. |

*Id.* at 10.  Defendants had not challenged the time, date, or place of Gomez's deposition despite it

conflicting with preexisting obligations of their counsel.  Dkts. #213, #215.

James Seymour was deposed by Plaintiff on 10/10/2025 at Defendants' expense.  *Id.*

On 10/13/2025 Defendants filed objections to the striking of summary judgment evidence

2

and notice regarding service of the non-party subpoena to Edgar Gomez. Dkt. #224. The Court set the Defendants' objections and notice for hearing on 10/14/2025 at 4:00 PM. Dkt. #225. At the hearing, the Court invited Plaintiff's counsel to explain what was going on. Plaintiff's counsel explained that James Seymour's deposition went forward on 10/10/2025 but the witness was instructed not to answer certain questions that she intended to raise with the Court but had not yet done so. Plaintiff explained that both Defendants' counsel and Seymour's counsel instructed Seymour not to answer the question, "did you draft this affidavit." Defendants' counsel identified the bases for the instruction not to answer: (1) attorney-client privileged communications between defense counsel as in-house counsel for the City of Houston and City employees for litigation, and with his attorney when he was a defendant in this case for litigation; (2) confidential work-product.[1] Plaintiff expressed the intent to present the deposition disputes to the Court upon receiving the transcript.

At the 10/14/2025 hearing on Defendants' objections, the Court *sua sponte* raised questions regarding the validity of Edgar Gomez's declaration (Dkt. #171-8) attached to Defendants' motion for summary judgment. Exhibit 2 at 35:8 to 35:6.

The Court relied on vague hearsay contained in Plaintiff's process server's affidavit about speaking to "a resident at the location" who said Mr. Gomez had not lived there in five months (Dkt. #223), despite the declaration stating that this was his address and not that he lived there.[2] The Court questioned Gomez as a witness who no one has seen, despite the parties having seen Gomez during the incident and his presence and identify being undisputed in the case. The Court suggested only the Defendants' counsel seems able to reach Mr. Gomez, but Plaintiff's counsel

---

[1] Exhibit 2 at 3:21-25; 5:13-21; 6:1-11 (10/14/2025 hearing transcript).
[2] Plaintiff's process server's affidavit identified the locations he visited by photographs, neither of which match the photo of Gomez's address: 935 Cloverleaf #25, Houston. *Compare* Exhibit 9 with Dkt. #223-3 at 4 and 5.

stated she was able to reach Mr. Gomez personally by phone and speak with him, along with a Spanish interpreter.

Plaintiff has not (before now) disputed whether Gomez made the statements in and signed the declaration. The private investigator who was also able to reach Mr. Gomez by phone after several attempts relayed Mr. Gomez's statement that he had already provided a statement. Dkt. #224-1.

The Court questioned whether anyone has seen Mr. Gomez at the address he swore to in his declaration. *Id.* at 20:6-19:7. Gomez's declaration did not he say he lived at the address, only that it was his address, (id. at 20:25-21:2), but the Court found that "he's listed in his affidavit this is where he lives as of 5 July —— of June —— as of July 17th. That's where he says he lives." *Id.*

The proceedings were recessed from 04:26 p.m. to 04:44 p.m., after which the Court raised the blank where the place for electronic notarization appears and asked if Plaintiff's counsel had noticed that. *Id.* at 21:16-22.

The Court suggested: "you got the affidavit right if you're in a State Court case. I don't think —— I'm —— I'm questioning whether or not the affidavit states what it has to state in the correct way in Federal Court." *Id.* at 33:16-19. Defendants' counsel argued that Plaintiff had not raised any of the technical defects raised by the Court, and the remedy for such a defect was to grant the opportunity to amend. *Id.* at 36:13-25. The Court stated, "Well, if you can get it corrected, that means you can get a hold of him." *Id.* at 36:17-18. But Defendants' ability to get ahold of Gomez does not reflect a lack of reliability in his declaration but a lack of diligence on Plaintiff's part in obtaining information from a known material witness.

