# Exhibit 2

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF TEXAS**

**HOUSTON DIVISION**

| | | |
|---|---|---|
| AUSTIN THOMAS HUGHES, | . | CASE NO. 4:21-CV-0716 |
| | . | |
| PLAINTIFF, | . | |
| | . | |
| V. | . | HOUSTON, TEXAS |
| | . | TUESDAY, OCTOBER 14, 2025 |
| CITY OF HOUSTON, ET AL., | . | 04:04 P.M. TO 05:01 P.M. |
| | . | |
| DEFENDANT. | . | |

. . . . . . . . . . . . . . . . . .

**MISCELLANEOUS HEARING**

**PARTIES APPEARING TELEPHONICALLY**

**BEFORE THE HONORABLE GEORGE C. HANKS, JR.**
**UNITED STATES DISTRICT JUDGE**

APPEARANCES:                    SEE NEXT PAGE

ELECTRONIC RECORDING OFFICER: STACY THOMAS

OFFICIAL INTERPRETER:          NONE PRESENT

CASE MANAGER:                  KIMBERLY PICOTA

TRANSCRIPTION SERVICE BY:

**Trinity Transcription Services**
1081 Main Street
Surgoinsville, TN 37873
281-782-0802
battshott@aol.com

**Proceedings recorded by electronic sound recording;**
**Transcript produced by transcription service.**

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF TEXAS**

**HOUSTON DIVISION**

| | | |
|---|---|---|
| AUSTIN THOMAS HUGHES, | . | CASE NO. 4:21-CV-0716 |
| | . | |
| PLAINTIFF, | . | |
| | . | |
| V. | . | HOUSTON, TEXAS |
| | . | TUESDAY, OCTOBER 14, 2025 |
| CITY OF HOUSTON, ET AL., | . | 04:04 P.M. TO 05:01 P.M. |
| | . | |
| DEFENDANT. | . | |

. . . . . . . . . . . . . . . . .

**MISCELLANEOUS HEARING**

**PARTIES APPEARING TELEPHONICALLY**

**BEFORE THE HONORABLE GEORGE C. HANKS, JR.**
**UNITED STATES DISTRICT JUDGE**

Appearances:

**For The PLAINTIFF:**          **COURTNEY B. WARREN, ESQ.**
                               Law Office of Courtney
                                 Warren PLLC
                               402 Hunt Street
                               Houston, TX 77003

**For DEFENDANT MICHAEL GARCIA:** **MELISSA AZADEH, ESQ.**
**For DEFENDANT JOSHUA FEW:**      City of Houston Legal Department
                               PO Box 368
                               Houston, TX 77002-0368

Transcriber:                   Cheryl Battaglia
                               Trinity Transcription Services
                               1081 Main Street
                               Surgoinsville, TN 37873
                               281-782-0802

1

**Houston, Texas; Tuesday, October 14, 2025; 04:04 p.m.**

**(Parties appearing telephonically.)**

THE COURT:  Good afternoon, counsel.  The next case on the Court's docket is *Cause Number 4:21-CV-1994, Hughes versus City of Houston, et al.*

Can counsel on the line just introduce themselves to the Court and state the parties you represent starting with the Plaintiffs?

MS. WARREN:  Courtney Warren on behalf of Plaintiff, Austin Hughes, your Honor.

THE COURT:  Okay.  Welcome, Miss Warren.

On behalf of the City of Houston, et al.?

MS. AZEDEH:  Melissa Azadeh on behalf of the Defendants, Michael Garcia and Joshua Few.

THE COURT:  Great.

Well, welcome everyone.  I wanted to have this hearing.  And thank you for being available on short notice.  I received late Friday —— well, start from the beginning.

I had my Case Manager contact you guys on Friday to see and make sure everything was going to happen as planned on Friday.  And my Case Manager told me that there might be an issue with respect to one of the depositions.  But there was definitely another deposition that was going forward at two o'clock.

So I went home thinking that everything was fine,

that you guys were finally moving on.  And then I got —— I found out that there was a motion, basically, let's see.  A motion that was filed, Defendant's Objections and Notice Regarding Service of Non-Party Subpoena, that was filed at four o'clock on Friday afternoon, which is after the depositions were scheduled to take place.

So I wanted to find out.  Did the depositions happen?  Not happen?  What —— what was the situation on Friday?  Miss Warren, it was your deposition, so you —— you can start.

**MS. WARREN:**  Yes, your Honor.  The deposition did take place.  There were a couple of issues.  I —— that —— of Defendant directing the witness not to answer.

I tried to call.  It was right when —— at closing hours.  So I think I called right at 4:45.  But —— so I —— I haven't brought that up yet.  But I was planning on filing something.  But I'm happy to address it today.

But besides that, the deposition of —— of Seymour went forward.  The deposition of Gomez did not.

**(Pause in the proceeding.)**

**MS. WARREN:**  It's my understanding that Defendant's also 23ren't able to serve him.  And so, that —— that's why that one didn't go forward.

**THE COURT:**  Okay.  So, let's start with Seymour.

**(Pause in the proceeding.)**

**THE COURT:**  All you have to do, I mean, I'm sorry I

3

wasn't available.  I stayed until late thinking that you guys were —— were on your way, didn't hear anything.  And I didn't get the objections until later.

