Exhibit 5

CONFIDENTIAL

## General Order

**Houston Police Department**
⬡

| ISSUE DATE: | NO. |
|---|---|
| August 16, 2017 | **400-28** |
| REFERENCE: Supersedes all prior conflicting Circulars and Directives, and General Order 400-28, dated March 24, 2016 | |

**SUBJECT: BODY WORN CAMERAS**

## POLICY

Employees shall follow the procedures established in this General Order for the use of body worn camera equipment and for the storage, management, retrieval, and release of video and audio recordings captured by body worn cameras.

The Houston Police Department shall utilize body worn cameras to assist the department in efforts to enhance police professionalism, improve transparency, and preserve recordings of officers' interactions with the public. Body worn cameras have the potential to improve community relations, strengthen public trust in law enforcement, reduce the number of complaints, resolve allegations of officer misconduct, increase department accountability, and improve officer training and evaluation.

This General Order does not apply to covert recording devices, such as those placed on undercover officers or criminal informants. Such devices shall continue to be handled in accordance with existing policies.

This General Order applies to all employees.

## DEFINITIONS

*Body Worn Camera (BWC).* A recording device that is capable of recording or transmitting to be recorded remotely, video and audio; and worn on the person of a peace officer, which includes being attached to the officer's clothing. The BWC does not include surreptitious recording devices used in undercover operations.

*Classification.* The process whereby an employee categorizes a video for evidentiary or information purposes resulting in the recording being retained based on an established retention schedule. The classification options are: a) Class B and Above, b) Class C Offenses and Traffic Stops, and c) Information.

*Deactivate.* When the BWC is placed in *Standby* mode after having been activated.

*Digital Recordings.* For purposes of this General Order, digital recordings consist of video footage, which may include audio, captured by the BWC and stored digitally.

*Docking the BWC.* The process by which an employee places a BWC into a network attached data transfer device, causing videos previously recorded onto the BWC to be uploaded to the Video Evidence Management System. Additionally, the BWC's battery is charged and its firmware is updated during docking.

*Law Enforcement Activity.* Any event during which an officer exercises his police authority or conducts any type of investigation, whether consensual or otherwise.

**DEFENDANTS_HUGHES_000032**

CONFIDENTIAL

| General Order #400-28 | ISSUE DATE: August 16, 2017 | PAGE: #2 |
|---|---|---|

*Mode.* Various settings of the BWC as described below:

a. *Activate Mode.* The mode in which the BWC is on, has been activated by the officer, and is actively recording an event. Once the BWC is activated from the *Standby* mode, up to two minutes of video prior to activation will be captured in addition to video and audio recorded during activation.

b. *Off Mode.* The mode in which the BWC has been turned off and is no longer recording.

c. *Standby Mode.* The mode in which the BWC is turned on but not actively recording an event.

*Mute Function.* A function in which the camera will continue to actively record the event without audio.

*Video Evidence Management System (VEMS).* The repository for the video systems in use by the Houston Police Department. The VEMS is a combination of hardware and software used to generate, collect, store, back up, retrieve, review, transmit, and archive videos that are created from various departmental video sources, including body worn cameras.

## 1 INTEGRITY OF VIDEO RECORDINGS

The use of any body worn camera (BWC) not issued by the department is prohibited unless approved by the Chief of Police. All digital recordings from any BWC shall be used for official law enforcement purposes only and are the property of the Houston Police Department.

## 2 BWC EQUIPMENT

The BWC shall be affixed to the front of each officer's uniform above the horizontal midline of the torso so that it is clearly visible to persons with whom the officer comes in contact. The positioning of the BWC will enable the BWC to capture the best recording possible of the officer's scene and interactions with persons on that scene. It is the officer's responsibility to ensure that the BWC is properly affixed to his uniform so that no obstructions interfere with proper recording.

Unless authorized by the Chief of Police, employees shall not disassemble the camera or attempt to access the internal storage, files, programs, or configuration of the BWCs either wirelessly or by direct connection.

## 3 TRAINING FOR BODY WORN CAMERA USE

Any officer issued a BWC shall be trained in the operation of the equipment prior to its use. Shift commanders shall ensure that all officers under their command are trained in the proper use of the BWC in accordance with current departmental policy.

DEFENDANTS_HUGHES_000033

CONFIDENTIAL

| General Order #400-28 | ISSUE DATE: August 16, 2017 | PAGE: #3 |
|---|---|---|

## 4   SUPERVISOR RESPONSIBILITIES

Any supervisor who becomes aware that an officer has a malfunctioning or defective BWC shall determine whether the BWC can be replaced or repaired prior to the officer reporting for assignment. If a supervisor determines that there is not a BWC available, the supervisor may authorize the officer to report for assignment without BWC equipment.

Sergeants shall review relevant BWC recordings prior to submitting any administrative reports as they relate to incidents involving *response to resistance* (R2R), pursuits, or City vehicle crashes.

Two levels of supervisors immediately above any officer(s) involved in an R2R incident shall review the R2R BWC recording(s) associated with the incident.

## 5   OFFICER RESPONSIBILITIES

Officers issued a BWC shall:

a.  Be responsible for the care and custody of all BWC equipment assigned to the officer.

b.  Ensure the BWC used is assigned to them.

c.  Inspect the assigned BWC device daily to ensure that there is no visible damage and that the device is in proper working order.

d.  Immediately report a dead battery or any malfunction or loss of BWC equipment to a supervisor. If authorized to work an assignment without fully functional BWC equipment, the officer shall notify dispatch of the authorization, including the authorizing supervisor's unit number.

e.  Properly classify all videos.

f.  Upload video(s) to the Video Evidence Management System (VEMS) by the end of the shift.

## 6   ACTIVATION OF THE BWC

The BWC has three modes: *Off, Standby,* and *Activate.* Normally, while performing routine matters and prior to participating in any law enforcement activities, officers shall keep the BWC in *Standby* mode.

Officers shall place the BWC in *Activate* mode to record all law enforcement activities regardless of dispatch status. Officers shall continue recording until the law enforcement activity is completed or until there is a reason, as permitted by this policy, to deactivate the BWC. Officers are not required to cease recording an event, situation, or circumstance solely at the demand of a citizen. The BWC shall be activated as follows:

a.  **Priority One or Two call for service.** Activate upon being dispatched or when driving to the call regardless of the dispatch status.

DEFENDANTS_HUGHES_000034

CONFIDENTIAL

| General Order #400-28 | ISSUE DATE: August 16, 2017 | PAGE: #4 |
|---|---|---|

b. **Any other call for service.** If a vehicle is being used, activate prior to exiting the vehicle. If a vehicle is not being used, activate prior to arrival.

c. **Self-initiated law enforcement activity** (e.g., traffic or pedestrian stop) **or On-View Incident** (e.g., being flagged down). Officers shall activate BWCs prior to taking any police action, including vehicle and foot pursuits. In all cases, BWCs shall be activated prior to turning on emergency equipment.

d. **Search or arrest warrant.** Officers equipped with a BWC shall record during the execution of any search warrant or arrest warrant and during all consent searches.

e. **Prisoner or passenger transports.** Officers equipped with a BWC shall record all prisoner or passenger transports, regardless of the gender of the prisoner or passenger. The entire transport shall be recorded.

For prisoner transports, officers may elect to have the BWC facing the rear passenger compartment of the vehicle. Once officers are in a secured jail facility with surveillance cameras, the BWC may be deactivated.

When a prisoner or passenger is transported by a two-man unit, both officers shall be required to record with the BWC during the transport.

f. **Hostile or contentious interaction.** There may be times when an officer is interacting with the public and the discussion becomes unexpectedly hostile or contentious. As soon as an officer determines that this is likely to occur or is occurring, the officer shall immediately activate his BWC.

## 7 DISCRETIONARY USES

Officers may, but are not required to:

a. Record informal or casual encounters with members of the public.

b. Record persons who confidentially provide information for law enforcement purposes.

## 8 FAILURE TO ACTIVATE BWC

Although the BWC is required to be activated prior to initiating a law enforcement activity, there may be circumstances that require an officer to act immediately in order to ensure his safety or the safety of others. In those situations, it may be impractical or unreasonable for the officer to activate the BWC before taking police action. In these instances, the officer shall activate the BWC as soon as it is safe to do so to ensure that the remainder of the incident is properly recorded.

If an officer is required to activate his BWC and fails to do so, the officer shall immediately after the conclusion of the event, use the BWC to record his explanation or reasoning as to why the BWC was not activated. If this situation occurs, the officer shall notify his supervisor and document the reason for not activating the BWC in the incident report or call slip.

DEFENDANTS_HUGHES_000035

CONFIDENTIAL

| General Order #400-28 | ISSUE DATE: August 16, 2017 | PAGE: #5 |
|---|---|---|

An officer's justification for failing to activate the body worn camera because it is unsafe, unrealistic, or impractical shall be evaluated based on whether a reasonable officer under the same or similar circumstances would have made the same decision. If the department determines an officer was unjustified in failing to activate his BWC when required to do so, the officer may be subject to disciplinary action up to and including indefinite suspension.

## 9 DEACTIVATION OF BODY WORN CAMERA

Deactivating a BWC in regards to a law enforcement activity is governed by the following guidelines. Except as specifically provided otherwise in this General Order, an officer's BWC may be deactivated only when:

a. All contacts with the public on the scene are completed.

b. All arrests have been made and arrestees have been transported to a secure jail facility by a transporting unit. Officers in the transporting unit shall adhere to section 6, item (e) of this General Order.

c. Conferring with an undercover officer assigned to an investigative division about a tactical operation or briefing.

d. Approved by a supervisor on extended scenes.

Officers are reminded that the BWC shall remain activated when in a hospital or medical facility for official police business including, but not limited to, criminal investigations, mental health documentation, or a dying declaration. However, hospital assignments may be considered extended scenes requiring supervisor approval for BWC deactivation.

If the department determines an officer was unjustified in deactivating his BWC, the officer may be subject to disciplinary action up to and including indefinite suspension.

## 10 MUTE FUNCTION

The *Mute Function* shall be used when conferring with a district attorney's office.

The *Mute Function* may be used during conversations with undercover officers or confidential informants, when consulting with a physician at a mental health facility, or when instructed by a supervisor.

Prior to activating the *Mute Function*, officers shall audibly note the reason why the audio is being muted.

## 11 SPECIAL CIRCUMSTANCES

This section addresses special circumstances in which additional guidance regarding the use of BWCs is needed.

**DEFENDANTS_HUGHES_000036**

CONFIDENTIAL

| General Order #400-28 | ISSUE DATE: August 16, 2017 | PAGE: #6 |

## Traumatic Events

Officers are sometimes called on to respond to scenes where persons, including witnesses and complainants, may have been traumatized (e.g., a scene of a sexual assault). While officers are encouraged to use their BWCs when it is prudent to do so, they may use their discretion in choosing to deactivate their BWC when recording the person might inhibit the officer's ability to obtain a full and candid statement from a complainant or witness. This does not include domestic violence scenes except as provided below. Officers shall audibly note the reason prior to deactivating. The BWC shall be activated once the contact with that individual has ceased and until the remainder of the investigation is complete.

## Family Violence

If an officer encounters a person during an investigation that the officer believes to be a victim of family violence and who refuses to cooperate with the investigation while being recorded by the officer's BWC, the officer shall briefly explain the department's policy with regard to recording interactions to attempt to alleviate the concerns. If the person continues to object to being recorded, the officer shall cease attempts to interview that person and make contact with a supervisor. The supervisor contacted shall ensure that a supervisor reports to the officer's scene.

Once at the scene, the supervisor shall make contact with the possible victim and attempt to resolve any issues related to being recorded. In the rare instance the supervisor is unable to remedy the person's concerns, the supervisor should authorize the investigation to continue while the BWC is deactivated long enough to obtain a statement from the individual. The BWC shall be activated once the contact with that individual has ceased and until the remainder of the investigation is complete.

## Driving While Intoxicated

During encounters with drivers who are suspected of Driving While Intoxicated (DWI), officers shall use both BWCs and mobile video equipment (in vehicles in which mobile video equipment has been installed and is functional) to record any field sobriety tests before proceeding to an intoxilyzer testing facility. Officers shall continuously record within departmental DWI facilities except when in the DWI work room with no prisoners present.

## Response to Resistance (R2R)

Officers involved in R2R incidents captured by BWCs shall follow the applicable departmental policies regarding the R2R and reporting of R2R in General Order 600-17, **Response to Resistance**. When feasible, an officer involved in an R2R incident may, but is not required to, review the BWC recording before completing his incident report. The supervisor conducting the R2R review shall review video recordings of all R2R incidents.

If an officer is unable to upload the BWC video to the designated server due to illness or injury, the supervisor who has been made aware of the officer's inability to upload the video shall be responsible for ensuring that the video is uploaded as soon as practicable.

In critical incidents such as officer-involved shootings, in-custody deaths, or other officer-involved incidents that result in a person's serious bodily injury or death, a supervisor shall take

DEFENDANTS_HUGHES_000037

CONFIDENTIAL

| General Order #400-28 | ISSUE DATE: August 16, 2017 | PAGE: #7 |
|---|---|---|

custody of all involved BWCs at the scene and ensure that they are transferred to Homicide Division or Internal Affairs Division. If Homicide or Internal Affairs do not make the scene, then the supervisor shall ensure that all videos from the involved BWCs are uploaded. Officers involved in the critical incident shall not be tasked with uploading the BWC recordings related to that incident.

Incidents involving deadly force, serious bodily injury, or allegations of serious misconduct captured on BWCs shall be handled as directed by the Homicide Division or Internal Affairs Division investigator on the scene. Homicide Division and Internal Affairs Division each shall have the authority to classify a video recording as "Confidential."

## Extra Employment

When working police-related extra employment, all officers and supervisors who have been assigned a BWC are required to activate their BWC to record all law enforcement activities occurring during their extra employment consistent with this policy. Officers must upload any video captured during police-related extra employment activities as soon as practicable, but not later than 72 hours after the event. If any Class B arrests or other significant events are captured, the BWC video shall be uploaded before the conclusion of the extra employment.

## Special Events

Special events and crowd control situations present unique tactical and safety concerns for both the public and law enforcement. Examples of such events include demonstrations, major sporting events, festivals, and parades. Supervisors tasked with coordinating the response to such events shall have the discretion to order officers to record portions of or the entire special event.

## 12 PRIVACY CONCERNS

Officers shall not have BWCs recording while inside restrooms, dressing rooms, or locker rooms unless officers are entering in response to an ongoing emergency or a crime that is still in progress, there is reason to believe that a suspect is still inside the location, or other exigent circumstances exist.

## 13 PROHIBITED USAGE

Unless approved by the Chief of Police, officers are prohibited from making copies of digital evidence for non-law enforcement purposes or uploading digital evidence to public or social media sites at any time. While viewing a BWC recording for official purposes, officers shall not take a screen shot or make any separate recording of the BWC recording.

Under Texas Occupations Code Section 1701.659, it is a Class A misdemeanor for a peace officer or other employee of the department to release a recording created with a body worn camera without permission of the department.

Recordings made by officers while performing their police duties shall not be shared or used for personal gain or entertainment.

DEFENDANTS_HUGHES_000038

**CONFIDENTIAL**

| General Order #400-28 | ISSUE DATE: August 16, 2017 | PAGE: #8 |
|---|---|---|

The BWC is for official use only and shall not be used to record:

a. Personal or non-work related activity.

b. Department roll calls, locker rooms, break rooms, restrooms, or administrative activities.

c. Conversations of fellow employees without their knowledge during routine activities not related to enforcement.

d. Conversations with any law enforcement personnel that involve briefings or tactical operations or plans.

e. Lineup proceedings or associated briefings.

f. Department meetings including, but not limited to, administrative meetings, committee meetings, mediations, counseling, and in-service training.

g. Inside police facilities unless taking law enforcement action.

h. During "walk-throughs" following officer-involved shootings.

## 14 PROCESSING INADVERTENT SENSITIVE BWC RECORDINGS

If there is an inadvertent sensitive video made (e.g., while using the restroom or dressing and/or undressing in a locker room), the officer should notify a supervisor. A same-sex shift commander shall view the video and ensure that there were no policy violations recorded and that no misconduct was observed. The shift commander shall then notify the department's Office of Technology Services, Video Production Services that the video shall be retained with restricted access.

## 15 CLASSIFICATION OF BWC RECORDINGS

Proper classification is critical for ensuring videos are retained in accordance with department mandated and legally required retention schedules. Officers shall classify videos as outlined below based on the most serious offense on the call or event.

Officers shall perform the classification of recordings on the BWC or within the VEMS. Officers shall classify each and every video captured on the BWC.

### Retention Schedule

Once an officer completes the classification of the digital recording, the retention period is automatically applied as set forth below.

a. *Class B and Above.* For BWC recordings related to criminal offenses that are Class B misdemeanors and above, the retention schedule is 10 years.

DEFENDANTS_HUGHES_000039

CONFIDENTIAL

| General Order #400-28 | ISSUE DATE: August 16, 2017 | PAGE: #9 |
|---|---|---|

b. **Class C and All Traffic Stops.** For Class C offenses and all traffic stops, the retention schedule is 2 years.

c. **Information.** For all other BWC recordings the retention schedule is 180 *calendar* days.

## 16 DOCUMENTATION IN INCIDENT REPORTS

The BWC recording is not a substitute for a thorough and complete original or supplement report.

For incidents requiring an officer to complete an incident report, officers shall ensure each BWC recording is documented in the incident report by selecting the appropriate option in the records management system (RMS) drop down menu. The fact that a recording was made shall be documented in all reports and any corresponding documentation associated with the incident including, but not limited to, crash report, Vehicle Pursuit form, Conducted Energy Device (CED) report, R2R report.

Any officer responding to a scene as a secondary unit shall notify the primary unit if his BWC was activated while on the scene or on any scene associated with the incident and provide his name and employee number to the primary unit.

The primary unit shall include in the narrative of the incident report references to all employees (by name and employee number) whose BWCs captured recordings on the primary unit's scene or on any scene associated with the incident being reported.

Officers shall continue data collection as required by General Order 600-42, **Racial Profiling Prohibited**, regardless of whether they are utilizing a BWC.

## 17 REVIEWING BWC DIGITAL RECORDINGS

### Employee Reviews

Officers may, but are not required to, review BWC videos before completing an incident report. Officers should view their own digital recording prior to providing testimony at hearings, trials, or depositions.

### Investigative Responsibility

If an investigator determines that a video is evidentiary in nature, the investigator shall associate the video with the case/incident number in VEMS. When a video is associated with a case/incident number, the retention schedule is placed in suspension.

## 18 AUDITS OF BWC RECORDINGS

### Monthly Audits by Supervisors

Shift commanders are required to review two randomly selected BWC videos of each sergeant under their command each month to monitor compliance with departmental policies and

DEFENDANTS_HUGHES_000040

CONFIDENTIAL

| General Order #400-28 | ISSUE DATE: August 16, 2017 | PAGE: #10 |

procedures. Sergeants are required to review two randomly selected BWC videos of each officer under their command each month to ensure compliance with departmental policies and procedures.

## Semiannual Audits by Inspections Division

Employees of the Inspections Division shall conduct the below BWC audits.

a. **Activation Audit.** This audit is to ensure the BWCs are being activated in accordance with department policy. This audit shall be done when Inspections Division conducts a Management Analysis and Risk Assessment of a patrol division. This audit does not include viewing any video; it does include verifying if there is a video when policy dictates there should be one. Inspections Division shall determine the number to be audited based on the volume and time lines for the audit. At a minimum, an activation audit shall be conducted once every six months at a division that utilizes BWCs.

b. **Compliance Audit.** This audit is to ensure that departmental policies and procedures are being followed. This audit shall be conducted concurrently with the Independent Police Oversight Board (IPOB). Twice each year, IPOB shall view twenty videos randomly selected by the Office of Technology Services. Inspections Division personnel shall view the same twenty videos.

## Semiannual Audits by the Office of Technology Services

Employees of the Office of Technology Services shall perform audits twice a year of randomly selected stored BWC video files for quality control purposes to ensure video quality, audio quality, color rendition, and proper focus. System audits shall also be conducted focusing on user access, retention schedules, partial or incomplete video files, and system storage.

19 **OFFICE OF TECHNOLOGY SERVICES**

The department's Office of Technology Services shall be responsible for:

a. Deploying and maintaining and supporting the functionality of the BWCs, peripheral devices and cables, video transfer devices, work station software, system settings, and any other equipment located on-site.

b. Maintaining a master inventory of HPD BWCs and equipment and conducting an annual inventory.

c. Coordinating with Houston Information Technology Services (HITS) Department to maintain network connectivity, server availability, backup copies, and storage availability.

d. Providing assistance to personnel performing audit protocols.

e. Handling special requests to access videos not normally accessible by employees.

f. Providing assistance with accessing the VEMS and addressing other technological issues.

DEFENDANTS_HUGHES_000041

CONFIDENTIAL

| General Order #400-28 | ISSUE DATE: August 16, 2017 | PAGE: #11 |

## 20 REPAIR AND MAINTENANCE

Upon notification of equipment malfunction or damage, a division shall contact the Office of Technology Services for further direction. The Office of Technology Services shall have sole responsibility to liaise with the equipment manufacturer for parts and replacement, if needed.

The Office of Technology Services personnel shall also be responsible for issuing replacement BWCs and assuming responsibility for updating the database to reflect changes in equipment status and assignment.

## 21 INTERNAL INVESTIGATIONS

Internal Affairs Division shall have authority to view any BWC video recording and to flag as "Confidential" any video recording it deems necessary, including any and all video obtained by any involved officer.

Internal Affairs Division investigators and designated division level Internal Affairs investigators have the authority to show a complainant or witness a BWC video recording only after a complaint has been made in accordance with civil service law.

Any officer shall be allowed to review video captured by his BWC prior to being compelled to give a statement.

## 22 USE OF DIGITAL EVIDENCE FOR TRAINING PURPOSES

There may be instances when officers and supervisors believe a recorded incident has training value. In such cases, a supervisor shall send correspondence via his chain of command to the Training Division commander for consideration.

## 23 REQUESTS FOR RECORDINGS

### Employee Requests

An officer seeking a copy of a BWC video for reasons other than official departmental purposes shall make a request in writing through the chain of command to the officer's assistant chief stating the specific reasons for requesting the video.

### Texas Public Information Act (TPIA) Requests

Recordings captured during the scope of an officer's duties may be subject to release to the public under applicable laws. All requests from persons for BWC video copies or viewing shall be referred to the department's Office of Public Affairs. These requests shall be handled in accordance with Chapter 552 of the Texas Government Code (Public Information Act), Chapter 1701 of the Texas Occupations Code, and departmental procedures.

DEFENDANTS_HUGHES_000042

CONFIDENTIAL

| General Order #400-28 | ISSUE DATE: August 16, 2017 | PAGE: #12 |
|---|---|---|

### Requests from Other Law Enforcement Agencies and Criminal Prosecutors

The United States Attorney's Office, the District Attorneys of Harris County, Montgomery County, and Fort Bend County, and the City of Houston Municipal Prosecutors shall not be required to make requests in writing to the Chief of Police for copies of or access to BWC recordings and shall be referred to the Office of Technology Services.

The department shall require that any other requests for BWC videos from other law enforcement agencies be made in writing to the Chief of Police.

### 24  RELATED GENERAL ORDERS AND REFERENCE MATERIAL

200-03,  Investigation of Employee Misconduct
200-16,  Firearm and Soft-Impact Weapon Discharges
300-07,  Overtime Compensation
400-12,  Surveillance Equipment
400-13,  Police Computer Systems
400-14,  Control of Police Department Property
400-18,  Responsibility for City and Other Government Property
400-19,  Microcomputer Regulations
400-22,  Keys, Passwords, and Personal Identification Numbers
400-25,  Acceptable Use of Computers
500-04,  Driving While Intoxicated
600-17,  Response to Resistance
600-42,  Racial Profiling Prohibited
700-01,  Property/Evidence Control Regulations
800-10,  Police Records

Section 1701.651 through 1701.663, Texas Occupation Code
Chapter 552, Texas Government Code

Art Acevedo
Chief of Police

**DEFENDANTS_HUGHES_000043**

**CONFIDENTIAL**

# General Order

## Houston Police Department

| ISSUE DATE: | NO. |
|---|---|
| July 24, 2012 | **500-01** |

**REFERENCE:** Supersedes all prior conflicting Circulars and Directives, and General Order 500-01, dated August 2, 2010

## SUBJECT: EFFECTING ARRESTS AND SEARCHES

## POLICY

The highest regard possible shall be given to arrested individuals' and officers' safety and well-being.

