## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **AUSTIN THOMPSON HUGHES** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:21-cv-01994** |
| | § | |
| **CITY OF HOUSTON, HARRIS** | § | **(JURY TRIAL DEMANDED)** |
| **COUNTY, ART ACEVEDO, KIM** | § | |
| **OGG, MICHAEL GARCIA, JOSHUA** | § | |
| **FEW, JAMES SEYMOUR, and** | § | |
| **TIFFANY ALFRED** | § | |
| | § | |
| **Defendants.** | § | |

---

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS'
## MOTION FOR SUMMARY JUDGMENT

---

## **TABLE OF CONTENTS**

I.   NATURE AND STAGE OF THE PROCEEDING ....................................................... 1

II.   STATEMENT OF ISSUES TO BE RULED UPON BY THE COURT ................. 1

III.   STANDARD OF REVIEW ....................................................................................... 1

IV.   DEFENDANTS "FACTS" ARE DISPUTED ......................................................... 3

V.   ARGUMENT AND AUTHORITIES ....................................................................... 7

  A.  Plaintiff's Claims Are Not Barred By Statute of Limitation.................................... 7

  B.  Defendants Are Not Entitled to Qualified Immunity for Unlawful Arrest. ............ 9

    1.   Plaintiff has shown a violation of clearly established law by Few....................... 9

    2.   Plaintiff has shown numerous material misstatements and omissions in the warrant affidavit sufficient for liability under Franks. ............................................... 11

    3.   Defendants clearly lacked probable cause to arrest Hughes for impersonating a police officer, as supported by a corrected affidavit analysis under Franks. ............. 13

  C.  Defendants' Motion is Not Supported by Credible Summary Judgment Evidence. 18

VI.   CONCLUSION ..................................................................................................... 19

Plaintiff Austin Hughes ("Hughes" or "Plaintiff"), by and through undersigned counsel, hereby files this response in opposition to Defendants Michael Garcia ("Garcia"), Joshua Few's ("Few") Motion for Summary Judgment (Dkt. 170) and, in support thereof, states as follows:

## I.    NATURE AND STAGE OF THE PROCEEDING

On May 3, 2024, the Fifth Circuit affirmed this Court's denial of qualified immunity to Defendants Garcia and Few on Plaintiff's 42 U.S.C. §1983 claim for unlawful arrest under the Fourth Amendment. Since, the Parties have completed discovery and intend to proceed to trial on those claims on December 1, 2025. (Dkt. 205).

## II.    STATEMENT OF ISSUES TO BE RULED UPON BY THE COURT

The issues to be ruled upon by the Court are as follows:

(1) Whether Plaintiff's claims are barred by statute of limitations.

(2) Whether the Officers are entitled to qualified immunity from Plaintiff's unlawful arrest claim at the summary judgment stage.

(3) Whether the Officers are entitled to qualified immunity from alleged failure to intervene at the summary judgment stage.

## III.    STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Material facts are those facts "that might affect the outcome of the suit under the governing law." *Smith v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir.1998) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "The facts are to be reviewed with all 'justifiable inferences' drawn in favor of the party opposing the motion."

*U.S. v. Ekpin*, 214 F.Supp.2d 707 (S.D. Tex. 2002) (quoting *Morris v. Covan Worldwide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir.1998)). However, factual controversies are resolved in favor of the nonmovant "only when there is an actual controversy – that is, when both parties have submitted evidence of contradictory facts." *Id*. (quoting *Laughlin v. Olszewski*, 102 F.3d 190, 193 (5th Cir. 1996)). The non-moving party's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Willis v. Roche Biomedical Laboratories, Inc.*, 61 F.3d 313, 315 (5th Cir. 1995) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). Ultimately, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

"Where the summary judgment movant bears the burden of proof at trial, the summary judgment evidence must affirmatively establish the movant's entitlement to prevail as a matter of law." *Universal Sav. Ass'n v. McConnell*, 14 F.3d 52 (5th Cir. 1993) (unreported); *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1198 (5th Cir. 1986) ("if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor"). To establish liability under § 1983, a civil rights plaintiff must establish two elements: (1) state action, *i.e.*, that the conduct complained of was committed under color of state law, and (2) a resulting violation of federal law, *i.e.*, that the conduct deprived the plaintiff of rights

secured by the Constitution or laws of the United States. *See Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992); *see also Townsend v. Moya*, 291 F.3d 859, 861 (5th Cir. 2002) (In short, "[s]ection 1983 provides a claim against anyone who, 'under color of' state law, deprives another of his or her constitutional rights.").