The Court suggested Defendants had disclosed Gomez at an address that was questionable

and:

> the only information that you provided them that's legitimate, I think, is the phone number. And we don't even know that that's correct because everybody, other than 2 your people that have tried to call that number, say that he hadn't been there."

*Id.* at 27:21 to 28:6.  Plaintiff's counsel had stated that she called Mr. Gomez on September 12th at the phone number provided and was on the phone while a third-party Spanish speaker spoke with him.  *Id.* at 13:25-14:6.  Defendants obtained Mr. Gomez's last known address and phone number from the Plaintiff, not the other way around.  Defendants had no records because Plaintiff intentionally expunged them before suit.  Plaintiff had been able to reach Mr. Gomez at the phone number and speak to him.  Dkt. #223.

Plaintiff did not raise any of these arguments before the Court or in his motion to strike. Dkt. #200.  Exhibit 2 at 36:13-16.  Following the Court's arguments, however, Plaintiff requested leave to file a "renewed" motion to strike, which the Court granted.

On 10/15/2025 Defendants received notice of a status conference set for the same day at 2:30 PM.  Dkt. #225.  The Docket Text ordered counsel for non-party James Seymour to appear.

At the status conference, the Court placed Seymour's attorney under oath and questioned her regarding instructions given at Seymour's deposition, representation of Seymour, and whether any attorney represented the City of Houston at the deposition.[3]  The Court concluded briefs were not necessary; the Court needed only to hear arguments from Seymour's counsel and the Plaintiff, excluding the Defendants.  Seymour's counsel clarified that she was not the only attorney who asserted a privilege—as the Plaintiff and Defendants had stated at the 10/14/2025 hearing. Defendants' counsel again identified the grounds for her instruction to the witness.

The Court instructed the Defendants and Seymour to provide the Court with only cases

---

[3] Defendants have ordered the transcript of the 10/15/2025 status conference and will supplement upon receipt.

regarding their privilege assertions and emphasized that the Court did not want any argument.  It was unclear whether Plaintiff's response would be similarly limited.

The Court raised additional questions about Gomez's declaration for the Plaintiff to address in a motion to strike at the 10/15/2025 hearing.  The Court indicated the dispute over the place and time of Seymour's deposition would be revisited at a hearing on 10/24/2025.

**OBJECTIONS AND MOTION TO STRIKE**

**I.**       **Untimely and unfounded motion to strike Seymour's affidavit and Defendants' motion for summary judgment entirely.**

Defendants move to strike Plaintiff's motion to strike the affidavit of James Seymour and the Defendants' motion for summary judgment as untimely filed without leave of Court or basis in law or fact.  Plaintiff's motion relies on several significant misrepresentations.

Plaintiff misrepresents that the Defendants' motion for summary judgment relies solely on the affidavits of Edgar Gomez and James Seymour.  Defendants' entitlement to summary judgment is established not only by the statements of Seymour and Gomez, but: (1) Plaintiff's judicial admissions; (2) Plaintiff's evidentiary admissions; (3) Plaintiff's deposition testimony; (4) the officers' testimony; (5) the warrant affidavit.  An officer's uncontroverted testimony is sufficient to support granting summary judgment.  *Salazar-Limon v. City of Hous.*, 826 F.3d 272, 274 (5th Cir. 2016) (affirming summary judgment because "the driver did not present any competent summary judgment evidence to controvert or challenge the officer's testimony.").  Plaintiff has neither responded to Defendants' motion for summary judgment nor presented credible controverting evidence.  *Id.* (granting summary judgment because plaintiff did not present any competent summary judgment evidence to controvert or challenge the officer's testimony).