So, can you both just submit to me whatever objections that were made?  I can rule on those objections.  And then we'll figure out whether Miss Seymour can answer those questions in writing or whether you need to sit for another deposition.

I mean, you need to give me the objections.  Or —— well, first of all, have you guys talked about it?  And —— and you come to ——

**MS. WARREN:**  We talked about it.

**THE COURT:**  And you've been able to come to ——

**MS. WARREN:**  Right.

**THE COURT:**  —— an agreement on the objections?

**MS. WARREN:**  If I may, your Honor.  I talked about it during the deposition, your Honor.  And again, they instructed him not to answer (indiscernible).

**THE COURT:**  Okay.  Miss Azadeh?

**MS. AZEDEH:**  Your Honor, this is Melisa Azadeh.

We did discuss it briefly during the deposition.  But I offered to provide case law regarding certain communication privileges between city attorneys and city employees.  But we didn't have a chance to discuss that further.

**THE COURT:**  Okay.

4

Well, I — you guys can submit the question to me and I can rule on it.  I mean, if you —

**MS. WARREN:**  Yes, your Honor.

**THE COURT:**  — if it's that important then, you know, Miss Warren, submit it to me.  And, Miss Azadeh, you respond.  And I'll rule on the objections.  That way we'll be able to close the book on that.

**MS. WARREN:**  Sure.

The biggest issue that I recall is I asked whether he wrote — he drafted the affidavit.  And they instructed him not to answer that question asserting privilege.  I asked whether Miss Azadeh wrote the affidavit.

**THE COURT:**  Well, wait a — wait a second.  That's an easy one.  That's an easy one.

I mean, that's not privileged.  How — how is whether or not he drafted the affidavit privileged?  It's privilege if you asked the attorney whether the attorney drafted it.  Yeah.  That would be work product.

But asking the witness whether he drafted it.  If he — and he answers yes or no.  That's not privilege.

**(Pause in the proceeding.)**

**THE COURT:**  Cause at that point, you don't know who did it —

**MS. WARREN:**  Okay.

**MS. AZEDEH:**  No.  Your Honor —

5

**THE COURT:** —— who did draft it.

I mean, he didn't ask him, did the attorney draft it or who drafted it. You asked him if he drafted it. That's not privilege.

I mean, is there case law that says that that's privilege. I mean, I —— I know that ——

**MS. AZEDEH:** Yes. Sorry, your Honor.

**THE COURT:** I know that there's case law that says that the attorney is work product that the attorney drafted it. But, Miss Azadeh, walk ——

**MS. AZEDEH:** Yeah.

**THE COURT:** —— walk me through that one.

**MS. AZEDEH:** Your Honor, if I —— I asserted privilege and work product. And it's because there was —— the answer will reveal attorney impressions. Or like it goes to communications between lawyer and city employee.

**THE COURT:** Well, wait a second. Is he your client?

**MS. AZEDEH:** I —— I —— I —— well, I do have to consult on that. I wasn't prepared to discuss that at this minute. And so I have done the research in the past. And I can provide the case law for that.

**THE COURT:** Okay. Well, I thought he wasn't your client. And that was the reason why you guys couldn't produce him for deposition when we were fighting about this two weeks ago.

6

**MS. AZEDEH:** That's correct, your Honor. He's not my client in this case. He was previously my client in this case before he was dismissed. And also, he's still a city employee and the privilege belongs —— is between the City of Houston who I'm a representative of the City Attorney and all employees of the City when they're discussed at communications regarding litigation.

**THE COURT:** Okay. Well ——

**MS. AZEDEH:** So it —— it's not —— it doesn't have to be —— the attorney/client relationship doesn't have to exist in this case for there to be a privilege.

**THE COURT:** Okay. But, okay.

Well, I'll —— I'm going to wait for you guys to file whatever you need to file now. And because I think that's going to be a pretty easy one to figure out.

And like I said, it's kind of —— anyway, it's just too —— we have this whole battle last, according to the briefing I read, that you couldn't produce him because he wasn't in your control when you got —— when Miss Warren wanted him.

And it turns out that you're asserting the attorney/client privilege with respect to him, which means that you guys do have control over when and where he is, and whether or not he can appear for deposition.

**MS. AZEDEH:** No, your Honor.

7

Your Honor, the dispute about when and where  Mr. ——
Sergeant Seymour were to appear was between his attorney and
Miss Warren.  I wasn't ready to show up anywhere for that
deposition.  I was just not available on that date because I
had a deposition previously scheduled for another case.

THE COURT:  But ——

MS. AZEDEH:  But I —— I never had —— I was not
involved in those disputes.

THE COURT:  But the attorney is in your office.  She
works with you.

MS. AZEDEH:  I think if somebody gives a subpoena to
a City employee, it gets assigned to somebody.  Sometimes it
gets assigned within the police department.  Sometimes it comes
to city legal.

Because there's a lawsuit involved, it came to city
legal and an attorney is assigned.

THE COURT:  Okay.

MS. WARREN:  Your Honor, may I respond quickly?

THE COURT:  Sure.

MS. WARREN:  I just want to say, Miss Azadeh said
specifically she doesn't represent him.  And that's why we had
to personally serve him with the subpoena.  I filed that email,
along with my ——

THE COURT:  I saw that.