Prisoners shall be thoroughly searched at the time of arrest and by each employee in the chain of custody to ensure no weapons, contraband, or evidence remains on the prisoner.

Except as noted in this General Order, all persons under arrest shall be properly handcuffed behind the back prior to being thoroughly searched and shall remain handcuffed while being transported in any police vehicle.

This General Order applies to all employees.

## DEFINITIONS

**Body Cavity Search**. Any search involving the visual inspection of all skin surfaces, the breasts of a female, or the genitalia of either sex, or the internal physical examination or probing of all body cavities.

**Interlocking**. A technique used to accomplish the arrest or restraint of a violent person by handcuffing the wrists and ankles together behind the back. The term "hogtie" shall not be used.

**Positional Asphyxia**. An impairment of the respiratory system resulting in the reduction of oxygen or the increase of carbon dioxide in the bloodstream and tissues.

**Strip Search**. Any search of an individual requiring the removal of some or all of the clothing to allow visual inspection of the breasts of a female or the genitalia of either sex.

## 1  JURISDICTION

Officers may exercise full police powers within any county in which a portion of the city of Houston is located.

Within the state of Texas, officers may arrest without warrant a person who commits an offense within the officer's presence or view if the offense is a felony, an offense against public order and decency, disorderly conduct, a breach of the peace, or public intoxication. Arrests made outside Houston city limits should, whenever possible, be made in cooperation with the law enforcement agency having primary jurisdiction.

For additional jurisdictional parameters, refer to the Texas Code of Criminal Procedure, Article 14.03, *Authority of Peace Officers*.

## 2  USE OF FORCE

When dealing with citizens, suspects, and prisoners, employees shall limit their use of force and physical contact to only the amount reasonably necessary to protect themselves or others, to effect an arrest, or to bring an incident under control. See General Order 600-17, **Use of Force.**

Officers who use force against any person must be able to state in detail the specific reasons for using the force. If force is utilized during an incident, the officer must ensure that such force is documented according to General Order 600-17, **Use of Force.**

### Suspects Who Ingest Contraband

The department's primary objectives in dealing with suspects who are believed to have ingested narcotics or other contraband

DEFENDANTS_HUGHES_000044

**CONFIDENTIAL**

| General Order #500-01 | ISSUE DATE: July 24, 2012 | PAGE: #2 |
|---|---|---|

are the preservation of life and the safety of the officer. The secondary objective is to preserve and recover evidence whenever possible.

Officers are prohibited from choking and/or restricting the airway of a suspect in an attempt to extract contraband from the suspect's mouth.

Officers using reasonable force to extract contraband from a suspect's mouth should be cognizant of the risks and dangers associated with putting the officer's hands in or near the suspect's mouth.

When an employee reasonably believes that a suspect has ingested narcotics or other contraband, which could present a health hazard, the employee shall immediately summon emergency medical personnel to provide assessment and treatment without delay.

In the event that, after medical evaluation, medical personnel release the prisoner back to the officer, the officer shall:

a. Transport the prisoner immediately to the appropriate City jail facility.

b. Document on the booking blotter that the prisoner "possibly ingested narcotics/contraband."

c. Notify the medical specialist upon arrival at the City jail facility. If a medical specialist is not present when booking the suspect, the transporting officer shall notify a jail sergeant of the incident.

Employees should be aware of and look for potential signs of distress following an ingestion, which could include, but are not limited to, loss of consciousness, trouble breathing, non-responsiveness, profuse sweating, choking, loss of mobility, and vomiting.

When a suspect who is in custody has been transported to a medical facility after ingesting narcotics or other contraband, the arresting officer shall:

d. Notify a supervisor as soon as practical.

e. Respond to the medical facility and advise the attending physician of the situation, including an estimate of the amount of time elapsed since the ingestion and if possible, the type, quantity, and packaging of the item(s) ingested.

f. Generate an incident report or supplement that includes a detailed statement of the incident, medical treatment received (if known), and any actions taken by those on the scene.

Employees are advised that when a suspect ingests narcotics or other contraband and evidence is destroyed, they are to consult with the appropriate district attorney's office to discuss acquisition of a search warrant, if necessary, and the possibility of filing all applicable charges, including, but not limited to, tampering with evidence.

## 3    LEGAL WARNING

When suspects are arrested, they shall be told as soon as possible they are under arrest and the charge or cause for the arrest.

If custodial interrogation is to take place, suspects shall be given the legal warnings as set out in the Texas Code of Criminal Procedure.

## 4    RESTRAINTS AND TRANSPORTATION

### Handcuffs

An exception to the handcuff policy is if a medical or specific physical condition (e.g., suspect's age or size) precludes handcuffing behind the back. Then the prisoner shall be secured in the safest possible manner before being placed in a police vehicle.

**DEFENDANTS_HUGHES_000045**

**CONFIDENTIAL**

| General Order #500-01 | ISSUE DATE: July 24, 2012 | PAGE: #3 |
|---|---|---|

If a prisoner cannot be handcuffed, the transporting officer shall clearly document the reasons and specific justifications for not doing so in the incident or supplement report. The safety of the officer and the suspect or prisoner must be assured before the decision to transport without handcuffs is made. Unless otherwise approved by a supervisor, only units with two officers shall transport prisoners without handcuffs.

Whenever handcuffs are used, they shall be secured by double-locking the cuffs to prevent them from being inadvertently tightened. Officers shall not tighten handcuffs to the extent that circulation is impaired, or allow handcuffs that are clearly interfering with circulation to remain tightened. Prisoners who remain handcuffed for an extended period of time shall be checked often to ensure proper blood circulation.

Personnel assigned to the Jail Division shall handcuff and restrain all prisoners according to current Jail Operating Procedures.

**Transporting**

When placing a prisoner in a patrol vehicle, officers shall position the prisoner's back toward the upper back seat with the prisoner sitting upright and facing forward. Officers shall then properly secure the prisoner in the seat belt and shoulder harness. The transporting officer shall watch the prisoner and ensure the prisoner does not become entangled in the seat belt and that the seat belt does not wrap around the prisoner's neck.

If the design or configuration of the transporting vehicle precludes safely transporting a suspect in accordance with this General Order, a more appropriate unit shall be dispatched.

**Interlocking Technique**

The interlocking technique shall be used by only trained officers utilizing the approved interlocking devices. No changes, alterations, or modifications are permitted to approved leg restraints or interlocking devices.

In all arrest or transporting situations, especially those involving an interlocking technique, employees shall ensure prisoners are placed in a position that enables them to breathe freely and is the most comfortable position possible. Additionally, while officers may use their weight to initially gain control over a prisoner and to maintain control if necessary, officers are to use caution that the resulting compression of the chest or abdomen does not interfere with the prisoner's breathing.

**WARNING: DO NOT leave the prisoner face down when using the interlocking technique as asphyxiation may occur.**

Interlocking is meant only as a temporary measure and suspects must be released from the interlocked position as soon as it is safe and practical.

A prisoner who initially appears to be in little or no distress after being interlocked may still develop respiratory difficulties. Therefore, whenever the interlocking technique is used:

a. A supervisor shall be dispatched to ensure the technique conforms to department policies.

b. The prisoner shall be transported by only a two-officer unit unless otherwise approved by a supervisor.

When the interlocking technique is used, officers shall:

c. Ensure there are at least 12 inches between the interlock (wrist to ankle).

d. Constantly ascertain the prisoner's condition.

e. Maintain verbal contact with and keep a close watch on the prisoner.

DEFENDANTS_HUGHES_000046

**CONFIDENTIAL**

General Order #500-01 | **ISSUE DATE**: July 24, 2012 | **PAGE: #4**

## 5 SEARCHES

Whenever practical, prisoner searches shall be performed by employees of the same sex as the prisoner. When an officer of the opposite sex searches a prisoner, that officer shall document the justification for the search in an incident or supplement report.

Any employee who searches a prisoner shall document the search and the results in an incident or supplement report when necessary. Whenever possible, officers should have a witness to the search.

Personnel assigned to the Jail Division shall conduct all searches according to the current Jail Operating Procedures.

### High Risk Search

Prisoners who must be immediately transported out of the area for the safety of an officer shall be handcuffed behind the back and searched for weapons. The search shall include the outer garments, waist, groin, hip areas, ankles, and feet. Immediately upon reaching a safer environment, the officer shall stop and thoroughly search the prisoner.

### Strip Search

Strip searches may be conducted only after an arrest when there is reasonable suspicion a suspect is concealing weapons, contraband, or evidence that may not be detected or recovered by the usual search techniques. Permission to perform a strip search shall be obtained from a supervisor prior to the search. Strip searches shall be conducted:

a. Discreetly and with the utmost respect for the suspect's privacy and dignity.

b. By an officer or jail attendant of the same sex as the prisoner.

c. In a private and secure room.

1. Public strip searches are prohibited.

2. The minimum number of police personnel necessary shall be present during the strip search and nonpolice personnel should be present only as an extreme necessity.

Following a strip search, an incident or supplement report shall be generated and must include the result of the search and every name and any identifiers of anyone who witnessed the search.

### Body Cavity Search

Body cavity searches may be conducted only subsequent to an arrest when there is probable cause to believe that weapons, contraband, or other evidence of a crime has been concealed in a body cavity. Only medical personnel at medical facilities shall conduct body cavity searches.

A supervisor shall be notified of the necessity to conduct a body cavity search prior to the search. Upon approval from the supervisor, the prisoner shall be transported to the closest available hospital. The supervisor shall ensure that all necessary documents (e.g., consent form, search warrant) are presented to medical personnel with the prisoner.

If the need for a body cavity search is discovered after the prisoner enters a jail facility, an on-duty jail supervisor shall be notified. The prisoner shall be brought to the jail clinic for evaluation and sent to the closest available hospital for the search.

A police officer must accompany the prisoner to the hospital and take possession of any weapons, contraband, or evidence discovered during the search. The prisoner shall be returned to the jail by the police officer when the search is completed.

Body cavity searches shall be conducted privately and with the suspect's dignity as a

**DEFENDANTS_HUGHES_000047**

CONFIDENTIAL

| General Order #500-01 | ISSUE DATE: July 24, 2012 | PAGE: #5 |

consideration. A minimum number of jail, medical, and police personnel shall be present.

Whenever a body cavity search is conducted, an incident report shall be initiated or supplemented containing the following information:

a. The name of the supervisor who authorized the search.

b. The probable cause for the search.

c. The date, time, and location of the search.

d. The name and any identifiers of anyone who witnessed or participated in the search.

## 6 ARRESTS MADE INSIDE THE CITY LIMITS OF HOUSTON IN FORT BEND COUNTY

Adults arrested in Fort Bend County shall be taken before a magistrate in that county to be given their legal warnings. All property and evidence shall be tagged properly according to Houston Police Department policy. Original incident reports and supplements shall be submitted to the concerned division of the Houston Police Department. A copy of the incident report, suspect criminal history, warrant information sheet, and fax receipts shall be forwarded to the captain of the Southwest Division.

### Felony and Class A and B Misdemeanors

Adults arrested in Fort Bend County for a felony or a Class A or B misdemeanor shall be transported to the Fort Bend County Jail. Officers shall file charges at the Fort Bend County District Attorney's Intake Division. A copy of the incident report shall be faxed to Fort Bend County Intake. Officers shall keep a copy of the fax receipt.

If it is after business hours, officers shall fax the following information to the Fort Bend County District Attorney's Office:

a. A completed warrant information sheet issued by the Fort Bend County Intake Division.

b. Two copies of the incident report and two copies of the NCIC and TCIC printouts.

c. An incident report for every charge and every defendant.

d. An incident number must be indicated on all of the suspect's paperwork.

### Class C Misdemeanors

Officers issuing Class C misdemeanor citations in Fort Bend County shall write "Fort Bend County" in parentheses on the same line as the offense location, which shall read "city of Houston (Fort Bend County), Texas." When incarceration is required, adult prisoners shall be transported to the Southeast Division jail facility.

### DWI Arrests

When an adult is arrested for DWI in Fort Bend County, the arresting officer shall take the prisoner to the Fort Bend County Jail for an intoxilyzer and video test. The officer shall contact the HPD dispatcher who shall notify the Fort Bend County Sheriff's Office to have an on-duty intoxilyzer operator meet the arresting officer at the Fort Bend County Jail facility.

The video shall be submitted to the Fort Bend County District Attorney's Intake Division with copies of all necessary paperwork. A copy of the paperwork shall also be delivered to the HPD Vehicular Crimes Division control desk.

If the arrest occurs after normal business hours, the officer shall deliver the original

DEFENDANTS_HUGHES_000048

CONFIDENTIAL

| General Order #500-01 | ISSUE DATE: July 24, 2012 | PAGE: #6 |

paperwork and video to the desk sergeant at the Southwest Division. Southwest Division personnel shall submit the paperwork and video to the Fort Bend County District Attorney's Intake Division during normal business hours.

## Juvenile Arrests

Juveniles who are arrested shall be transported to the Fort Bend County Juvenile Detention Center. When juveniles are going to be interrogated as suspects, they shall be taken before a magistrate in Fort Bend County for their legal warnings.

Officers shall not leave the Fort Bend County Juvenile Probation Department until they have obtained the juvenile's fingerprints and Automated Fingerprint Identification System (AFIS) number, and the Juvenile Criminal Justice Information Services (CJIS) form is completed. A copy of the incident report must be left with juvenile probation personnel and a copy must be faxed to the Fort Bend County District Attorney's Juvenile Intake Division. Officers shall retain a copy of the fax receipt.

Officers shall contact the Juvenile Division and forward a copy of the incident report. Juveniles arrested in Fort Bend County shall not be taken to Harris County.

## Deaths

During the investigation of a death that occurred in Fort Bend County, a Fort Bend County Justice of the Peace shall be summoned to rule on the cause of death. A Fort Bend County Sheriff's Office dispatcher shall contact the Justice of the Peace.

## 7 ARRESTS MADE INSIDE THE CITY LIMITS OF HOUSTON IN MONTGOMERY COUNTY

Adults arrested in Montgomery County, inside the city limits of Houston, shall be taken before a magistrate in Montgomery County to be given their legal warnings.

A Montgomery County Sheriff's Office dispatcher shall be contacted if a magistrate is needed during the nightshift hours of 5 p.m. to 8 a.m. The officer shall obtain from the dispatcher a telephone number with which to contact a magistrate.

Original incident reports and supplements shall be submitted to the concerned division of the Houston Police Department. All property and evidence seized in Montgomery County shall be tagged properly according to HPD policy.

## Felony and Class A and B Misdemeanors

All adult female suspects arrested inside the city limits of Houston in Montgomery County for a felony or a Class A or B misdemeanor shall be processed through the Montgomery County Jail in Conroe. Adult male suspects may be processed through either the Montgomery County Jail in Conroe or the jail facility at the East Montgomery County Annex in New Caney.

Officers shall complete all necessary paperwork while processing adult suspects at the jail facility. Officers shall file charges at the Montgomery County District Attorney's Office from 8 a.m. to 5 p.m. After normal business hours, officers shall process the suspect and fax a copy of the incident report and a copy of the suspect's TCIC printout to the Montgomery County District Attorney's Office immediately.

## Class C Misdemeanors

Officers issuing citations in Montgomery County for Class C misdemeanors shall write "Montgomery County" in parentheses on the same line as the offense location, which shall read "city of Houston (Montgomery County), Texas." When incarceration is required, adult prisoners shall be transported to the jail facility at Northeast

DEFENDANTS_HUGHES_000049

**CONFIDENTIAL**

| General Order #500-01 | ISSUE DATE: July 24, 2012 | PAGE: #7 |

Division or Central Division, depending on the sex of the prisoner.

## DWI Arrests

When an adult is arrested for DWI inside the city limits of Houston in Montgomery County, the arresting officer shall take the prisoner to the Montgomery County Jail in Conroe for an intoxilyzer and video test. The officer may also utilize the Harris County Sheriff's Office substation in Humble, HPD intoxilyzer locations, or DPS intoxilyzer locations. The suspect shall then be processed and charges filed as indicated above.

Adult male prisoners may be transported to the jail facility at the East Montgomery County Annex in New Caney. Officers shall contact the dispatcher, who shall contact the Montgomery County Sheriff's Office dispatcher in order to have DPS personnel meet the officer at the jail facility to administer the intoxilyzer test. Montgomery County deputies may also administer the intoxilyzer test. The suspect shall then be processed and charges filed as indicated above.

A copy of the paperwork shall be delivered to HPD Vehicular Crimes Division control desk.

## Juvenile Arrests

Juveniles who are arrested shall be transported to the Montgomery County Sheriff's Office Identification Section – Crime Lab where the juvenile shall be fingerprinted and the officer shall complete the Referral/Identification portion of the DPS *Juvenile Justice Tracking* form and leave the HPD report or probable cause statement.

Juveniles shall then be taken to the Montgomery County Juvenile Detention Center located in Conroe where they shall be handled by the on-duty Montgomery County district attorney.

When juveniles are going to be interrogated as suspects, they shall be taken before a

magistrate in Montgomery County for their legal warnings.

Officers shall complete all necessary paperwork and forward a copy of the incident report to the HPD Juvenile Division. A copy of the incident report must be faxed to the Montgomery County District Attorney's Office immediately upon completion of the paperwork.

## Deaths

During the investigation of a death that occurred in Montgomery County, a Montgomery County Justice of the Peace shall be summoned to make the official ruling on the cause of death. A Montgomery County Sheriff's Office dispatcher shall contact the Justice of the Peace.

## 8    RESTRICTIONS

Off-duty officers shall not arrest traffic violators on sight unless the violation poses an immediate threat of bodily injury.

An officer, whether on or off duty, shall not arrest any person involved in a personal dispute involving the officer or a member of the officer's family unless there is an immediate threat of serious bodily injury or death. If police action is required, the officer shall contact Emergency Communications Division and request that a police unit and a supervisor be dispatched to the scene to investigate the incident. Also, if police action is required and the suspect's identity is unknown or cannot be determined, the officer may detain such person.

Officers shall not communicate in any manner, directly or indirectly, any information that may delay an arrest. Officers shall not enable persons who have committed criminal acts to escape arrest or punishment, dispose of property or goods obtained illegally, or destroy evidence of unlawful activity.

**DEFENDANTS_HUGHES_000050**

**CONFIDENTIAL**

| General Order #500-01 | ISSUE DATE: July 24, 2012 | PAGE: #8 |

## 9  RELATED GENERAL ORDERS AND REFERENCE MATERIAL

500-02,  **Handling and Transporting Prisoners**

500-04,  **Driving While Intoxicated**

600-17,  **Use of Force**

700-01,  **Property/Evidence Control Regulations**

700-03,  **Inventory of Prisoner's Property**

**Texas Code of Criminal Procedure, Article 14.03, Authority of Peace Officers; and Article 15.17, Duties of Arresting Officer and Magistrate**

Charles A. McClelland, Jr.
Chief of Police

DEFENDANTS_HUGHES_000051

CONFIDENTIAL

# General Order

**Houston Police Department**

| ISSUE DATE: | NO. |
|---|---|
| July 25, 2016 | **500-14** |

REFERENCE: Supersedes all prior conflicting Circulars and Directives, and General Order 500-14, dated February 18, 2005

## SUBJECT: CLASS C MISDEMEANORS

### POLICY

Unless otherwise directed by policy, persons who commit serious Class C misdemeanors (e.g., offenses involving or related to violence, narcotics, vice, breaches of the peace, or criminal mischief) shall normally be incarcerated. If extenuating circumstances make incarceration unwarranted, officers shall seek approval from a field or station supervisor before issuing a citation to a serious Class C violator.

Persons who commit less serious Class C misdemeanors (e.g., traffic violations and regulatory offenses) shall normally be issued citations. In some circumstances, it may be necessary to incarcerate a violator to accomplish the police mission. Any decision to do so shall be consistent with the department's values and principles. For department policies and procedures regarding parking violations, see General Order 600-29, **Parking Citations**.

This General Order applies to classified employees only.

### DEFINITIONS

*Abbreviated Incident Report.* An incident report that lacks property information and a narrative and that is entered into the automated reporting system for statistical or historical data purposes or for capturing an incident in the department's uniform crime reporting information. An abbreviated incident report shall be generated instead of a complete incident report only for certain incidents specified by the department.

*Citation.* A ticket issued for a Class C misdemeanor.

*Citation Book.* A book containing Class C misdemeanor citation forms.

*Citation Pack.* A correspondence package for dismissing a citation and that contains the following:

a. A letter addressed to the Chief of Police from an officer requesting a citation dismissal.

b. A letter written by a requesting officer addressed to the Municipal Courts Chief Prosecutor for the Chief of Police's signature.

c. A copy of the pertinent citation.

*E-Citation.* A citation issued for a Class C misdemeanor generated on an electronic citation writing machine. To book an arrestee in jail on a new Class C municipal charge the e-citation must be used.

*Identifying Information.* Data useful in identifying and locating an individual:

a. Name

b. Date of birth

c. Social security number

d. Driver license number

e. Addresses: home and work

f. Telephone numbers: home, other

g. Any other pertinent information that would help to identify and locate an individual

*Ticket Supply.* The Ticket Supply Office of the City's Municipal Courts Department.

DEFENDANTS_HUGHES_000089

CONFIDENTIAL

**General Order #500-14** | **ISSUE DATE:** July 25, 2016 | **PAGE: #2**

## 1  CITATIONS

Except as otherwise noted herein, officers may issue citations by using either a citation book or an electronic citation machine.

When using a citation book, officers shall print all information on citations completely and accurately to ensure their names and employee numbers are legible on the court's copies of the citations. All blank lines on the citation form shall have the appropriate information entered on them.

Officers shall ensure the incident number, any complainant and witness *identifying information*, and any other information necessary to process a municipal complaint is documented on the *front* of the court's copy utilizing all available blank spacing on the citation when possible. Only then can any remaining information be placed on the back of the citation.

Officers shall submit all citations to their immediate supervisor at the end of their shift.

### Citation Books

Officers shall complete a checkout slip for each citation book they obtain. Officers shall return the checkout slip to Ticket Supply or to the designated location in their division. All citations in a book shall be issued or returned to Ticket Supply within three months.

Officers who lose, damage, or misplace any part of a citation book shall write a letter via their chain of command explaining the circumstances. Procedures outlined in the *Houston Police Department Corrective Action Manual* shall be followed.

Civilians shall not check out or use Class C misdemeanor citation books.

### Traffic Citations

Violators who agree to sign the citation and who are operating a Texas licensed vehicle shall not be booked on a speeding charge if it is the only violation for which they are charged. Violators who agree to sign the citation and who are operating a Texas licensed vehicle shall not be booked on a failure to show proof of financial responsibility charge if it is the only violation for which they are charged.

Violators charged only with speeding and whose state of residence is part of the Nonresident Violator Compact of 1977 shall not be booked on the charge.

Violators charged with both speeding and failure to show proof of financial responsibility or other violations, regardless of residence, may be booked on the charges in accordance with section 4 of this General Order.

Violators driving another state's licensed vehicle, or a resident of another state that is not participating in the Nonresident Violator Compact of 1977 may be booked on any citation in accordance with section 4 of this General Order.

Officers writing citations within the incorporated areas of Houston, but outside of Harris County, shall place the name of the county in which the violation occurred in parentheses on the same line as the location of the violation.

### Refused or Unable to Sign

Officers shall advise violators who refuse to sign a citation that signing the citation is not an admission of guilt, but rather an acknowledgment of receiving a citation and a promise to appear in court at the designated time.

If a violator still refuses to sign the citation, the officer shall print *Refused to Sign* on the line set aside for the violator's signature. Refusal to sign a citation shall not be a basis for taking a violator into custody. The officer shall release the violator if there are no other charges.

DEFENDANTS_HUGHES_000090

CONFIDENTIAL

| General Order #500-14 | ISSUE DATE: July 25, 2016 | PAGE: #3 |
| --- | --- | --- |

After releasing the violator, the officer shall complete a *Refused/Unable to Sign Affidavit* form and attach it to the citation. The affidavit is available on the department's Intranet Portal. The affidavit must be notarized immediately. The citation and affidavit shall be forwarded to the officer's immediate supervisor for review by the end of the officer's shift.

If a violator is unable to sign a citation as a result of severe injury, the officer shall print *Unable to Sign Due to Injury* on the line provided for the violator's signature. The officer shall complete a *Refused/Unable to Sign Affidavit* form and attach it to the citation. The affidavit must be notarized immediately. The citation and affidavit shall be forwarded to the officer's immediate supervisor for review by the end of the officer's shift.