## IV.    DEFENDANTS "FACTS" ARE DISPUTED

First, while Defendants claim that "[t]hey also received information over the radio, including observations from HPD's air support unit helicopter, 'FOX,'" Defendants' testimony is unsupported by the evidence. Although Defendants and Sergeant Seymour admit that all pertinent details should be included in both the incident report and PC affidavit, neither mention FOX or any of the alleged details provided by FOX upon which Defendants now rely. (Defendants' MSJ Exs. 3 and 10; Ex. A - Few Dep. at 124:13-15; Ex. C - Seymour Dep. at 138:24-139:10).

When asked where the details by FOX were in the incident report, Defendant Garcia stated, "I did not type the report. The PC statement is what I attested to as the affiant, and that is what the DA's office uses…. Officer Few was the one that did the report. I just know what I did, and I put that in the PC statement." (Ex. B - Garcia Dep. at 172:23-173:3). He later clarified, "[s]o the details of Fox were part of the observation Fox made, so I put that in the PC statement." (*Id*. at 173:10-11). However, Garcia later admitted that he did not include any information by FOX in the PC affidavit. (*Id*. at 213:9-17).

Defendants also misstate Gomez's statement to Defendants as relayed by Defendants in the incident report and PC affidavit. (Compare Defs' MSJ at pp. 4-5 to Exs. 3 and 10). Likewise, the evidence shows that the Officers did not in fact try to corroborate

either Mr. Hughes's statement or Mr. Gomez's statement, as stated in their MSJ.

Defendants also contend that "Officer Garcia submitted a request via Uber's Law Enforcement Portal to verify that Hughes was driving for Uber at the time and try to identify the Uber passengers," and "Uber eventually called Officer Garcia and simply stated simply that Hughes was not driving or working that night." (Defendants' MSJ at pp. 6-7). However, the documents provided by Uber proves this to be false. According to the Uber documents, Defendant Garcia first submitted a request to Uber's Public Safety Response team on March 25, 2019, at approximately 6:56 a.m., more than two (2) days after the incident, and stated the following:

> **The Uber driver** was on a freeway **when he attempted to arrest a drunk driver**. In the process he had the Uber customers exit the car on the freeway and call for another ride. **After this he detained and handcuffed the drunk driver.** In the process he stated he was a police officer and used physical force to detain this person….
>
> I have a **screen shot of an Uber drivers plate and trip ID. I need more details on the customers he had like a name a number to contact them about the trip that day.**

(Defs.' MSJ at Ex. 13) (emphasis added).

According to his communications with Uber, Garcia referred to Mr. Hughes as the "Uber driver" and admits, two days after the incident, that Mr. Hughes was detaining a "drunk driver." Moreover, Garcia attached part of the screenshot provided by Mr. Hughes to Uber and does not question or otherwise attempt to verify the veracity of the screenshot, the details of his trip and/or whether Mr. Hughes was actually driving for Uber at the time of the incident. Moreover, there is no evidence that Uber ever stated that Hughes was not driving or working for Uber that night, and all of the documentary evidence supports the

fact that Hughes was driving for Uber that night. Instead, Uber responded to Officer Garcia stating:

> We can provide your contact details to the account holder (rider) through the email on file. We cannot ensure that the account holder will contact you and if you do not hear from them within a reasonable time period, please provide legal process in order for us to release account information. Please let us know if you would like us to provide your contact details to the rider.

(Defs.' MSJ at Ex. 13). And later:

> We contacted you at (281) 912-8401 and left a message. As per our message we can provide your contact details to the account holder (rider) through the email on file. We cannot ensure that the account holder will contact you and if you do not hear from them within a reasonable time period, please provide legal process in order for us to release account information. Please let us know if you would like us to provide your contact details to the rider.

(*Id*.).