The complaint falsely claimed that Officers altered Gomez's statement to change Hughes's statement from the past tense to the present tense.  But the Plaintiff does not dispute that Gomez

6

told Officer Garcia that Hughes said he was a police officer (in the present tense).  Dkt. #171-5 at 67:13 to 67:22; 60:8 to 84:19 (Hughes's deposition).  This fact alone satisfied the low probable cause bar for the offense of police impersonation under Tex. Pen. Code § 37.11.  A person can commit the offense by merely saying they are a public servant.  *See Cornwell v. State*, 471 S.W.3d 458, 465 (Tex. Crim. App. 2015) (simple act of telling Teaff he had undertaken certain acts in his capacity as an assistant district attorney constituted at least one pretended official act qualifying as an offense); *Marshall v. State*, NO. 14-95-01183-CR, 1996 LEXIS 3836 at *6 (Tex. App.— Houston [14th Dist.] Aug. 29, 1996, pet. ref'd) (sustaining a conviction for impersonation because defendant claimed to be a deputy).  The District Attorney charged Hughes based on this statement alone.  Dkt. 171-17.  Without proof that this was an intentional or reckless falsehood, disagreements with the warrant issuing judge's conclusion of law do not overcome Franks.  Wilson v. Stroman, 33 F.4th 202, 213, n.8 (5th Cir. 2022) ("As the Fifth Circuit has recognized, if a party "wish[es] to establish the taint exception to the independent intermediary doctrine, they must point to omitted or misrepresented facts, not legal conclusions.").

Plaintiff bears the burden to present evidence overcoming Defendants' qualified immunity; therefore, irrespective of Defendants' evidence, they are entitled to summary judgment because Plaintiff has not come forth with specific evidence to support each element of his claim.  Having no competent evidence to support his allegations, Plaintiff seeks to avoid his burden by striking the Defendants' motion and two affidavits.  *See Franks v. Delaware*, 438 U.S. 154, 171 (1978) ("…**allegations must be accompanied by an offer of proof.**  They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons.") (emphasis added).

Striking the Defendants' motion summary judgment would be the same as refusing to rule

7

on a qualified immunity defense before trial, depriving Defendants their right not to stand trial. *Helton v. Clements*, 787 F.2d 1016, 1017 (5th Cir. 1986) (per curiam). Such an order is effectively a denial of qualified immunity, a disposition that is immediately appealable as a collateral final order. *See id.*

**II.** **Lack of leave or legal basis to move to strike Seymour's affidavit.**

Plaintiff was not granted leave to reassert the same arguments for striking Seymour and makes no attempt to explain the harm considering Plaintiff has had Seymour's affidavit since 8/8/2025 and deposed Seymour on 10/10/2025. The Court ruled that if Seymour's deposition proceeded on October 10, 2025, the affidavit would not be struck. Exhibit 1 at 33:13-15. Objection to arguments waived by Plaintiff and raised by the Court.

**III.** **Objection and motion to strike untimely, waived arguments about form of Gomez's declaration.**

Plaintiff did not raise any arguments about the form of the declaration or compliance with 1746 in his Motion to Strike Defendants' summary judgment evidence. Dkt. #200. At the 10/14/2025 hearing, Plaintiff agreed that it was an unsworn declaration.

Plaintiff waived arguments or objections to the declaration based on compliance with section 1746 and cannot show good cause for the delay and failure to raise the arguments. *Kent v. Oakland Cnty.*, 810 F.3d 384, 2016 U.S. App. LEXIS 60 (6th Cir. 2016), reh'g, en banc, denied, 2016 U.S. App. LEXIS 3405 (6th Cir. Feb. 10, 2016).

Plaintiff's delayed arguments and open-ended discovery unsupported by the requisite showing of diligence and the need for specific evidence in order to overcome summary judgment, have greatly prejudiced Defendants, given they timely invoked qualified immunity and will not have fair opportunity to amend the declaration if the Court strikes it for defects in form.

**RESPONSE**

8

**IV.** **Plaintiff does not address Federal Rules of Civil Procedure 26 and 37 or Fifth Circuit precedent on work product doctrine**

This case does not present the limited circumstances in which a Court may compel the production of work-product.  However, even if it did, that does not translate to grounds for striking the witness statements from the Defendants' motion for summary judgment.