MS. WARREN:  —— Motion to Strike.  And so, that's why

I said he doesn't represent him.

And then the other thing I was just going to say is I did follow-up with, did Miss Azadeh draft the — the affidavit. And part of that is, for me to even determine whether there is a privilege or it's privileged —

**THE COURT:** I knew that.

**MS. WARREN:** — they need to answer that question. And that's in the case law.

**THE COURT:** Yeah. Yeah.

**MS. AZEDEH:** That's not the case law. The case law is not — but your Honor, this — this is not appropriate.

If he's a not party — he's not a party, city policy doesn't let me accept a subpoena for him.

**THE COURT:** Okay.

**MS. AZEDEH:** So — and I — there's not been an appeal yet of his dismissal. So I do — can, as a former defendant. But I don't represent him in this case.

That's separate from city attorneys involved in legal discussions with employees. There's a privilege that I'm not allowed to waive on behalf of the City because I'm a representative of the City Attorney.

**THE COURT:** Okay. Well, real easy to do.

Miss Warren, you file your motion. You file your motion, your file a response. I'll rule on the motion. If I grant the motion, deposition has to be rescheduled and retaken.

9

**(Pause in the proceeding.)**

THE COURT:  I mean, that's all there is to it.

MS. WARREN:  Yes, your Honor.

THE COURT:  So you guys whatever ——

MS. AZEDEH:  I understand.

THE COURT:  Whatever motion —— whatever, you know, whatever questions weren't answered, let me know.

And then you guys provide —— Miss Warren, you provide me the case law.  Miss Azadeh, you provide me the case law. I'll rule on it.  And we'll try to move on as quickly as possible.

MS. WARREN:  Thank you.

THE COURT:  But my understanding is that you don't, unless there's something really changed in the law, and I'll take a look at this.  The question of whether the —— the deponent, I mean, the affiant drafted it, that is a —— that is a question that can be answered by the deponent.  You can ask them that.

You can ask them whether his lawyer did it.  You can't ask him who did it.  But you can ask him if he did it.

But we'll —— we'll —— I'll wait to see what the case law says.  Things might have changed.  You never know.  But my —— that's —— that's my understanding of the law.

But if —— if that's the case, then deposition gets retaken.  And we've got enough time, about six weeks.  We can

10

get the deposition retaken to ask those questions.  That's not a big deal.

So, Miss Warren, can you get that — I know there's a lot going on for both you guys.  But can you go ahead and get that on file?  And I'll rule on it as quickly as possible.

**(Pause in the proceeding.)**

**MS. WARREN:**  Yes, your Honor.

**THE COURT:**  Okay.

**THE COURT:**  So, I — can you give me another example of one of the questions that wasn't answered?

**MS. WARREN:**  Honestly, I can't recall.  I would have to —

**THE COURT:**  Okay.

**MS. WARREN:**  — go look at my notes.

I asked for an expedited transcript.  But she won't be able to give it to us till either later this week or next week.  So I'm just — I was waiting on that.

But I can — I can — I'll look at my notes, and I'll put it in there — in the motion.

**THE COURT:**  Okay.  And then I can resolve that.  You guys can move on.  Okay.

So, Mr. Gomez, I — I'm not sure I understand with Mr. Gomez.  So you were able to talk to him?  Not able to talk to him?  He's out of town, not out of town.  I — I'm not sure I understand.

11

**MS. AZEDEH:** Yes, your Honor. We —

**(Pause in the proceeding.)**

**MS. AZEDEH:** Yeah. We attached the affidavit of the — of the process server regarding his inability to serve Mr. Gomez. He went to the two address we have on file from 2019, I guess. And was — couldn't find him there. But he was able to speak with him on the phone.

And Mr. Gomez said he's working in Dallas and that he's going with the same job to Minnesota. But he'd be happy to contact us when he returns. And he would be happy to appear — and arrange a time to appear for a deposition or a trial.

And the process server seemed to think that he was — wanted to be helpful or cooperative.

**THE COURT:** Okay. Miss Warren, your take? I mean, were you able to reach him? Did you talk to him? What — what's the story?

**MS. WARREN:** Your Honor, so I filed my — after our last hearing, I filed my affidavit their process server and my efforts to attempt to contact him.

We did try and serve him at — we only were provided with one address for him. And that's the one that he swore to was his own in his affidavit. We attempted service there twice.

Process server spoke with the resident of that

12

address.  He said that Gomez hadn't live —— he'd never heard of that man and he hasn't lived there in over six months, which is before the affidavit was —— was signed.  So I don't know if that's his address.

I personally did a three-way call with my translator.  Called him on the phone the day after our hearing.  He did answer.  I had —— they —— when my translator said we are looking for him for a deposition, we needed dates.  He said he would get back with my office later that day to provide dates.

He never got back to me.  So I emailed that same day asking for deposition dates.  I attached that.  It was in Spanish.  I attached that to the Court's —— there to my proof of service, or proof of non-service.  And then I sent a follow-up email on Monday saying the same thing.  Hey, we're going to have to again try to subpoena you if you don't respond.  He didn't respond.  That's when we issued the subpoena and weren't able to serve him.