## Class C Theft Citations

Citations shall be issued for Class C theft cases (including, but not limited to, shoplifting incidents) when the value of the stolen items is under $100 and when the suspect's identity is verifiable (e.g., valid identification). Arrests for thefts under $100 shall be made only with proper supervisory authorization.

When issuing a citation for Class C theft, officers shall document the following information on the e-citation or on the *front* of the court's copy of the citation form in accordance with section 1, paragraph 3 of this General Order.

a. Incident number

b. All stolen items – listed on the citation directly after where the violation is written

c. Complainant and witness *identifying information*

d. Who has care, custody, and control of the stolen items

e. Who initially detained the suspect

f. Retail value of the stolen items

Officers are required to conduct a federated query in the department's records management system (RMS) on all suspects prior to issuing a citation or generating an incident report. Any data returned from the query on the suspect will also be available for import into the automated reporting system (ARS).

In addition to the citation, officers shall complete an *abbreviated incident report* so the theft can be included in the department's statistical and historical data and uniform crime reporting (UCR) information. It is not necessary to enter property or a narrative in an *abbreviated incident report*. When entering an *abbreviated incident report*, officers shall adhere to the following procedures:

g. Complete the *Incident* tab. If it is a shoplifting incident, use the report title "Theft-Shoplifting (Cited & Released)."

h. Complete the *Persons* tab. For the suspect, use involvement "CIT" to indicate cited and released. For a business complainant, use involvement "CAB."

i. Complete the *Modus Operandi* tab.

j. Complete the *RCS* tab to owner approve the report.

Complete incident reports shall continue to be generated for theft cases for which no citation is issued.

In cases of shoplifting, officers are also to document whether or not a trespass warning was given to the suspect by the place of business. This may be documented in the complete incident report if one is generated, or it may be documented in the call slip when only an *abbreviated incident report* is generated.

DEFENDANTS_HUGHES_000091

CONFIDENTIAL

| General Order #500-14 | ISSUE DATE: July 25, 2016 | PAGE: #4 |
|---|---|---|

## 2  VOIDING OR DISMISSING CITATIONS

Citations may be voided or dismissed. Requests for citations to be voided or dismissed shall be allowed only for one or more of the following reasons:

a.  Error in writing the citation

b.  Other charges filed in county or district court

c.  Inappropriate charge

### Voiding Citations

To void a citation (except parking citations), all copies of the citation must be gathered and the word *VOID* shall be written across the entire front of all copies. The issuing officer shall write the reasons for voiding the citation on the back of the number 2 copy and then place it on the bottom of all gathered copies. The issuing officer and each supervisor in the officer's chain of command through the assistant chief shall sign the number 2 copy. The assistant chief's office shall send all copies of voided Class C citations to Ticket Supply for filing.

For procedures regarding voiding parking citations, see General Order 600-29, **Parking Citations**.

### Dismissing Citations

A citation (except parking citations), that has been forwarded to Municipal Courts cannot be voided and may be dismissed only by an official request from the Chief of Police and agreement of the Municipal Courts Chief Prosecutor or by other process of law.

The officer requesting the dismissal shall complete a *citation pack* and forward it to the Chief of Police through the requesting officer's chain of command. Letters for dismissal of citations shall include:

a.  Violator's name

b.  Citation number

c.  Docket number

d.  Court number

e.  Appearance date and time

The letter from the Chief of Police shall conclude by requesting the Municipal Courts Chief Prosecutor to make a recommendation to the court for dismissal of the citation.

Upon the determination of the Chief of Police that the dismissal is justified, the citation pack shall be sent to the Municipal Courts Chief Prosecutor.

## 3  SPECIAL SITUATIONS

### Trespassing on School Property

Unless otherwise authorized by a supervisor, officers shall handle trespassing on school property incidents by incarcerating the violator and filing the appropriate trespassing complaint. Officers shall include the complete name and address of the school as well as the complainant and witness *identifying information* in the detail or notes section of the complaint. Officers shall initiate an incident report and list the incident number on the e-citation.

If a supervisor authorizes an officer to write a citation for trespassing on school property without making an arrest, the officer shall list the incident number and complainant and witness *identifying information* on the e-citation or on the *front* of the court's copy of the citation in accordance with section 1, paragraph 3 of this General Order.

For all trespassing on school property citations, the name of the school shall be listed on the citation following the appropriate charge (e.g., Trespassing on school property – Smith Elementary School).

DEFENDANTS_HUGHES_000092

CONFIDENTIAL

General Order #500-14 | ISSUE DATE: July 25, 2016 | PAGE: #5

### Towing Vehicles When Drivers Fail to Produce a Driver License

If an officer determines a vehicle should be towed and the sole reason is that the driver does not have a driver license, the officer shall seek a supervisor's permission prior to towing the vehicle. Officers are not required to tow a vehicle if the sole reason for the tow is that the driver does not have a driver license and the officer is not making a custodial arrest. The officer's decision to seek a supervisor's permission to tow a vehicle in situations described above shall be reasonable and based on the principles of sound judgment, taking into consideration whether further operation of the vehicle would constitute a danger to the public to warrant towing the vehicle.

### Municipal Courts Houston Homeless Court (HHC) Program

Officers shall not arrest individuals participating in the Houston Homeless Court (HHC) program solely for their outstanding municipal warrants. An individual claiming to be a participant in the HHC program should possess and provide officers with appropriate documentation. Individuals should at least possess a *Promise to Appear* form or officers can confirm their participation by calling the Coalition for the Homeless of Houston/Harris County at 713-739-7514.

### 4    AUTHORIZATION FOR INCARCERATION

Field supervisors, when present at an arrest scene, shall review the arrest of a violator who has committed a less serious Class C misdemeanor. Except as noted below, if a field supervisor is not at the arrest scene, a supervisor from the arresting officer's division shall, prior to booking, review the arrest of a violator who has committed a less serious Class C misdemeanor.

Officers shall obtain the authorization of a supervisor prior to booking a person who has committed a less serious Class C misdemeanor unless one or more of the following circumstances exist. The violator:

a.  Does not possess sufficient identification.

b.  Has outstanding warrants.

c.  Shall be charged with more serious offenses.

In all cases, jail supervisors have the authority to divert officers and their prisoners to other locations due to the medical condition of the prisoners or jail overcrowding. Officers shall generate an incident report if the Jail Division rejects a suspect for medical reasons.

A supervisor's review and approval is not required to incarcerate a person who commits a serious Class C misdemeanor. If extenuating circumstances make incarceration unwarranted, officers shall seek approval from a field or station supervisor before issuing a citation to a serious Class C violator.

The following options are available to supervisors when considering officers' requests to book or charge a violator:

d.  Approve the request for incarceration.

e.  Order a citation issued to the violator.

f.  Order the violator released without action being taken.

### 5    ENFORCEMENT OF TEXAS EDUCATION CODE

The Texas Education Code grants broad powers to local school district trustees to establish rules and regulations that address disruptive behavior in schools. However, under no circumstances shall officers issue a citation for disruption of classes, disruptive activities, or possession of paging devices using the Texas Education Code as

DEFENDANTS_HUGHES_000093

**CONFIDENTIAL**

| General Order #500-14 | ISSUE DATE: July 25, 2016 | PAGE: #6 |
|---|---|---|

the basis for the complaint. This policy does not preclude officers from enforcing other applicable laws or ordinances.

## 6 ARRESTING VIOLATORS FOR NEW CLASS C MUNICIPAL CHARGES

To book an arrestee in jail on a new Class C municipal charge the e-citation must be used following the below procedures.

a. The arresting officer or transporting officer shall fill out the e-citation on his assigned electronic citation machine or one of the machines located at the jail or police station lockup facility.

b. A "Y" shall be placed in the *In Custody Box* and the jail initialized booking number must be entered in the incident blank prior to docking the machine.

c. The completed e-citation shall be given to the jail or police station lockup facility personnel to review and dock prior to the officer leaving the facility.

## 7 MUNICIPAL WARRANTS

To check whether a person has a municipal warrant, officers shall provide all of the following information to the Municipal Courts, Warrants/Jail Booking Section:

a. Whether or not the person is in custody.

b. The person's name, race, sex, date of birth, and driver license number.

The Warrants/Jail Booking Section will advise the officer if there are any outstanding warrants on the person in question and the number of such warrants. Docket numbers and the amount of bond will not be given over the telephone.

If it is determined that a person has a municipal warrant, officers shall record this in-

formation in RMS during the "jail initialization" process by indicating the municipal warrant in the charge section. Additionally, officers must document this information on the handwritten *Houston Police Department Jail Booking Blotter* (also known as booking blotter), provided by the Jail Division.

## 8 JAIL INITIALIZATION

The arrested person's *identifying information* must be entered into RMS and "jail initialized" to be transmitted to the jail. Once confirmed, the transporting officers shall fill out a half-page booking blotter and place the booking number on the blotter and deliver it with the prisoner to any jail facility.

## 9 RELATED GENERAL ORDERS AND REFERENCE MATERIAL

500-01, **Effecting Arrests and Searches**
500-02, **Handling and Transporting Prisoners and Other Persons**
500-06, **Disposition of Arrested Juveniles**
500-11, **Handling Publicly Intoxicated Persons**
500-15, **Contact with Representatives of Foreign Governments**
500-17, **Booking Prisoners and Transferring Prisoners in the Field**
500-18, **Traffic Violations by Legislators and Military Personnel**
600-10, **Towing**
600-29, **Parking Citations**
700-01, **Property/Evidence Control Regulations**
800-07, **Criteria for Submitting Incident Reports**
*Houston Police Department Corrective Action Manual*

Martha I. Montalvo
**Martha I. Montalvo**
**Acting Chief of Police**

**DEFENDANTS_HUGHES_000094**

# General Order

## Houston Police Department

| ISSUE DATE: | NO. |
|---|---|
| February 20, 2012 | **500-17** |

**REFERENCE:** Supersedes all prior conflicting Circulars and Directives, and General Order 500-17, dated October 6, 1992

---

**SUBJECT: BOOKING PRISONERS AND TRANSFERRING PRISONERS IN THE FIELD**

---

## POLICY

Prisoners of Houston police officers, prisoners of other law enforcement officers employed by the City of Houston, prisoners of the Metro Transit Police and prisoners brought to Houston by participating Southeast Texas Crime Information Center (SETCIC) police agencies shall be accepted for booking at City jails or police station lockup facilities.

This General Order provides a set of procedures for accepting and booking such prisoners.

## 1  DELIVERY OF PRISONERS TO A HOUSTON CITY JAIL OR A POLICE STATION LOCKUP FACILITY

Before taking prisoners to a City jail or a police station lockup facility, the arresting officer shall do the following:

a.  Thoroughly search each prisoner.

b.  Take all information required for reports.

c.  Check the prisoner for warrants through the NCIC/TCIC/SETCIC and City warrant systems.

d.  Complete the *Houston Police Department Jail Booking Blotter* form per General Order 500-08, **Required Booking Information and Hold Procedures**.

## 2  TRANSPORTING PRISONERS TO PROPER FACILITIES

### All Felonies, Class A and Class B Misdemeanors

Any person arrested for a class A or class B misdemeanor or felony offense shall be booked only at a City jail.

When an HPD officer is dispatched to pickup a prisoner (for any felony, class A or class B misdemeanor) for an officer from another agency, the HPD officer shall determine to their satisfaction a crime has been committed and probable cause exists for the offender's arrest.

If probable cause does exist for the charge, the responding unit shall transport the prisoner to a City jail and make the necessary offense report. The arresting officer may be required to report to the appropriate investigative division if that division so requests.

### Class C Misdemeanors

When an HPD officer is dispatched to pick up a prisoner (for a class C misdemeanor) for an officer from another agency, the HPD officer shall determine to their satisfaction a crime has been committed and probable cause exists for the offender's arrest. The decision should be based on a determination of whether or not the elements of an offense are present and whether or not an arrest is appropriate under the circumstances.

Adult male municipal prisoners shall be booked at the police station lockup facility or City jail closest to where the arrest was made based on current prisoner routing established by the Jail Division and as directed by a department circular.

If an operation is planned that is expected to produce multiple arrests that may exceed the police station lockup facility's capacity or workload, the prisoners are to be booked in

DEFENDANTS_HUGHES_000095

General Order #500-17 | ISSUE DATE: February 20, 2012 | PAGE: #2

a City jail. The appropriate jail supervisor shall be given as much advance notice as possible.

For the policy on the handling of juvenile prisoners, see General Order 500-06, **Disposition of Arrested Juveniles**.

Female municipal prisoners may be booked and may be required to post a municipal bond at a police station lock up facility only if they do not need to be searched or incarcerated before posting such bond.

Municipal prisoners who possess firearms as personal property shall be booked into a City jail. The firearm shall be tagged in the Police Department's Property Division.

Male municipal prisoners arrested with a female, a juvenile or a "hold" prisoner shall be booked into a City jail regardless of the location of the arrest.

Prisoners arrested for out of county DPS warrants and prisoners arrested for capias pro fine only, shall be taken before a magistrate, if available, prior to booking in any City jail or lockup facility.

When a prisoner is incarcerated for a municipal or county charge and a new or additional hold is placed on the prisoner or the prisoner is upgraded from a Class C misdemeanor only, the authorizing division must immediately notify, via telephone, the Jail Division Complaint Desk of the new or additional hold.

The authorizing division entering the hold card shall call the Jail Division to ensure a copy of the modified or new hold card has been received by the jail. Additionally, a supplement to the incident report with the name of the Jail Division employee receiving the new or modified hold must be completed.

### 3    OUTSTANDING MUNICIPAL WARRANTS

When a suspect is booked at a police station lockup facility or City jail on outstanding municipal warrants, the desk officer or jail atten-

dant shall pre-book the prisoner to generate an arrest number. The arrest number shall be placed on the *Houston Police Department Jail Booking Blotter* form. Any associated complaints or tickets shall be placed with the *Houston Police Department Jail Booking Blotter* form and forwarded to the Municipal Courts Department Warrant Verification Division.

The Municipal Courts Department Warrant Verification Division shall process the forwarded documents, which shall populate the warrant information into the prisoner booking record in the Jail Division's Automated Booking System.

The station's desk-officer shall forward all prisoner property to the City jail along with the prisoner.

### 4    OUTSTANDING DEPARTMENT OF PUBLIC SAFETY WARRANTS

When a driver license check reveals outstanding DPS warrants, the officers shall request a confirmation of these warrants.

Officers shall not request confirmation unless the person against whom the warrants were issued is in custody and the officers are prepared to incarcerate him. When a confirmation is requested on a person having a DPS warrant on file, the record of such a warrant is automatically purged regardless of the disposition of the warrant against the person checked.

Upon receipt of the confirmation, and if there are no other charges, the unit shall request the dispatcher to contact the DPS and obtain a response time for the DPS unit to meet the field unit and take custody of the prisoner. If the response time will not be more than 30 minutes, the field unit shall meet the DPS unit and transfer custody of the prisoner in the field.

If the estimated time is longer than 30 minutes, the field unit shall disregard the DPS unit and immediately transport the prisoner to

**DEFENDANTS_HUGHES_000096**

General Order #500-17 | ISSUE DATE: February 20, 2012 | PAGE: #3

a City jail for booking on the warrant. DPS prisoners shall not be booked at police stations.

If a municipal court is open, the arresting officer shall obtain a magistrate's warning for the out of county DPS prisoner before booking the prisoner. If the officer arrives at a City jail with the prisoner and the confirmation hard copy is not in the booking office, the officer shall contact the message center to obtain a copy of the verification information.

## 5  SOUTHEAST TEXAS CRIME INFORMATION CENTER (SETCIC) WARRANTS

### Warrant Confirmation Procedures

When an inquiry check (i.e. name, operator's license, and social security number) by Mobile Data Computer (MDC) reveals an outstanding SETCIC warrant, the officer shall request a confirmation of the warrant from the designated office personnel at the division where the officer is assigned. Officers shall not request confirmation unless the person against whom the warrant was issued is in custody and the officers are prepared to incarcerate the person.

In accordance with SETCIC guidelines, a "locate" must be placed on the warrant. The division shall verify the warrant's validity by calling the issuing agency, or agencies, holding the warrant by telephone and ask if the warrant(s) is still open. If the warrant is open, and the agency wants the person held, the agency shall be asked to send a telex, or facsimile, to validate the warrant and place a "locate" on the warrant.

The telex, or facsimile, shall be attached to the *Houston Police Department Jail Booking Blotter* form if the person is held in a jail facility. The warrant should be located even if the originating agency does not want the person held. The division office personnel shall then notify the field unit by MDC that

the issuing agency wants the person held, and shall advise the field unit of one of the following four options.

a.  If the wanting agency can meet the HPD officer on the street in, or close proximity to, the officer's normal working area within 30 minutes, the officer shall be allowed to meet the outside agency's officer and turn the wanted person over.

b.  If an HPD officer makes an arrest in close proximity to the agency wanting the person, the officer should have the discretion to deliver the person directly to the wanting agency if that will be the most efficient way of prisoner disposition.

c.  If the person is not exchanged in the field within 30 minutes, the person shall be taken to the nearest police station, or City jail for booking.

d.  If the outside agency will not agree to pick up their prisoner, or if there are other complications, the officer may release the person.

An officer in a police vehicle without an MDC shall contact the police station office personnel by radio if the frequency is clear to check for warrants. If this option is not available, the arresting officer may contact the citywide radio channel dispatcher to check for warrants.

Once the dispatcher has advised that officer that the person has a SETCIC hit, the dispatcher shall advise the arresting officer's division. It shall then be the responsibility of the designated division desk officer to confirm the warrant, place a "locate" in the SETCIC system, and advise the arresting officer by radio communication that the warrant has been confirmed.

Uniformed divisions (e.g. Vehicular Crimes, Tactical Operations, and Special Operations) shall contact their respective divisional

DEFENDANTS_HUGHES_000097

| General Order #500-17 | ISSUE DATE: February 20, 2012 | PAGE: #4 |

office personnel for SETCIC warrant confirmation. Non uniformed investigative division officers, (e.g. Robbery, Auto Theft, Homicide, Burglary and Theft, and Juvenile) shall check SETCIC warrants through the Homicide Division administrative office 24 hours a day.

All other division personnel shall contact their respective divisions for warrant confirmation. Prisoner exchanges and booking shall be handled in the same manner as indicated in this general order.

## Police Station Lockup Procedures

Police stations that have lockup facilities shall handle SETCIC prisoners in their own facility until the prisoner is bonded out or transferred to a City jail. Police stations shall handle bonding of SETCIC prisoners in the same manner as the Jail Division. Police stations may hold the prisoner until a normal transfer is made, but not to exceed 8 hours according to SETCIC policy. If the wanted person is transported to an HPD jail facility, a *Houston Police Department Jail Booking Blotter* form and the *SETCIC Prisoner Transfer Agreement* form (forms located at the lockup facilities), along with the warrant validation telex, or facsimile, shall accompany the prisoner.

## Documentation for Transfers in the Field

In all cases in which the arresting officer transfers the wanted person in the field to the warrant issuing agency, the law enforcement officer who receives the wanted person shall sign the *SETCIC Prisoner Transfer Agreement* form, which states that the law enforcement officer from the originating warrant agency shall agree to fulfill the requirements of Article 15.17 of the Texas Code of Criminal Procedure. This form shall be completed by the arresting officer when prisoner exchanges are made

in the field, or at the warrant issuing agency's facility.

When a wanted person is released in the field to the warrant issuing agency, or is transported to a City jail facility, the HPD arresting officer shall complete a *vehicle disposition* form per General Order 600-10, **Towing** and dispose of the prisoner's vehicle according to HPD guidelines.

## Houston City Jail Detention and Bonding Procedures

All City jails shall accept SETCIC prisoners by officers or transfers from police stations and hold prisoners for a maximum of 8 hours according to SETCIC policy. Additionally, the Jail Division and police station lockup facilities shall accept only a computer verification of bond payment by the issuing agency for proof that bonding requirements have been met. If bond verification is received by the police station, or a City jail, the person shall be released. The *SETCIC Prisoner Transfer Agreement* form, the warrant validation telex or facsimile, and the computer verification of bond payment, if the person is released on bond, shall be stored at the HPD division where the arresting officer is assigned for a retention time of two years.

## 6    RELATED GENERAL ORDERS

500-06,  **Disposition of Arrested Juveniles**
500-08,  **Required Booking Information and Hold Procedures**
600-10,  **Towing**

Charles A. McClelland, Jr.
**Chief of Police**

DEFENDANTS_HUGHES_000098

# General Order

**Houston Police Department**

| ISSUE DATE: | NO. |
|---|---|
| November 29, 2016 | **600-10** |

REFERENCE: Supersedes all prior conflicting Circulars and Directives, and General Order 600-10, dated February 17, 2012

## SUBJECT: TOWING

### POLICY

When dealing with wreckers, towing of vehicles, and storage lots, employees shall not take action contrary to the City of Houston Code of Ordinances dealing with *Auto Wreckers and Storage Yards* (Chapter 8, Article III). Furthermore, employees shall follow the procedures indicated in this policy when handling such situations.

This General Order applies to all employees.

### DEFINITIONS

***Auto Wrecker.*** Any vehicle so designated by state law and used for the purpose of towing, carrying, pushing, or otherwise transporting any motor vehicle. Also referred to herein as wrecker.

***City Wrecker.*** A wrecker owned or contracted by the City. These wreckers are used to tow department vehicles, other City vehicles with memorandums of understanding with HPD, or crime scene vehicles when authorized by the officer in charge of the scene.

***Commercial Vehicle.*** A truck, truck tractor, trailer, or combination thereof with a gross vehicle weight (GVW) rating of 10,001 pounds or greater.

***Consent Tow.*** A tow by a wrecker that, prior to the arrival of an officer, is summoned or called to the scene by the owner or operator of the vehicle or by a person who has possession, custody, or control of the vehicle.

***Contract Auto Wrecker.*** Any auto wrecker properly registered with the City of Houston under a Police Authorized Tow Service Agreement (PATSA), displaying the correct City of Houston wrecker medallion, and properly equipped to tow another vehicle.

***Freeway.*** The entire public right-of-way of a divided, controlled-access highway located within the city of Houston, including its roadway lanes, entrance and exit ramps, shoulders, and unimproved areas, but excluding frontage or service roads.

***Heavy-Duty Wrecker.*** A wrecker having a chassis rated at five tons or greater by the vehicle manufacturer and a winch rated by the winch manufacturer as capable of lifting a minimum of 30,000 pounds.

***Hooked Up.*** According to the Texas Department of Licensing and Regulation, when a vehicle is fully prepared for transport by attachment to a wrecker, lifted in tow position, with tow lights and safety chains attached and, if required, placed on a dolly in a raised position and the only thing remaining is for the tow operator to drive away.

***Incident.*** For the purpose of this General Order, an unplanned randomly occurring traffic event that adversely affects normal traffic operations.

***Incident Management Tow.*** Any tow of a vehicle in which the wrecker is summoned to the scene of a traffic accident or to an *incident*, including the removal of a vehicle, commercial cargo, and/or commercial debris from a crash or incident scene.

***Large Vehicle.*** A motor vehicle or a trailer in excess of eight feet in height at the highest point or in excess of 22 feet in length. This definition also includes a coupled motor vehicle and trailer having a combined length in excess of 30 feet.

**DEFENDANTS_HUGHES_000109**

**Nonconsent Tow.** A tow of a motor vehicle that is an *incident management tow* or a *private property tow* and is not a consent tow.

**Owner.** The owner of the vehicle towed or transported or any driver of the vehicle who reasonably appears to have authority to operate the vehicle.

**Police Authorized Tow.** Any tow authorized by a law enforcement officer. These tows are considered nonconsent tows.

**Police Private Storage Lot.** Any private storage lot operating under a current and valid agreement with the City of Houston.

**Police Scene.** For the purpose of this General Order, a scene requiring a police investigation, such as a vehicle crash, stolen vehicle recovery, or custodial arrest, or any other place a vehicle is subject to removal by a law enforcement officer. Tows from a police scene are considered nonconsent tows.

**Private Property Tow.** Any tow of a vehicle authorized by a parking facility owner without the consent of the owner or operator of the vehicle.

**SafeClear.** Under section 8-127 of the City of Houston Code of Ordinances, individual wrecker operators may establish a SafeClear Freeway Tow Agreement (SafeClear) with the City of Houston to provide towing or emergency road service on designated freeway segments.

**Special Incident.** A traffic scene that cannot be cleared by using only the services of a wrecker because of debris, special loads, or a vehicle of unmanageable size or condition (e.g., dislodged road barriers, truck rollovers, and lost loads of pipe, grain, gravel, or fuel).