There is no indication that Defendants or anyone else at HPD ever followed up to request that Uber provide their contact details to the rider. To the contrary, in Uber's "internal note detailing the cancellation of the request by phone" on April 9, 2019, an Uber employee stated that she called and spoke with law enforcement who "confirmed that they no longer needed our [Uber's] assistance." *Id.*

Defendants also claim that "Officers identified the law enforcement agency Mr. Hughes had previously been employed with, hoping to verify his separation was in good standing and bolster his credibility for the DWI charge as a former police officer." (Defs.' MSJ at p. 7). However, had the officers properly investigated the DWI in the first place, there would have been no need to "bolster [Mr Hughes's credibility], nor is there any need

to determine whether Mr. Hughes was former law enforcement in order for him to be a proper wheel witness or to conduct a proper citizen's arrest. *See* TEX. CODE. CRIM. P. § 14.01. Second, it is undisputed that Auburn Hills Police Department did confirm that Mr. Hughes was a former police officer with their department. (*See e.g.* Defs.' MSJ at Ex. 3 and Ex. 10). Moreover, Officer Garcia stated in the incident report that "the officer at Auburn Hills… did not give specifics on why [Mr. Hughes] was let go." (Defs.' MSJ at Ex. 3). While Defendant Garcia now claims that a lieutenant at Auburn Hills told him at the time that Mr. Hughes "was no longer there because of an IAD investigation, and the allegation was sexual misconduct," that is belied by his statement in the police report. (*Id.*; Garcia Dep. at 170:18-172:2; Few Dep. at 66:23-67:4; Seymour Dep. at 227:1-14). Regardless, any information related to allegations of sexual misconduct against Mr. Hughes are (1) hearsay, (2) unproven, (3) more prejudicial than probative, and (4) as Defendant Garcia himself admits "pertinent" to probable cause in this case. (*Id.*).

Defendants' "[f]acts" then claim that "Texas law authorizes police officers to arrest without warrant anyone who they witness committing a Class C misdemeanor[,] [and] Officers Few and Garcia had not observed Gomez driving so they had no authority to arrest the drunk driver as Mr. Hughes's federal complaint suggests." (Defs.' MSJ at p. 7) (internal citations omitted). Defendants' conclusion is false and troubling coming from a law enforcement agency. First, under Texas law, driving while intoxicated (DWI) is, at minimum, a Class B misdemeanor, not Class C. *See* TEX. PENAL CODE § 49.04. Further, Tex. Code of Crim. P. Art. 14.03, cited by Defendants, specifically authorizes peace officers to arrest "persons found in suspicious places and under circumstances which

6

reasonably show that such persons have been guilty of… breach of the peace," which includes DWI. TEX. CODE CRIM. P. ART. 14.03; *see also e.g. See Funes v. State*, 630 S.W.3d 175, 181 (Tex. App. – El Paso 2020) ("driving while intoxicated is considered a 'breach of the peace'"). Thus, Defendants absolutely had the authority to arrest Edgar Gomez for DWI without personally observing the offense contrary to Defendants' arguments in their MSJ. (*See also* Garcia Dep. at 86:16-87:12).

Defendants then argue that "[b]ecause of the inconsistencies with lack of damage to the GMC Sierra and FOX observing a male being pulled out of the passenger side, Hughes was not found to be a credible wheel witness for the DWI at the time." (Defs.' MSJ at p. 7). Again, this is contrary to the evidence provided in this case. Based on the statement provided by Mr. Hughes, Officer Few believed that Mr. Hughes was in fact a credible wheel witness. (Few Dep. at 51:22-52:5, 22:14-19). Further, according to Garcia's communications with Uber – he also believed Mr. Hughes to be a credible wheel witness who "detained and handcuffed [a] drunk driver." (Defs.' MSJ at Ex. 13).

For an accurate summary of undisputed facts in this case, Plaintiff incorporates by reference the Statement of Undisputed Facts in Plaintiff's Motion for Partial Summary Judgment as if fully stated herein. (Dkt. 181 at pp. 2-11)

## V.     ARGUMENT AND AUTHORITIES

### A.     Plaintiff's Claims Are Not Barred By Statute of Limitation.

Defendants incorrectly argue that Plaintiff's § 1983 claims are governed by Texas's one-year statute of limitations for malicious prosecution and thus time-barred. (Dkt. 170 at pp. 8-9). Unsurprisingly, Defendants do not cite any case law to support their argument, as

again, Defendants misunderstand the law. "The statute of limitations for a suit brought under § 1983 is determined by the ***general statute of limitations governing personal injuries*** in the forum state." *Piotrowski v. City of Hou.*, 237 F.3d 567, 576 (5th Cir. 2001) (emphasis added); *see also Johnson v. Harris Cnty.*, 83 F.4th 941, 946 (5th Cir. 2023) (same); *see also Nance v. Ward*, 142 S.Ct. 2214, 2225 (2022) ("all § 1983 suits must be brought within a State's statute of limitations for personal-injury actions"). "In Texas, the applicable limitations period is two years." *Winfrey v. Rogers*, 901 F.3d 483, 492-93 (5th Cir. 2018); *Johnson*, 83 F.4th 941 at 946 (two-year statute of limitations applied to §1983 claim where "Texas is the forum state, and its limitations period for personal injury claims is two years").