Rule 26(b)(3) protects against the discovery of "work product," defined as documents and tangible things that have been prepared in anticipation of litigation or for trial by or for a party or a party's representative, including the party's consultant.  Fed. R. Civ. P. 26(b)(3); *In re Kaiser Aluminum & Chem. Co.*, 214 F.3d 586, 593 (5th Cir. 2000) (The work product privilege extends to and protects documents prepared in anticipation of litigation.)  The burden of demonstrating applicability of work product protections rests on the party invoking it. *Hodges, Grant & Kaufmann v. U.S. Government, Dept. of the Treasury, I.R.S.,* 768 F.2d 719, 721 (5th Cir. 1985).

Rule 26(b)(3)(A) provides that, "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative."  Fed. R. Civ. P. 26(b)(3)(A).  By its clear language, the rule "only protects 'documents and tangible things' produced by or for an attorney preparing for litigation and . . . it does not protect [against] the disclosure of underlying relevant facts."  *Blockbuster Entertainment v. McComb Video*, 145 F.R.D. 402, 403-04 (M.D. La. 1992) (citation omitted); accord *Bonneau v. F & S Marine, Inc.*, No. 09-3336, 2010 U.S. Dist. LEXIS 38340, at *4, 2010 WL 1254552, at *2 (E.D. La. Mar. 25, 2010) (Knowles, M.J.) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 395-96, 101 S. Ct. 677, 66 L. Ed. 2d 584 (1981)).

**A.** **Witness statements prepared by or for a party during litigation are protected work product.**

In evaluating the applicability of the work product doctrine, the first question is whether the document sought was, in fact, prepared in anticipation of litigation or whether it was prepared

9

in the ordinary course of business. *Upjohn Co.*, 449 U.S. at 395-96. The Fifth Circuit has indicated that a document is prepared in anticipation of litigation "as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation." *United States v. Davis*, 636 F.2d 1028, 1039 (5th Cir. 1981). To determine the primary motivation for the creation of a document, courts look to various factors, including, "the retention of counsel and his involvement in the generation of the document and whether it was a routine practice to prepare that type of document or whether the document was instead prepared in response to a particular circumstance." *Elec. Data Sys. Corp. v. Steingraber*, No. 4:02-cv-225, 2003 U.S. Dist. LEXIS 11818, at *13-14, 2003 WL 21653414, *5 (E.D. Tex. 2003).

Here, there is no doubt the affidavit of Seymour and declaration of Gomez were prepared by or for the Defendants, through their counsel, for their summary judgment motions. Defendants' counsel's decision to obtain Gomez's written statements after they were unable to depose him on the agreed 2/11/2025 date falls squarely within the work product doctrine. Similar circumstances were addressed by the district court in *Harrell*:

> After Dear failed to appear [for deposition], counsel for Harrell traveled to Mississippi to meet with him and decided to take his statement. Clearly under this set of facts, the work product doctrine applies. To rule otherwise would result in a policy that counsel should automatically have the benefit of another counsel's work product. Surely, this would not be an appropriate result.

*Harrell v. Orkin, LLC*, No. 11-1886, 2012 U.S. Dist. LEXIS 205526, at *13 (E.D. La. 2012).

Plaintiff had no right to receive documents prepared by or for the Defendants during litigation for their summary judgment motions. An attorney's decision to obtain a witness's statement is protected. The questions asked, statements, and presentation of facts known to the witnesses reflects counsel's decision to ask certain questions, revealing his legal strategies and/or theories, opinion, and mental impressions.

10

**B.**     **Plaintiff's decision not to depose known witnesses does not suffice to show a substantial need for the opposing side's attorney work-product.**

The production of work product witness statements may not be compelled, even if it contains original witness statements not otherwise disclosed, unless a substantial need can be shown.  In *Southern Railway Co. v. Lanham*, 403 F.2d 119 (5th Cir. 1969), the Fifth Circuit identified "the real question," i.e., " whether the movant can obtain the facts without production of the documents containing the original statements." *Id.* at 127.