Then our —— I provided that phone number to our process server.  He called.  He stated somebody answered by a different name.  That's also in my affidavit of non-service.  Also said he'd never heard of Gomez.

The two neighbors confirmed that they had never heard of them and that he didn't live there.  My understanding is that he may be trying to avoid service because of immigration.  But he has not been willing to talk to me or my office at all

13

besides that first phone call.  And, you know, we — we've tried our best to have him serviced.

My — your ruling was by the 14th if he could get a deposition.  And, you know, again, we just haven't been able to talk — contact him.  So —

THE COURT:  Okay.  So —

MS. WARREN:  I don't — I guess I don't trust his promises that he's going to come back and be helpful when he told me he would get back to my office with dates and never did.  So —

THE COURT:  Okay.  Can — let's — I just want to establish a timeline.

When did you have that call with him?  What day?  It was the day after the hearing, right?

(Pause in the proceeding.)

MS. WARREN:  Yeah.  Let me pull up my — what I filed regarding non-service real quick.

(Pause in the proceeding.)

MS. WARREN:  Let's see.

(Pause in the proceeding.)

MS. WARREN:  Kind of searching through my emails.  I apologize.

THE COURT:  Okay.

(Pause in the proceeding.)

MS. WARREN:  All right.  So, I called him on Friday,

14

September 12th.  And that is when I didn't speak to him, but I was on the phone.  It was a third-party because she speaks Spanish.

Spoke to him in Spanish.  I listened to it all.  My Spanish, I can understand what he speaks.  And so I have a translator talking.  So that was Friday.

Then he said he would get back to me that day with deposition dates.  He didn't.  So that same day I emailed him at 5:11 p.m. basically saying the same thing.  Hey, you need to provide me dates for this deposition at my offices.  You know, I appreciate you responding.  Didn't respond.

So then on Monday, September 15th, I again sent an email saying I haven't heard from you.  If I don't hear from you at the end of the day tomorrow, we're going to have to issue a subpoena for —— on a date of my choosing.

He didn't respond again.  So that's when we issued the subpoena.  And that was that same week.

(Pause in the proceeding.)

**MS. WARREN:**  And that —— that was the affidavit of non-service by my process server.  Give you those dates, just look at the —— all right.  So that was ——

(Pause in the proceeding.)

**MS. WARREN:**  —— on September 17th, they attempted to find him.  They said they spoke with the residents at the location.  They stated they don't know the subject.  They later

15

stated the subject does not reside at that address.

And he ran the license plate in the driveway. Said it was not registered to —— to him, to Edgar Gomez. Then they tried again on the 18th. Spoke with the residents. They stated they don't know the subject. No additional contacts were made.

So per the current resident, they had resided at this resident for five months. So it's possible the Defendant lived there before he moved.

And when I provided my process server with his phone number, and we stated —— and my staff emailed me and said he tried to call, but somebody else by a different name answered.

And so that's the last —— was the last of our attempts.

**(Pause in the proceeding.)**

**THE COURT:** Okay. And, Miss Azadeh, when did you ——

**MS. AZEDEH:** Yes.

**THE COURT:** —— contact him?

**MS. AZEDEH:** So this —— it was —— I did not contact him. A private investigator ——

**THE COURT:** Okay.

**MS. AZEDEH:** —— contacted him. And it says in his affidavit, Document 224-1, he says ——

**(Pause in the proceeding.)**

**THE COURT:** I guess the first question is, has

anybody ever been over to the house and seen him — have your — have either you or the private investigator ever seen him at this address?

MS. AZEDEH:  Uh, no.  We've not — the — the — our private investigator, sir, was not able to find — find him at the address.

THE COURT:  Okay.  So where —

MS. AZEDEH:  He did call him and he spoke with him on the phone.

THE COURT:  Oh, okay.  I'm sorry.

MS. AZEDEH:  But just looking at the Plaintiff's process server has attached like the two different locations.  So I'm not sure if it was the same address he went to both times.  We've got images of two different houses —

THE COURT:  Okay.  Miss Warren?

MS. AZEDEH:  — from the first day and the second day.  So I'm not sure if they went to the same location either.

THE COURT:  Did they go to the same location?

MS. WARREN:  It was the same location.

THE COURT:  Okay.

MS. AZEDEH:  There's his house.

MS. WARREN:  The location in his affidavit, that's the only address that we have.

MS. AZEDEH:  That's a location.  And he puts a Google maps.  And the maps show two different houses.

**MS. WARREN:**  I think he put a picture also of the neighbor's house who he communicated with.

**MS. AZEDEH:**  Okay.

**THE COURT:**  Okay.  So when did he —— so, I guess my question is, where was he living when he signed the affidavit.

It says that he was living at the address.

**MS. AZEDEH:**  The address —— that was address that he gives, the same address that this affidavit was signed before this five month period that the neighbor said —— that the new person said they lived there.

**THE COURT:**  Okay.  The motion was filed August 20th. When was the affidavit signed?

**MS. AZEDEH:**  It was —— I think it was February or March.  Double check.

**(Pause in the proceeding.)**

**MS. WARREN:**  It was June 17th, your Honor.

**THE COURT:**  That's what I thought.

**MS. AZADEH:**  Oh, is it?

**(Pause in the proceeding.)**

**THE COURT:**  That's not five months ago.

**(Pause in the proceeding.)**

**MS. AZEDEH:**  I don't know.  But your Honor, I think —— I don't know, cause I've never actually spoken to him. I don't speak Spanish myself.