**State Highway.** An interstate highway, U.S. highway, state of Texas highway, farm-to-market road, state spur, service roads of such highways, or any other type of road that is maintained by the Texas Department of Transportation (TxDOT). This also includes the intersection of other types of roads with *state highways*.

**Tow.** The removal from public or private property of a vehicle, including a trailer towed by the vehicle, by means of an auto wrecker only.

**Towing Zone.** An area in the city of Houston within towing boundaries designated by the department's Auto Dealers Detail to establish areas of responsibility for *contract auto wreckers*. Each *contract auto wrecker* is authorized to tow in one *towing zone* only (see section 19 of this General Order for exceptions). The *towing zone* boundary designations are kept on file in the Auto Dealers Detail.

**TxDOT Scene.** A *special incident* occurring on specifically designated *state highways* and requiring a *heavy-duty wrecker* or other support equipment to clear the roadway of vehicles and/or debris (e.g., a rollover truck or spilled load).

**Vehicle Examination Building (VEB).** The location used to process vehicles for forensic evidence. The VEB is operated by the Houston Forensic Science Center.

**Vehicle Impound Lot (VIL).** The vehicle storage facility located at 1300 Dart and maintained by the department's Property Division.

**Wrecker Driver License.** Wrecker drivers performing nonconsent tows shall have a wrecker driver license issued by the City of Houston. The three categories of wrecker driver licenses issued are as follows:

a. **Private Property License:** This license permits tows only from private property under a valid contract. The license shall state "Private Property Only." The license holder cannot tow from any police scene unless called by the vehicle custodian.

DEFENDANTS_HUGHES_000110

General Order #600-10 | ISSUE DATE: November 29, 2016 | PAGE: #3

b. **Police Authorized Tow Service Agreement (PATSA) License:** This license permits tows from private property under a valid contract and from police scenes with the exception of freeways. The license holder is allowed to tow from freeways if requested by a law enforcement officer or vehicle custodian.

c. **SafeClear License:** This license permits tows from any police scene including on and off the freeway. It also permits tows from private property under a valid contract.

## 1 USE OF WRECKERS

Vehicle owners may contact any wrecker service to tow their vehicles. Except as indicated otherwise in this General Order, officers shall always use *contract auto wreckers* for *police authorized tows*. Officers authorizing the towing of vehicles shall ensure they are moved quickly and safely.

### Emergency Use

Under emergency conditions or when there are more disabled vehicles than wreckers present, officers are empowered to order any *contract auto wrecker* to remove any wrecked or disabled vehicle a sufficient distance to clear the street for traffic.

When officers authorize tows under the above circumstances, a *Houston Police Department Record of Vehicle Disposition/Wrecker Slip* (wrecker slip) shall be completed and officers shall sign the slips as nonconsent tows. See section 4 of this General Order for information on wrecker slips.

### Towing from a Police Scene

Officers shall not allow wrecker drivers to solicit any business on a police scene. The City of Houston Code of Ordinances makes it unlawful for any wrecker driver to solicit the business of towing, removing, or repair-ing any abandoned or disabled vehicle at a police scene by words, cards, circulars, or gestures until such time as law enforcement officers have departed from the scene.

When officers authorize *incident management tows*, the following steps shall be followed:

a. Officers shall ask the vehicle operator where he or she would like to have the vehicle towed.

b. Officers shall direct the wrecker driver to deliver the vehicle where the owner requested.

c. If the owner is capable and willing to decide on a destination location for the vehicle, officers shall obtain the owner's signature in the *Owner/Operator's Destination Authorization for Nonconsent Tow* section of the wrecker slip.

d. If the owner is not capable or is unwilling to decide on a destination location, officers shall have the vehicle towed as a nonconsent tow by a *contract auto wrecker* to a *police private storage lot* in the police scene's *towing zone*.

### Towing Fees

For consent tows the City of Houston does *not* regulate towing, towing fees, storage fees, or towing destinations.

For nonconsent tows the fee is set by City ordinance. There is an hourly rate prescribed for *heavy-duty wrecker* tows and a set fee for all other types of wrecker tows.

If the vehicle owner is present at or arrives at the scene where an auto wrecker is attempting to tow a vehicle and the vehicle owner does not desire the vehicle to be towed, no charge shall be made and the vehicle owner shall be allowed to take possession of the vehicle if the vehicle has not been hooked up by the auto wrecker.

DEFENDANTS_HUGHES_000111

If the motor vehicle has been lawfully *hooked up* to the wrecker but not towed from the scene and the owner does not desire the vehicle to be towed, a half-price towing fee (a.k.a. drop fee) will apply. In this case, the vehicle shall be released to the vehicle owner upon payment of one-half the regular towing fee. A wrecker driver is required to tell the owner when the drop fee applies. If the vehicle has not been completely *hooked up*, the wrecker driver must drop it for no charge.

## 2 CONTRACT AUTO WRECKER REGULATIONS

### Wrecker Driver Requirements

Wrecker drivers performing nonconsent tows from a police scene shall have a City of Houston wrecker driver license prominently displayed on their person. The company identified on the driver license shall match the company displayed on the wrecker for the license to be valid.

### Towing Zones

*Contract auto wreckers* shall be registered for only one *towing zone* and may be utilized under PATSA only in that zone except as indicated otherwise in this General Order.

## 3 POLICE SCENES

At police scenes, officers shall ensure all wreckers:

a. Park as close to the curb as possible.

b. Not interfere with the flow of traffic.

c. Not park within a distance of 100 feet from a wrecked or stalled vehicle.

No wrecker driver is to remove or tamper with vehicles at a scene of a crash before the police investigation is complete. Wrecker drivers who tow vehicles from a scene are responsible for clearing the street and removing all debris, parts, or glass at no additional charge to the owners. Officers shall ensure the wrecker driver complies with these requirements.

No person shall be allowed to ignite any flammable object within a distance of fifty feet in any direction from a crash scene or enter into the area with any type of burning material.

### Requesting a Wrecker

To avoid any appearance of impropriety, officers shall make a general broadcast (GB) whenever they need a wrecker. Officers shall *not*:

a. Make prior arrangements or show favoritism in any form with any wrecker company or driver.

b. Recommend any wrecker service (e.g., company, repair facility, towing location, or type of wrecker) to any owner.

c. Accept gifts, gratuities, or favors of any kind from wrecker drivers or wrecker owners.

d. Allow the number of wreckers at a scene to exceed the number required for the vehicles involved plus two additional wreckers to warn oncoming traffic.

## 4 WRECKER SLIPS

A *Houston Police Department Record of Vehicle Disposition/Wrecker Slip* (wrecker slip) is a four-part carbonless form produced by the department's Print Shop and distributed to divisions by the Auto Dealers Detail. Officers shall be held personally responsible for completing a wrecker slip in legible print for all tows from police scenes. Officers shall not allow non-police personnel to

DEFENDANTS_HUGHES_000112

**General Order** #600-10 | **ISSUE DATE:** November 29, 2016 | **PAGE:** #5

fill out any portion of the wrecker slip except the signature line. Officers shall ensure:

a. If the vehicle has been reported stolen, the reportee's name, address, and telephone number are listed on the wrecker slip.

b. Any *police private storage lot* location listed on the wrecker slip is the exact location of the storage facility. The exact location according to department records is the only address the computer will accept when towing information is entered into the department's records management system (RMS). The exception to this is in the completion of the wrecker slip for a seized vehicle. The location of the storage for a seized vehicle shall be listed as: 1200 Travis.

If the computer rejects the entry because the officer placed an improper address on the wrecker slip, it shall be the responsibility of the officer authorizing the tow to immediately correct the mistake (regardless of whether the officer is on or off duty).

c. The vehicle identification number (VIN) is listed on the wrecker slip. When the VIN cannot be located or is unreadable, "unavailable" shall be entered in the VIN field. This is a mandatory field on the *Towed Vehicle* entry screen.

d. When arresting a driver for driving while intoxicated (DWI), to check the "Other" designation on the wrecker slip and write "DWI - unable to consent" underneath.

There are no exceptions for completing a wrecker slip on each vehicle towed from a police scene. Every vehicle towed from a police scene shall be documented in RMS. A vehicle towed to a location requested by the vehicle owner shall be listed as a stored vehicle on the *Towed Vehicle* entry screen. The employee number of the person entering the information into RMS shall be noted

in the *Data Entry Control Number* field of the wrecker slip. However, if the information is entered via mobile computing device (MCD), the transaction number shall be noted in that field instead.

**Auto Dealers Detail's Responsibilities**

On a weekly basis, divisions shall send wrecker slips to the department's Auto Dealers Detail (ADD), which shall maintain a physical file of the wrecker slips for at least two years.

On an annual basis, ADD shall review the wrecker slip form and coordinate any needed revisions with the department's Inspections Division. ADD shall then send the revised wrecker slip form to the department's Print Shop for issuance to divisions as needed.

5 **VEHICLE TOWING INFORMATION**

Officers shall enter information for *police authorized tows* into RMS within one hour following the time the vehicle was towed. Officers shall enter the tow information in the Towed Vehicle/SafeClear/Abandoned Vehicle section of RMS or in an incident report if one is required.

When entering towing information about a vehicle believed to be stolen or stripped, officers shall provide on both the wrecker slip and the incident report complete and accurate information regarding missing vehicle parts, damage to the vehicle, and other pertinent details.

6 **HEAVY-DUTY WRECKERS**

The following guidelines apply to all scenes involving a *heavy-duty wrecker* unless indicated otherwise in the below subsection, "TxDOT Scenes." When a *heavy-duty wrecker* is needed for a nonconsent tow, the officer in charge of the scene shall allow

DEFENDANTS_HUGHES_000113

General Order #600-10 | ISSUE DATE: November 29, 2016 | PAGE: #6

only a properly permitted and equipped *heavy-duty wrecker* to tow the vehicle.

Officers using *heavy-duty wreckers* shall observe the following guidelines unless a clear and present emergency exists.

a. If the scene is on a *state highway*, officers shall make a determination as to whether the scene is a *special incident.* In such cases, the officer shall determine, with the assistance of the dispatcher, if the address would result in the incident being designated as a TxDOT scene. Questions regarding this can be referred to TxDOT personnel at Houston TranStar.

b. If the owner of the involved vehicle does not indicate a *heavy-duty wrecker* preference, officers shall ask the police dispatcher to dispatch a *heavy-duty wrecker.* The officer in charge of the scene shall allow only the dispatched, *heavy-duty wrecker* to tow the vehicle.

c. Officers shall allow only a *heavy-duty wrecker* to tow a disabled heavy-duty vehicle.

d. When a *heavy-duty wrecker* is dispatched, it shall be required to give its company name and an estimated time of arrival that is not to exceed 45 minutes. This information shall be relayed to the officer in charge of the scene.

e. If the dispatched wrecker has not arrived by the estimated time, the dispatcher, at the officer's request, shall ask the *heavy-duty wrecker* company for an explanation concerning the delay and for a new estimated arrival time. This information shall be relayed to the officer in charge of the scene who shall decide if it is reasonable to continue to wait for the dispatched wrecker or whether another *heavy-duty wrecker* shall be dispatched. If a second wrecker is dispatched, only this wrecker shall be

allowed to tow the vehicle for which it was called.

f. When complicated towing situations are encountered, officers are advised to consider the counsel of the *heavy-duty wrecker* driver. If the scene officer disagrees with the wrecker driver's suggestions, a supervisor shall be summoned to the scene. For further assistance the officer can contact the on-duty or on-call ADD officer.

**TxDOT Scenes**

At Texas Department of Transportation (TxDOT) scenes, TxDOT is in charge of *heavy-duty wreckers*, necessary support equipment, and the cleanup of major debris. If a TxDOT official arrives at an incident involving a *state highway* and deems it to be a TxDOT scene, the scene shall be considered as such by the department.

Officers who need the services of *heavy-duty wreckers* or other support equipment to clear a roadway at TxDOT scenes shall observe the following guidelines unless a clear and present emergency exists.

a. Only companies authorized by TxDOT may clear a TxDOT scene of heavy-duty vehicles or major debris.

b. TxDOT officials shall be considered in charge of the cleanup when they are on the scene or in communication with dispatchers or investigating officers. Officers and dispatchers shall cooperate with TxDOT officials coordinating scene cleanup. Officers shall retain control of the scene or delay scene cleanup as necessary to preserve a crime scene or its evidence.

The procedures for *contract auto wreckers,* which may also be needed to tow other vehicles from a TxDOT scene, remain the same as indicated elsewhere in this General Order for non-TxDOT scenes.

DEFENDANTS_HUGHES_000114

A *heavy-duty wrecker* company dispatched by TxDOT shall not determine which wreckers tow other vehicles from TxDOT scenes.

## 7 HANDLING PRISONERS' VEHICLES

### Vehicle Disposition

An arresting officer shall always document the disposition of a prisoner's vehicle on a wrecker slip.

Prisoners are responsible for the disposition of their vehicles unless such vehicles are subject to a nonconsent tow or seizure or are needed as evidence. In all other instances, an officer shall release a prisoner's vehicle to a passenger or third party if all of the following apply:

a. The vehicle is mechanically safe and not stolen or evidence in a crime, and there is proof of financial responsibility for the vehicle.

b. The prisoner wishes to release the vehicle to a passenger or third party that is at the scene, not under arrest, in possession of a valid driver license, and not intoxicated.

An officer may, at the officer's discretion, give an arrested person the option of leaving the arrestee's vehicle at the scene of the arrest or location. The vehicle may be left at the scene if it is legally parked. If the vehicle is to remain on private property, permission shall be obtained from the property's owner or manager.

In any of the above scenarios, officers shall note all pertinent information on a wrecker slip and all applicable forms and reports. This information includes, but is not limited to:

c. Any location where the vehicle was left.

d. Any location to which the vehicle was towed.

e. The complete information on any other involved persons.

f. Any involved private property owner's information.

The prisoner shall sign the wrecker slip in the appropriate place to indicate the choice of disposition.

If the prisoner is not present or is unwilling or unable to select from the disposition alternatives, the arresting officer shall have the vehicle towed as a nonconsent tow by a *contract auto wrecker* to a *police private storage lot* in the arrest scene's *towing zone*.

### Driving a Prisoner's Vehicle

Officers shall not operate a prisoner's vehicle unless an emergency or exigent circumstance exists. If an officer must move a prisoner's vehicle, it shall be moved only as far as necessary to make the situation safe or to accomplish the police mission. Officers shall not drive any type of vehicle they are not licensed by the state of Texas to operate.

### Vehicle Inventory

Whenever an officer authorizes a nonconsent tow of a prisoner's vehicle, the officer shall personally conduct an inventory of items in the vehicle including any and all containers not secured by a lock and shall complete a wrecker slip. A detailed inventory list shall be written on the wrecker slip. Officers shall be specific in identifying inventoried items. General terms such as "miscellaneous property" shall not be used.

### Inventory of Seized Vehicles

All personal property shall be removed from a seized vehicle prior to it being towed by an approved *contract auto wrecker*. Everything not belonging to the vehicle shall be removed and handled in accordance with

DEFENDANTS_HUGHES_000115

General Order #600-10 | ISSUE DATE: November 29, 2016 | PAGE: #8

General Orders 700-01, **Property/Evidence Control Regulations** and 700-03, **Inventory of Prisoner's Property**.

8  **STOLEN VEHICLES**

An officer may contact the Records Division's Staff Review Section if the officer:

a. Has questions regarding entering information on the vehicle screen in RMS.

b. Has reported a stolen or recovered vehicle that urgently needs to be entered into or removed from TCIC/NCIC. The incident report must be "owner approved" before Staff Review is contacted.

c. Has reported a stolen vehicle that is equipped with a LoJack® vehicle recovery system.

If an officer needs to report towing information for a stolen vehicle and is not able to do so through RMS, the officer shall contact the Records Division's Auto Theft Section or their tow line.

**Records Division's Responsibilities**

If an officer recovers a vehicle reported stolen in the city limits of Houston, Records Division shall first attempt to contact the complainant by telephone. If unable to make contact by telephone, Records Division shall immediately send a letter by regular mail to the complainant. Notification for recovery of a vehicle stolen outside the city limits of Houston shall be sent by the Records Division to the outside agency of concern via radiogram routed through the Message Center in the Emergency Communications Division. Records Division shall document all methods of contact or attempted contact with the complainant either in the narrative of a supplement to the incident report or by modifying the vehicle tab in RMS.

9  **TOWING STOLEN VEHICLES**

Whenever a stolen vehicle or a vehicle suspected of being stolen is recovered (whether or not it is occupied or operable), the re-recovering officer shall:

a. Attempt to contact the owner or complainant. The contact or attempted contact shall be documented in the narrative of the officer's report.

b. Advise the owner of the location and condition of the vehicle and determine how the vehicle is to be handled.

c. Attempt to lift or have fingerprints lifted at the scene before the vehicle is removed.

d. Have the vehicle removed as a nonconsent tow if the owner cannot be contacted or indicates no preference for disposition.

If the owner or complainant is contacted and indicates a preference for disposition of the vehicle, the officer shall wait no longer than 45 minutes for the owner or the owner's towing choice to arrive. If the owner or the towing choice has not arrived within the allotted time, the officer shall have the vehicle removed as a nonconsent tow unless the owner has chosen to leave it at the scene.

**Vehicles Stolen Outside of Houston**

In addition to the above procedures, officers shall follow the below guidelines when a vehicle stolen outside the city limits of Houston is recovered inside the city limits of Houston. The recovering officer should have the vehicle towed by a *contract auto wrecker* to a *police private storage lot*. If the reporting agency requests a forensic examination, the officer shall request a *City wrecker* to transport the vehicle to the appropriate facility. The officer should also provide the vehicle's storage location to the reporting agency that submitted the TCIC/NCIC stolen entry.

DEFENDANTS_HUGHES_000116

General Order #600-10 | ISSUE DATE: November 29, 2016 | PAGE: #9

NOTE: Vehicles stolen outside the city limits of Houston and recovered inside Houston shall NOT be towed to the Vehicle Examination Building (VEB).

## Reports

Whenever a vehicle is found and it is stolen or suspected of being stolen, officers shall do one of the following, as applicable:

a. Generate a report titled *Investigation Auto Theft* and indicate within the body of the report the vehicle's disposition and why it is believed to be stolen.

b. Supplement the stolen vehicle report (or initiate a report if the theft occurred outside of Houston).

## Private Property Tows

When a suspected stolen vehicle is found on private property and the vehicle owner cannot be contacted, it is up to the private property owner or manager to remove the vehicle as a *private property tow*. As a courtesy to the owner or manager, officers may summon a wrecker, but shall not tow the vehicle under police authority except as outlined in section 11 of this General Order. In other circumstances, officers shall consult a supervisor to determine if any further action shall be taken.

## 10 SUBMERGED VEHICLES

Whenever any vehicle is submerged in water, the HPD Dive Team may use a *heavy-duty wrecker* to remove it.

## 11 VEHICLES WITH ALTERED VEHICLE IDENTIFICATION NUMBERS

If an officer locates an unoccupied vehicle in which the VIN has been removed, obliterated, or changed, the officer shall have the vehicle towed by a *City wrecker* to the Property Division's Vehicle Impound Lot (VIL). The officer shall follow all procedures described above for the disposition of stolen vehicles. If the vehicle is occupied, is involved in a TxDOT controlled scene, cannot be stored at the Property Division's VIL, or is claimed to be owned by a person, the officer shall consult a supervisor in the Auto Theft Division before taking further action.

When an officer receives a call from a wrecker driver wanting to tow a vehicle from private property and reports the vehicle's VIN has been removed, obliterated, or changed, the officer shall inspect the vehicle. If the VIN has been removed, obliterated, or changed, the officer shall follow the procedures as described in the previous paragraph. The officer shall also file an *Investigation Auto Theft* report.

## 12 BURNED VEHICLES

A patrol unit shall be dispatched to each vehicle fire at the same time the Houston Fire Department is notified. If arson is suspected, the Fire Department will notify its Arson Division. If police personnel arrive before arson investigators, the scene shall be secured as in other criminal investigations. After the arson investigation has been completed, the police officer in charge of the scene shall have the vehicle towed to the department's VIL by a *City wrecker*.

Officers shall also make a supplement recovery report, initiate an original theft report, or make an *Investigation Auto Theft* report if the vehicle has not been reported as a stolen vehicle. Officers shall provide arson investigators with the department's incident number and shall obtain the Arson Division's case number for inclusion in the initial or supplement report.

When no criminal activity is suspected and a burned vehicle can be identified by the VIN, the officer on the scene shall contact the Auto Theft Division for authorization for

DEFENDANTS_HUGHES_000117

the burned vehicle to be towed to a location other than the VIL. Upon receiving such authorization, the burned vehicle shall be towed in a manner consistent with this General Order.

## 13 HOLD VEHICLES

A hold shall not be placed on a vehicle unless authorization has been provided by the appropriate division. Vehicles placed on hold shall NOT be towed to a *police private storage lot*. All vehicles marked "hold" shall be transported by *City wrecker* to the department's VIL. Vehicles authorized for examination or processing for physical evidence shall be transported to the VEB by a *City wrecker* (see General Order 700-01, **Property/Evidence Control Regulations**, for instructions for submitting vehicles to the VEB). Once the examination has been completed the vehicle shall be transported to the VIL where it shall be stored until the hold is released.

If a vehicle needing to be held is found to have already been towed and stored at a *police private storage lot* before a hold was authorized, the vehicle shall be transferred by *City wrecker* from the *police private storage lot* to the VEB or the department's VIL, as applicable. The storage lot operator will maintain care of the vehicle until such transfer occurs. The vehicle owner must pay the *police private storage lot* operator prior to the release of the vehicle from police custody. If the owner does not reclaim the vehicle, the vehicle can be sold at auction and the storage lot operator's fees paid with the proceeds of the sale as outlined in state law.

Vehicles being held for court disposition shall be held at the VIL.

It is the responsibility of the division authorizing a hold to maintain a log of all vehicles being held by that division and to ensure that all vehicles remain on hold until no

longer needed. It shall be the sole responsibility of the division placing a hold on a vehicle to monitor the days in storage and update the vehicle hold on time. If a division fails to update a hold on time, the vehicle may be released by the VIL without contacting the holding division.

Vehicles marked "hold" may be released by the VIL or the concerned division only. If a vehicle can be released sooner than the holding period authorized, the holding division shall immediately complete a *Vehicle Release* form (available on the department's Intranet Portal or at the VIL), provide the form to the VIL or to the vehicle owner or representative, and notify the VIL that the vehicle may be released.

### Wrecker Slip on Vehicles Marked Hold

A wrecker slip shall be completed on all hold vehicles. A legible copy of the wrecker slip shall accompany the vehicle to the VEB or the department's VIL. The following four entries on the wrecker slip are mandatory and shall be completed when a hold is placed on a vehicle.

a. Name of division requesting the hold

b. Incident number

c. Name and employee number of the officer authorizing the hold

d. Reason for the hold

### Information Only Holds

In order for a division to authorize a hold, the vehicle must be wanted for examination or seizure. No vehicle, other than vehicles found to be involved in a Failure to Stop and Render Aid (FSRA) crash, shall be placed on hold for obtaining valid information on the owner.

If an investigator wants to be notified when someone attempts to recover a vehicle from

DEFENDANTS_HUGHES_000118

**General Order #600-10** | **ISSUE DATE:** November 29, 2016 | **PAGE: #11**

the VEB, the VIL, or a *police private storage lot* (e.g., from a FSRA crash), the notation "Information Needed by Investigator" shall be placed on the top of the wrecker slip. The officer shall then obtain an incident number and complete the wrecker slip as an information only hold.

The VEB, VIL, and *police private storage lot* operators shall collect owner information on any stored vehicle prior to releasing it. By the terms of their agreements, all *police private storage lot* operators shall notify the concerned division when someone attempts to recover a vehicle flagged with an information only hold. Once notified, the concerned division shall take immediate action to obtain the needed information. Vehicle owners shall be allowed to obtain their vehicles from storage lots without undue delay.

## 14  SEIZED VEHICLES

The City of Houston has a towing company under contract for the towing and storage of all seized vehicles. When a vehicle is identified for seizure, officers shall contact the dispatcher on the appropriate channel and request a wrecker for a seized vehicle. Only the approved contracted towing company and not a City owned wrecker shall be utilized for these tows. Officers shall continue to complete a wrecker slip for the seized vehicle, marking it "07 Other Reason: Seizure." Officers shall enter "1200 Travis" as the location of storage. See General Order 700-08, **Asset Seizure and Forfeiture**, for additional information regarding the towing and storage of seized vehicles.