Thus, a claim alleging "malicious prosecution" or, like here, unlawful arrest pursuant to a warrant, brought under 42 U.S.C. § 1983 is governed by Texas's two-year personal injury statute of limitations and not the statutory one-year statute of limitations for a malicious prosecution claim under Texas law. *Id.*; *see also Esquivel v. Kendrick*, SA-20-CV-00377-OLG (W.D. Tex. May 25, 2020) ("Although a Texas claim of malicious prosecution, which is subject to a one-year limitations period, would likely be time barred, a claim for malicious prosecution under Section 1983 would not be.").

Indeed, in *Winfrey v. Rogers*, the Fifth Circuit held that the exact same claim Plaintiff brings here – a § 1983 claim for the "wrongful institution of legal process - an unlawful arrest *pursuant to* a warrant—instead of a detention with no legal process," is governed by a two-year statute of limitations that  "does not accrue until the prosecution ends in the plaintiff's favor." *Winfrey*, 901 F.3d at 492-93. Here, the prosecution against

Plaintiff was dismissed on June 17, 2019. (Dkt. 171-19). Accordingly, under controlling Fifth Circuit precedent, Plaintiff timely filed his §1983 claims against Defendants for unlawful arrest pursuant to a warrant within the two-year statute of limitations on June 17, 2021. (Dkt. 1); *Winfrey*, 901 F.3d at 492-93. Defendants' argument that Plaintiff's §1983 claims against them are time-barred has no merit. *Id*.

**B.    Defendants Are Not Entitled to Qualified Immunity for Unlawful Arrest.**

***1.    Plaintiff has shown a violation of clearly established law by Few.***

Defendants first argue that "[a]n officer must have prepared or sworn to a warrant application or criminal complaint, deceived the probable cause finding judge or grand jury, in order to be subject to liability for an arrest or prosecution." (Defs.' MSJ at p. 11). This is incorrect. As the Fifth Circuit held in its decision previously denying qualified immunity to Officer Few, "an officer who recklessly or intentionally **contributed** misleading statements or omissions to a warrant affidavit violates the arrestee's constitutional rights[,] [and] [t]hat violation has been clearly established since *Franks*." *Hughes v. Garcia*, 100 F.4th 611 (5th Cir. 2024) (citing *Winfrey v. Rogers*, 901 F.3d 483, 494 (5th Cir. 2018)) (emphasis added). More specifically, the Fifth Circuit held that "Few may be liable for a *Franks* violation if he produced information containing false statements or material omissions made with at least 'reckless disregard for the truth,' and he knew that information would be used in a warrant affidavit." *Id*. (internal citations omitted). As the Fifth Circuit explained in its previous opinion "Few submitted the incident report entitled 'Impersonating an Officer[]' [t]hat… omitted critical pieces of information from Hughes's statement while including statements from the drunk driver that the officers' own lawyer

called 'crazy,'" and stating further that:

> Few had access to ample evidence suggesting both that Hughes's statement was reliable and that the drunk driver's was not. For example, Hughes sent the officers screenshots of his last Uber trip, corroborating his story. But the report misstated the information in the screenshots, suggesting the displayed endpoint of the ride should have matched Hughes's actual stopping point, when in reality it reflected only the requested destination. Moreover, Few presumably had access to Hughes's recorded 911 calls, with the play-by-play description of the white Sierra's actions and the Uber passengers' voices. Again, Few omitted any such discussion. Finally and most importantly, the inconsistencies or falsehoods in the drunk driver's story should have decreased or eliminated its relative weight. But Few's report contained none of these facts. That evinces at a bare minimum that Few recklessly disregarded the truth.

*Id*. That conclusion continues to be supported by the evidence. (*See* Defs. MSJ at Ex. 3; Few Dep. at 125:23-127:11).