Plaintiff recognizes that Defendants intended to depose Mr. Gomez early in the case.  Dkt. # 237.  Plaintiff admits Mr. Gomez was a known and disclosed witness since this case began.  Defendants tried to depose Mr. Gomez early on but were unable to serve him in time for the deposition to go forward as noticed as shown by Plaintiff's motion.  Dkt. #237.

Defendants filed notice of deposition subpoena to Edgar Gomez on 01/15/2025 for deposition 2/11/2025.  Dkt. #141-1; #142.  On January 21, 2025, defense counsel told Plaintiff:

> We have not been able to serve Mr. Gomez yet, and he may have left the state.
> I will let you know if we manage to serve him in advance of the 2/11/2025 date
> we agreed for his deposition.

Exhibit 8 (1/21/2025 email to P's counsel).

Plaintiff argues that he received no further information about whether the defense had been **able to "contact" Gomez**, but that was never promised to him.  Defendants specified they would inform Plaintiff if they were **able to serve Gomez before the 2/11/2025 date**.  Plaintiff has absolutely no right to be updated on Defendants' work product, witness communications, or other investigations during litigation.  Defendants disclosed all known contact details for Gomez, including the phone number Defendants used to reach him.   Plaintiff's inability to serve the witness with a subpoena within a narrow time frame does not support a finding that Mr. Gomez could not have been timely deposed throughout discovery or that Plaintiff could not obtain

11

information from Mr. Gomez by other means, as Defendants did.  The evidence suggests the opposite.  See Dkts. #224; #224-1.

Plaintiff admits he made no discovery request for documents obtained by way of releases or from third parties, relying instead on an email asking Defendants' counsel to produce this information anyway.  Dkt. #237 at 2-3; Dkt. #237-3 (correspondence). Plaintiff leaves out significant portions of Defendants' response to this request.  Dkt. #237-3 at 3.  Irrespectively, asking the opposing lawyer to do your job for you is not a valid basis for moving to strike evidence the Plaintiff already knew about and should have explored in order to prove the essential allegations of his claim.

Both Mr. Gomez and Sgt. Seymour were disclosed by Plaintiff and Defendants in December 2021 and January 2022 respectively and appear in the offense reports.  Dkt. #133 (Defendants' expert designation); Dkt. #82 (City Defendants' initial disclosures): Dkt. #224-3 (Defendants' initial disclosures including both Gomez and Seymour and referencing their knowledge in offense report and warrant affidavit); Dkt. #224-2 (Plaintiff's initial disclosures including Gomez and Seymour, attaching offense report and probable cause affidavit). Defendants also timely designated Sergeant Seymour as a non-retained expert witness on December 20, 2024. Dkt. #133.

Plaintiff's deposition of Seymour on 10/10/2025 defeats any arguable entitlement to the work product under *Lanham*.  Seymour was named as a Defendant in Plaintiff's 6/17/2021, original complaint, and Plaintiff was aware of his position as the supervisor of Defendants Garcia and Few during the relevant time.  Plaintiff chose not to depose James Seymour until after discovery closed and Defendants filed their motion for summary judgment.

Notably, while *Lanham* addresses the ability to obtain the information in the statement by

alternative means, it does not invite a party to discover confidential and privileged information as to how the statement came to be and whether Defendants; counsel gave "instructions" or communications with the witness. *Harrell v. Orkin, LLC*, No. 11-1886, 2012 U.S. Dist. LEXIS 205526, at \*13-14 (E.D. La. 2012) ("Orkin has failed to establish substantial need because the substantial equivalent of Dear's sworn statement is unavailable. Nor has it provided any evidence that there is no alternate way to obtain the information in the statement. In fact, both counsel confirmed during the hearing on the matter that they intend on deposing Harrell on May 14 or 15, 2012, at which time they can appropriately question Dear about the statements he made in his sworn statement.").

The Fifth Circuit has provided the lower courts with a clear road map on how to determine when work product may be compelled. Plaintiff relies on cases that did not apply the *Lanham* case. Plaintiff provides no authority for striking affidavits that were not compelled to be produced.