But I think that's where —— that's his official

18

address.  And maybe those people are related to him or something.  But he gave us that address as where he receives mail ——

THE COURT:  Okay.  So ——

MS. AZEDEH:  —— as well.

THE COURT:  Okay.  So, how —— I want to hear —— I want to hear how he got the affidavit.  I mean, I mean, if he signed it at that address, or did he —— I mean, obviously, he didn't come down to the City of Houston, did he?

So somebody saw him at that address.

MS. AZEDEH:  Yes.  No.  It wasn't mailed to him.  He docu-signed it.

THE COURT:  Okay.  He docu-signed it.

(Pause in the proceeding.)

THE COURT:  So through email?

MS. WARREN:  Your Honor, that's the email that I've reached out to him as well.

THE COURT:  Okay.

(Pause in the proceeding.)

THE COURT:  Okay.  So nobody's actually ever seen him at this address, right?

MS. AZEDEH:  That's —— none of the —— our process server hasn't.

THE COURT:  Okay.  So ——

MS. WARREN:  Correct, your Honor.

19

**THE COURT:**  So nobody's seen him at this address.

**MS. AZEDEH:**  But then he said, when he spoke to him that same day, he said that he was in Dallas.

**THE COURT:**  Okay.  But nobody's ever seen him at, I mean, he's listed in his affidavit this is where he lives as of July —— of June —— as of July 17th.  That's where he says he lives.

**(Pause in the proceeding.)**

**THE COURT:**  And —— and nobody's ever seen him there.

**(Pause in the proceeding.)**

**THE COURT:**  I mean, is that right?  I mean, I just want to make sure I get my facts straight.

So he lists that as his address in his affidavit. And nobody's ever seen him live there.

**(Pause in the proceeding.)**

**MS. AZADEH:**  No.

**THE COURT:**  Okay.  And then the second question ——

**MS. AZEDEH:**  Our process server (telephonic interruption) hasn't seen him either.

**THE COURT:**  Okay.  And you're not —— and none of your process servers has ever seen him there, Miss Warren, right?

**MS. WARREN:**  Correct.  And I was the one who said that they —— he didn't live there.

**THE COURT:**  Okay.

**(Pause in the proceeding.)**

20

THE COURT: One second. I'll be right back. Can you guys hold on for just a second. Just one second.

Oh, and let me make sure I understand this as well.

MS. AZEDEH: Yes, your Honor.

THE COURT: Oh, one last thing.

(Pause in the proceeding.)

MS. AZEDEH: You're muted, your Honor.

THE COURT: Oh, I'm sorry.

One last thing. So nobody ever, just want to make sure I get this right. So nobody ever, you know, saw him sign the affidavit. Nobody ever presented this affidavit to him for him to sign; is that correct?

(Pause in the proceeding.)

THE COURT: It was all done electronically. So nobody's ever seen him.

MS. AZEDEH: No. By docu-sign.

THE COURT: Right. So nobody's ever seen this guy.

MS. WARREN: Correct, your Honor.

THE COURT: Has —— so nobody's ever seen him?

MS. WARREN: Correct.

MS. AZEDEH: I mean, the —— there's pictures of him in the record that were sent to me.

THE COURT: But, I mean, okay. I'll —— I'll be right back. Just one second.

MS. AZEDEH: And yes, I also wanted to confirm that

TRINITY TRANSCRIPTION SERVICES

his affidavit doesn't say he lives there.  He said that's his address.

**(Recess taken from 04:26 p.m. to 04:44 p.m.)**

**THE COURT:**  Okay.  I'm back on.

**(Pause in the proceeding.)**

**THE COURT:**  Hi, counsel, I'm back on the line again.  Give you a little time to jump on.

Quick question.  So, again, I — I — as I was getting off, I heard the last comment.  It says his address is.  It doesn't say that's where he's receiving mail.  It says this is his address.

So, I — I don't — that's really —

**MS. WARREN:**  Right.

**THE COURT:**  — not correct that he's receiving mail.  He's saying this is my address.

But the thing that I was curious about is that, you know, it is docu-signed.  But I — I wanted to pull up the affidavit for the docu-sign where it has witnesses and, you know, the place for the electronic notarization.  It's blank.  There's nothing there.

Did you notice that, Miss Warren?  I don't know — I —

**MS. WARREN:**  Yes.  Your Honor, they filed it as a declaration.  But I — I think —

**THE COURT:**  Right.

22

MS. WARREN: —— we're saying if we're talking about reliability here, no one's —— has seen him again. We don't know. It was emailed to him.

(Pause in the proceeding.)

MS. AZEDEH: It was docu-signed, your Honor. And also, I'd like to point that it is —— it's a valid declaration. But I don't think that was the verbiage by Miss Warren as an objection anyway.

But my response, he said he lived there, was in response to the Court's discussion and Miss Warren's discussion that —— that he had said he lived there. He didn't say he lived there. He said that's his address.

THE COURT: He says ——

MS. AZEDEH: And also, I was looking just now at photographs attached to the process server from the Plaintiff affidavit. And it's not clear —— neither of those match the address, according to Google map images.