## 15  SUSPICIOUS VEHICLES

A suspicious vehicle is any vehicle the investigating officer (at the time the incident report is made) has reason to believe was involved in an offense, but no suspects are known to be directly related to both the offense and the vehicle.

Any vehicle that does not meet the above criteria and does not fit any of the other categories in the *Vehicle* section of the incident report shall be listed in the *Narrative* section of the report.

It is the responsibility of the appropriate investigative division to supplement incident reports to maintain a suspicious vehicle listing. These supplement reports shall be submitted every 60 *calendar* days or sooner.

If a suspicious vehicle listing has not been supplemented in 60 *calendar* days, the Houston Crime Information Center shall automatically downgrade the listing to *Canceled Suspicious* after an additional two weeks has elapsed.

Suspects shall not be arrested simply based on the computer status of the vehicle they are occupying, unless authorization has been given by the primary division. If the vehicle owner is arrested, the vehicle shall be handled according to guidelines outlined in this General Order.

## 16  WANTED VEHICLES

Suspects directly related to a suspicious vehicle must be listed in an incident report before the vehicle can be classified as a wanted vehicle. When a wanted vehicle is located, any occupants in the vehicle shall be detained while the officers contact the appropriate division for instructions. If authorization is obtained from the contacted division, the officers shall arrest the occupants. If the vehicle owner is arrested, the vehicle shall be handled according to the guidelines outlined in this General Order.

If there are no occupants in the wanted vehicle, the vehicle shall be kept under surveillance and the appropriate division contacted to determine whether the vehicle shall be towed or kept under surveillance so the occupants can be apprehended.

DEFENDANTS_HUGHES_000119

General Order #600-10 | ISSUE DATE: November 29, 2016 | PAGE: #12

## 17 TOWING VEHICLES IN OTHER SPECIFIC SITUATIONS

Officers regularly face a variety of other situations that require a vehicle to be towed. When situations arise and there is no clear directive, officers shall contact ADD for directions. For the situations listed below, officers shall adhere to procedures as follows.

### Vehicle Creating a Traffic Hazard

When a vehicle is blocking a moving lane of traffic or is causing an obvious traffic hazard, the officer shall have the vehicle removed as a nonconsent tow.

### Abandoned Vehicle (No Traffic Hazard)

When a vehicle is parked on a public street, but presents no traffic hazard, there shall be a minimum of two parking tickets issued against the vehicle for being parked in excess of 24 hours on a public street before the vehicle is removed as a nonconsent tow.

### Time Limit for Trailer Parking

Trailers of any kind (e.g., semi, pole, or house), either attached or unattached to a motor vehicle, may be towed if left on a public street of the city for a period of time in excess of two hours. The exception to this is if the trailer is in the process of being loaded or unloaded. These tows shall be considered nonconsent tows.

### Commercial Vehicle Parking

*Commercial vehicles* shall not be parked on the city streets between 0200 and 0600 hours. The exception to this is if the vehicle is in the process of being loaded or unloaded. These tows shall be considered nonconsent tows.

### Large Vehicle Restrictions

*Large vehicles* are not allowed to park on any street or highway in any residential district and shall be towed as nonconsent tows.

Exceptions to the above include any situation in which the vehicle is:

a. In the process of being loaded or unloaded.

b. Performing a service visit.

c. Leased or borrowed and parked for a period of not more than 72 hours.

### Abandoned or Junked Vehicle on Private Property

Vehicles on private property believed to be abandoned or junked shall be reported to City of Houston Division of Inspections and Public Service for their processing and handling.

### Vehicle Towed from a Freeway (SafeClear)

Officers are authorized to have a vehicle removed immediately from a major *freeway* including entrance or exit ramps, whether the vehicle is in a moving lane of traffic or not. These tows shall be considered nonconsent tows subject to the guidelines of SafeClear. Any vehicle towed from a police scene on a *freeway*, shall be towed by one of the following.

a. A SafeClear wrecker.

b. A tow operator who is called to the scene by the vehicle owner and who arrives at the location of such vehicle before the law enforcement officer in charge of the scene directs the removal of the vehicle. The tow operator may include, but is not limited to, an auto wrecker operated by an automobile club, insurance company, or other person having a contractual obligation to provide the vehicle owner with towing services.

DEFENDANTS_HUGHES_000120

General Order #600-10 | ISSUE DATE: November 29, 2016 | PAGE: #13

c. Any *contract auto wrecker* operator if a SafeClear wrecker is unavailable.

## Vehicle Left at Expired City Parking Meter

If a vehicle has been left for longer than five times the maximum time limit that may be purchased from the meter and has accumulated five tickets, the officer is authorized to have the vehicle removed as a nonconsent tow.

## Vehicle Left Downtown

A vehicle left downtown shall not be treated differently than any other vehicle authorized by a police officer to be towed as a nonconsent tow.

## Vehicle Towed From a Chop Shop

Situations involving chop shops, auto parts, major components of numerous vehicles, or other related auto theft issues may require a specialized wrecker with the equipment to service such an incident. When Auto Theft Division personnel determine a scene qualifies for the use of a specialized wrecker, they shall contact the dispatcher and request a wrecker via General Broadcast.

The approval of the use of this type of wrecker shall be authorized by an Auto Theft supervisor holding the rank of lieutenant or higher.

## Vehicle for Sale on Public or Private Property

Only ADD or specifically trained Differential Response Team officers shall tow vehicles for sale on public or private property.

## Residential Parking Permit Areas

State law and City ordinance allows City of Houston Parking Management Division employees to authorize the tow of vehicles illegally parked in tow away zones located in residential parking permit areas.

## 18 CONFLICT OF INTEREST

No employee shall have any ownership or interest in any wrecker or storage facility required to be permitted under the provisions of Chapter 8, Article III of the Houston Code of Ordinances.

## 19 EXCEPTIONS

Unless indicated otherwise in this section, City of Houston wrecker ordinances and the above department towing policies do not apply in any of the following situations.

a. The wrecker is owned by the owner of the vehicle being towed by the wrecker. This exception does not apply to wreckers merely under contract to the same owner. Officers shall ensure both vehicles are owned by the same person or company listed on the registration form or current bill of sale before allowing a wrecker to operate under this exception.

b. The vehicle is being towed as part of a lawful repossession pursuant to a request by the lienholder.

c. The wrecker's owner does not have a place of business in the city of Houston, the wrecker is not used to perform any nonconsent tows in the city of Houston, and the wrecker is operated in accordance with applicable state laws.

Wreckers operating under any of these exceptions shall still adhere to state law.

## Requesting City Wreckers After Hours

After hours and on holidays, employees requiring the services of a *City wrecker* shall contact the company under City contract via the dispatcher. Officers shall complete a wrecker slip and be mindful of chain of custody responsibilities. Officers shall obtain keys for the VEB or the department's VIL from the Property Division.

**DEFENDANTS_HUGHES_000121**

| General Order #600-10 | ISSUE DATE: November 29, 2016 | PAGE: #14 |

## Contract Auto Wrecker Exceptions

*Contract auto wreckers* are allowed to operate outside of their assigned *towing zones* in any of the following situations:

a. A vehicle owner calls the auto wrecker to the scene.

b. The officer in charge of the scene GBs for a *contract auto wrecker*. Officers are allowed to use or call *contract auto wreckers* out of their assigned *towing zones* only when one or more of the following situations exist:

   1. An emergency condition exists as stated in section 1, subsection "Emergency Use" of this General Order.

   2. The situation is a nonconsent tow, there are no area *contract auto wreckers* available, and no area *contract auto wreckers* shall become available.

## 20 DISPUTES BETWEEN WRECKER DRIVERS AND OFFICERS

Should a dispute arise between a wrecker driver and an officer at a police scene, officers shall adhere to the following guidelines:

a. Complaints regarding the officer's selection shall not be argued at the scene. No delay or disruption of the scene investigation shall be tolerated. Complaints may be made only after the scene has cleared. The officer's decision shall be subject to review by the appropriate authority.

b. Officers authorizing the tow shall contact their immediate supervisor to make the scene if warranted.

c. If needed, the on-scene officer or super-visor may contact ADD at its 24-hour telephone number.

d. If an on-duty or on-call ADD officer is contacted regarding an incident, the ADD officer shall review each situation to determine the most efficient and effective method to handle the incident.

e. An on-duty or on-call ADD officer shall be notified of any serious incident involving a wrecker company or wrecker driver. Examples include, any incident involving criminal activity, multiple City ordinance violations, or any incident the on-scene officer determines to be serious.

f. Officers shall not confiscate a wrecker driver license or City of Houston wrecker medallion. The suspension or revocation of wrecker driver licenses shall be handled by ADD.

g. Any complaint or dispute with a wrecker driver or wrecker company shall be communicated to the ADD using the *Police Officer's Wrecker Complaint* form available on the department's Intranet Portal.

## 21 RELATED GENERAL ORDERS AND REFERENCE MATERIAL

200-05, **Parking Regulations and Release of Towed Vehicles**
500-18, **Traffic Violations by Legislators and Military Personnel**
600-09, **Crash Investigations**
700-01, **Property/Evidence Control Regulations**
700-03, **Inventory of Prisoner's Property**
700-08, **Asset Seizure and Forfeiture**
800-07, **Criteria for Submitting Incident Reports**
800-08, **Auto Theft Reports**

The Texas Occupations Code Chapter 2308, Vehicle Towing and Booting

DEFENDANTS_HUGHES_000122

| General Order #600-10 | ISSUE DATE: November 29, 2016 | PAGE: #15 |

Code of Ordinances, City of Houston, Texas, Chapter 8, Article III, Auto Wreckers and Storage Yards

Martha I. Montalvo
Acting Chief of Police

DEFENDANTS_HUGHES_000123

# General Order

## Houston Police Department

| ISSUE DATE: | NO. |
|---|---|
| August 18, 2011 | **600-20** |

**REFERENCE:** Supersedes all prior conflicting Circulars and Directives, and General Order 600-20, dated May 15, 1996

**SUBJECT: CITIZEN REFERRALS**

## POLICY

Employees shall provide appropriate referrals to citizens regarding follow-up investigations. Employees shall not refer complainants to the District Attorney's Intake Section to file charges. This General Order applies to all employees.

## 1 PROCEDURAL GUIDELINES

Incident reports shall be prepared as required by General Order 800-07, **Criteria for Submitting Incident Reports**. Citizens requesting follow-up information shall be referred as listed:

a. Cases involving peace bonds or restraining orders shall be referred to a justice of the peace.

b. Questions regarding applying for a protective order shall be referred to the Family Criminal Law Division of the Harris County District Attorney's Office at 1201 Franklin, Houston, Texas.

c. Cases involving Class C misdemeanors (including traffic offenses) shall be referred to the City Prosecutor's Office in the Municipal Courts building at 1400 Lubbock, Houston, Texas.

d. Cases involving landlord disputes shall be referred to the Dispute Resolution Center of Harris County at 49 San Jacinto, Houston, Texas.

e. Cases involving hot checks shall be referred to the Check Fraud Division of the Harris County District Attorney's Office at 1201 Franklin, Houston, Texas.

f. All other cases shall be referred to the appropriate investigative division.

## 2 RELATED GENERAL ORDERS

600-06, **Family Violence**
600-33, **Social Services Assistance and Referrals**
800-07, **Criteria for Submitting Incident Reports**

Charles A. McClelland, Jr.
**Chief of Police**

DEFENDANTS_HUGHES_000124

# General Order

## Houston Police Department

| ISSUE DATE: | NO. |
|---|---|
| April 5, 2012 | **600-27** |

**REFERENCE:** Supersedes all prior conflicting Circulars and Directives, and General Order 600-27, dated December 29, 2011

## SUBJECT: PRELIMINARY AND FOLLOW-UP INVESTIGATIONS

### POLICY

The Houston Police Department shall establish guidelines for officers conducting preliminary investigations and for the disposition of follow-up investigations in order to provide efficient police services.

This General Order applies to classified employees only.

### 1 PRELIMINARY INVESTIGATIONS

It shall be the primary responsibility of the officer who was dispatched or who viewed an incident requiring police service to conduct the preliminary investigation. When an officer who is not assigned to a position responsible for answering calls for service views or is made aware of a crime, the officer shall contact the appropriate unit to handle the scene and contact any medical personnel if needed. If a conflict arises in determining which officer shall conduct the preliminary investigation, a patrol supervisor responsible for that area shall make the determination. The investigation shall include, but not be limited to, the following:

a. Ensure that any injured persons receive proper medical attention.

b. Observe and make note of all conditions, events, and remarks.

c. Establish whether a crime has been committed (when appropriate, consult with the district attorney's office of the respective county).

d. Secure the crime scene and protect evidence.

e. Locate and identify witnesses.

f. Interview the complainant(s) and witnesses.

g. Determine how the crime was committed.

h. Collect or arrange for collection of evidence.

In family violence cases, assaults, or any incident involving an injury, take photographs depicting the victim's injuries. If a camera is not available, all injuries shall be thoroughly described within an incident report.

i. Interrogate the suspect(s) only after consulting with the concerned division.

j. Effect an arrest if appropriate and possible.

k. Contact the appropriate investigative division from the scene as required by policy.

l. Complete all appropriate reports, documenting the incident fully and accurately.

In serious crimes such as homicides, aggravated assaults, kidnappings, or similar crimes, when an investigator from the concerned investigative division arrives on the scene, that investigator shall take charge of the investigation.

### 2 FOLLOW-UP INVESTIGATIONS

When immediate follow-up investigation provides a high probability the suspect can be arrested, the investigation may be continued by the patrol officer. Officers not otherwise authorized shall contact the

DEFENDANTS_HUGHES_000125

General Order #600-27 | ISSUE DATE: April 5, 2012 | PAGE: #2

concerned division prior to continuing the investigation. Officers must gain approval from the appropriate patrol supervisor prior to conducting a follow-up investigation that requires the officers to leave the district to which they are assigned. In those circumstances, the dispatcher shall be notified.

An officer from the concerned division along with the patrol division supervisor shall determine whether an extensive or time-consuming follow-up investigation is required. If the crime committed does require an extensive follow-up investigation, then the case shall be referred to the appropriate investigative division. The investigative division shall assume responsibility for all additional follow-up investigations on the case.

3   **HARRIS COUNTY TOLL ROAD AUTHORITY ALERT PLATES ENTRY**

By agreement HPD may utilize the Harris County Toll Road Authority (HCTRA) automated license plate recognition system to identify vehicles wanted in connection with serious crimes. Qualifying crimes are listed with the HCTRA *Alert Plates Entry* form available on the department's Intranet Portal.

If an officer has a complete license plate number for a vehicle associated with or wanted in connection with a violent criminal offense or other qualifying serious crime, the officer should contact a supervisor holding the rank of lieutenant or higher in the concerned investigative division for approval to use the HCTRA system. After hours, the officer may contact the Homicide Division duty lieutenant for approval. The lieutenant shall review the facts of the case, complete and sign the *HCTRA Alert Plates*

*Entry* form, and submit it to the Homicide Division duty lieutenant.

By agreement, an HPD Homicide lieutenant shall serve as liaison with HCTRA. The Homicide Division duty lieutenant shall review the form for accuracy and send it to HCTRA. If the vehicle is stopped by a law enforcement unit assigned to the toll road, an HPD police unit or investigator shall be immediately dispatched to take custody and control of the vehicle and the suspect.

When an officer becomes aware that a vehicle listed in the HCTRA automated license plate recognition system is no longer wanted, the officer shall immediately notify the Homicide Division Hold Desk. The Homicide Division duty lieutenant or designee shall immediately call the HCTRA dispatcher to have the license plate number removed from the system.

After a license plate number has been listed in the HCTRA system for seven days, the number is automatically removed from the system. If there is a need to keep the number in the system, a new request form must be submitted requesting the extension.

All requests to HCTRA for an alert plates entry or removal shall be documented in the concerned incident report.

Officers may contact Homicide Division for additional information and requirements for utilizing the HCTRA automated license plate recognition system.

4   **RELATED GENERAL ORDER**

800-07, **Criteria for Submitting Incident Reports**

Charles A. McClelland, Jr.
**Chief of Police**

DEFENDANTS_HUGHES_000126

CONFIDENTIAL

| General Order | ISSUE DATE: | NO. |
|---|---|---|
| **Houston Police Department** ⬭ | April 25, 2017 | **800-07** |
| | REFERENCE: Supersedes all prior conflicting Circulars and Directives, and General Order 800-07, dated September 13, 2016 | |

## SUBJECT: CRITERIA FOR SUBMITTING INCIDENT REPORTS

### POLICY

Incident reports shall be completed when an officer views or becomes aware of any activity that may indicate the occurrence of a crime or becomes aware of a suspicious incident with a potential terrorism connection. Incident reports shall be completed and submitted for review prior to the end of each shift.

This General Order applies to all employees.

### 1    EXCEPTIONS

Exceptions to this policy include certain misdemeanor thefts or criminal mischief incidents. Prior to arrival, officers who receive a call to a misdemeanor theft or criminal mischief case having no solvability factors (e.g., suspect, witness, or physical evidence), may request that the police dispatcher redirect the call either to the Teleserve Unit or to the "Online Police Report" via the department's website, if eligible. The police dispatcher shall examine the queue for the Teleserve Unit and if possible, redirect the call. The dispatcher shall be the final authority regarding these matters.

The primary duty of the Teleserve Unit is to take preliminary incident reports by telephone, which allows patrol units to be available for response to higher priority calls for service. Teleserve services "delayed report" calls that deal with lost or stolen property or willful damage to property in which there is no evidence to gather and there are no witnesses able to identify possible suspects. Teleserve shall not handle "In Progress" calls for service.
Teleserve Unit eligible calls include:

a.  Telephone Harassment / No Threat

b.  Theft – lost or stolen under $10,000

c.  Theft of Service

d.  Theft from Motor Vehicle

e.  Criminal Mischief

f.  Burglary of Motor Vehicle

g.  Burglary of Coin Operated Machine

h.  Auto Theft / LoJack

i.  Auto Theft / Investigation Auto Theft

**DEFENDANTS_HUGHES_000129**

CONFIDENTIAL

| General Order #800-07 | ISSUE DATE: April 25, 2017 | PAGE: #2 |
| --- | --- | --- |

j.  Forgery / Investigation Forgery

k.  Out of Jurisdiction / Long Distance

Under most circumstances, officers are not required to generate an incident report regarding civil matters. A first-line supervisor shall be contacted in all cases in which there is disagreement between a citizen and an officer regarding the generation of a report.

With the exception of City property, firearms, explosives, or circumstances addressed in section 6, *Suspicious Activity*, of this General Order, generating lost or stolen property reports for items believed to be lost rather than stolen, shall be left to the discretion of the officer.

When a loss involves credit cards, banking checkbooks, automated teller machine (ATM) cards, pagers, keys, or other items that can be devalued by closing accounts, discontinuing service, or changing locks, complainants shall be directed to notify the concerned company or financial institution. When a wireless device is stolen, officers shall contact the relevant investigative division prior to advising the complainant to terminate services associated with the device.

Nothing prohibits completing a lost or stolen property report if the officer feels the circumstances surrounding the loss support generating an incident report (e.g., sensitive documents, expensive items, driver licenses, or social security cards).

## 2  ONLINE POLICE REPORTS

WebCop is an online based self-reporting incident report writing system that allows citizens to file their own police reports for minor crimes with low solvability, no evidence, no witnesses, and no possible suspects. With this criterion in place, WebCop serves to help increase the efficiency of patrol and investigative operations by allowing officers more time to respond to and investigate higher priority incidents. WebCop eligible calls are limited to theft and criminal mischief reports for which the loss is less than $5,000 in value.

Online police reporting is intended as a convenience for citizens who wish to use the Internet to report certain crimes. Officers shall not direct citizens to the online police reporting application as a substitute for taking a report call or as a substitute for a walk-in transaction at a police facility.

## 3  SITUATIONS THAT ALWAYS REQUIRE AN INCIDENT REPORT

The following situations always require the creation and submission of an incident report:

a.  Felony or Class A or B misdemeanor.

b.  Family violence (see General Order 600-06, **Family Violence**).

c.  Hate crime (see General Order 600-37, **Hate Crimes**).

d.  Home Invasion.

DEFENDANTS_HUGHES_000130

CONFIDENTIAL

| General Order #800-07 | ISSUE DATE: April 25, 2017 | PAGE: #3 |
|---|---|---|

e.  Class C misdemeanor assault, trespassing, or trespassing on school property.

f.  Juvenile involvement of any type. Reports concerning a juvenile in custody or public service transportation shall be completed and entered before leaving the Juvenile Division.

g.  Threat of or actual bodily injury sustained by a citizen, suspect, or a police employee.

h.  Tagged property.

i.  Death of a person.

j.  Stolen vehicle.

k.  Response to resistance by an employee, (see General Order 600-17, **Response to Resistance**).

l.  Display of any weapon necessitating a police response.

m.  Rejection of a prisoner by the Jail Division for medical reasons.

n.  Suspicious activity, as listed in section 6 of this General Order.

o.  Contact with a diplomatic representative of a foreign government, (see General Order 500-15, **Contact with Representatives of Foreign Governments**).

p.  All incidents involving persons suspected of mental illness. If a mentally ill citizen has been handled more than once in any given *calendar* year for emergency detention, officers may supplement the original report if one exists.

q.  Lost firearms or explosives.

r.  Lost, stolen, or damaged City property (see General Order 400-18, **Responsibility for City and Other Government Property**).

s.  Trafficking of persons. For all incidents involving cases in which persons have been found and it is reported they were smuggled or trafficked, officers shall generate a report titled "Trafficking of Persons."

## 4   REPORTS AND APPROVAL IN THE RECORDS MANAGEMENT SYSTEM

### Incident Report Approval Time Frames (Patrol and Investigations)

Anytime an original or supplement incident report is created in the department's records management system (RMS), the owner of that report shall complete and Owner Approve (OA) the report by the end of the shift, with the exception of high priority reports (e.g., stolen or recovered vehicles, stolen or recovered license plates), which shall be Owner Approved immediately. Once an original or supplement incident report is Owner Approved, RMS automatically places the report in Supervisor Approved status. The Records Division shall leave the report in Supervisor Approved status for three *calendar* days to allow supervisors time to

DEFENDANTS_HUGHES_000131

CONFIDENTIAL

| General Order #800-07 | ISSUE DATE: April 25, 2017 | PAGE: #4 |
|---|---|---|

review the reports. Supervisors shall be responsible for the quality of work performed by their subordinates.

After a report has been OA and it is determined that corrections or modifications need to be made, the officer or supervisor can reopen the report for the modifications if it has not been frozen (FR) by Records Division. The system will allow a supervisor to send a follow-up request, if necessary. In this case, the supervisor would reopen the report for the user and send the user a follow-up request. If the supervisor does this, the recipient's employee number shall be entered on the form to ensure the author of the report receives the request.

After the initial three-*calendar*-day period, the report shall be frozen and transferred to RMS by the Records Division. Once the report has been frozen and transferred, it shall not be reopened and all changes or corrections shall then be done through a supplement.

**Unapproved Reports and Corrections**

All employees who enter incident reports in RMS shall log into the system daily to obtain any notification (e.g., follow-up requests) regarding their reports. If an employee receives notification that a report has been unapproved by either a supervisor or the Records Division, the report shall be corrected and OA by the end of the employee's shift, regardless of the due date listed on the follow-up request. Corrected and OA reports shall be frozen after three *calendar* days following the date the report was OA.

**Reports Created in Error**

If an incident report was created in error (e.g., incorrect incident number was used), whether it is an original or a supplement, then the report shall be titled: "Report Created in Error." If a supplement report was created under the wrong incident number, with no original report entered, then an original report shall be created under the same incident number in order for the supplement report to be OA and transferred. If an employee finds that a correct incident number was previously used in error for another report, then a new incident number can be requested for the same location in order for a report to be completed.

**Homicide Reports**

When a Homicide investigator responds to a scene, the Homicide hold desk personnel shall be responsible for completing, at a minimum, the Incident Tab of the original incident report with the primary investigator entered as the primary officer. The Homicide hold desk personnel shall also OA the report so that supplement reports can move through the approval process within the time frame described above. Patrol personnel shall not write an original report when a Homicide investigator is responding to the scene. Patrol officers shall generate only supplement reports for such incidents.

**Extra Employment**

All incident reports created while working extra employment shall be OA on the officer's own time by the end of the extra employment hours. See General Order 300-14, **Extra Employment**.