Moreover, "there can be little doubt Few submitted the incident report 'for the purpose of its being included in [the] warrant application.'" *Hughes*, 100 F.4th 611 (quoting Melton, 875 F.3d at 262); *see also Bledsoe v. Willis*, No. 23-30238, 2023 WL 8184814 (5th Cir. Nov. 27, 2023) (per curiam) (unpublished) (denying qualified immunity as to both officers where one initially investigated and the other prepared the warrant affidavit).

Few is also not entitled to qualified immunity as Plaintiff has established that Few is liable under a theory of bystander liability. Bystander liability attaches when an officer "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013) (citations omitted). Here, Few knew, and admitted to

knowing, the information Garcia contributed to the incident report (and then to the warrant affidavit) contained material misstatements and omissions that did not accurately reflect the evidence from their investigation. (*See* Few Dep. at 43:18-23, 91:8-106:4, 107:9-.109:13). Few had access to substantial evidence contradicting the drunk driver's narrative and Garcia's recitation of the facts. (*Id*.). Even if Few himself did not write the false statements, he submitted the report containing them. Moreover, he reviewed the PC affidavit prior to arresting Plaintiff and thus – "knew of the harm about to be perpetrated" and "ha[d] a reasonable opportunity to prevent the harm… [but] [chose] not to act." *Hughes*, 100 F.4th at 622 (citing *Whitley*, 726 F.3d at 646)). Moreover, as one of the arresting officers, Hughes reviewed the warrant and probable cause affidavit prior to arresting Hughes and, after seeing the misstatements and omissions of evidence from the scene, had the opportunity to stop the arrest but failed to do so. (Few Dep. at 91:18-20; 124:15-19). Accordingly, Few is not entitled to summary judgment based on qualified immunity for Hughes's claims based on Franks and bystander liability. *Id*.

### 2. Plaintiff has shown numerous material misstatements and omissions in the warrant affidavit sufficient for liability under Franks.

While Defendants argue that "Garcia didn't lie," it is clear from the underlying evidence, including his own prior statements, that Garcia lied in his probable cause affidavit and continues to lie in his testimony throughout this case. Garcia's material omissions and misstatements are detailed in full in Plaintiff's Motion for Partially Summary Judgment, which is incorporated by reference as if fully stated herein. (Dkt. 181 at pp. 18-21). While not the only lie, one of the most easily verifiable lies in the probable

cause affidavit was Garcia's statement that he "listened to a call that [Hughes] made to 911 and heard [Hughes] tell 911 dispatch that he was a former police officer **and asking the complainant for identification**." (Defs.' MSJ at Ex. 10). The Court can listen to the recordings of Hughes's 911 calls for itself, which shows that it is impossible for Garcia to have heard Mr. Hughes asking for identification, since it is clear he did not do so in the recording. (Defs.' MSJ at Exs. 10, 11, 12; Garcia Dep. at 189:12-190:3, 203:5-10). Garcia also admitted to lying in the affidavit when he stated "I spoke to the complainant [Gomez] who stated that the defendant searched his car." (Garcia Dep. at 179:14-16 (Q. Did Mr. Gomez tell you that the defendant searched his vehicle. A. No.).

Defendants next purport to identify "[t]ruthful statements material to police impersonation," however, again, fails to conduct a proper probable cause analysis. It is imperative to determine a witness's credibility, as both Defendants admit. (Garcia Dep. 185:1-4, 35:7-14; Few Dep. at 77:25-78:3). Even if Gomez alleged that Mr. Hughes identified himself as a police officer, which Plaintiff disputes, it is undisputed that Gomez was highly intoxicated at the time he made the statement, was being investigated for the criminal offense of driving while intoxicated and otherwise made a statement that was nonsensical and undermined by the evidence at the scene and 911 calls. Additionally, contrary to Defendants' Motion, Hughes never searched or admitted to searching Gomez's vehicle. But more importantly, Garcia did not include any information related to Gomez's intoxication, the details provided in the 911 calls or any of the information provided by Uber – all of which would be incredibly relevant to a probable cause determination by a magistrate.

### 3.  *Defendants clearly lacked probable cause to arrest Hughes for impersonating a police officer, as supported by a corrected affidavit analysis under Franks.*

Under Texas law, a person commits the third-degree felony offense of impersonating a public servant "if the person: (1) impersonates a public servant with intent to induce another to submit to the person's pretended official authority or to rely on the person's pretended official acts; or (2) knowingly purports to exercise, without legal authority, any function of a public servant…" Tex. Penal Code § 37.11. The only facts provided in Defendant Garcia's affidavit to support probable cause were either false or provided by the DWI suspect and contradicted by the evidence, and thus, not credible.