**C.      Contents of Seymour's affidavit were both independently disclosed and revealed at previous depositions.**

Seymour was a named Defendant in this case; his involvement and knowledge disclosed to and known by the Plaintiff. Plaintiff's decision not to depose Seymour or ask about him at deposition cannot justify striking his affidavit. The facts in Seymour's affidavit regarding the 3/23/2019 events and investigation leading to Plaintiff's arrest were revealed in Defendants' answers to interrogatories, and in their deposition testimony.

Plaintiff served interrogatories involving decisions by Seymour, and Defendants answered them. Exhibit 4 at Nos. 4 and 5 ("Please describe in detail the circumstances through which Defendants Garcia and Few 'got permission from Sgt. Seymour to do a knock and talk,' as stated

in the HPD incident report…").[4]  The answers disclosed information attested to by Seymour as well as the Defendants.  *Id.* at 5-6.

The policies and procedures, including expunction processes and record management, discussed in Seymour's affidavit were produced to Plaintiff.  *See* Exhibit 5 (policies, procedures, expunction procedures, expunged record).

Plaintiff did not ask about Seymour at the Defendants' first depositions on 7/17/2025. Dkts. #171-1 and #171-2.  But Defendants testified in detail to their recollections of information also recalled in Seymour's affidavit, as well as records and evidentiary matters, on  7/17/2025.[5]

At their second depositions on 8/7/2025 Defendants testified to most of the topics discussed by Seymour's affidavit:

- Officer Garcia was asked whether he informed a supervisor about various matters, and he described relaying information to Seymour and Seymour's involvement. Exhibit 6 at 39:14 to 40:20

- Officer Garcia was asked about Sergeant Seymour authorizing execution of the arrest warrant.  *Id.* at 31:7 to 31:14.

- Running information past Sergeant Seymour was discussed, as well as the fact that Seymour would have been equipped with a body-camera and appeared on the call slip.  *Id.* at 35:15 to 37:7.

- Seymour's presence at the scene, recollection about damage to the truck, and information relayed over the radio by FOX helicopter officers, were discussed at both

---

[4] Defendants' responses to Plaintiff's written discovery were due on May 28, 2025.  Plaintiff agreed to a four-day extension until May 2, 2025, and Defendants responded fully within that time.  Plaintiff's motion discusses Defendants' request for an extension but doesn't even concede that Plaintiff agreed.  Nor does Plaintiff mention his own failure to respond to discovery timely, or within months after agreed to extensions.
[5] *See* Dkt. #170 at 3-7 (detailing FOX information, Gomez's statements, Officer Walter's involvement, body-camera recordings and other evidence with record citations).

14

the 7/7/2025 and 8/8/2025 depositions of both Officers. *Id.* at 30:13 to 30:18; 34:3 to 34:7; 39:8 to 40:2; 38:19 to 39:4.

- Seymour's presence at the scene, authorization for Officers to proceed, discussions with the command center, were all revealed at the Officers' depositions on 7/7/2025 and 8/8/2025.

- Policy regarding contacting the concerned division and Seymour contacting the command center were discussed at Officer Garcia's deposition. *Id.* at 31:21 to 32:13)

- The notation on the incident report reflecting that the Officers' body-camera recordings were downloaded but had not been reviewed by them was discussed at deposition as well. Exhibit 6 at 7:4 to 7:14; 7:15 to 8:2

- Officer Walters' involvement was discussed at 7/17/2025, Defendants' depositions; his body-camera status was questioned only at the 8/8/2025 depositions. *Id.* at 9:8 to 9:20.

- Few's deposition similarly discussed Sergeant Seymour contacting the concerned division and getting their approval regarding follow-up investigation. Exhibit 7 at 24:16 to 25:12.

- Seymour's presence on the scene and body-worn camera equipment was discussed by Officer Few as well. *Id.* at 30:11 to 31:8.