So I —— there are two different residences that were photographed. And he said he spoke to a —— a resident at the location. It's not clear as to if that's the correct house.

THE COURT: Wow.

MS. AZEDEH: Or the correct unit number.

(Pause in the proceeding.)

THE COURT: This is really ——

MS. WARREN: Your Honor, our process server is not

23

required to attached photographs.  In his affidavit he states the address he went to, that's the address that was given. That's the address that was sworn to.

THE COURT:  Okay.  I don't ——

MS. AZEDEH:  This is a resident at the location.

THE COURT:  Yeah.  Here —— here's the deal.

I don't have enough time to deal with this right now this afternoon.  What I'm going to do, Miss Warren, if you can submit to me the questions you want answered and the case law as to why to answer them.

Counsel for these Defendants, respond as soon as possible.  I'll rule on that.  And then we'll figure out what we're going to do with Mr.  —— Mr. Gomez.

The Court has serious questions.

MS. WARREN:  Yes. your Honor.

THE COURT:  I mean,  This is, ugh, it's just really frustrating.

**(Pause in the proceeding.)**

THE COURT:  Because I'm looking at the dates when all this was done.  And, you know, none of this really makes sense as to why the gentleman would say that he's available any time, anywhere, you know, when he comes back.  And then at the same time tells someone else, or has somebody else at that address and at the —— at that same phone number.  And that's the other thing I looked at.

24

The phone number that apparently you called, or your private investigator called, is the same number that Mr. Luis Hernandez says he called.

So, I don't understand why I've got two affidavits from people saying that they've called the same number and getting completely different answers.  One saying, you know, don't know him.  Never lived here.  Well hadn't lived here in over five months.  But I've got an affidavit from him from over five months ago.

And ——

**(Pause in the proceeding.)**

**THE COURT:**  And then, he tells one —— he has —— tells one person don't worry.  I'll be back.  You know, when I come back from Minnesota, I will return to Houston.  Happy to talk to you then.  But then at that same number, somebody's saying we don't know, you know, don't know him.  Have never heard of him.  Don't know where he lives.

I mean, that doesn't really add up.

**MS. AZEDEH:**  That last —— and up to the last part was on the phone, I don't think anybody reached him and have them say I don't know it's him.

**THE COURT:**  Well ——

**MS. WARREN:**  Your Honor, if I can have my staff ——

**MS. AZEDEH:**  Oh, cause (indiscernible) said that.  That's fine.

25

MS. WARREN:  Yeah.

MS. AZEDEH:  I understand that.

(Counsel cross-talking – indiscernible)

MS. WARREN:  Yes, it's during that affidavit.

MS. AZEDEH:  But, I do —— I don't know if it makes a difference, your Honor.  But I know that I gave a lot of background to the private investigator.  And he was —— I didn't just hire a process server.  I hired like a really good investigator to be able to go and track him down and convince him to show up.

And I think —— I don't know if that made a difference.  But I gave him a lot of background.  Explained what —— what we were looking for him for, what it related to, and what kind of procedure, you know, what process this is.  It's a civil case.  We're trying to assure him that it wasn't, you know, anybody trying to arrest him.

THE COURT:  Right.

MS. AZEDEH:  And I don't know if that made a difference in his discussions.

THE COURT:  I mean, last time we were talking about the fact that he was afraid of authorities because of ICE possibly and wouldn't talk to anyone at all.  And nobody was able to reach him earlier.

And now it looks like ——

MS. AZEDEH:  Was by phone.  He didn't want to show up

26

for a deposition.

THE COURT: Yeah.

(Pause in the proceeding.)

THE COURT: Yeah.

MS. AZEDEH: Well, I mean, he didn't —— we couldn't serve him in this short timeframe before the noticed depositions. And so we just spoke with him on the phone and got a statement instead.

THE COURT: Okay.

MS. WARREN: And, your Honor, may I just briefly respond?

THE COURT: Sure.

MS. WARREN: Cause what has been my biggest issue is that, and I brought this up in my Motion to Strike.

This affidavit was signed in June. That was before discovery was ended. I did not get it until the Defendant's filed their motion in August.

Had I gotten it in June, I could have made these same efforts and, you know, filed the motion then. But now I have an issue with I can't depose him before trial. If there's, you know, evidence that we are ambushed with, I don't know anything about his knowledge.

And so, my biggest thing is, if we can't depose him and we have made efforts post-discovery, you know, I —— I don't think that they should be able to —— to rely on that per Rule

27

37.

**(Pause in the proceeding.)**

MS. AZEDEH:  Your Honor, I don't —— so it's not ambush when you know everything he said, cause it matches exactly what he said according to every other piece of evidence that you disclosed.

And I ——

MS. WARREN:  Well, just having three images attached ——

MS. AZEDEH:  I didn't interrupt you.  I did not interrupt you.

**(Pause in the proceeding.)**

MS. AZEDEH:  And that —— that's not the standard.

We disclosed to him we're allowed to give affidavits for summary judgement.  Our summary judgment deadline kept on being postponed.

So, I don't have to give you an affidavit if it may change.  If something changes and I'm not going to use that affidavit, I don't have to give it to you when I disclose this witness.