DEFENDANTS_HUGHES_000132

CONFIDENTIAL

| General Order #800-07 | ISSUE DATE: April 25, 2017 | PAGE: #5 |
|---|---|---|

## 5  TEXAS ALCOHOLIC BEVERAGE COMMISSION (TABC) ESTABLISHMENTS

Incidents involving a shooting, stabbing, or other public disturbance on the premises of an establishment holding a TABC license or permit shall require officers to submit a copy of the incident report to the Vice Division for transmittal to the TABC.

## 6  SUSPICIOUS ACTIVITY

Suspicious activity is defined as observed behavior reasonably indicative of pre-operational planning associated with terrorism or other criminal activity. While a single instance of suspicious activity may not be a precursor to terrorist or criminal activity, other factors and circumstances may be present that cause concern and require additional investigation. If there is a criminal offense associated with the incident, officers shall utilize the appropriate criminal offense title and indicate the Criminal Intelligence Division (CID) as the secondary concerned division.

When a suspect is in custody or suspicious circumstances require additional investigative assistance, officers shall contact the Houston Regional Intelligence Service Center (HRISC) supervisor. After business hours officers shall contact the on-call CID homeland security supervisor via the Crime Analysis and Command Center Division.

In order to ensure appropriate review and analysis of suspicious incidents with a potential terrorism connection, officers shall complete an "Investigation Criminal Intelligence" report concerning any of the suspicious activities listed below:

a. **Terrorist Watchlist Encounters:** Incidents when an officer receives an NCIC "hit" from the Terrorist Screening Center (TSC) on a suspect or license plate. Officers shall first follow the instructions from the TSC on how to proceed with the encounter. Additionally, if a positive identification is made, officers shall contact the HRISC during business hours, or the on-call CID homeland security supervisor via the Command Center at all other times.

b. **Materials Acquisition or Storage, Weapons Collection or Discovery:** Incidents involving suspicious events or persons associated with weapons that would arouse suspicion of terrorism. This includes incidents involving weapons of mass destruction (chemical, biological, radiological, nuclear, or explosive) or the discovery of unusual amounts or types of weapons, explosives, chemicals, or other destructive material.

c. **Violent Extremism and Radicalization:** Incidents that involve suspicious persons that glorify violent, extremist acts, or persons who express support for or inspire violence.

d. **Photography:** Incidents of a person(s) taking photographs or video of a facility, critical infrastructure, or a secured, protected site in an unusual or surreptitious manner that would arouse suspicion of terrorism. This could include, but is not limited to, taking photographs or video of infrequently used access points, the superstructure of a bridge, personnel performing security functions (e.g., patrols, badge/vehicle checking), or security-related equipment (e.g., perimeter fencing, security cameras).

e. **Observation/Surveillance:** Incidents involving unusual or prolonged interest in facilities, buildings, or infrastructure beyond casual or professional interest that would arouse

DEFENDANTS_HUGHES_000133

CONFIDENTIAL

| General Order #800-07 | ISSUE DATE: April 25, 2017 | PAGE: #6 |

suspicion of terrorism. Examples include marking or noting distances, taking detailed notes, or making diagrams.

f.  **Aviation Activity:** Incidents involving suspicious events or persons associated with aviation that would arouse suspicion of terrorism. This could include interfering with the operations of an aircraft, disturbances at an airport, violating flight restrictions, pointing a laser beam at an aircraft, or flying a drone in a suspicious manner over a facility or infrastructure without consent of the owner.

g.  **Misrepresentation, Eliciting Information, Testing or Probing Security, Breach, or Attempted Intrusion:** Incidents involving suspicious events or persons associated with the security of a facility, infrastructure, or secured, protected site that would arouse suspicion of terrorism. This could include presenting false documents, credentials, or badges or donning uniforms in order to gain entrance; or a person asking probing questions beyond mere curiosity about a building's purpose, operations, or security procedures; or a person who deliberately challenges the physical security or security systems of a facility; or a person who attempts or actually breaches a restricted area.

h.  **Theft/Loss/Diversion:** The theft of badges, uniforms, identification, or emergency vehicles associated with a facility, infrastructure, or secured, protected site.

i.  **Sabotage/Tampering/Vandalism:** Incidents involving the damaging, defacing, or destroying any part of a critical infrastructure. Critical infrastructure includes, but is not limited to, the chemical and petrochemical sector, government and emergency services sector, sporting venues and malls, energy and water facilities.

j.  **Miscellaneous Activity:** Incidents of suspicious events or persons that cannot be vetted and based on additional factors continue to arouse suspicion of terrorism or criminal activity.

## 7   RELATED GENERAL ORDERS

300-14, **Extra Employment**
400-18, **Responsibility for City and Other Government Property**
400-19, **Microcomputer Regulations**
400-21, **Mobile Computing Devices**
400-22, **Keys, Passwords, and Personal Identification Numbers**
500-12, **Handling Persons Exhibiting Mental Health Crisis**
500-15, **Contact with Representatives of Foreign Governments**
600-06, **Family Violence**
600-17, **Response to Resistance**
600-37, **Hate Crimes**
800-08, **Auto Theft Reports**

Art Acevedo
**Chief of Police**

DEFENDANTS_HUGHES_000134

CONFIDENTIAL



| | STANDARD OPERATING PROCEDURES<br><br>PATROL OPERATIONS COMMAND |
|---|---|

| CATEGORY:<br>**PATROL** | DATE ISSUED:<br>**12-31-08** | EFFECTIVE DATE:<br>**12-31-08** | PROCEDURE NUMBER<br>**200/2.01** |
|---|---|---|---|
| SECTION:<br>**ARREST AND APPREHENSION** | DATE OF<br>REVISION: | REVISION NUMBER: | PAGE NUMBER:<br>**1 of 3** |

| SUBJECT/EVENT:<br>**EFFECTING AN ARREST** |
|---|

**RESPONSIBILITY:**     To properly execute an arrest and maintain the heath and safety of the prisoner.

## TASKS

1. All reasonable means may be used to effect an arrest. Officers will use only that amount of force that is necessary to secure the arrest and detention of the suspect(s).

   A. The arresting officer assumes primary responsibility for the health, safety and welfare of the prisoner while in the officer's custody.

2. At the time of arrest, the suspects will be told they are under arrest and the charge or cause for the arrest.

3. If interrogation is to take place, suspects will be given a legal warning, as set out in the Code of Criminal Procedure, on all Class B or higher charges.

4. The arresting officer shall ensure that the prisoner is expeditiously processed by delivering the suspect to a police facility as soon after the arrest as possible.

5. The arresting officer will generate all necessary documentation of the arrest (including racial profiling data) in accordance with department policy.

6. Whenever an officer observes any circumstances which he believes poses an immediate threat of serious injury or death to any prisoner in another officer's custody, the officer shall immediately do the following:

Form No. HPD-00087

**DEFENDANTS_HUGHES_000135**

CONFIDENTIAL

| SUBJECT/EVENT:<br>EFFECTING AN ARREST | PROCEDURE<br>NUMBER:<br>200/2.01 | PAGE NUMBER:<br>2 of 3 |
|---|---|---|

A. Take custody of the prisoner from the other officer.

1. The officer taking charge of the prisoner now becomes responsible for the prisoner.

2. The original officer has no further custody responsibility for the prisoner. However, the original officer maintains responsibility for reporting and documenting the incident.

B. Take whatever action is necessary to protect the prisoner.

C. Immediately notify a supervisor, and generate correspondence through the officer's chain of command detailing the incident and the officer's actions.

7. Officers shall not place or leave unattended in any location accessible to a prisoner or suspect any object or weapon capable of inflicting serious bodily injury or death.

8. Prisoners will be searched by the arresting officer at the time of arrest, and by each officer in the chain of custody of the prisoner.

A. When possible, searches will be performed by an officer of the same sex as the prisoner.

B. If there is reason to believe that an immediate threat of serious bodily injury or death or an immediate threat of the destruction of evidence or escape exists, the officer shall:

1. Handcuff the prisoner behind the back.

2. Conduct a search for weapons including the outer garments, waist, groin, hip areas, ankles and feet.

3. Make a detailed offense report outlining the circumstances of the arrest/detention and search.

4. Immediately upon reaching a safer environment, the officer will stop and thoroughly search or have an officer of the same sex thoroughly search the prisoner.

C. Strip Searches and Body Cavity Searches will only be conducted in strict accordance with General Order 500-01.

DEFENDANTS_HUGHES_000136

CONFIDENTIAL

| SUBJECT/EVENT:<br>EFFECTING AN ARREST | PROCEDURE<br>NUMBER:<br>200/2.01 | PAGE NUMBER:<br>3 of 3 |
|---|---|---|

9. The following items should be removed from prisoners when taken into custody:

   A. Contraband or other items unlawful to possess.

   B. Items required or identified as evidence.

   C. Items that could create a danger to life, or aid in an escape.

   D. Personal items (except clothing) if the prisoner is intoxicated or unconscious.

   E. Any medications (prescription or OTC) must be approved by jail medical personnel before being left with the prisoner.

10. When officers have reason to believe the prisoner has a contagious disease, the officer will:

    A. Carry out their duties according to department policy, guidelines and training.  Special attention should be paid to General Order 300-21 on Communicable Diseases.

    B. Take actions and use department-issued equipment to guard against contamination/infection.

    C. Notify a supervisor and jail medical personnel about a possible contagious prisoner, and report any incident of exposure in accordance with General Order 300-05.

**REFERENCES:**

Penal Code 9.51
Code of Criminal Procedure 2.132 / 14.06
General Order 200-08 / 300-05 / 300-21 / 500-01 / 600-17

Form No. HPD-00087

**DEFENDANTS_HUGHES_000137**

CONFIDENTIAL



# STANDARD OPERATING PROCEDURES

# PATROL OPERATIONS COMMAND

| CATEGORY: **PATROL** | DATE ISSUED: **12-31-08** | EFFECTIVE DATE: **12-31-08** | PROCEDURE NUMBER **200/2.09** |
|---|---|---|---|
| SECTION: **ARREST AND APPREHENSION** | DATE OF REVISION: | REVISION NUMBER: | PAGE NUMBER: **1 of 2** |

| SUBJECT/EVENT: **D. A. INTAKE** |
|---|

**RESPONSIBILITY:** To provide guidelines for properly filing charges with the District Attorney's office.

**TASKS:**

I. To determine the type and level of charges the arresting officer will contact the District Attorney Intake office at (713) 755-5895.

    A. Give a detailed account of the criminal incident the suspect is responsible, making sure to give witness statements.

    B. If charges are accepted the officer will document the name of the charge, the level of the charge, and the full name of the Assistant District Attorney giving the authorized charges.

II. Once charges are accepted and the prisoner is booked into the jail facility the arresting officer will begin entering the charges into the computer system.

    A. Log onto the Harris County system type M4P2. From the blank screen type "logon JUD01 (thru JUD75)" then Xmit. Then type in the password "charge" then hit Xmit. When the cursor appears at bottom of screen hit Xmit. Select #10 (Officers Info) and Xmit. Begin entering the Forms.

    B. The following identifying numbers must be in the charges: SPN#, HCSO#, HPD#, and FBI#. If any of these numbers are not available, the officer will list the numbers unavailable and why, in the charge narrative and the offense report narrative.

**REFERENCES:**

General Order 500-07

DEFENDANTS_HUGHES_000141

CONFIDENTIAL

| SUBJECT/EVENT:<br>DA INTAKE | PROCEDURE<br>NUMBER:<br>200/2.09 | PAGE NUMBER:<br>2 of 2 |
| --- | --- | --- |

     C.     Save each screen by hitting "enter", before moving to the next screen.

     D.     The charge narrative needs to be detailed and precise regarding the elements of crime, and the suspect should be referred as the Defendant.

     E.     After completion of the charges they should be sent to the DA's office by function 6 labeled "Send to DA".

     F.     After sending the charges in, the officer will call DA Intake and get confirmation that the charges were received.

III.     Charges accepted on a suspect not in custody **(2B Warrant)**

     A.     When arresting officer calls DA Intake for charges explain that the charges will be filed "To Be".

     B.     Enter charges normally except you will place an "N" for suspect in custody and for suspect identified by prints.

     C.     Send to the DA's office.

     D.     Complete a Probable Cause statement in Microsoft Word and save to a portable disk or flash drive.

     E.     Bring the Probable Cause disk and a copy of the DIMS charges to the DA Prosecutor, who will assist in creation and notarizing the probable cause for the warrant.

     F.     Take the warrant to the District Clerk who will enter the new warrant into the system and give is a cause number and assign it to a court.

     G.     Escort the warrant to the Magistrate on duty and have him sign the warrant.

     H.     Return the signed warrant to the district clerk, who will give you a formal copy of the new To Be Warrant.

DEFENDANTS_HUGHES_000142

CONFIDENTIAL



**STANDARD OPERATING PROCEDURES**

**PATROL OPERATIONS COMMAND**

| CATEGORY:<br>**OPERATIONS** | DATE ISSUED:<br>12-31-08 | EFFECTIVE DATE:<br>12-31-08 | PROCEDURE NUMBER<br>**200/2.10** |
|---|---|---|---|
| SECTION:<br>**ARREST AND APPREHENSION** | DATE OF<br>REVISION: | REVISION NUMBER: | PAGE NUMBER:<br>**1** |

| SUBJECT/EVENT:<br>**D. A. REFUSES CHARGES** |
|---|

**PURPOSE:**     To properly record information regarding rejecting charges, and to provide for notification of officer's immediate supervisor.

**RESPONSIBILITY:**     I.     The arresting officer will include the following in his original or supplement offense report when charges are rejected by the District Attorney's Intake Office.

A.     The Time and Date the officer spoke with the assistant district attorney regarding filing charges in the case.

B.     The name of the assistant district attorney who rejected the charges.

C.     Reasons given by the assistant district attorney for rejecting the charges.

D.     The above steps do not apply in instances when the assistant D. A. files charges, when another assistant D. A. accepts charges, or when the assistant D. A. files other charges.

**REFERENCES:**

General Order 500-07

DEFENDANTS_HUGHES_000143

CONIDENTIAL

# Circular
## Houston Police Department



May 8, 2018                                              NO. 18-0508-059

SUBJECT: **UPDATES ON COORDINATION WITH HARRIS COUNTY DISTRICT ATTORNEY'S OFFICE**

While the roles of police and prosecutor are different, these are complimentary roles that are more often than not aligned to achieve the same desired outcome: advancing public safety through the administration of criminal justice. By far, the great majority of cases brought to prosecutors by HPD officers occur in Harris County. A healthy working relationship between HPD and the Harris County District Attorney's Office (HCDAO) is essential to both organizations. To this end, HPD executive leadership has met and will continue to meet with senior leaders in HCDAO to address emerging issues.

As a result of our discussions, assistant district attorneys (ADAs) in the Intake Division may more readily accept charges when probable cause has been established but additional investigative work is required prior to trial. In such a case, the ADA will provide direction to the arresting officer regarding further investigative steps required. Officers should document the additional steps in their offense reports to ensure the concerned investigative division is informed of the need for subsequent investigation after the arrest is made. Further, if a patrol officer feels that charges should be accepted when they are declined, they should speak with their sergeant for direction. If it is not resolved, they can request to speak with the Chief ADA over the HCDAO's Intake Division.

The ADAs also asked that officers be more attentive to the possibility that electronic devices, such as mobile phones, in the possession of suspects at the time of arrest may possess evidence of the crime. Location data, text messages, call logs, social media posts and other information on the device may constitute evidence relevant to the crime. When a mobile device may contain evidence, officers should contact the concerned investigative division and obtain approval to tag the device(s) into the Property Room as evidence. Because a search warrant will be necessary in most cases to search the device, officers should not attempt to retrieve the data. However, officers can access the device to secure the data. One easy way to secure data is to turn the device to "Airplane Mode".

Officers should be familiar with General Order 700-01, Property/Evidence Control Regulations.

For    Art Acevedo
       Chief of Police

aa:web:jaj:blj
Originating Party:
Assistant Chief Wendy E. Baimbridge
Patrol Region 3
COP#: 18-66494

**TO BE READ AT ALL ROLL CALLS FOR 5 DAYS**

DEFENDANTS_HUGHES_000825

CONFIDENTIAL

# Circular
## Houston Police Department

**Received in**
**INSPECTIONS DIVISION**

Date: 1/20/12    By: ISD

January 20, 2012                                    NO. 12-0120-024

SUBJECT: **REVISION OF GENERAL ORDER 500-07, FILING PROPER CHARGES**

Attached General Order 500-07, **Filing Proper Charges,** has been revised to meet current policies and procedures.

Employees shall know the laws and ordinances they are charged with enforcing as well as all department orders, rules, duties, and procedures governing their specific assignments. As such, all employees shall read in its entirety the attached revised General Order or its equivalent on the department's Intranet Portal. Command Staff members shall make this notice of General Order revision available to all employees under their command.

Charles A. McClelland, Jr.
Chief of Police

cam:mtw:sar

Originating Party:
D. Perry, Captain
Inspections Division

COP# 12-41819

**This Circular is to be read at ALL ROLL CALLS for five (5) consecutive days**

DEFENDANTS_HUGHES_000826

CONFIDENTIAL

| General Order | ISSUE DATE: | NO. |
|---|---|---|
| **Houston Police Department** | January 20, 2012 | **500-07** |

**REFERENCE:** Supersedes all prior conflicting Circulars and Directives, and General Order 500-07, dated January 1, 1987

**SUBJECT: FILING PROPER CHARGES**

### POLICY

The Houston Police Department shall work cooperatively with the District Attorney's Office to help reduce the number of cases dismissed. Proper documentation of the facts and supervisory review should help reduce incidents when charges are dismissed as well as protect officers from frivolous Internal Affairs complaints.

Effective law enforcement requires cooperation between police officers and members of the District Attorney's Office. This General Order outlines procedural guidelines for officers and supervisors to use when consulting with the Harris County District Attorney's Office regarding the filing of charges.

Officers shall refer to General Order 500-01, **Effecting Arrests and Searches**, for filing procedures in Fort Bend or Montgomery counties.

### 1  CONSULTATION WITH AN ASSISTANT DISTRICT ATTORNEY

Before filing any charges with the Harris County District Attorney's Office, the officer filing the charges must speak with an assistant district attorney to ensure that the charges shall be accepted.

During the consultation, the officer shall provide the elements of the offense, sufficient details to show that probable cause existed to arrest the person and evidence that the person being charged did in fact commit the offense. These probable cause details shall be included in the charges filed via the District Attorney Intake Management System (DIMS).

It is important that a thorough probable cause statement be contained in the warrant because this is sometimes the only information available to the assistant district attorney when the defendant is arraigned before a magistrate during a probable cause hearing. It is also imperative that the officer filing charges document the exact time of arrest.

An assistant district attorney also shall be consulted before the simultaneous filing of both county and municipal charges against one suspect if these charges are based on the same set of circumstances or the same criminal action. This consultation eliminates the possibility of a case being dismissed because of noncompliance with the Speedy Trial Act or because of violations of legal restraints against placing a defendant in double jeopardy.

Whenever an officer is unsure of the elements of a particular case, he shall discuss the matter with his immediate supervisor or contact the District Attorney's Office.

Under no circumstances shall a lesser charge be filed merely as a matter of convenience. For example, a charge of Public Intoxication shall not be filed if the actual offense was Driving While Intoxicated. Appropriate charges shall be filed according to the elements of the offense.

### 2  REJECTION OF CHARGES BY ASSISTANT DISTRICT ATTORNEYS

If an officer tries to file charges through the District Attorney's Intake Office and these charges are rejected, the officer shall include all of the following information in the original or supplemental incident report:

**DEFENDANTS_HUGHES_000827**

CONFIDENTIAL

General Order #500-07 | ISSUE DATE: January 20, 2012 | PAGE: #2

a. Time and date the officer spoke with the assistant district attorney about filing charges in the case.

b. Name of the assistant district attorney who rejected the charges.

c. Reasons given by the assistant district attorney for rejecting the charges.

If the officer feels that the appropriate charge was not accepted by an assistant district attorney, then the officer shall notify a supervisor. If the supervisor finds mishandling on the part of the officer, the supervisor shall instruct the officer on policy and proper procedures to avert recurrences.

## 3 DEPARTMENT OF PUBLIC SAFETY DRIVING WHILE LICENSE INVALID

Texas driver license suspensions should be verified through Vehicular Crimes Division. The Vehicular Crimes Division shall accept holds for persons charged with Class B or higher Driving While License Invalid (DWLI). A license is considered invalid if it is confirmed to be suspended, revoked, cancelled, non-renewed, or expired. A DWLI first offense is a Class C misdemeanor. DWLI becomes a Class B misdemeanor if the person has a previous conviction for DWLI or was previously suspended as the result of an offense involving the operation of a motor vehicle while intoxicated.

## 4 RESISTING ARREST, SEARCH, OR TRANSPORTATION, EVADING ARREST OR DETENTION AND INTERFERENCE WITH PUBLIC DUTIES

Officers should use their training and experience in evaluating the totality of the circumstances when assessing whether charges should be pursued. If an event

warrants an officer to make an arrest of a person for Resisting Arrest, Search, or Transportation, Evading Arrest, Detention, or Interference With Public Duties, the arresting officer must immediately notify a supervisor of the arrest and request his presence at the scene.

The arresting officer must have a supervisor present prior to contacting the District Attorney's Office.

A supervisor must check by on all scenes involving any of the above incidents. Once at the scene, the supervisor must also do all of the following:

a. Observe the suspect's physical condition if possible.

b. Speak with all officers at the scene and review the facts with them.

c. Review all the facts with the arresting officer and discuss with the arresting officer the range of charges that may be applicable.

d. Ensure any use of force is properly documented.

e. Ensure the suspect receives medical attention if injured.

Only after the supervisor has completed the above requirements shall the officer contact the District Attorney's Office to determine if criminal charges shall be accepted.

In addition to the above listed requirements, the supervisor must do all of the following:

f. Take and maintain accurate field notes related to the incident.

g. Review the officer's incident report to ascertain that sufficient details of the incident are documented to support the arrest charge.

DEFENDANTS_HUGHES_000828

CONFIDENTIAL

| General Order #500-07 | ISSUE DATE: January 20, 2012 | PAGE: #3 |
|---|---|---|

After the officer speaks with the District Attorney's Office, the officer must immediately notify the scene supervisor of the assistant district attorney's decision.

The officer must also document in the incident report the name of the supervisor that checked by on the scene and reviewed the facts with the officer.

Officers shall ensure that all elements of the offense and sufficient details are included in the charge filed via the DIMS or Juvenile Offender Tracking System (JOTS). Details of the offense need to show that probable cause existed to arrest the person and that there was evidence to prove that the person being charged did in fact commit the offense.

It is imperative that there is a compelling probable cause statement in the charge details, given that this may be the only information available to the assistant district attorney when the defendant is arraigned before a magistrate during a probable cause hearing.

## 5  FILING CHARGES ON CLASS "B" OR ABOVE PRISONERS

When officers are required to file Class B or above charges on suspects placed on "hold" by any investigative division, upon Jail Division personnel accepting the prisoner, the officer shall do all of the following:

a. Complete a General Person's (F-6) Inquiry on the prisoner.

b. Complete any required report and related paperwork.

(Officers shall refer to General Orders 500-08, **Required Booking Information and Hold Procedures** and 800-07, **Criteria for Submitting Incident Reports**, for further information.)

c. Enter charges in DIMS and obtain a transaction number. Officers shall not delay entering the charge documents in order to wait for an Automated Fingerprint Identification System (AFIS) number.

d. Contact the division that authorized the hold and provide them with the incident report and DIMS transaction numbers.

Upon completion of charges being filed and after any required information and paperwork has been provided to and accepted by the division that authorized the hold, officers shall return to service.

The investigative division authorizing the hold shall be responsible for contacting the Jail Division to obtain the AFIS number and finalize the transmitting of the charges.

The division authorizing the hold shall ensure that charges are completed in a timely manner.

The officer transmitting the charges via DIMS shall confirm with District Attorney (DA) Intake that they have received all necessary information.

## 6  MUNICIPAL COMPLAINTS

Municipal complaints are used to file Class C misdemeanor charges against a defendant.

The affiant on the complaint may be either the officer or the complainant, and the complaint must be sworn to before a notary public.

The complaint shall be completed in the presence of the notary public. All officers booking prisoners for Class C violations shall properly fill out all portions of the ticket and/or complaint.

**DEFENDANTS_HUGHES_000829**

CONFIDENTIAL

| General Order #500-07 | ISSUE DATE: January 20, 2012 | PAGE: #4 |
| --- | --- | --- |

## 7 USE OF RETAIL VALUE

The value of items in theft cases shall be determined by the retail value of the stolen goods.