Moreover, Texas's citizen's arrest law provides a complete affirmative defense to the impersonation of a public servant charge. The offense of impersonation under Texas law requires either (1) the specific "intent to induce another to submit to the person's pretended official authority or to rely on the person's pretended official acts" or (2) the lack of "legal authority." Tex. Penal Code § 37.11(a)(1)-(2). Texas's citizen's arrest statute expressly gives "any… person" the authority to "without a warrant, arrest an offender when the offense is committed in his presence or within his view, if the offense is one classed as a felony or as an offense against the public peace." Tex. Code Crim. Proc. art. 14.01(a). Driving while intoxicated is uniformly considered a "breach of the peace" for purposes of the citizen's arrest statute. *See Funes v. State*, 630 S.W.3d 175, 180 (Tex. App. – El Paso 2020). Indeed, Texas courts routinely hold that a citizen has committed a lawful citizen's arrest of a DWI suspect under circumstances similar to the circumstances of Plaintiff's detention of the DWI suspect here. *See e.g. Miles v. State*, 194 S.W.3d 523, 528 (Tex. App.

– Houston 2006), *aff'd*, 241 S.W.3d 28 (Tex. Crim. App. 2007) (tow-truck driver had probable cause to effectuate a lawful citizen's arrest of DWI suspect where he "had observed the behavior of numerous drunk drivers in his capacity as a wrecker driver," and observed that the suspect "was 'fumbling' and 'agitated;'… 'didn't seem coordinated,… didn't have good coordinational skills' and that [his] 'motor skills seemed to be off.'").[1]

Thus, because an individual who effectuates a lawful citizen's arrest is acting under the authority of Texas law, such a person cannot be shown to have had the requisite specific intent of inducing the arrestee to submit to his "*pretended* official authority or… rely on [his] *pretended* official acts," nor can he be said to have lacked "legal authority" for the arrest. Because Plaintiff pled that the Officer Defendants were aware of the facts establishing that Plaintiff merely effectuated a lawful citizen's arrest of the DWI suspect, they did not have the requisite probable cause for his arrest. *See e.g. Thomas v. City of Galveston, Texas*, 800 F. Supp. 2d 826, 837 (S.D. Tex. 2011) (quoting *Painter v.*

---

[1] *See also United States v. Sealed Juv. 1*, 255 F.3d 213, 219 (5th Cir. 2001) (holding that a person "can invoke the power of citizen's arrest if he witnesses someone driving erratically and recklessly on the highway"); *Robertson v. State*, No. 08-17-00109-CR, 2019 WL 2442878, at *4 (Tex. App. – El Paso June 12, 2019) (a border patrol agent who lacked jurisdiction was nonetheless entitled to make citizen's arrest of DWI suspect by placing him in back of his patrol vehicle where the suspect exhibited clear signs of intoxication and agent believed it would be dangerous to allow him to get back on the road) (collecting cases); *Romo v. State*, 577 S.W.2d 251, 252–53 (Tex. Crim. App. [Panel Op.] 1979) (finding a lawful citizen's arrest where a government employee who was not a peace officer observed a vehicle weaving and otherwise driving erratically at a high rate of speed, and so deployed red flashing lights, conducted a traffic stop of a DWI suspect, and confiscated the suspect's driver's license so that he could not leave); *Kunkel v. State*, 46 S.W.3d 328, 330 (Tex. App.–Houston [14th Dist.] 2001, pet. ref'd) (finding lawful citizen's arrest where tow truck driver pursued and boxed in a DWI suspect's vehicle, confiscated her keycard for the gate she was attempting to open, and physically prevented her from exiting her vehicle after he observed her driving erratically, weaving between lanes, and bumping the curbs on the left and right-hand sides of the road); *Trent v. State*, 925 S.W.2d 130, 132–33 (Tex. App.–Waco 1996, no pet.) (finding citizen's arrest where bar manager and his co-worker approached intoxicated driver, turned off the car and removed the keys, and then handcuffed driver and called the police); *Reynolds v. State*, No. 05-00-01014-CR, 2001 WL 357451, at *2 (Tex. App. – Dallas Apr. 11, 2001) (not designated for publication) (officer made lawful citizen's arrest of DWI suspect outside of officer's jurisdiction where he saw the suspect "driving in the wrong direction into oncoming traffic, immediately endangering himself and other motorists" and detained the suspect until the appropriate authorities arrived).