A.    **Gomez was fully disclosed as a witness; the material contents of his declaration match the offense report and warrant affidavit and deposition testimony.**

Plaintiff admits Mr. Gomez was a known and disclosed witness since this case began and Defendants tried to depose Mr. Gomez early on but were unable to serve him in time for the deposition to go forward as noticed for 2/11/2025 as shown by Plaintiff's motion. Dkt. #237. The material statements in his declaration are available in the offense report and warrant affidavit

15

produced to Defendants by Plaitniff, as well as the charges filed by the District Attorney. Dkts. #171-3, #171-10; #171-17. Officer Garcia testified to these statements at his 7/17/2025, deposition. Dkt. #171-1 at 78:15-79:23l. The complaint falsely claimed that Officers altered Gomez's statement to change Hughes's statement from the past tense to the present tense. But the Plaintiff does not dispute that Gomez told Officer Garcia that Hughes said he was a police officer (in the present tense). Dkt. #171-5 at 67:13 to 67:22; 60:8 to 84:19 (Hughes's deposition).

## V.    **Gomez's declaration substantially complies with section 1746 and Plaintiff waived these objections and arguments.**

Section 1746 permits evidence to be "supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:

> … (2) If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)".

28 U.S.C.S. § 1746.

The Court's finding that the unsworn declaration of Gomez followed the Texas state law format effectively means substantial compliance with the requirements of section 1746. Federal law requires a declaration to be in substantially the form required by Section 1746, which is "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)." The statute states that the declaration is valid if it is in "substantially" that form.

Gomez's Declaration clearly expresses that Gomez is subjecting himself to penalty of perjury if his statements are found to be false. The declaration states that it is made after being "sworn", recognizing the "penalty of perjury", and twice states and affirms that the statements are true and correct based on his personal knowledge. *See Thomas v. Sheriffs Office of Caddo Par.*,

16

No. 21-cv-3452, 2023 U.S. Dist. LEXIS 116349, at *9 (W.D. La. 2023) ("These statements of Material Facts made herein are honest and true and are made under the penalties of perjury in accordance with State Laws and F.R.C.P. 56.").

Should the Court conclude the declaration does not comply, Defendants should be allowed to file an amended declaration, which they could have done had Plaintiff timely raised a defect in form. *Barraza v. United States*, 526 F. Supp. 2d 637, 2007 U.S. Dist. LEXIS 92464 (W.D. Tex. 2007).

## CONCLUSION AND PRAYER

Defendants respectfully pray that the Honorable Court deny Plaintiff's motion to strike in its entirety, or alternatively, if the Court finds Mr. Gomez's declaration to not substantially comply with Section 1746, grant Defendants leave to file an amended declaration.

Respectfully submitted,

**ARTURO G. MICHEL**
**City Attorney**

CHRISTY MARTIN
Section Chief Torts/Civil Rights

Date:   October 28, 2025.          By:     */s/ Melissa Azadeh*
                                           MELISSA AZADEH
                                           *Attorney in Charge*
                                           TBN 24064851
                                           FBN 1090186
                                           Senior Assistant City Attorney
                                           City of Houston Legal Department
                                           900 Bagby Street, Third Floor
                                           Houston, Texas 77002
                                           Tel. 832-393-6270
                                           Fax 832-393-6259
                                           melissa.azadeh@houstontx.gov

                                           **ATTORNEYS FOR DEFENDANTS MICHAEL**
                                           **GARCIA AND JOSHUA FEW**

17

## **CERTIFICATE OF SERVICE**

On this 28th day of October 2025, a true and correct copy of the foregoing document was duly served upon all parties through their attorneys of record by electronically filing same with the District CM/ECF system, in accordance with the Rules, and/or alternatively by e-mail or facsimile transmission, to the following:

| | |
|---|---|
| Courtney Warren | Keith French |
| 402 Hunt St. | 2010 E. Broadway St., Suite 132 |
| Houston, TX 77003 | Pearland, Texas 77581 |
| courtney@cwarrenlaw.com | kfrench@peoplefirstfirm.com |

*/s/ Melissa Azadeh*
Melissa Azadeh