THE COURT:  Yeah.  Well, you disclosed him at an address that is questionably, according to you, I guess, from what I've heard.  He doesn't even really live there.  He just gets mail there.

And so the only information that you provided them

28

that's legitimate, I think, is the phone number.  And we don't even know that that's correct because everybody, other than your people that have tried to call that number, say that he hadn't been there.

And, you know, he — they don't know who he is, never heard of him.  It —

**(Pause in the proceeding.)/**

**MS. AZEDEH:**  Miss Warren's people — Miss Warren's and her office did reach him at that phone number.  And I don't — the information I disclosed was the same information and I got from Miss Warren through the Plaintiff disclosure, cause I don't have any records because they were expunged.

I got the information from the offense reports.  And then I had to wait until I got the unredacted ones to even find the address and the phone number.

**THE COURT:**  And again —

**MS. AZEDEH:**  That I — I don't —

**THE COURT:**  Oh.

**MS. AZEDEH:**  And he may not live — I don't know that — that's fine, your Honor.

**THE COURT:**  Okay.

**MS. AZEDEH:**  That's fine.

**THE COURT:**  Well, I'm just — and so, the reason why his — I understand this.  The reason why his testimony is so important is because nobody can find the — the cams from the

29

officers; is that correct?

**(Pause in the proceeding.)**

**MS. AZEDEH:** They were — they were destroyed because of a court order.

**THE COURT:** Okay. So — so they're destroyed.

So the only thing that we know — the only information that we know — that we can get as to, you know, as to — well. Since the — since the —

**MS. AZEDEH:** And it matches the offense report and the — and the offense affidavit statement. So —

**THE COURT:** Okay.

**MS. AZEDEH:** It's the same. Her —

**MS. WARREN:** Your Honor, may I respond?

**MS. AZEDEH:** May I just finish.

**THE COURT:** No. No. No.

**MS. AZEDEH:** His affidavit just says yes, I told the officers, for example, that Mr. Hughes said I am an officer in the present tense.

Because Plaintiff's complaint alleged that the officers altered that statement that Mr. Gomez had said it maybe in the past tense. But the — but the officers altered it.

So the affidavit just confirms what he told the officers. And it matches what was in the offense report and in the probable cause statement.

THE COURT: Okay. Miss Warren, you'll have the last work.

MS. AZEDEH: This is the kind of information there.

THE COURT: Okay. Miss Warren, you'll have the last word.

MS. WARREN: Yes. This is —

THE COURT: And then we'll have to deal with it.

MS. WARREN: Okay. Okay.

Just a couple of things. One, it doesn't match. He says that through multiple people — he said Austin — Austin choked him by the neck. That he started to resist and other people started to beat him up.

That it's just — it is very different than what was in the — in the complaint. But my biggest issue, again, is just what Miss Azadeh said. She doesn't have to produce the affidavit.

I feel like Plaintiff continues to get sandbagged in this case by them withholding evidence. And she does have to produce it. It's responsive to our discovery request. You can't just — you have to amend your discovery request when you get new evidence.

This is a document that was requested. It's responsive to discovery requests. They were required to produce it.

And that's the same thing that happened with Seymour

31

and I have an issue with.  Because all of the information that is in Seymour's affidavit wasn't disclosed in response to —— to Plaintiff's interrogatories.

So now —— and the information that I got in his deposition basically shows spectator liability.  So now I'm at an issue of okay, do I move to amend the complaint and potentially delay the trial, which we don't want to do.

I haven't talked about this with my client yet.  So I'm not saying that's what I'm doing, cause I have to confer.  But if —— if they just disclose this information in response to our interrogatories where it's directly responsive, I wouldn't be in this predicament.

And so I keep getting these —— these answers of, we didn't have to produce that.  We didn't have to tell you that.  But that's not true.

According to the Rules of Civil Procedure, they do have to respond.  They do have to give me the information they're going to rely on.

And so, I'm just very frustrated, is what I'll say.  But —— by this whole process.  But I —— I understand you're not going to deal with that today.  And I can —— I can file a motion about it.

**THE COURT:**  Right.  Well, what I want to do is first, deal with the issue.  And I'm sorry to make you guys go through —— you need to be getting ready for trial.  That's the

32

deal, you know, instead of these like, you know, side quests, so to speak.

But, you know, the first thing we got to deal with is Seymour, the questions that weren't answered.  So let me deal with those first.

So, Miss Warren, you know, deal with that.  And if we have to adjust the trial date, you know, we'll talk about it.  I don't want to do that.  I really, really don't want to do that.  You guys need to move on.  And — and your clients needs to move on.

But let's work through the issues on the — on the deposition of — of Mr. Seymour, Officer Seymour.  I mean, there's no question he's being represented by the City of Houston.  I'm — we can make all the arguments you want about it's a different department.  But he's being represented by the City of Houston.

You know —

**(Pause in the proceeding.)**

**THE COURT:**  Well, let me just hear the arguments out.  And — and — and hear what each side has to say.  I really want to hear the answer.  Because my understanding of the case law is that you can ask a witness whether or not they prepared an affidavit.  That's not covered by the attorney/client privilege.  I mean, or it's — even if he was the — the City's attorney, I mean, if the City was his attorney, he's not

33

covered by attorney/client privilege.  And it's not covered by work product.  Because you're not asking him who did it.  You're just asking him whether he did it.