## 8 RELATED GENERAL ORDERS

500-01, Effecting Arrests and Searches
500-08, Required Booking Information and Hold Procedures
800-07 Criteria for Submitting Incident Reports

Charles A. McClelland, Jr.
Chief of Police

DEFENDANTS_HUGHES_000830

CONFIDENTIAL

# Circular

## Houston Police Department

 July 24, 2012                                              NO. 12-0724-188

SUBJECT: **REVISION OF GENERAL ORDER 500-01, EFFECTING ARRESTS AND SEARCHES**

Attached General Order 500-01, **Effecting Arrests and Searches,** has been revised to meet current policies and procedures. There are significant changes to the *Use of Force* section regarding suspects who ingest contraband. There are also changes to the *Restrictions* section of the General Order.

Employees shall know the laws and ordinances they are charged with enforcing as well as all department orders, rules, duties, and procedures governing their specific assignments. As such, all employees shall read in its entirety the attached revised General Order or its equivalent on the department's Intranet Portal. Command Staff members shall make this notice of General Order revision available to all employees under their command.

Charles A. McClelland, Jr.
Chief of Police

drg

Originating Party:
D. Perry, Captain
Inspections Division

COP# 12-43568

**This Circular is to be Read at ALL ROLL CALLS for five (05) Consecutive Days**

DEFENDANTS_HUGHES_000831

CONFIDENTIAL

# General Order
## Houston Police Department

| ISSUE DATE: | NO. |
|---|---|
| July 24, 2012 | 500-01 |

REFERENCE: Supersedes all prior conflicting Circulars and Directives, and General Order 500-01, dated August 2, 2010

## SUBJECT: EFFECTING ARRESTS AND SEARCHES

### POLICY

The highest regard possible shall be given to arrested individuals' and officers' safety and well-being.

Prisoners shall be thoroughly searched at the time of arrest and by each employee in the chain of custody to ensure no weapons, contraband, or evidence remains on the prisoner.

Except as noted in this General Order, all persons under arrest shall be properly handcuffed behind the back prior to being thoroughly searched and shall remain handcuffed while being transported in any police vehicle.

This General Order applies to all employees.

### DEFINITIONS

*Body Cavity Search*. Any search involving the visual inspection of all skin surfaces, the breasts of a female, or the genitalia of either sex, or the internal physical examination or probing of all body cavities.

*Interlocking*. A technique used to accomplish the arrest or restraint of a violent person by handcuffing the wrists and ankles together behind the back. The term "hogtie" shall not be used.

*Positional Asphyxia*. An impairment of the respiratory system resulting in the reduction of oxygen or the increase of carbon dioxide in the bloodstream and tissues.

*Strip Search*. Any search of an individual requiring the removal of some or all of the clothing to allow visual inspection of the breasts of a female or the genitalia of either sex.

### 1 JURISDICTION

Officers may exercise full police powers within any county in which a portion of the city of Houston is located.

Within the state of Texas, officers may arrest without warrant a person who commits an offense within the officer's presence or view if the offense is a felony, an offense against public order and decency, disorderly conduct, a breach of the peace, or public intoxication. Arrests made outside Houston city limits should, whenever possible, be made in cooperation with the law enforcement agency having primary jurisdiction.

For additional jurisdictional parameters, refer to the Texas Code of Criminal Procedure, Article 14.03, *Authority of Peace Officers*.

### 2 USE OF FORCE

When dealing with citizens, suspects, and prisoners, employees shall limit their use of force and physical contact to only the amount reasonably necessary to protect themselves or others, to effect an arrest, or to bring an incident under control. See General Order 600-17, **Use of Force.**

Officers who use force against any person must be able to state in detail the specific reasons for using the force. If force is utilized during an incident, the officer must ensure that such force is documented according to General Order 600-17, **Use of Force.**

#### Suspects Who Ingest Contraband

The department's primary objectives in dealing with suspects who are believed to have ingested narcotics or other contraband

DEFENDANTS_HUGHES_000832

CONFIDENTIAL

| General Order #500-01 | ISSUE DATE: July 24, 2012 | PAGE: #2 |
|---|---|---|

are the preservation of life and the safety of the officer. The secondary objective is to preserve and recover evidence whenever possible.

Officers are prohibited from choking and/or restricting the airway of a suspect in an attempt to extract contraband from the suspect's mouth.

Officers using reasonable force to extract contraband from a suspect's mouth should be cognizant of the risks and dangers associated with putting the officer's hands in or near the suspect's mouth.

When an employee reasonably believes that a suspect has ingested narcotics or other contraband, which could present a health hazard, the employee shall immediately summon emergency medical personnel to provide assessment and treatment without delay.

In the event that, after medical evaluation, medical personnel release the prisoner back to the officer, the officer shall:

a. Transport the prisoner immediately to the appropriate City jail facility.

b. Document on the booking blotter that the prisoner "possibly ingested narcotics/contraband."

c. Notify the medical specialist upon arrival at the City jail facility. If a medical specialist is not present when booking the suspect, the transporting officer shall notify a jail sergeant of the incident.

Employees should be aware of and look for potential signs of distress following an ingestion, which could include, but are not limited to, loss of consciousness, trouble breathing, non-responsiveness, profuse sweating, choking, loss of mobility, and vomiting.

When a suspect who is in custody has been transported to a medical facility after ingest-ing narcotics or other contraband, the arresting officer shall:

d. Notify a supervisor as soon as practical.

e. Respond to the medical facility and advise the attending physician of the situation, including an estimate of the amount of time elapsed since the ingestion and if possible, the type, quantity, and packaging of the item(s) ingested.

f. Generate an incident report or supplement that includes a detailed statement of the incident, medical treatment received (if known), and any actions taken by those on the scene.

Employees are advised that when a suspect ingests narcotics or other contraband and evidence is destroyed, they are to consult with the appropriate district attorney's office to discuss acquisition of a search warrant, if necessary, and the possibility of filing all applicable charges, including, but not limited to, tampering with evidence.

3   **LEGAL WARNING**

When suspects are arrested, they shall be told as soon as possible they are under arrest and the charge or cause for the arrest.

If custodial interrogation is to take place, suspects shall be given the legal warnings as set out in the Texas Code of Criminal Procedure.

4   **RESTRAINTS AND TRANSPORTATION**

**Handcuffs**

An exception to the handcuff policy is if a medical or specific physical condition (e.g., suspect's age or size) precludes handcuffing behind the back. Then the prisoner shall be secured in the safest possible manner before being placed in a police vehicle.

DEFENDANTS_HUGHES_000833

CONFIDENTIAL

General Order #500-01 | ISSUE DATE: July 24, 2012 | PAGE: #3

If a prisoner cannot be handcuffed, the transporting officer shall clearly document the reasons and specific justifications for not doing so in the incident or supplement report. The safety of the officer and the suspect or prisoner must be assured before the decision to transport without handcuffs is made. Unless otherwise approved by a supervisor, only units with two officers shall transport prisoners without handcuffs.

Whenever handcuffs are used, they shall be secured by double-locking the cuffs to prevent them from being inadvertently tightened. Officers shall not tighten handcuffs to the extent that circulation is impaired, or allow handcuffs that are clearly interfering with circulation to remain tightened. Prisoners who remain handcuffed for an extended period of time shall be checked often to ensure proper blood circulation.

Personnel assigned to the Jail Division shall handcuff and restrain all prisoners according to current Jail Operating Procedures.

### Transporting

When placing a prisoner in a patrol vehicle, officers shall position the prisoner's back toward the upper back seat with the prisoner sitting upright and facing forward. Officers shall then properly secure the prisoner in the seat belt and shoulder harness. The transporting officer shall watch the prisoner and ensure the prisoner does not become entangled in the seat belt and that the seat belt does not wrap around the prisoner's neck.

If the design or configuration of the transporting vehicle precludes safely transporting a suspect in accordance with this General Order, a more appropriate unit shall be dispatched.

### Interlocking Technique

The interlocking technique shall be used by only trained officers utilizing the approved in-

terlocking devices. No changes, alterations, or modifications are permitted to approved leg restraints or interlocking devices.

In all arrest or transporting situations, especially those involving an interlocking technique, employees shall ensure prisoners are placed in a position that enables them to breathe freely and is the most comfortable position possible. Additionally, while officers may use their weight to initially gain control over a prisoner and to maintain control if necessary, officers are to use caution that the resulting compression of the chest or abdomen does not interfere with the prisoner's breathing.

**WARNING: DO NOT leave the prisoner face down when using the interlocking technique as asphyxiation may occur.**

Interlocking is meant only as a temporary measure and suspects must be released from the interlocked position as soon as it is safe and practical.

A prisoner who initially appears to be in little or no distress after being interlocked may still develop respiratory difficulties. Therefore, whenever the interlocking technique is used:

a. A supervisor shall be dispatched to ensure the technique conforms to department policies.

b. The prisoner shall be transported by only a two-officer unit unless otherwise approved by a supervisor.

When the interlocking technique is used, officers shall:

c. Ensure there are at least 12 inches between the interlock (wrist to ankle).

d. Constantly ascertain the prisoner's condition.

e. Maintain verbal contact with and keep a close watch on the prisoner.

DEFENDANTS_HUGHES_000834

CONFIDENTIAL

| General Order #500-01 | ISSUE DATE: July 24, 2012 | PAGE: #4 |
|---|---|---|

## 5. SEARCHES

Whenever practical, prisoner searches shall be performed by employees of the same sex as the prisoner. When an officer of the opposite sex searches a prisoner, that officer shall document the justification for the search in an incident or supplement report.

Any employee who searches a prisoner shall document the search and the results in an incident or supplement report when necessary. Whenever possible, officers should have a witness to the search.

Personnel assigned to the Jail Division shall conduct all searches according to the current Jail Operating Procedures.

### High Risk Search

Prisoners who must be immediately transported out of the area for the safety of an officer shall be handcuffed behind the back and searched for weapons. The search shall include the outer garments, waist, groin, hip areas, ankles, and feet. Immediately upon reaching a safer environment, the officer shall stop and thoroughly search the prisoner.

### Strip Search

Strip searches may be conducted only after an arrest when there is reasonable suspicion a suspect is concealing weapons, contraband, or evidence that may not be detected or recovered by the usual search techniques. Permission to perform a strip search shall be obtained from a supervisor prior to the search. Strip searches shall be conducted:

a. Discreetly and with the utmost respect for the suspect's privacy and dignity.

b. By an officer or jail attendant of the same sex as the prisoner.

c. In a private and secure room.

1. Public strip searches are prohibited.

2. The minimum number of police personnel necessary shall be present during the strip search and nonpolice personnel should be present only as an extreme necessity.

Following a strip search, an incident or supplement report shall be generated and must include the result of the search and every name and any identifiers of anyone who witnessed the search.

### Body Cavity Search

Body cavity searches may be conducted only subsequent to an arrest when there is probable cause to believe that weapons, contraband, or other evidence of a crime has been concealed in a body cavity. Only medical personnel at medical facilities shall conduct body cavity searches.

A supervisor shall be notified of the necessity to conduct a body cavity search prior to the search. Upon approval from the supervisor, the prisoner shall be transported to the closest available hospital. The supervisor shall ensure that all necessary documents (e.g., consent form, search warrant) are presented to medical personnel with the prisoner.

If the need for a body cavity search is discovered after the prisoner enters a jail facility, an on-duty jail supervisor shall be notified. The prisoner shall be brought to the jail clinic for evaluation and sent to the closest available hospital for the search.

A police officer must accompany the prisoner to the hospital and take possession of any weapons, contraband, or evidence discovered during the search. The prisoner shall be returned to the jail by the police officer when the search is completed.

Body cavity searches shall be conducted privately and with the suspect's dignity as a

DEFENDANTS_HUGHES_000835

CONFIDENTIAL

| General Order #500-01 | ISSUE DATE: July 24, 2012 | PAGE: #5 |

consideration. A minimum number of jail, medical, and police personnel shall be present.

Whenever a body cavity search is conducted, an incident report shall be initiated or supplemented containing the following information:

a. The name of the supervisor who authorized the search.

b. The probable cause for the search.

c. The date, time, and location of the search.

d. The name and any identifiers of anyone who witnessed or participated in the search.

## 6 ARRESTS MADE INSIDE THE CITY LIMITS OF HOUSTON IN FORT BEND COUNTY

Adults arrested in Fort Bend County shall be taken before a magistrate in that county to be given their legal warnings. All property and evidence shall be tagged properly according to Houston Police Department policy. Original incident reports and supplements shall be submitted to the concerned division of the Houston Police Department. A copy of the incident report, suspect criminal history, warrant information sheet, and fax receipts shall be forwarded to the captain of the Southwest Division.

### Felony and Class A and B Misdemeanors

Adults arrested in Fort Bend County for a felony or a Class A or B misdemeanor shall be transported to the Fort Bend County Jail. Officers shall file charges at the Fort Bend County District Attorney's Intake Division. A copy of the incident report shall be faxed to Fort Bend County Intake. Officers shall keep a copy of the fax receipt.

If it is after business hours, officers shall fax the following information to the Fort Bend County District Attorney's Office:

a. A completed warrant information sheet issued by the Fort Bend County Intake Division.

b. Two copies of the incident report and two copies of the NCIC and TCIC printouts.

c. An incident report for every charge and every defendant.

d. An incident number must be indicated on all of the suspect's paperwork.

### Class C Misdemeanors

Officers issuing Class C misdemeanor citations in Fort Bend County shall write "Fort Bend County" in parentheses on the same line as the offense location, which shall read "city of Houston (Fort Bend County), Texas." When incarceration is required, adult prisoners shall be transported to the Southeast Division jail facility.

### DWI Arrests

When an adult is arrested for DWI in Fort Bend County, the arresting officer shall take the prisoner to the Fort Bend County Jail for an intoxilyzer and video test. The officer shall contact the HPD dispatcher who shall notify the Fort Bend County Sheriff's Office to have an on-duty intoxilyzer operator meet the arresting officer at the Fort Bend County Jail facility.

The video shall be submitted to the Fort Bend County District Attorney's Intake Division with copies of all necessary paperwork. A copy of the paperwork shall also be delivered to the HPD Vehicular Crimes Division control desk.

If the arrest occurs after normal business hours, the officer shall deliver the original

DEFENDANTS_HUGHES_000836

CONFIDENTIAL

| General Order #500-01 | ISSUE DATE: July 24, 2012 | PAGE: #6 |
| --- | --- | --- |

paperwork and video to the desk sergeant at the Southwest Division. Southwest Division personnel shall submit the paperwork and video to the Fort Bend County District Attorney's Intake Division during normal business hours.

### Juvenile Arrests

Juveniles who are arrested shall be transported to the Fort Bend County Juvenile Detention Center. When juveniles are going to be interrogated as suspects, they shall be taken before a magistrate in Fort Bend County for their legal warnings.

Officers shall not leave the Fort Bend County Juvenile Probation Department until they have obtained the juvenile's fingerprints and Automated Fingerprint Identification System (AFIS) number, and the Juvenile Criminal Justice Information Services (CJIS) form is completed. A copy of the incident report must be left with juvenile probation personnel and a copy must be faxed to the Fort Bend County District Attorney's Juvenile Intake Division. Officers shall retain a copy of the fax receipt.

Officers shall contact the Juvenile Division and forward a copy of the incident report. Juveniles arrested in Fort Bend County shall not be taken to Harris County.

### Deaths

During the investigation of a death that occurred in Fort Bend County, a Fort Bend County Justice of the Peace shall be summoned to rule on the cause of death. A Fort Bend County Sheriff's Office dispatcher shall contact the Justice of the Peace.

### 7 ARRESTS MADE INSIDE THE CITY LIMITS OF HOUSTON IN MONTGOMERY COUNTY

Adults arrested in Montgomery County, inside the city limits of Houston, shall be tak-

en before a magistrate in Montgomery County to be given their legal warnings.

A Montgomery County Sheriff's Office dispatcher shall be contacted if a magistrate is needed during the nightshift hours of 5 p.m. to 8 a.m. The officer shall obtain from the dispatcher a telephone number with which to contact a magistrate.

Original incident reports and supplements shall be submitted to the concerned division of the Houston Police Department. All property and evidence seized in Montgomery County shall be tagged properly according to HPD policy.

### Felony and Class A and B Misdemeanors

All adult female suspects arrested inside the city limits of Houston in Montgomery County for a felony or a Class A or B misdemeanor shall be processed through the Montgomery County Jail in Conroe. Adult male suspects may be processed through either the Montgomery County Jail in Conroe or the jail facility at the East Montgomery County Annex in New Caney.

Officers shall complete all necessary paperwork while processing adult suspects at the jail facility. Officers shall file charges at the Montgomery County District Attorney's Office from 8 a.m. to 5 p.m. After normal business hours, officers shall process the suspect and fax a copy of the incident report and a copy of the suspect's TCIC printout to the Montgomery County District Attorney's Office immediately.

### Class C Misdemeanors

Officers issuing citations in Montgomery County for Class C misdemeanors shall write "Montgomery County" in parentheses on the same line as the offense location, which shall read "city of Houston (Montgomery County), Texas." When incarceration is required, adult prisoners shall be transported to the jail facility at Northeast

DEFENDANTS_HUGHES_000837

CONFIDENTIAL

| General Order #500-01 | ISSUE DATE: July 24, 2012 | PAGE: #7 |

Division or Central Division, depending on the sex of the prisoner.

### DWI Arrests

When an adult is arrested for DWI inside the city limits of Houston in Montgomery County, the arresting officer shall take the prisoner to the Montgomery County Jail in Conroe for an intoxilyzer and video test. The officer may also utilize the Harris County Sheriff's Office substation in Humble, HPD intoxilyzer locations, or DPS intoxilyzer locations. The suspect shall then be processed and charges filed as indicated above.

Adult male prisoners may be transported to the jail facility at the East Montgomery County Annex in New Caney. Officers shall contact the dispatcher, who shall contact the Montgomery County Sheriff's Office dispatcher in order to have DPS personnel meet the officer at the jail facility to administer the intoxilyzer test. Montgomery County deputies may also administer the intoxilyzer test. The suspect shall then be processed and charges filed as indicated above.

A copy of the paperwork shall be delivered to HPD Vehicular Crimes Division control desk.

### Juvenile Arrests

Juveniles who are arrested shall be transported to the Montgomery County Sheriff's Office Identification Section – Crime Lab where the juvenile shall be fingerprinted and the officer shall complete the Referral/Identification portion of the DPS *Juvenile Justice Tracking* form and leave the HPD report or probable cause statement.

Juveniles shall then be taken to the Montgomery County Juvenile Detention Center located in Conroe where they shall be handled by the on-duty Montgomery County district attorney.

When juveniles are going to be interrogated as suspects, they shall be taken before a magistrate in Montgomery County for their legal warnings.

Officers shall complete all necessary paperwork and forward a copy of the incident report to the HPD Juvenile Division. A copy of the incident report must be faxed to the Montgomery County District Attorney's Office immediately upon completion of the paperwork.

### Deaths

During the investigation of a death that occurred in Montgomery County, a Montgomery County Justice of the Peace shall be summoned to make the official ruling on the cause of death. A Montgomery County Sheriff's Office dispatcher shall contact the Justice of the Peace.

8  **RESTRICTIONS**

Off-duty officers shall not arrest traffic violators on sight unless the violation poses an immediate threat of bodily injury.

An officer, whether on or off duty, shall not arrest any person involved in a personal dispute involving the officer or a member of the officer's family unless there is an immediate threat of serious bodily injury or death. If police action is required, the officer shall contact Emergency Communications Division and request that a police unit and a supervisor be dispatched to the scene to investigate the incident. Also, if police action is required and the suspect's identity is unknown or cannot be determined, the officer may detain such person.

Officers shall not communicate in any manner, directly or indirectly, any information that may delay an arrest. Officers shall not enable persons who have committed criminal acts to escape arrest or punishment, dispose of property or goods obtained illegally, or destroy evidence of unlawful activity.

DEFENDANTS_HUGHES_000838

**CONFIDENTIAL**

| General Order #500-01 | ISSUE DATE: July 24, 2012 | PAGE: #8 |

9  **RELATED GENERAL ORDERS AND REFERENCE MATERIAL**

   500-02,  Handling and Transporting Prisoners

   500-04,  Driving While Intoxicated

   600-17,  Use of Force

   700-01,  Property/Evidence Control Regulations

   700-03,  Inventory of Prisoner's Property

   Texas Code of Criminal Procedure, Article 14.03, Authority of Peace Officers; and Article 15.17, Duties of Arresting Officer and Magistrate

   Charles A. McClelland, Jr.
   Chief of Police

DEFENDANTS_HUGHES_000839

CONFIDENTIAL

# Circular
## Houston Police Department

⬚ March 19, 2013                                                **NO.** 13-0319-076

SUBJECT: **RESISTING ARREST, SEARCH OR TRANSPORTATION; EVADING ARREST OR DETENTION; AND INTERFERENCE WITH PUBLIC DUTIES**

A large number of Resisting Arrest, Search or Transportation; Evading Arrest or Detention; and Interference with Public Duties cases are being dismissed due to a lack of sufficient evidence for prosecution. In many instances, the dismissal of criminal charges has resulted in an Internal Affairs investigation against the arresting officer. Employees are reminded to review the laws pertaining to these charges which are listed under Texas Penal Code Chapter 38 (Obstructing Government Operation). There may be a variety of reasons as to why people do not comply with officers' visual cues or verbal commands. For example, when being stopped at night, particularly along a dark stretch of road, the public has been informed that it is permissible to continue driving until reaching a well-lit area that is out of the flow of traffic.

Officers should use their training and experience in evaluating the totality of the circumstances when assessing whether these charges should be pursued. If an event warrants an officer to make an arrest of a person for Resisting Arrest, Search or Transportation (§38.03); Evading Arrest or Detention (§38.04); or Interference with Public Duties (§38.15); the arresting officer must immediately notify a supervisor of the arrest and request his/her presence at the scene. The arresting officer must have a supervisor present prior to contacting the district attorney's office.

A supervisor must check by on all scenes involving any of the above related incidents. Once at the scene, the supervisor will review all facts concerning the incident, including any mitigating factors. The supervisor must also do the following:

- Observe the suspect's physical condition if possible;
- Speak with ALL officers at the scene and review the facts with them;
- Review all the facts with the arresting officer and discuss with the arresting officer the range of charges that may be applicable;
- Ensure any use of force is properly documented, and
- Ensure the suspect receives medical attention if injured.

**Only after the supervisor has completed the above requirements will the officer contact the district attorney's office to determine if criminal charges will be accepted.**

In addition to the above requirements, the supervisor must:

- Take and maintain accurate field notes related to the incident, and
- Review the officer's offense report to ascertain that sufficient details of the incident are documented to support the arrest and charge.

DEFENDANTS_HUGHES_000840

CONFIDENTIAL

Circular No. 13-0319-076                    -2-                    March 19, 2013

After the officer speaks with the district attorney's office, the officer must immediately notify the supervisor that responded to the scene of the assistant district attorney's decision. The officer must also document in the offense report the name of the supervisor that checked by on the scene and reviewed the facts with the officer.

Officers will ensure that all elements of the offense and sufficient details are included in the charge filed via the DA Intake Management System (DIMS) or Juvenile Offender Tracking System (JOTS). Details of the offense need to show that probable cause existed to arrest the person and that there was evidence to prove that the person being charged did in fact commit the offense. It is imperative that there is a compelling probable cause statement in the charge details, given that this may be the only information available to the assistant district attorney when the defendant is arraigned before a magistrate during a probable cause hearing.

With the implementation of these procedures, the Houston Police Department will continue to work cooperatively with the district attorney's office to help reduce the number of cases dismissed. Proper documentation of the facts and supervisory review should reduce incidents where charges are dismissed and protect officers from frivolous Internal Affairs complaints.

In conclusion, I want to highlight that the Houston Police Department is an excellent organization with hard working and dedicated employees, which makes me proud to be your Police Chief. Although there are many changes taking place, what remains unchanged is the strong level of commitment and dedication I see throughout this department to keep this city safe.

Keep up the great work!