*Robertson*, 185 F.3d 557, 571 (6th Cir.1999)) (denying the defendants' motion to dismiss plaintiff's § 1983 claims against them for arresting him without probable cause because the plaintiff alleged that he had only made a threat of force in defense of his property against the officers, and the officers could not "ignore information known to [the]m which proves that the suspect is protected by an affirmative legal justification for his suspected criminal actions") (collecting cases a "police officer's awareness of the facts supporting a defense eliminate[s] probable cause").

The circumstances here are analogous to those at issue in *Aaron v. Shelley*, 696 F. Supp. 2d 1000 (E.D. Ark. 2009), in which the court denied the individual police officer defendants' motions for summary judgment on plaintiff's § 1983 claims for unlawful arrest without probable cause. *See also Aaron v. Shelley*, 624 F.3d 882, 884 (8th Cir. 2010) (dismissing interlocutory appeal but stating in *dicta* that "[i]f [it] reached the merits, [the court] would summarily affirm" because "[i]n denying the officers summary judgment based on qualified immunity, the district court carefully explained the material disputed facts which, when viewed most favorably to [plaintiff], would permit a reasonable jury to find that the officers lacked objectively reasonable probable cause to arrest [plaintiff] on each of the three charges"). *Id*. at 884.

The relevant facts in *Aaron* are as follows:

Rizelle Aaron, a part time police officer for the City of England, Arkansas, who was no longer being paid due to budget cuts, saw what he believed to be four individuals engaged in a drug deal in a park in the City of Jacksonville, where his children played. Aaron approached and forcefully told the four individuals to produce the drugs. They produced crack cocaine, a small amount of marijuana, and four Vicodin pills. Aaron obtained their names, addresses, and phone numbers; called to request that Jacksonville

police come to the park; and flagged down the passing car of a Pulaski County Deputy Sheriff. Jacksonville police quickly came to the scene. **After an investigation**, the details of which are clouded by material fact disputes, **the Jacksonville officers allowed the suspected drug offenders— described in the ensuing police reports as 'victims'—to leave without being charged. The police then arrested Aaron for impersonating a police officer, and for false imprisonment and terroristic threatening of the suspected drug offenders.** A few days later, Jacksonville police received a letter from the City of England confirming that Aaron was a part time police officer, as he had told them at the scene. All charges against Aaron were subsequently *nolle prossed*.

*Id*. at 883.

In denying summary judgment to the individual officers, the Court provided the following analysis which is directly applicable to the actions of the Officer Defendants:

> The problem for [the individual officers], however, is that **their arrest and detention of [plaintiff]**, the person who called them to the park to investigate the drug crime, is **objectively unreasonable** and a reasonable jury could find that [plaintiff]'s constitutional rights were violated because he was arrested without probable cause. Further, **[the individual officers] seem to be playing a shell game in which they attempt to take the court's attention away from the true crime that was committed in the park** on September 17, 2005 by [the suspected drug offenders], which was the possession, sale and/or use of crack cocaine, marijuana and vicodin in a public park. **[The individual defendants] also want the court to believe that they based their decision to arrest [plaintiff] on the statements of… the very people who [plaintiff] called them to the park to investigate and who apparently admitted to possessing drugs in the park. Even more spectacular is** that [the individual officers] ask the court to believe that they were so disturbed by [plaintiff]'s lack of police identification, **that they released the suspected drug dealers and ordered [plaintiff] back to the park and arrested him**.

*Aaron v. Shelley*, 696 F. Supp. 2d 1000, 1006 (E.D. Ark. 2009). These circumstances are strikingly similar to the ones alleged here.