But I'll —— I'm —— I'll wait to see what the answer is.  And then once we resolve that, let me think about this other issue.

**(Pause in the proceeding.)**

**THE COURT:**  Because this isn't an affidavit from Mr. Gomez.  It's an unsworn declaration.  And quite honestly, I don't know if the magic words have been used in that affidavit the way the Fifth Circuit has said they should be used.

It follows the state law format very closely.  But I don't know if —— if it says what it needs to say from the Fifth —— in the Federal Courts.  So I want to take a look at that.

So, you got it —— you got the affidavit right if you're in a State Court case.  I don't think —— I'm —— I'm questioning whether or not the affidavit states what it has to state in the correct way in Federal Court.

Federal Courts are very specific as to what the affidavits have to say and how they have to say it.  And I just took a brief look when I was going through the docu-sign to figure out whether or not it's notarized.

It's —— the —— it's not notarized.  So it's not an affidavit.  It's an unsworn declaration.  And the Fifth Circuit

34

is — had very specific language as to what a unsworn declaration has to say and how it has to say it.

And I'm not sure whether or not this affidavit — this unsworn declaration gets you there or not.  But I can sort — sort through that pretty quickly, too.

If — if this is State Court, you're golden.  But I don't know if it meets the —

**MS. AZEDEH:**  Your Honor, my understanding is the same standard.  I think that the Texas Rules match our State and the Federal.

**THE COURT:**  Not quite.  Not quite.

You need to take a look —

**MS. AZEDEH:**  Okay.  And if that's the case, your Honor, I would ask for an opportunity to correct it, rather than have it struck.  And I don't think Miss Warren made these arguments.

**THE COURT:**  Well, if you can get it corrected, that means you can get a hold of him.

So, I mean, —

**MS. AZEDEH:**  I — I — I have confirmed — your Honor, my objections state that we are able to get a hold of him.

**THE COURT:**  Yeah.  But —

**MS. AZEDEH:**  I've gotten a hold of him multiple times.

35

**THE COURT:** Okay.  So, okay.

Let me do the research.  I will take a look at this issue.  And I'll get back to you all on it.

**MS. AZEDEH:** Thank you, your Honor.

**THE COURT:** Okay.

**MS. WARREN:** Your Honor, may I file a Motion, basically a Motion to Strike, as opposed to —— in accordance with your procedure, doing a pre-motion conference setter.

**THE COURT:** Yeah.

**MS. WARREN:** As to ——

**THE COURT:** If you —— if you wish to file a motion, you can file it.

**MS. WARREN:** Okay.

**THE COURT:** And I'll get the response.

**MS. WARREN:** Okay.

**THE COURT:** I know that I said no further motions without permission by the Court.  You guys have permission to file.

Cause we're not going to get to the bottom of this ——

**MS. WARREN:** Okay.

**THE COURT:** —— until I get all the facts in the record and, you know, we move forward.

I mean, you guys should really think long and hard about getting this case settled and moving on.  I mean, as I said, it's not worth your lives over this.

I mean, and I say not lives like physically taking your life.  But just the gray hairs and the stress that this is causing everybody.

Doesn't cause me any stress.  I'm here regardless.  But, you know, you guys need to try to work this out.  But if you can't, that's what I'm here for.  And I'll help you as best I can.

So let me ——

**MS. AZEDEH:**  Your Honor, I did ——

**THE COURT:**  Oh, I'm sorry.

**MS. AZEDEH:**  I just want to enter that I did —— I did try to speak with Warren, I mean, I tried to speak with Warren —— Miss Warren before.  I don't know, not directly about settlement.  But I think it was clear that's what I was going to talk about.

And in the pre-trial proceedings, I guess Plaintiff said that they don't believe at this stage it can be settled.  But we've never shut that door to discussing resolving the case.

**THE COURT:**  Yeah.  I'm not going to get in the middle of that.

I just ——

**MS. AZADEH:**  Yes, your Honor.

**THE COURT:**  Just giving you some friendly advice to try to save you guys some gray hair.  But ——

37

**MS. AZEDEH:**  Thanks, your Honor.

**THE COURT:**  So, I'm not accusing anyone of not negotiating in good faith or anything like that.  I'm just encouraging you to keep talking if you're talking.

But if not, I'll —— I'll —— I'll help you as best I can resolve this.  So anyway, I've got to go.

**MS. AZEDEH:**  Okay.

**THE COURT:**  Have a great afternoon, everyone.

**MS. WARREN:**  Yes, your Honor.

**THE COURT:**  And, Miss Warren, I look forward to your motions.  And Miss Azadeh, I look forward to your responses.

**(Pause in the proceeding.)**

**MS. AZEDEH:**  Thank you, your Honor.

**MS. WARREN:**  Thank you, your Honor.

**THE COURT:**  Take care everyone.  Good bye.

**MS. WARREN:**  Good bye.

**(This proceeding was adjourned at 05:01 p.m.)**

CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

/s/ *Cheryl L. Battaglia*                    October 23, 2025

Transcriber                                       Date

4:21-CV-1994                              10/14/25 - 10/23/25

**TRINITY TRANSCRIPTION SERVICES**