Charles A. McClelland, Jr.
Chief of Police

cam:tpz

Originating Party:
K. A. Munden, Executive Assistant Chief
Field Operations

COP #13-45667

**TO BE READ AT ALL ROLL CALLS FOR 3 DAYS**

DEFENDANTS_HUGHES_000841

CONFIDENTIAL

# Circular
## Houston Police Department

⬡     November 20, 2013                                   **NO.** 13-1120-302

SUBJECT: **SUBMISSION OF ALL EVIDENCE AND INFORMATION TO DISTRICT ATTORNEY OFFICES**

Effective January 1, 2014, the Legislature has made significant changes to criminal discovery in Texas via Senate Bill 1611, also known as the "Michael Morton Act." The state must permit "the electronic duplication, copying, and photographing" of evidence and information in its possession, including, but not limited to: offense reports, written or recorded witness statements, videos, photographs, digital media and pretty much anything else not privileged or considered work product of the state. On paper, the big change is mandatory open-file discovery of offense reports and witness statements (partial disclosure is permitted through withholding or redaction by the state). This has been the practice in Harris County, but is now mandated by statute for all District Attorney offices.

The department has recently received complaints from the District Attorney offices regarding incomplete case files being submitted to their offices. Statements, DVD's, tape recordings, photos, digital media and other documents were not included in the files presented to the Assistant District Attorney. Physical evidence is required by department policy to be tagged in the Property Room; however, some investigators have important documents in case files located in their respective divisions or offices. It is the responsibility of those investigators to ensure **all** evidence and information is available to the District Attorney at the time the case is presented for charges and definitely before any hearings. There is now a greater burden to make sure that evidentiary items are in the District Attorney's file and available to the defense.

Charles A. McClelland, Jr.
Chief of Police

cam:mlc

Originating Party:
Mark L. Curran, Assistant Chief
Special Investigations Command

COP #13-48169

**TO BE READ AT ALL ROLL CALLS FOR 5 DAYS**

DEFENDANTS_HUGHES_000842

**CONFIDENTIAL**

# Circular
## Houston Police Department



May 10, 2017

NO. 17-0510-109

SUBJECT: **REVISION OF GENERAL ORDER 500-07, FILING PROPER CHARGES**

Attached General Order 500-07, **Filing Proper Charges**, has been revised to update terminology from "use of force" to "response to resistance."

Employees shall know the laws and ordinances they are charged with enforcing as well as all department orders, directives, duties, and procedures governing their specific assignments. As such, all classified employees shall read in its entirety the attached revised General Order or its equivalent on the department's Intranet Portal. Command Staff members shall make this notice of General Order revision available to all employees under their command.

Art Acevedo
Chief of Police

dmv:drg

Originating Party:
R. A. Gerstner, Captain
Inspections Division

COP # 17-61922

### TO BE READ AT ALL ROLL CALLS FOR 5 DAYS

DEFENDANTS_HUGHES_000853

CONFIDENTIAL

| General Order | ISSUE DATE: | NO. |
|---|---|---|
| | May 10, 2017 | 500-07 |
| **Houston Police Department** ⬡ | REFERENCE: Supersedes all prior conflicting Circulars and Directives, and General Order 500-07, dated January 20, 2012 | |

SUBJECT: FILING PROPER CHARGES

## POLICY

The Houston Police Department shall work cooperatively with the District Attorney's Office to help reduce the number of cases dismissed. Proper documentation of the facts and supervisory review should help reduce incidents when charges are dismissed as well as protect officers from frivolous Internal Affairs complaints.

Effective law enforcement requires cooperation between police officers and members of the District Attorney's Office. This General Order outlines procedural guidelines for officers and supervisors to use when consulting with the Harris County District Attorney's Office regarding the filing of charges.

Officers shall refer to General Order 500-01, **Effecting Arrests and Searches,** for filing procedures in Fort Bend or Montgomery counties.

This General Order applies to all classified employees.

## 1   CONSULTATION WITH AN ASSISTANT DISTRICT ATTORNEY

Before filing any charges with the Harris County District Attorney's Office, the officer filing the charges shall speak with an assistant district attorney to ensure that the charges will be accepted.

During the consultation, the officer shall provide the elements of the offense, sufficient details to show that probable cause existed to arrest the person, and evidence that the person being charged did in fact commit the offense. These probable cause details shall be included in the charges filed via the District Attorney Intake Management System (DIMS).

It is important that a thorough probable cause statement be contained in the warrant because this is sometimes the only information available to the assistant district attorney when the defendant is arraigned before a magistrate during a probable cause hearing. It is also imperative that the officer filing charges document the exact time of arrest.

An assistant district attorney also shall be consulted before the simultaneous filing of both county and municipal charges against one suspect if these charges are based on the same set of circumstances or the same criminal action. This consultation eliminates the possibility of a case being dismissed because of noncompliance with the Speedy Trial Act or because of violations of legal restraints against placing a defendant in double jeopardy.

Whenever an officer is unsure of the elements of a particular case, he shall discuss the matter with his immediate supervisor or contact the District Attorney's Office.

DEFENDANTS_HUGHES_000854

**CONFIDENTIAL**

| General Order #500-07 | ISSUE DATE: May 10, 2017 | PAGE: #2 |
|---|---|---|

Under no circumstances shall a lesser charge be filed merely as a matter of convenience. For example, a charge of Public Intoxication shall not be filed if the actual offense was Driving While Intoxicated. Appropriate charges shall be filed according to the elements of the offense.

## 2 REJECTION OF CHARGES BY ASSISTANT DISTRICT ATTORNEYS

If an officer tries to file charges through the District Attorney's Intake Office and these charges are rejected, the officer shall include all of the following information in the original or supplemental incident report:

a. Time and date the officer spoke with the assistant district attorney about filing charges in the case.

b. Name of the assistant district attorney who rejected the charges.

c. Reasons given by the assistant district attorney for rejecting the charges.

If the officer feels that the appropriate charge was not accepted by an assistant district attorney, then the officer shall notify a supervisor. If the supervisor finds mishandling on the part of the officer, the supervisor shall instruct the officer on policy and proper procedures to avert recurrences.

## 3 DEPARTMENT OF PUBLIC SAFETY DRIVING WHILE LICENSE INVALID

Texas driver license suspensions shall be verified through Vehicular Crimes Division. The Vehicular Crimes Division shall accept holds for persons charged with Class B or greater Driving While License Invalid (DWLI). A license is considered invalid if it is confirmed to be suspended, revoked, cancelled, non-renewed, or expired. A DWLI first offense is a Class C misdemeanor. DWLI becomes a Class B misdemeanor if the person has a previous conviction for DWLI or was previously suspended as the result of an offense involving the operation of a motor vehicle while intoxicated.

## 4 RESISTING ARREST, SEARCH, OR TRANSPORTATION; EVADING ARREST OR DETENTION; AND INTERFERENCE WITH PUBLIC DUTIES

Officers shall use their training and experience in evaluating the totality of the circumstances when assessing whether charges should be pursued. If an event warrants an officer making an arrest of a person for Resisting Arrest, Search, or Transportation; Evading Arrest or Detention; or Interference with Public Duties, the arresting officer shall immediately notify a supervisor of the arrest and request his presence at the scene.

The arresting officer shall have a supervisor present prior to contacting the District Attorney's Office.

A supervisor shall check by on all scenes involving any of the above incidents. Once at the scene, the supervisor shall also do all of the following:

**DEFENDANTS_HUGHES_000855**

**CONFIDENTIAL**

General Order #500-07 | ISSUE DATE: May 10, 2017 | PAGE: #3

a. Observe the suspect's physical condition, if possible.

b. Ensure the suspect receives medical attention if injured.

c. Speak with all officers at the scene and review the facts with them.

d. Review all the facts with the arresting officer and discuss with the arresting officer the range of charges that may be applicable.

e. Ensure any response to resistance is properly documented.

Only after the supervisor has completed the above requirements shall the officer contact the District Attorney's Office to determine if criminal charges will be accepted.

In addition to the above listed requirements, the supervisor shall do all of the following:

f. Take and maintain accurate field notes related to the incident.

g. Review the officer's incident report to ascertain that sufficient details of the incident are documented to support the arrest charge.

After the officer speaks with the District Attorney's Office, the officer shall immediately notify the scene supervisor of the assistant district attorney's decision.

The officer shall also document in the incident report the name of the supervisor that checked by on the scene and reviewed the facts with the officer.

Officers shall ensure that all elements of the offense and sufficient details are included in the charge filed via the DIMS or Juvenile Offender Tracking System (JOTS). Details of the offense need to show that probable cause existed to arrest the person and that there was evidence to prove that the person being charged did in fact commit the offense.

It is imperative that there is a compelling probable cause statement in the charge details, given that this may be the only information available to the assistant district attorney when the defendant is arraigned before a magistrate during a probable cause hearing.

## 5   FILING CHARGES ON PRISONERS FOR CLASS "B" OR GREATER OFFENSES

When officers are required to file Class B or greater charges on suspects placed on "hold" by any investigative division, upon Jail Division personnel accepting the prisoner, the officer shall do all of the following:

a. Complete a General Person's Inquiry on the prisoner.

b. Complete any required report and related paperwork.

Officers shall refer to General Orders 500-08, **Required Booking Information and Hold Procedures** and 800-07, **Criteria for Submitting Incident Reports**, for further information.

**DEFENDANTS_HUGHES_000856**

CONFIDENTIAL

| General Order #500-07 | ISSUE DATE: May 10, 2017 | PAGE: #4 |

c. Enter charges in DIMS or JOTS, as applicable. Officers shall not delay entering the charge documents in order to wait for an Automated Fingerprint Identification System (AFIS) number.

d. Contact the division that authorized the hold and provide them with the incident report number.

Upon completion of charges being filed and after any required information and paperwork has been provided to and accepted by the division that authorized the hold, officers shall return to service.

The investigative division authorizing the hold shall be responsible for contacting the Jail Division to obtain the AFIS number and finalize the transmitting of the charges.

The division authorizing the hold shall ensure that charges are completed in a timely manner.

The officer transmitting the charges via DIMS shall confirm with District Attorney (DA) Intake that they have received all necessary information.

## 6   MUNICIPAL COMPLAINTS

Municipal complaints are used to file Class C misdemeanor charges against a defendant.

The affiant on the complaint may be either the officer or the complainant, and the complaint shall be sworn to before a notary public.

The complaint shall be completed in the presence of the notary public. All officers booking prisoners for Class C violations shall properly fill out all portions of the citation and/or complaint.

## 7   USE OF RETAIL VALUE

The value of items in theft cases shall be determined by the retail value of the stolen goods.

## 8   RELATED GENERAL ORDERS

500-01, **Effecting Arrests and Searches**
500-08, **Required Booking Information and Hold Procedures**
600-17   **Response to Resistance**
800-07   **Criteria for Submitting Incident Reports**

Art Acevedo
**Chief of Police**

**DEFENDANTS_HUGHES_000857**

**CONFIDENTIAL**

363164-19    Suppl No
ORIG

# HOUSTON POLICE DEPARTMENT



Houston Police Department
1200 Travis Street
Houston, Texas 77002
713-884-3131 Emergency Dial 9-1-1

Reported Date
**03/23/2019**
Offense Report Title
**Impersonating an Officer**
Officer Name
**FEW, J J**

## Administrative Information

| Agency | Incident # | Suppl No | Reported Date | Reported Time |
|---|---|---|---|---|
| **HOUSTON POLICE DEPARTMENT** | **363164-19** | **ORIG** | **03/23/2019** | **02:44** |

| Status | Offense Report Title |
|---|---|
| **Report Written or to Follow** | **Impersonating an Officer** |

| CAD Call Type |
|---|
| **2104** |

| Address | City |
|---|---|
| **4600 W IH 610 FWY S** | **Houston** |

| ZIP Code | Dist/Beat | Station | District | From Date | From Time | Primary Unit |
|---|---|---|---|---|---|---|
| **77027** | **18F20** | **MIDW** | **18** | **03/23/2019** | **02:44** | **18F35K** |

| Officer Name / Employee# | Division |
|---|---|
| **FEW, J J /** ▮ | **Midwest - Nights - Patrol** |

| Second Officer Name / Employee# | Division |
|---|---|
| **GARCIA, M A /** ▮ | **Midwest - Nights - Patrol** |

| Report Entered By / Employee# | Division |
|---|---|
| **FEW, J J /** ▮ | **Midwest - Nights - Patrol** |

| RMS Transfer | Property Trans Stat | Weather | Estimated Loss Value | Language Translator |
|---|---|---|---|---|
| **Successful** | **Successful** | **Clear** | **None or Not Applicable** | **Spanish** |

| Gang Crime | Hate Crime | Family violence | Foster Care Facility | Mental Illness | Metal Theft | Offense County |
|---|---|---|---|---|---|---|
| **No** | **No** | **No** | **No** | **No** | **No** | **Harris County** |

| Approving Officer | Approval Date | Approval Time |
|---|---|---|
| ▮**183** | **06/24/2020** | **08:04:08** |

| # Offenses | Offense | Description |
|---|---|---|
| **1** | **26481** | **Impersonating an Off** |
| # Offenses | Offense | Description |
| **2** | **08174** | **Unlawful Restraint-F** |

## Person Summary

| Invl | Invl No | Type | Name (Last,First MI) | MNI |
|---|---|---|---|---|
| **COM** | **1** | **I** | **GOMEZ,EDGAR** | **3661683** |

| Race | Sex | DOB |
|---|---|---|
| **W** | **M** | ▮ |

## Vehicle Summary

| Invl | Type | License No | State | Lic Year | Year | Make | Model | Style | Color |
|---|---|---|---|---|---|---|---|---|---|
| **GEN** | | **KZH8433** | **TX** | **2019** | **2007** | **GMC** | **SRA** | **PK** | |

| Report Officer | Printed At | |
|---|---|---|
| ▮**/FEW, J J** | **06/05/2025 15:26** | **Page 1 of 2** |

DEFENDANTS_HUGHES_001012

CONFIDENTIAL

**363164-19**

Suppl No
ORIG

# HOUSTON POLICE DEPARTMENT

## Complainant 1: GOMEZ,EDGAR

| Involvement | Invl No | Type | | |
|---|---|---|---|---|
| Complainant | 1 | Individual | | |

| Name (Last,First MI) | | MNI |
|---|---|---|
| GOMEZ,EDGAR | | 3661683 |

| Race | Sex | DOB | Age |
|---|---|---|---|
| White or White Hispanic | Male | ▇▇▇▇ | 24 |

| Hispanic | | Juvenile? | PRN | Reported Date | Vic/Ofnd Age |
|---|---|---|---|---|---|
| Hispanic or Latino | (Y) | No | 3856731 | 03/23/2019 | 24 |

| Residence | Sexual Assault? | | |
|---|---|---|---|
| Resident | No | | |

| Type | Address | Dist/Beat |
|---|---|---|
| Home | 935 CLOVERLEAF BLVD #25 | HCSO |

| Map Coordinates | City | State | ZIP Code | Date |
|---|---|---|---|---|
| -95.167507/29.778551 | HARRIS CO | Texas | 77015 | 03/23/2019 |

| Phone Type | Phone No | Date |
|---|---|---|
| Cell - Mobile | (832)616-9460 | 03/23/2019 |

| Type | EMail |
|---|---|
| Other | none |

## IBRS Info

| Victim Invl No | NIBRS |
|---|---|
| 1 | 26C/90Z |

| Related Offenses |
|---|
| 26C/90Z |

## Vehicle: KZH8433

| Involvement | Invl No | License No | State | Lic Year | Year |
|---|---|---|---|---|---|
| General (Compl/Other Vehicle) | 8001 | KZH8433 | Texas | 2019 | 2007 |

| Make | Model |
|---|---|
| General Motors Corp. | Sierra 1500 Classic 2500 3500 Hybrid HD C3 |

| Style | VIN | VMO Translation | Reported Date |
|---|---|---|---|
| Pickup Truck | 3GTEC13CX7G521998 | Sierra 1500 Classic | 03/23/2019 |

## Modus Operandi

| Gang Act? | Premise Type |
|---|---|
| No | Highway or Freeway |

| NIBRS |
|---|
| BVNR |

| BWC Video(s) |
|---|
| Body Video Not Reviewed |

## Brief Summary

This record has been expunged, in whole or in part, pursuant to a court order.

## Narrative

This record has been expunged, in whole or in part, pursuant to a court order.

| Report Officer | Printed At | |
|---|---|---|
| ▇▇▇▇/FEW, J J | 06/05/2025 15:26 | Page 2 of 2 |

**CONFIDENTIAL**

363164-19      Suppl No
                0001

# HOUSTON POLICE DEPARTMENT



Houston Police Department
1200 Travis Street
Houston, Texas 77002
713-884-3131 Emergency Dial 9-1-1

Reported Date
**03/25/2019**
Offense Report Title
**Impersonating an Officer**
Officer Name
**FEW, J J**

## Administrative Information

| Agency | | Incident # | Suppl No | Reported Date | Reported Time |
|---|---|---|---|---|---|
| **HOUSTON POLICE DEPARTMENT** | | **363164-19** | **0001** | **03/25/2019** | **03:54** |

| Status | Offense Report Title |
|---|---|
| **Report Written or to Follow** | **Impersonating an Officer** |

| CAD Call Type |
|---|
| **2104** |

| Address | City |
|---|---|
| **4600 W IH 610 FWY S** | **Houston** |

| ZIP Code | Dist/Beat | Station | District | From Date | From Time |
|---|---|---|---|---|---|
| **77027** | **18F20** | **MIDW** | **18** | **03/23/2019** | **02:44** |

| Officer Name / Employee# | Division |
|---|---|
| **FEW, J J /** ▪ | **Midwest - Nights - Patrol** |

| Report Entered By / Employee# | Division |
|---|---|
| **FEW, J J /** ▪ | **Midwest - Nights - Patrol** |

| RMS Transfer | Property Trans Stat | Approving Officer | Approval Date | Approval Time |
|---|---|---|---|---|
| **Successful** | **Successful** | ▪ **183** | **06/24/2020** | **08:05:38** |

## General or Other Involvement to Case 1: HUGHES,BRIANNA RAQUEL

| Involvement | Invl No | Type |
|---|---|---|
| **General or Other Involvement to Case** | **1** | **Individual** |

| Name (Last,First MI) | MNI |
|---|---|
| **HUGHES,BRIANNA RAQUEL** | **3609333** |

| Race | Sex | DOB | Age | Juvenile? | Height | Weight | Hair Color | Eye Color |
|---|---|---|---|---|---|---|---|---|
| **White or White Hispanic** | **Female** | **08/14/1986** | **32** | **No** | **5'07"** | **160#** | **Brown** | **Brown** |

| RMS Transfer | PRN | RMS Row ID | RMS Transfer Date | Reported Date |
|---|---|---|---|---|
| **Successful** | **3857738** | **3857738** | **03/26/2019 14:43:26** | **03/25/2019** |

| Type | Address |
|---|---|
| **Home** | **3810 LAW STREET #334** |

| City | State | ZIP Code | Date |
|---|---|---|---|
| **Houston** | **Texas** | **77005** | **03/25/2019** |

| Type | Address |
|---|---|
| **Mailing** | **3810 LAW STREET #334** |

| City | State | ZIP Code | Date |
|---|---|---|---|
| **Houston** | **Texas** | **77005** | **03/25/2019** |

| Type | ID No | ST |
|---|---|---|
| **State Issued Drivers License / ID Card #** | **36330302** | **TX** |
| **State Issued Drivers License / ID Card #** | **36330302** | **TX** |

| Phone Type | Phone No | Date |
|---|---|---|
| **Cell - Mobile** | **(404)771-4511** | **03/25/2019** |

## Modus Operandi

| Gang Act? | NIBRS |
|---|---|
| **No** | **BVNR** |

| BWC Video(s) |
|---|
| **Body Video Not Reviewed** |

## Brief Summary

This record has been expunged, in whole or in part, pursuant to a court order.

## Narrative

This record has been expunged, in whole or in part, pursuant to a court order.

| Report Officer | Printed At | |
|---|---|---|
| ▪ **/FEW, J J** | **06/05/2025 15:26** | **Page 1 of 1** |

DEFENDANTS_HUGHES_001014

<span style="color:red">**CONFIDENTIAL**</span>

363164-19

# HOUSTON POLICE DEPARTMENT



Houston Police Department
1200 Travis Street
Houston, Texas 77002
713-884-3131  Emergency Dial 9-1-1

Reported Date
**06/24/2020**
Offense Report Title
**Impersonating an Officer**
Officer Name
**MOSELEY, K C**

## Administrative Information

| Agency | | Incident # | Suppl No | Reported Date | Reported Time |
|---|---|---|---|---|---|
| **HOUSTON POLICE DEPARTMENT** | | **363164-19** | **0002** | **06/24/2020** | **07:53** |

| Status | Offense Report Title |
|---|---|
| **Report Written or to Follow** | **Impersonating an Officer** |

| CAD Call Type |
|---|
| **2104** |

| Address | City |
|---|---|
| **4600 W IH 610 FWY S** | **Houston** |

| ZIP Code | Dist/Beat | Station | District | From Date | From Time |
|---|---|---|---|---|---|
| **77027** | **18F20** | **MIDW** | **18** | **03/23/2019** | **02:44** |

| Officer Name / Employee# |
|---|
| **MOSELEY, K C /** ▮**183** |

| Division |
|---|
| **Records - Evenings - Customer Service Unit** |

| Report Entered By / Employee# |
|---|
| **MOSELEY, K C /** ▮**183** |

| Division | RMS Transfer | Property Trans Stat |
|---|---|---|
| **Records - Evenings - Customer Service Unit** | **Successful** | **Successful** |

| Approving Officer | Approval Date | Approval Time |
|---|---|---|
| ▮**183** | **06/24/2020** | **07:52:32** |

## Modus Operandi

| Gang Act? | NIBRS |
|---|---|
| **No** | **BVNO** |

| BWC Video(s) |
|---|
| **Body Video No(No Camera Issued)** |

## Brief Summary

This record has been expunged, in whole or in part, pursuant to a court order.

## Narrative

This record has been expunged, in whole or in part, pursuant to a court order.

| Report Officer | Printed At | |
|---|---|---|
| ▮**183/MOSELEY, K C** | **06/05/2025 15:26** | **Page 1 of 1** |

DEFENDANTS_HUGHES_001015

CONFIDENTIAL

# Expunction Process

**Please read over Court Ordered Expunction before deleting/redacting any records or files.**

**Direct any questions concerning this process to the Records Division/Expunction Section on the 23rd floor and Legal Services, Staff Attorney, Clifton Journet III on the 15th floor.**

1. **If there are <u>No Records Found</u>**
   a. **Write No Records Found**
   b. **Sign and date request form**
   c. **Return Request Form  to Records/Expunction Section**
   d. **Retaining copies of the Court Order is prohibited**

2. **<u>1 Suspect  and 1 Offense</u>**
   a. **Return all records and files**
   b. **Return pictures, audio/video tapes**
   c. **Sign and date request form**
   d. **Return to Records/Expunction Section**
   e. **Retaining copies of the Court Order is prohibited**

3. **<u>1 Suspect with Multiple Offenses</u>**
   a. **Delete offense listed in the order from all records and files.**
   b. **Division will retain all records concerning the additional offenses.**
   c. **Sign and date request form**
   d. **Return to Records/Expunction Section**
   e. **Retaining copies of the Court Order is prohibited**

**DEFENDANTS_HUGHES_001016**

CONFIDENTIAL

4. **Multiple Suspects, 1 or more Offenses**
   a. **Delete Suspect and Offense listed in the Court Order from all records and files.**
   b. <u>**If Suspect has additional Offenses**</u>:  **Delete offense listed in the Court Order and retain Suspects Identifying information.**
   c. **Division will retain all records and files.**
   d. **Sign and date request form**
   e. **Return to Records/Expunction Section**
   f. **Retaining copies of the Court Order is prohibited**

   <u>**Note**</u>: **If there are Multiple Suspects and 1 Offense**
   **Delete Suspect and all Identifying Information listed in the Order**
   **Return to 4. (c)**

5. **Please Be Aware of Court Ordered Expunctions with the phrase**
   **This Order  <u>DOES NOT AUTHORIZE</u>**
   **If this applies, please read and complete request form, sign and return.  <u>Division after redacting Suspect Identifying information will retain all records related to incident.</u>**

   a. **Delete Suspect Name and all identifiers only.**
   b. **Division may retain all investigative material and evidence related to case.**
   c. **Sign and date request form**
   d. **Return to Records/Expunction Section**
   e. **Retaining copies of the Court Order is prohibited**

DEFENDANTS_HUGHES_001017

CONFIDENTIAL

**Please call Legal Services, Clifton Journet III, Staff Attorney at ext. 8-1667 for additional information or assistance.**

**Any questions concerning the Expunction Process, please call Records Division/Expunction Section.**

**Nayela Abdulhameed, Office Supervisor   713-308-8697**

DEFENDANTS_HUGHES_001018