As to the impersonation charge, the Court explained that "a reasonable jury could find that the officers lacked probable cause to arrest [plaintiff] for criminal impersonation

of a police officer" because there were disputes of material fact "as to whether [plaintiff] said he was a police officer;" that even if he did represent he was in officer, he had a complete defense to the charge as he was in fact a part-time police officer, which he told the individual officers at the scene;  and finally, even if the individual defendants did not know that plaintiff was in fact a part time police officer at the time they arrested plaintiff, there were not facts in the record showing that plaintiff had the specific intent "to injure or defraud," as required by Arkansas's impersonation statute. *Aaron*, 696 F. Supp. 2d at 1007. The court further explained that it was "undisputed that [plaintiff] saw drug activity and he called the police to the scene[;] [t]he mere fact that [plaintiff] could not provide police identification to the Jacksonville police did not give [the individual officers] probable cause to arrest him[;] [and] [f]inally, the record [was] clear that there were no exigent circumstances requiring [the individual officers] to arrest [plaintiff]… before performing a more thorough investigation[,] [especially as plaintiff] was the one who called the police to the park[,]… provided the police with his contact information so that he could provide a statement[,] [and] also accepted the cell phone call from the police and returned to the scene to speak with the police." *Id*.

The facts in this case are very similar. Specifically, the evidence establishes that Plaintiff witnessed a DWI; called police to the scene and, in doing so, provided the 911 operator with a real-time description of suspected DWI offender's erratic movements and continued threat to society; waited for police at the scene and subsequently met with Defendants Few and Garcia at another location at their request to provide a statement; provided Defendants Few and Garcia with his contact information, accepted the cell phone

call from them later that night, and even sent the Uber receipts that they requested to Defendant Garcia's HPD email address. Likewise, Plaintiff strongly disputes Gomez's false statement that Hughes ever told Gomez he was a police officer or otherwise represented that he was acting under the authority of a police officer. Finally, Defendants have failed to provide any evidence that Hughes had the specific intent to induce the DWI Suspect to submit to his "pretended official authority or… to rely on [his] pretended official acts," nor that he lacked "legal authority" for the arrest, at least one of which is required for probable cause for Texas's impersonation offense. *See* Tex. Penal Code § 37.11(a)(1)-(2).

Thus, after reviewing the evidence, it is clear that no probable cause existed against Hughes for impersonating a police officer. "To the contrary, in the absence of the officers' misstatements and omissions, Hughes effectuated a valid citizen's arrest under Texas law." *Hughes*, 100 F.4th 611. Accordingly, Defendants are not entitled to summary judgment on Plaintiff's claim for unlawful arrest without probable cause in violation of the Fourth and Fourteenth Amendments. *See Aaron*, 696 F. Supp. 2d 1000; *Aaron*, 624 F.3d 882; *see also Merch. v. Bauer*, 677 F.3d 656, 665 (4th Cir. 2012) (affirming denial of summary judgment for §1983 liability against police officers because there was no probable cause for plaintiff's arrest pursuant to a warrant on charges of impersonating a police officer).

## C. Defendants' Motion is Not Supported by Credible Summary Judgment Evidence.

The arguments contained in Plaintiff's Motion to Strike Defendants' Motion for Summary Judgment (Dkt. 170) and supplement thereto (Dkt. 200) are incorporated by

reference as if fully stated herein. Any information related to Hughes's departure from Auburn Hills is hearsay, irrelevant and not timely produced in discovery, so should not be considered on summary judgment and should be excluded from trial. Defendants have failed to show through competent summary judgment evidence that they are entitled to summary judgment as a matter of law and their motion should be denied in its entirety.

## VI.    <u>CONCLUSION</u>

WHEREFORE, Plaintiff respectfully requests that the Court deny Defendants' Motion for Summary Judgment and grant Plaintiff whatever additional relief to which he may show himself justly entitled.

Respectfully submitted this 2nd day of December, 2025,

Respectfully submitted,

LAW OFFICE OF COURTNEY WARREN PLLC

By:  /s/ *Courtney B. Warren*
Courtney B. Warren
Texas Bar No. 24110511
402 Hunt Street
Houston, TX 77003
courtney@cwarrenlaw.com
Telephone: (512) 797-3855

-AND-

Keith B. French
KEITH B. FRENCH LAW, PLLC
Texas Bar No. 24115073
 kfrench@peoplefirstfirm.com
 2010 E. Broadway St., Suite 132

Pearland, Texas 77581
Tel.: (832) 243-6153
Fax: (832) 243-1927

**ATTORNEYS FOR PLAINTIFF**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on December 2, 2025, a true and correct copy of the foregoing was served via email on all counsel of record in accordance with the Federal Rules of Civil Procedure.

/s/*Courtney B. Warren*
Courtney B. Warren